# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LBRY INC.,** | ) | **1:21-cv-260-PB** |
| Defendant, | ) | |
| | ) | |
| **LBRY FOUNDATION INC.,** | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## PROPOSED DEFENDANT-INTERVENOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

Simon R. Brown (N.H. Bar No. 9279)
PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP
P.O. Box 1318
57 North Main Street
Concord, NH, 03301
(603) 410-1500
sbrown@preti.com

Adriaen M. Morse Jr. (*pro hac vice*)
Cory C. Kirchert (*pro hac vice*)
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
(202) 677-4058
adriaen.morse@agg.com
cory.kirchert@agg.com

*Counsel for Proposed Intervenor*

July 2, 2021

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................1

II.  FACTS ....................................................................................................................3

III. ARGUMENT ..........................................................................................................5

   A.  The Foundation Meets the Requirements for Intervention as a Matter of Right ................5

      1.  The Foundation's Motion for Intervention is Timely ....................................................6

         a.  Timeliness of intervention and status of the litigation action ..................................7

         b.  Prejudice of intervention to existing parties ............................................................8

         c.  Prejudice to intervenor should motion to intervene be denied ..............................8

         d.  Special circumstances in favor of intervention-diligence in seeking
             intervention ......................................................................................................9

      2.  The Foundation Has a Substantial Interest in This Litigation .....................................11

      3.  Intervention is Necessary to Protect the Foundation's Interest ..................................12

      4.  The Foundation's Interests Are Not Adequately Represented ...................................13

   B.  The Foundation Meets the Requirements for Permissive Intervention ............................14

IV. CONCLUSION ......................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
  440 F.3d 541 (1st Cir. 2006) ...........................................................................5, 12, 13

*Banco Popular de P.R. v. Greenblatt*,
  964 F.2d at 1231.................................................................................................6, 7, 9

*Caterino v. Barry*,
  922 F.2d 37 (1st Cir. 1990) ........................................................................................9

*Geiger v. Foley Hoag LLP Ret. Plan*,
  521 F.3d 60 (1st Cir. 2008) .....................................................................................6, 7

*Heartwood, Inc. v. U.S. Forest Serv.*,
  316 F.3d 694 (7th Cir. 2003) ......................................................................................7

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) ......................................................................................7

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
  197 F.3d 560 (1st Cir. 1999) ....................................................................................13

*NAACP v. New York*,
  413 U.S. 345 (1973) ...................................................................................................6

*Pub. Serv. Co. of N.H. v. Patch*,
  136 F.3d 197 (1st Cir. 1998) .................................................................................6, 11

*R & G Mortg. Corp. v. Fed. Home Loan Mortg.*,
  584 F.3d 1 (1st Cir. 2009) .......................................................................................6, 7

*R & G Mortg. Corp. v. Fed. Home Loan Mortg.*,
  584 F3d ...................................................................................................................6, 7

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ...................................................................................13

*Tell v. Trs. of Dartmouth Coll.*,
  145 F.3d 417 (1st Cir. 1998) ....................................................................................13

*Ungar v. Arafat*,
  634 F.3d 46 (1st Cir. 2011) ...............................................................................5, 6, 11

**Statutes**

Securities Act of 1933, 15 U.S.C. §§ 77a-77mm (2019) .................................................................3

**Other Authorities**

Federal Rules of Civil Procedure .............................................................................*passim*

17735977.1

## I.    INTRODUCTION

Proposed Defendant-Intervenor, LBRY Foundation Inc. ("Foundation") requests an order authorizing its intervention in this action to fully and sufficiently represent its interests in:

(1)    Preserving the value and utility of the digital utility tokens, LBRY Credits ("LBCs") that defendant LBRY Inc. ("LBRY") donated to the Foundation and that the Foundation has granted and wishes to continue granting to creators of digital content, developers of blockchain applications on the LBRY Netwrok, and to other valuable contributors and

(2)    Helping the LBRY Protocol increase in functionality and utility, an ongoing process of continuous upgrading and improvement.

The LBRY Protocol is a non-proprietary digital library hosting content which is similar in concept to YouTube but which utilizes distributed ledger technology (also known as the blockchain) for its underlying framework. The LBRY Protocol enables a publicly accessible digital library offering educational and entertaining content for enlightenment and enjoyment; it can be visualized as a virtual theme park. LBRY Credits ("LBCs") are digital tokens created in the LBRY blockchain and LBC is intended for consumptive use on LBRY's blockchain-enabled network; they serve as the "currency" in this theme park and are used to compensate content creators and could be analogized to "tickets" customers need to access that content.

