UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　　　　Plaintiff,<br><br>v.<br><br>LBRY INC.,<br>　　　　　Defendant,<br><br>LBRY FOUNDATION INC.,<br>　　　　　Defendant-Intervenor. | 1:21-cv-260-PB |

### DECLARATION OF JULIE SIGWART

Pursuant to 28 U.S.C. § 1746(2), I declare as follows:

1. I am a director of LBRY Foundation Inc. ("Foundation") and also serve as the board's secretary. The statements in this Declaration are based on my personal knowledge and belief.

### The LBRY Foundation

2. The Foundation is a non-profit corporation incorporated under the Nonprofit Corporation Act of California, as amended, on October 10, 2019 in the State of California. *See* Articles of Incorporation, Exhibit A.

3. A board of five directors governs the Foundation, which has its corporate address at 1072 Casitas Pass Road, #122, Carpinteria, CA 93013. One of the directors is also the current chief executive of LBRY Inc. He has not participated in board decisions regarding filing a request to intervene in the case, SEC vs. LBRY Inc. The remaining four board members voted unanimously in favor of pursuing an intervention request, as reflected in the board's minutes of that meeting and a resolution of the board.

4. The Foundation's general purposes are to promote free speech, publishing, and education.

5. The Foundation's more specific purposes are to promote the growth, development, and adoption of the LBRY Protocol (defined below) in a bottom-up, community-driven fashion.

6. The Foundation is in the process of submitting its long-form IRS Form 1023 to the Internal Revenue Service seeking an IRS determination that it is a tax-exempt charitable organization under 26 U.S.C. § 501(c)(3).

7. The Foundation has used LBC-based grants to finance the building of a web project, creation of a classroom project/lesson plan, development of a mobile application, and other projects extending the LBRY applications or services, all of which must use the LBRY Protocol.

8. The Foundation does not sell LBC tokens, but grants these to third parties in furtherance of the Foundation's goals.

**LBRY Inc. and LBC tokens**

9. LBRY Inc. is a for-profit, Delaware corporation with its principal place of business in Manchester, New Hampshire. LBRY Inc. has no ownership interest in the Foundation and the Foundation has no ownership interest in LBRY Inc.

10. LBRY Inc., among other things, produces digital tokens known as LBC, short for LBRY Credits. LBC tokens are defined by and encoded within a distributed ledger technology, known as a blockchain. This is called the LBRY Protocol.

11. The LBRY Protocol and blockchain were created with the idea that content and information should be created and controlled by the community. LBRY Inc. created a pool of premined LBCs for community projects and development.

12. LBRY did not register its digital tokens with the SEC's Division of Corporation Finance when it first sold them publicly on July 4, 2016.

13. Prior to the SEC's filing of this action, LBC could be exchanged, based on a market-defined exchange rate, with other digital tokens, making it in effect a type of cryptocurrency.

14. On December 9, 2019, LBRY Inc. announced that it would grant the Foundation 5 million LBCs and $20,000 in cash to assist the Foundation in fulfilling its corporate and charitable objectives. Although the Foundation has received LBC tokens, it has not yet received the cash donation. The announcement can be accessed here: https://lbry.com/news/comm-2019-11#swarm.

15. The LBC tokens give the Foundation (and other LBC token-holders) no right against the assets, liabilities, or profits of LBRY Inc. and no say in the management of LBRY Inc.'s business or composition of its management.

**How the Foundation uses LBC tokens**

16. The Foundation's activities in furtherance of its goals include to educate community members about the LBRY Protocol, First Amendment free speech, copyright law, blockchain technology, and LBRY instances.

17. The Foundation provides a hub for sub-communities (called "hives") to form and discuss common interests, promotes and encourages user-created content, and supports small community-based competitions and initiatives, which are small tasks or projects to explore the development of new ideas or to support smaller ongoing projects.

18. These activities take place primarily on the Foundation's Discord forum and its LBRY channel and are funded using LBCs.

19. The Foundation has no source of income except grants or donations made to it, all of which, to date, have been in the form of LBC tokens donated by LBRY. Accordingly, the Foundation's only assets are LBC tokens; it has no cash or other assets.

