UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>          Plaintiff,<br>     v.<br>LBRY, INC.,<br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 21-cv-00260<br>)<br>)<br>)<br>) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORADUM OF LAW IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS
ON DEFENDANT'S AFFIRMATIVE DEFENSE OF SELECTIVE ENFORCEMENT**

LBRY has asserted selective enforcement as an affirmative defense, claiming it has been singled out as a "class of one" because many other blockchain companies were not charged when it was.  LBRY's affirmative defense fails for two reasons, each resolvable now on a motion for judgment on the pleadings.  First, the Commission's decision to investigate and file an enforcement action against LBRY and not others is a discretionary decision, specifically delegated to the Commission in the Securities Act, and not subject to judicial review as a "class-of-one" equal protection defense.  Second, LBRY pleaded facts in its Answer establishing that it is _not_ a "class of one."  LBRY's Answer describes how the Commission has brought more than 40 actions against similarly situated defendants, making LBRY part of a "class of many" and defeating its selective enforcement claim.  The Commission asks the Court for judgment on the pleadings as to defendant LBRY, Inc.'s Third Defense of selective enforcement, pursuant to Fed. R. Civ. P. 12(c).

**BACKGROUND**

LBRY failed to register its offer and sales of securities, a "token" known as LBRY

Credits or LBC. LBC were investment contracts because: (a) LBRY raised money from investors, (b) who were in a common enterprise (i.e., their fortunes were collectively tied to the future success of LBRY); and (c) who expected a return on their investment derived from LBRY's efforts to develop its business. See <u>SEC v. Howey</u>, 328 U.S. 293 (1946) (describing the "investment contract" test for assessing whether an investment offering is a security). In its Answer (Dkt. 13), LBRY disputes that LBC are securities, but concedes that it sold LBC (¶ 12 and response to ¶¶ 2, 20-22, 26, 32); raised millions of dollars from these sales of LBC (response to ¶¶ 21-22, 26), and did not file a registration statement with the Commission (response to ¶ 41).

LBRY's Third Defense states:

> The SEC's action represents impermissible selective enforcement of the federal securities laws against LBRY as a "class of one" in violation of equal protection under the Fifth Amendment. By accusing LBRY … the SEC has treated LBRY differently from other similarly situated blockchain companies with no rational basis for the difference in treatment. Moreover, the manner and circumstances under which the SEC has pursued its investigation and brought this action … demonstrate that the selective treatment is based on a malicious or bad faith intent to injure LBRY.
>
> The SEC has failed to enforce the same registration requirements against thousands of other similarly situated blockchain companies, including companies that have sold digital assets bearing indicia of investment contracts under the SEC's publicly stated standards….

Dkt. 13 at 32-33.

By asserting selective enforcement, LBRY seeks to shift the spotlight away from its own conduct, and on to the Commission's discretionary decisions to investigate and charge LBRY. But before this case spins off into a fruitless discovery process, the Court should find that LBRY's selective enforcement claim fails both on the law and on the facts pleaded in LBRY's Answer. The Commission asks the Court to issue a judgment for the Commission dismissing

LBRY's Third Defense under Fed. R. Civ. P. 12(c).[1]

## LEGAL STANDARD

A plaintiff may move for judgment on an affirmative defense under Fed. R. Civ. P. 12(c). McIntosh v. Antonino, 71 F.3d 29, 38 (1st Cir. 1995). "[I]f the plaintiff desires to force an up-or-down decision on the asserted defense in the early stages of the case, [it] has the power to bring it to the forefront." Id. (citing Rule 12(c)). A Rule 12(c) motion "is treated much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). In deciding a Rule 12(c) motion, the Court "must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).[2]

## ARGUMENT

The Court should dismiss LBRY's "class-of-one" selective enforcement defense because (1) it cannot apply the "class-of-one" doctrine to the Commission's discretionary investigatory and charging decisions here and (2) LBRY has actually plead it is a "class of many," not a "class of one."

To establish selective enforcement, LBRY must show that: (1) compared with similarly situated others, it was selectively treated; and (2) that such selective treatment stemmed from

---

[1] The scope of this Motion should not imply that the Commission believes LBRY's other defenses are valid. For example, LBRY's Fourth Defense asserts that it did not have fair notice. Yet Howey was decided in 1946. It concerned orange groves, evidencing the broad meaning and application of "investment contract" in the Securities Act of 1933. The First Circuit has since made clear that the Howey test is flexible, meant to adapt to all forms of securities offerings, including "virtual shares" in virtual companies. See SEC v. SG Ltd., 265 F.3d 42, 47 (1st Cir. 2001) ("[t]he Howey test has proven to be versatile in practice"). If necessary, the Commission will seek judgment on these other defenses in a future dispositive motion.