**Different interests.**

The Foundation and LBRY have fundamentally different interests in this action, arising from their different corporate purposes. The Foundation is a California non-profit corporation. (Declaration of Julie Swigart ("Decl.") ¶ 2). Its corporate purpose is to work to promote the growth, development, and adoption of the LBRY Protocol in a bottom-up, community-driven

fashion. (Decl. ¶ 5). It does not sell LBC tokens, but grants these to third parties in furtherance of the Foundation's goals. (Decl. ¶¶ 7-8, 16-20).

Unlike the Foundation, defendant LBRY is a for-profit, business enterprise. (Decl. ¶ 9). LBRY raised approximately $410,000 from venture capital firms and individual accredited investors in the form of convertible promissory notes; it did not raise funds through the sale of LBC tokens. (LBRY Inc. Answer ("Ans."), Prelim. Statement ¶ 5).

**Different litigation strategies.**

LBRY and the Foundation may pursue fundamentally different litigation strategies. For example, Defendant LBRY could continue its corporate existence were it to pursue a compromise or settlement with the plaintiff, the U.S. Securities and Exchange Commisison ("SEC"), in which the company agrees to deactivate the code which gives the LBC tokens their utility. On the other hand, the Foundation loses the purpose for its existence should the LBC tokens lose their utility and therefore their value in rewarding developers and content creators. (Decl. ¶ 23).

**Different outcomes.**

The different litigation strategies that may be pursued by the Foundation and LBRY could, therefore, result in very different outcomes. On the one hand, if LBRY settles with the SEC, the Foundation's ownership interest in LBC tokens (as well as the ownership interests of thousands of individual LBC token-holders ("LBC Holders")) may be extinguished without ever having been considered. On the other hand, if the Foundation presents a vigorous defense that makes it clear that the SEC has no jurisdiction because the LBC tokens are not securities, then both the Foundation and LBRY (as well as LBC Holders) will be free to resume the development and enjoyment of the LBRY Protocol and use of LBC tokens.

17735977.1

## II.    FACTS

In April 2015, several entrepreneurs incorporated LBRY as a business corporation in Delaware and created the LBRY Protocol and blockchain. (Ans., Prelim. Statement ¶5). The principle behind their business concept was to create an open and free community using a distributed ledger platform and a micro-economy in and by which new educational and entertaining content could and would be created, offered, and consumed. (*See*, Ans., Prelim. Statement ¶ 6).

Beginning in mid-2017, the SEC announced that a "digital asset," which includes digital tokens similar to LBCs, are a type of "investment contract" and are, therefore, a security under Section 2(a)(1) of the Securities Act of 1933 ("Securities Act"). SEC, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Exch. Act Rel. No. 81207 (July 25, 2017). The SEC has since asserted that producers of digital tokens must register the tokens to be offered and sold with its Division of Corporation Finance and issued a "Framework" that offers a byzantine analysis one might use to determine whether the SEC will deem a "digital product" to be a "security." SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019). Meanwhile, the SEC's Division of Enforcement has brought cases, such as this action, to enjoin further sale, distribution, and use of digital tokens. Counsel is unable to identify, however, any producer of digital utility tokens that has succeeded in having their "securities" registered through the Division of Corporation Finance. The former director of that division obliquely alluded to this difficulty by suggesting use of the "conventional securities offering" in which registrants "sell shares, issue notes or obtain bank financing." William Hinman, Director, SEC Division of Corporation Finance, *Remarks at the*

17735977.1

*Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

The LBRY Protocol and blockchain were created with the idea that content and information should be created and controlled by the community. (Ans., Prelim. Statement ¶ 6). Among other steps, in order to promote the creation of content and development of applications, and to reward creators and developers, LBRY produced an inventory of LBCs for community projects and development, granting 5 million LBC to the Foundation. (Decl. ¶ 14). LBRY did not register its digital tokens with the SEC's Division of Corporation Finance when it first made them publicly available on July 4, 2016. (Ans., Prelim. Statement ¶¶ 6, 14). On March 29, 2021, following several years of investigation, the SEC filed this action to prevent the further use of LBCs as tokens to compensate creators of content, developers of LBRY Protocol applications, or as "tickets" to access content on the LBRY Protocol.