20. The Foundation has used and wishes to continue using LBCs to provide grants to and encourage creators and developers to contribute content and applications to the LBRY Protocol.

21. Before the SEC filed this action on March 29, 2021, Coinbase (a cryptocurrency exchange) listed the value of LBC tokens as of March 19, 2021, at approximately US$ 0.268, making the Foundation's LBC supply as of that date, 2,177,978.75 LBC tokens, worth approximately US$ 583,698. As of June 23, 2021, Coinbase valued LBC at US$ 0.025, a 90% decrease in value, making the Foundation's then-current supply of 2,164,545.75 LBC tokens worth approximately US$ 54,114. Although LBC is not available for exchange or trade on the exchanges, due to the SEC's lawsuit, its value has still not declined to zero.

**Potential impact of this lawsuit on the Foundation**

22. The profitability of LBRY Inc. does not directly impact the value of LBC tokens.

23. If, however, LBRY Inc. is required by injunction, to reconfigure the code to disable LBCs, render LBCs valueless, or otherwise fundamentally change the LBRY Protocol, the Foundation will lose its primary purpose for existing and will be unable to fund much of its operations as planned.

**Retention of counsel and filing a request to intervene**

24. The Foundation learned about this action the day of its filing on March 29, 2021, or soon thereafter.

25. On April 16, 2021, the Foundation, acting through one of its directors, reached out to potential counsel to represent it.

26. Over the next weeks, the Foundation's directors began discussing options for retaining counsel and the difficulties of financing legal representation.

27. The Foundation lacks financial resources, in particular since the 90% devaluation of its primary asset, LBC tokens, due to the SEC's filing of its Complaint.

28. The Foundation's lack of financial resources has been a constraint on its effort to retain counsel to represent it in intervening to protect its interests; it could not and cannot afford the attorney fees required to litigate a complex matter.

29. In the last week of April, the Foundation began to seek and build support for independent representation for the community, with the intention of introducing counsel to the community after obtaining the requisite support.

30. The Foundation first considered raising funds from the LBRY community through a "crowd-funding" effort and began to lay the groundwork for publicizing this effort in early May 2021.

31. On May 12, 2021, the directors agreed to release a video to the LBRY community to call for support for mounting a legal defense for the community, through the Foundation, if the community staked a certain amount (250,000 LBC), the Foundation would begin fundraising—this process could not be accomplished as quickly in a decentralized community as it might be in a normal corporate business setting.

32. On June 8, 2021, the Foundation had received the necessary support from the community to discuss a potential engagement with counsel and so the board contacted prospective counsel.

33. The Foundation determined, however, that it would be difficult to raise enough funds to afford the amount of attorney fees that had been quoted for the matter.

34. Following discussions with its prospective counsel, the Foundation learned on June 10, 2021, that there was a possibility that counsel would agree to waive its fees.

35. Also on June 10, 2021, the Foundation's board of directors met and voted unanimously to proceed with retaining Arnall Golden Gregory LLP to file a motion to intervene in the SEC v. LBRY Inc. case; the current chief executive of LBRY Inc. abstained from the meeting and the vote.

36. On June 14, 2021, counsel informed the Foundation that it would take the matter on without requiring payment of attorney fees.

37. On June 18, 2021, the Foundation signed an engagement letter retaining the law firm Arnall Golden Gregory LLP to represent it in this action; Arnall Golden Gregory LLP assisted the Foundation in identifying and engaging local New Hampshire counsel Preti, Flaherty, Bellveau, & Pachios, Chartered, LLP.

38. The Foundation's directors believe that we have acted as quickly as possible to retain counsel in order to defend the Foundation's interests in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 1st day of July, 2021.          /s/ Julie Sigwart
                                                JULIE SIGWART

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 2, 2021, I caused true and correct copies of the foregoing Declaration of Julie Sigwart to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system as listed below.

Peter Moores, Esq.
Eric Forni, Esq.
Marc Jonathan Jones, Esq.
U.S. Securities and Exchange Commission
33 Arch Street
24th Floor
Boston, MA 02110

William E. Christie, Esq.
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302

                                              /s/ Simon R. Brown
                                              Simon R. Brown