[2] As an affirmative defense, LBRY's selective enforcement claim could also be subject to a motion to strike under Fed. R. Civ. P. 12(f). Here, the Commission believes, based on the First Circuit guidance cited above, that Rule 12(c) is the proper vehicle to adjudicate the selective enforcement defense. See also Fed. R. Civ. P. 12(h)(2) ("Failure … to state a legal defense to a claim may be raised … by a motion under Rule 12(c)"). If the Court believes the motion should be characterized as a motion to strike, the Commission's arguments that LBRY's Third Defense is insufficient or invalid as a matter of law satisfy the Rule 12(f) standard as well.

3

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or bad faith or malicious intent.  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013).

LBRY advances a "class of one" theory, claiming it was singled out but not because of its membership in a particular group.  Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 143-44 (1st Cir. 2016).  To prevail as a "class of one," LBRY must show that it was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  This equal protection claim is available only "in truly horrendous situations." Baker v. Coxe, 230 F.3d 470, 474-75 (1st Cir. 2000) (selective enforcement claim rejected absent evidence of the type of "extreme 'malicious orchestrated campaign' needed to surmount the constitutional threshold").[3]

### I. LBRY Cannot Claim a "Class-of-One" Equal Protection Violation Based on the Commission's Decision to Investigate and Charge LBRY

Not all types of government action are subject to scrutiny under a "class of one" theory. "There are some forms of state action … which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 603 (holding class-of-one equal protection claim is not cognizable in context of public employment decisions).  In these situations, "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." Id.

In Engquist, the Supreme Court discussed a traffic officer giving a speeding ticket to only one driver.  "Assuming that it is in the nature of the particular government activity that not all

---

[3] LBRY has alleged no facts suggesting there was an extreme malicious orchestrated campaign.

4

speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification." Id. at 603-4.  Indeed, "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion in the challenged action." Id. at 604.  If an enforcement action is "in its nature a subjective and individualized decision," the violator cannot properly challenge that action on equal protection grounds because the decision to investigate and charge it was subjective and individualized.  Id.

Courts have found many government investigative and enforcement activities fit within the Engquist rule.  See, e.g., Caesars Mass. Mgmt. Co., v. Crosby, 778 F.3d 327, 336 (1st Cir. 2015) (applying Engquist to license investigation by Massachusetts Gaming Commission); Flowers v. City of Minneapolis, 558 F.3d 794, 799–800 (8th Cir. 2009) (applying Engquist to police investigations); E. Coast Serv. Indus. Co. Inc. v. N.H. State Liquor Comm'n, Civil No. 19-cv-1182-JD, 2020 WL 5578332, *7 (D.N.H. Sept. 17, 2020) (applying Engquist to New Hampshire Liquor Commission's investigative and penalty decisions).

In Caesars Mass. Mgmt., the First Circuit explained that the state legislature granted the Gaming Commission broad discretion to carry out the state's casino licensing scheme.  778 F.3d at 336-37 (Souter, J., sitting by designation).  This discretion rendered it impossible to derive a baseline against which to assess plaintiff's claim that it was treated differently than similarly situated individuals.  Id. at 337.  The court found that assessing a class-of-one claim about the Gaming Commission's discretionary casino licensing decisions would be even less possible than assessing public hiring in Engquist.  Id. (dismissing equal protection claims).

Similarly, in E. Coast Serv. Indus., the court analyzed the statutory authority granted to the N.H. State Liquor Commission.  Because "investigations by the Commission, as well as the

5

penalties that may arise from any violations found, are the types of state action that, by their very nature, involve 'discretionary decisionmaking based on a vast array of subjective, individualized assessments' … the class-of-one equal protection claim … cannot be sustained." E. Coast Serv. Indus. at *7 (granting motion to dismiss) (quoting Engquist).

Likewise, the Securities and Exchange Commission's investigative and enforcement decisions are, by statute, discretionary and subjective. To eliminate serious abuses in a largely unregulated securities market, Congress passed the securities laws and created the Commission to administer and apply them. United Hous. Found., Inc. v. Forman, 421 U.S. 837, 848-49 (1975). "Congress vested the Commission with broad authority to conduct investigations into possible violations of the federal securities laws." Kokesh v. SEC, 137 S. Ct. 1635, 1640 (2017) (quotations omitted). Congress expressly granted the Commission wide latitude and discretion on when to investigate and when to bring enforcement actions. See 15 U.S.C. § 77t(a) ("Whenever it should appear to the Commission…that the provisions of this subchapter…have been or are about to be violated, it may, *in its discretion*…investigate such facts."); 15 U.S.C. § 77t(b) ("Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, ... the Commission may, *in its discretion*, bring an action....") (emphasis added); see also SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745 (1984) ("Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."). The Commission's decisions about whom to investigate and whether to bring an action intentionally and necessarily involve its exercise of discretionary judgment upon many subjective and individualized assessments. As a result, defendants may not attack those decisions by asserting a "class-of-one" affirmative defense.