### The LBRY Foundation

The Foundation, incorporated in California on October 10, 2019, is a non-profit corporation governed by a board of directors. (Decl. ¶ 2).The objectives of the Foundation are to promote free speech, publishing, and education through the LBRY Protocol. (Decl. ¶¶ 4-5).

The Foundation works to promote the growth, development, and adoption of the LBRY Protocol in a bottom-up, community-driven fashion. (Decl. ¶ 5). LBRY donated to the Foundation 5 million LBC tokens, which the Foundation uses to provide funding (in LBC) for projects submitted by the LBRY community. (Decl. ¶ 14). Such projects must make use of the LBRY protocol in some form. (Decl. ¶ 7). Some ideas funded by the Foundation include building a web project, a classroom project/lesson plan, developing a mobile application, and projects extending the LBRY applications or services. (Decl. ¶¶ 7, 16-18). The Foundation has

4

used and wishes to continue using LBC to encourage creators and developers to contribute content and applications to the LBRY Protocol. (Decl. ¶ 20). Before the SEC filed this action on March 29, 2021, Coinbase valued the Foundation's LBC tokens at approximately $ 583,698. Presently, as of June 23, 2021, Coinbase valued its tokens at $ 54,114, a 90% decrease in value. (Decl. ¶ 21).

The Foundation's proposed Answer addresses factual allegations asserted by the SEC in its Complaint regarding the digital tokens produced by Defendant LBRY and either granted, earned, or purchased through various activities by the Foundation or other LBC Holders since October 10, 2019.

## III.    ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure ("FRCP") provides two mechanisms by which an applicant may intervene in an ongoing federal court action: intervention as a matter of right, governed by subsection (a), and permissive intervention, governed by subsection (b). As discussed below, the Foundation satisfies both standards.

### A.    The Foundation Meets the Requirements for Intervention as a Matter of Right

FRCP Rule 24(a)(2) provides that, upon a timely motion, the court must permit anyone to intervene who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As construed by the First Circuit, an applicant for intervention is entitled to intervention as a matter of right when:

> (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action

5

threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.

*Ungar v. Arafat,* 634 F.3d 46, 50 (1st Cir. 2011); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,* 440 F.3d 541, 544-45 (1st Cir. 2006). These requirements should be read "not discretely, but together," and the rule should be applied with "an eye toward the 'commonsense view of the overall litigation.'" *Ungar v. Arafat,* 634 F.3d at 51; *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 204 (1st Cir. 1998). The Foundation's intervention request satisfies the requirements of Rule 24(a)(2).

### 1.      The Foundation's Motion for Intervention is Timely

Under FRCP Rule 24(a), the Supreme Court has emphasized that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The First Circuit has noted that, while "[t]he timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances," *R & G Mortg. Corp. v. Fed. Home Loan Mortg.*, 584 F.3d 1, 7 (1st Cir. 2009), the "timeliness requirement is often applied less strictly," *Id.* at 8 (citing *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 320 (1st Cir. 1997)). In *Banco Popular de P.R. v. Greenblatt,* the First Circuit noted that timeliness is the "prevenient question." 964 F.2d 1227, 1230 (1st Cir.1992) (explaining that "timeliness stands as a sentinel at the gates whenever intervention is requested and opposed"). The First Circuit has also stated:

> No ironclad rules [exist] about just how celeritously, in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge. The passage of time is measured in relative, not absolute, terms. Thus, what may constitute reasonably prompt action in one situation may be unreasonably dilatory in another. *Compare, e.g., Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir.2008) (nine-month delay in moving to intervene reasonable in particular circumstances), *with, e.g., Greenblatt*, 964 F.2d at 1231-32 (three-month delay unreasonable in a different set of circumstances).

*R & G Mortg. Corp. v. Fed. Home Loan Mortg.*, 584 F3d at 8.

6

As a general matter, the case law identifies four factors that inform the timeliness inquiry: (i) the length of time that the putative intervenor knew or reasonably should have known that its interests were at risk before it moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention. *See Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d at 65. Each of these factors must be appraised in light of the posture of the case at the time the motion is made. *Id.* Under this approach, motions to intervene that will have the effect of reopening settled cases are regarded with particular skepticism because such motions tend to prejudice the rights of the settling parties. *See, e.g., In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009); *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 700-01 (7th Cir. 2003); *Banco Popular de P.R. v. Greenblatt*, 964 F.2d at 1231.