6

This makes sense. An "agency's decision not to bring an enforcement action should be presumed immune to judicial review." Heckler v. Chaney, 470 U.S. 821, 831 (1985). "In the realm of . . . regulatory enforcement . . . an individual generally has no right to have the law go unenforced against him simply because others equally or more culpable than he have gone unpunished." Lozman v. City of Riviera Beach, 39 F. Supp. 3d 1392, 1416 (S.D. Fla. 2014). To hold otherwise would mean that the Commission would need to investigate and charge *every* party it could to charge anyone. Here, LBRY would require the Commission to investigate the "more than 5,000 digital assets in existence" and charge all violators to charge LBRY at all. See Dkt. 13 ¶ 3. But that would defeat Congress' intentional grant of discretion to the Commission to investigate and enforce the securities laws. Under Engquist and the lower court cases applying it, LBRY cannot assert a "class of one" defense just because it was selected for enforcement when others were not; so LBRY's Third Defense should be dismissed.

## II. LBRY's Answer Establishes LBRY Is in a "Class of Many"

Even if LBRY could assert a "class-of-one" equal protection defense, its defense still fails. "By definition, a class of one is not a class of many." Cordi-Allen v. Conlon, 494 F.3d 245, 254 (1st Cir. 2007) (rejecting class of one claim because similarly situated others were similarly burdened). Yet, based solely on LBRY's Answer, LBRY is not a "class of one" because the Commission charged many similarly situated others.

LBRY's Answer claims that the Commission singled out LBRY while "ignoring thousands of similarly situated blockchain companies." Dkt. 13 at 33. LBRY described itself as a "blockchain company," which sold "digital assets – LBRY Credits, or 'LBC.'" Id. ¶ 1. LBRY compares LBC to more than "5,000 digital assets in existence," and notes that the Commission has "declined to pursue enforcement actions for registration violations concerning Bitcoin, Ethereum, and thousands of other digital assets." Id. ¶ 3.

7

And yet, LBRY's Answer describes more than 40 similarly situated others also sued by the Commission. "Before the SEC filed this lawsuit, the SEC brought only about 42 enforcement actions against entities or individuals who created and sold unregistered tokens." Id. LBRY then states that, as here, "about 19 [of the 42] actions involved registration violations without fraud allegations." Id.

Viewing the Answer's allegations in the light most favorable to LBRY, the Commission has charged at least 20 (including LBRY) similarly situated persons or entities who created and sold unregistered tokens. So by LBRY's own admission it is not in a "class of one," but is within a "class of many" and therefore cannot sustain its selective enforcement "class-of-one" defense. See, e.g., Cordi-Allen, 494 F.3d at 254 ("a class of one suit cannot be maintained when similar burdens have been imposed on other individuals") (citing Campbell v. Rainbow City, 434 F.3d 1306, 1317 (11th Cir. 2006); MacFarlane v. Town of East Bridgewater, 110 F. Supp. 3d 310, 323 (D. Mass. 2015) (dismissing "class of one" equal protection claim alleging police unfairly targeted plaintiffs where plaintiffs' own allegations in their Complaint established that police also investigated 12 other similarly situated persons).

LBRY's assertion that there remain thousands of digital assets for which the SEC has not yet brought enforcement actions does not save its claim. See SEC v. Navellier & Assocs., Inc., No. 17-cv-11633, 2020 WL 731611, *5 (D. Mass. Feb. 13, 2020). In Navellier, defendants argued that, despite the SEC's enforcement of claims against "numerous similarly situated entities and against one individual," there existed other similarly situated persons that the SEC did not enforce against, and so was still in a "class of one." Id. The court in Navellier rejected this argument because "a class of one defense cannot be maintained where similar enforcement has been sought against other individuals and entities." Id. (citing Cordi-Allen, 494 F.3d at 254).

LBRY cannot make a "class of one" equal protection defense by asking why the Commission has not sued *more* than 19 other digital asset companies for the same misconduct. Because LBRY's Answer establishes that it is actually in a "class of many," its selective enforcement claim must be dismissed.

## CONCLUSION

For these reasons, the Commission asks the Court to grant judgment in the Commission's favor on Defendant LBRY's Third Defense.

Dated: July 12, 2021

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Marc Jones*
Marc Jones (Mass Bar No. 645910)
Eric A. Forni (Mass. Bar No. 669685)
Peter B. Moores (Mass Bar No. 658033)
Senior Enforcement Counsel
Boston Regional Office
33 Arch Street
Boston, MA 02110
(617) 573-8947 (Jones direct)
jonesmarc@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 20201, I caused true and correct copies of the foregoing to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

*/s/ Marc Jones*
Marc Jones