### a.       Timeliness of intervention and status of the litigation action

In evaluating the factors that play into the timeliness of the intervention motion, the status of the litigation at the time of the request for intervention is "highly relevant." *R & G Mortg. Corp. v. Fed. Home Loan Mortg.*, 584 F3d at 7. As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies. The more advanced the litigation, the more searching the scrutiny the motion must withstand, as one of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence. *Banco Popular de P.R. v. Greenblatt*, 964 F.2d at 1231; *R & G Mortg. Corp. v. Fed. Home Loan Mortg.*, 584 F.3d at 7, 9; see also *R & G Mortg. Corp. v. Fed. Home Loan Mortg.*, 584 F.3d at 7 (motions to intervene that will have the effect of reopening settled cases are regarded with "particular skepticism").

In the present matter, the post-pleading phase has just begun and no Rule 12 motions or other motions have been made. LBRY accepted service and was accorded a 60-day period to

7

17735977.1

answer the SEC's Complaint. On June 7, 2021, LBRY filed its Answer. The first pretrial conference in the case has been scheduled for July 9, 2021. Because the Foundation is submitting its proposed Answer with this motion, the inclusion of the Foundation as a Defendant-Intervenor will not delay the action. In addition, the Foundation's litigation strategy may accelerate the disposition of the matter and avoid intensive, and possibly irrelevant, fact discovery.

Applying these factors to the instant case, the Foundation application for intervention is timely. In addition, the Foundation's proposed Answer does not expand the claims already pending in this litigation. As a result, the Foundation's intervention will not cause any prejudice through delay of the proceedings.

### b.       Prejudice of intervention to existing parties

To date, the Court has not issued any substantive rulings affecting the rights of the existing parties, nor those of the Foundation. The existing parties have not yet expended significant resources on discovery or in other case-related activities. The Foundation's proposed Answer contains no counter-claims, nor does it require any response from the existing parties. In short, the existing parties would suffer no prejudice due to the Foundation's intervention at this stage of the litigation.

### c.       Prejudice to intervenor should motion to intervene be denied

While the existing parties to the litigation will not be prejudiced by the Foundation's intervention, the Foundation will be prejudiced if its request for intervention is denied. The Foundation's interest in continuing to benefit from the use and enjoyment of the LBC tokens and the technology to which the tokens give the Foundation and other LBC Holders access will undoubtedly be impaired if the Foundation is not permitted to intervene in this action. Moreover, the Foundation's direct interest in, use of, and familiarity with the assets that the SEC has labeled

as "securities" will benefit the existing parties in presenting facts and arguments that will help frame the issues.

If the SEC succeeds in this action, LBRY can conduct an initial public offering and continue funding its operations without LBCs. The Foundation, however, is a non-profit entity and will not be able to generate public funds as easily to fulfill its corporate non-profit objectives.

### d.    Special circumstances in favor of intervention-diligence in seeking intervention

In the last analysis, the timeliness inquiry centers on how diligently the putative intervenor has acted once he, she, or it has received actual or constructive notice of the impending threat. A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights. *Banco Popular de P.R. v. Greenblatt*, 964 F.2d at 1231; *Caterino v. Barry*, 922 F.2d 37, 40-41 (1st Cir. 1990).

The SEC filed this action against LBRY on March 29, 2021. The Foundation learned of and had actual notice of this action the day of the filing or soon thereafter. (Decl. ¶ 24). On April 16, 2021, the Foundation, acting through one of its directors, reached out to potential counsel to represent it. (Decl. ¶ 25). Over the next weeks, the Foundation's directors began discussing options for retaining counsel. (Decl. ¶ 26). In the last week of April, the Foundation began to seek and build support for independent representation for the community, with the intention of introducing counsel to the community after obtaining the requisite support. (Decl. ¶ 29).

The Foundation lacks financial resources, particularly after the SEC's lawsuit and the consequent 90% devaluation of LBC, which has been a constraint on its effort to retain counsel to represent it in intervening to protect its interests; it could not and cannot afford the attorney

17735977.1

costs of litigating a complex matter. (Decl. ¶¶ 27-28). The Foundation first considered raising funds from the LBRY community through a "crowd-funding" effort and began to lay the groundwork for publicizing this effort in early May 2021. (Decl. ¶ 30). On May 12, 2021, the directors agreed to release a video to the LBRY community to call for support for mounting a legal defense for the community, through the Foundation, if the community staked a certain amount (250,000 LBC), the Foundation would begin fundraising—this process could not be accomplished as quickly in a decentralized community as it might be in a normal corporate business setting. (Decl. ¶ 31).

As of June 8, 2021, the Foundation had received the necessary support to discuss a potential engagement with counsel. (Decl. ¶ 32). The Foundation determined, however, that it would be difficult to raise enough funds to afford the amount of attorney fees that had been quoted for the matter. (Decl. ¶ 33). Following a number of discussions with its prospective counsel, the Foundation learned on June 10, 2021 that there was a possibility that counsel would agree to waive its fees. (Decl. ¶ 34). Also on June 10, 2021, the Foundation's board of directors met and voted unanimously to proceed with retaining Arnall Golden Gregory LLP to file a motion to intervene in the SEC v. LBRY Inc. case; the current chief executive of LBRY Inc. abstained from the meeting and the vote. (Decl. ¶ 35). On June 14, 2021, counsel informed the Foundation that it would take the matter on without requiring payment of attorney fees. (Decl. ¶ 35). On June 18, 2021, the Foundation signed an engagement letter retaining counsel to represent it in this action. (Decl. ¶ 36).

In light of the above facts, and consistent with the First Circuit's analysis of timeliness when considering an intervention as of right pursuant to FRCP Rule 24(a)(2), the Foundation has worked diligently to retain counsel and file this motion and its motion to intervene is timely.

17735977.1

## 2.      The Foundation Has a Substantial Interest in This Litigation

A party seeking intervention of right must state a claim that bears a "sufficiently close relationship to the dispute between the original litigants," and the claimed interest must be direct and "significantly protectable." *Ungar v. Arafat*, 634 F.3d at 51; *see also Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d at 205 (a putative intervenor must show at a bare minimum that it has a "significantly protectable interest" that is "direct, not contingent").

First, the Foundation has a direct, substantial, and legally protectable interest in this litigation. First, the Foundation owns slightly less than 2.2 million LBC tokens; before the SEC commenced this action, the value of those tokens, at $0.268 per token, was approximately $583,698. Currently, those tokens have a market value of $0.025 per token, or approximately $54,114 in total, less than 10% their prior value. The Foundation's treasury has been and remains at significant risk. If the SEC succeeds in obtaining a final judgment against LBRY, the value of the LBC tokens, and the Foundation's ownership interest in the tokens, will undoubtedly decline to zero. (Decl. ¶ 23).

Second, the SEC also seeks to enjoin parties "in active concert or participation with" LBRY, which would include the Foundation (and, potentially, other LBC Holders, content creators, and LBRY application developers). (Complaint, Prayer for Relief, ¶ A). If the LBCs are deemed to be a security, then the Foundation risks becoming an underwriter in an unregistered distribution, whatever value the LBCs may have.

Third, the Foundation's interest will best be protected by the Foundation asserting its own defenses and arguments in opposition to those of the SEC.

The central issues of the instant case are critical to the Foundation's ability to continue using LBC tokens as those tokens were intended to be employed and to preserve the value of the

17735977.1

LBC tokens granted to the Foundation and earned by LBC Holders due to their efforts on behalf of the Foundation and the LBRY community. Thus, the Foundation's interest in the pending litigation merits intervention of right.

### 3. Intervention is Necessary to Protect the Foundation's Interest

If the Foundation is not permitted to intervene, the current parties will not protect its interests. The SEC is attempting to take LBC tokens out of circulation under the theory that the tokens are securities. Although the SEC purports to represent and protect "investors," the Foundation and other LBC Holders are not "investors" in LBRY but rather own valuable assets in the form of LBC tokens that are a form of cryptocurrency with value in the LBRY Protocol; LBC tokens may have future value as a unit of exchange with other cryptocurrencies and fiat currencies. The SEC's theory of the case places it in opposition to the interests and views of the parties on whose behalf it purports to act.

The other party to this action, LBRY, may make some of the arguments that the Foundation would make. As a for-profit enterprise with its own owners, including its founders and outside investors, the company has a different interest in the outcome of this action. LBRY might seek to resolve the action in a manner that permits it to continue doing business but which would still extinguish the Foundation's interests in this action. For example, LBRY might be able to settle with the SEC and, as other digital asset producers have done in similar cases, agree to an injunction that requires it to disable the code upon which LBC tokens are based; such an outcome would not protect the ownership interests of the Foundation in the LBC tokens.

For the Foundation, the outcome of this action is literally existential. If the SEC's action succeeds, whether by judgment on the papers, entry of a verdict imposed on LBRY, or settlement, the Foundation will likely discontinue and dissolve because it will be unable to fulfill

12

17735977.1

its corporate purpose. Only the Foundation can adequately protect its own interests by intervening in this matter.

### 4. The Foundation's Interests Are Not Adequately Represented

The final requirement for intervention as a matter of right is that the interest is inadequately represented by the existing parties to the litigation. Although the applicant for intervention bears the burden of demonstrating inadequate representation, the burden is "minimal" and is satisfied if the applicant shows that representation of its interest may be inadequate. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,* 440 F.3d at 545. The putative intervenor need only offer "an adequate explanation as to why" it is not sufficiently represented by the named party. *Id.* at 546. Differences in interest in kind or degree, including asymmetry in the intensity of interest, can be enough to show inadequate representation. *Id. See also, Tell v. Trs. of Dartmouth Coll.,* 145 F.3d 417, 419 (1st Cir. 1998) (stating that "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party"); *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 824 (9th Cir. 2001) ("It is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants.").

The Foundation's proposed Answer reveals a materially different substantive defense strategy between the Foundation and LBRY; also, the Foundation has a completely different view of the optimal procedural strategy in this matter. The difference in strategies may be and is, in the opinion of Foundation, a more efficient and likely successful method of obtaining a positive result for the Foundation (and LBRY, by extension).

As explained above, existing parties to this litigation cannot, and will not, adequately represent the Foundation's interests.

13

### B.   The Foundation Meets the Requirements for Permissive Intervention

FRCP Rule 24(b) provides an alternative basis for the United States' intervention in this action. Rule 24(b)(1)(B) states, in relevant part: "On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The First Circuit has concluded that this is a "low threshold." *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999). For all requests for permissive intervention, the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The LBC Holders should be granted permissive intervention pursuant to Rule 24(b).

As discussed above in conjunction with the Rule 24(a) analysis, the Foundation's application for intervention in this litigation is timely and its participation would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties. In addition, the Foundation's defenses against the SEC, specifically, that the SEC has exceeded its statutory authority in attempting to regulate LBC tokens as securities, share common questions of law and fact with LBRY's defenses. Accordingly, the Foundation meets the requirements for permissive intervention.

## IV.   CONCLUSION

As set forth above, the Foundation's motion to intervene is timely, it has a substantial legal interest in the instant litigation, intervention is necessary to protect the Foundation's interests, the Foundation's interests are not adequately represented by the existing parties, and the Foundation's defenses against the SEC share common questions of law and fact with the defenses of LBRY. As a result, the Foundation respectfully requests that the Court grant the Foundation's motion to intervene and order its intervention as a defendant in this action (1) as a

17735977.1

matter of right pursuant to Rule 24(a)(2) or, in the alternative, (2) permissively pursuant to Rule 24(b). A proposed order and proposed Answer accompany this motion and memorandum.

Dated: July 2, 2021 Respectfully submitted,

    /s/ Simon R. Brown
Simon R. Brown (N.H. Bar No. 9279)
PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP
P.O. Box 1318
57 North Main Street
Concord, NH, 03301Tel:
(603) 410-1500
Email: sbrown@preti.com

Adriaen M. Morse Jr.
Cory C. Kirchert
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
(202) 677-4058
Email: adriaen.morse@agg.com
Email: cory.kirchert@agg.com

*Counsel for Proposed Defendant-Intervenor*

15

17735977.1

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 2, 2021, I caused true and correct copies of the foregoing Proposed Defendant-Intervenor's Memorandum in Support of Motion to Intervene to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system as listed below.

Peter Moores, Esq.
Eric Forni, Esq.
Marc Jonathan Jones, Esq.
U.S. Securities and Exchange Commission
33 Arch Street
24th Floor
Boston, MA 02110

William E. Christie, Esq.
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302


/s/ Simon R. Brown
Simon R. Brown

17735977.1