UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 21-cv-00260 |
| LBRY, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION
TO PROPOSED INTERVENOR LBRY FOUNDATION'S MOTION TO INTERVENE**

The LBRY Foundation, Inc. ("Foundation") fails to establish grounds for its intervention in this securities enforcement action against defendant LBRY, Inc. First, under Fed. R. Civ. P. 24, the Foundation must—but does not—overcome the presumption that LBRY adequately represents the Foundation's interests, as they seek the same litigation objective. Nor does it establish that it has a legally cognizable interest. Second, even if the Foundation could meet the Rule 24(a) standards, intervention as a defendant here would intrude on (a) the Commission's judicially unreviewable discretion to decide whom to sue for violating the federal securities laws, and (b) a statute that prevents parties from bringing their own claims in Commission actions, as the Foundation effectively tries to do. And third, the Foundation does not make a compelling case for permissive intervention for the reasons above and the undue confusion the Foundation's proposed intervention would cause. As a result, the Foundation's Motion to Intervene (Dkt. 18) should be denied.

**BACKGROUND**

**I.    The Current Action**

The Commission's complaint alleges that LBRY failed to register an offering of securities pursuant to Section 5 of the Securities Act of 1933 ("Securities Act"). Dkt. 1. Since

2016, LBRY has offered and sold millions of dollars' worth of securities to investors in the form of digital assets called LBRY Credits ("LBC"), without registering that securities offering. *Id.* LBRY offered and sold LBC as investment contracts, which are securities.  In contrast, the Commission did not sue the Foundation.  The Commission did not mention or reference the Foundation in its complaint filed against LBRY.

## II.    The LBRY Foundation

The Foundation and LBRY have the same interest because the Foundation is an outgrowth of LBRY that uses LBRY's resources and personnel to support LBRY's mission of promoting and growing the LBRY Network.  As stated on its website, the Foundation is "dedicated to the growth, development, and adoption of the LBRY network."[1]

Since its inception, LBRY has employed various methods and programs to promote and market the LBRY protocol.  For example, it has operated websites, like lbry.org, and social media channels on Discord and Telegram.  In June 2018, LBRY launched a program it called lbry.fund to offer programmers, content creators, and others LBC in exchange for developments on the LBRY Network.[2]  Julie Sigwart, who submitted the affidavit in support of the Foundation's motion to intervene (Dkt. 18-2), was then (and now) a LBRY employee.[3]  Her title then was Community Director, and she was responsible for facilitating growth and engagement of the LBRY community.  From June 2018 to December 2019, LBRY operated lbry.fund and another community program LBRY called "swarm" through which it sold more than 7.5 million LBC.[4]

---

[1] *See* https://www.lbry.org.

[2] *See* "Development and Community Update," available at LBRY's website: https://lbry.com/news/lbry-development-community-update-june-2018.

[3] Ms. Sigwart's LinkedIn page represents that she has served as the Community Director of LBRY from August 2017 to the present.  https://www.linkedin.com/in/juliesigwart.  While Ms. Sigwart's picture appears on the LBRY website, she is not listed there as Community Director.  https://lbry.com/team.

[4] *See* LBRY Quarterly Credit Reports from Q2 2018 – Q4 2019 available at https://lbry.com/credit-reports.

In the fall of 2019, LBRY created the Foundation and staked it with 5 million LBC to continue the same programs LBRY had been using to grow and promote the LBRY community and its Network.[5]  LBRY transferred to the Foundation certain LBRY websites, like lbry.org, and LBRY's "user-driven chat communities," like Discord and Telegram channels.[6]  LBRY delegated to the Foundation the operation of lbry.fund and the swarm program.[7]  Despite these transfers, LBRY retained control because LBRY's CEO Jeremy Kauffman and Ms. Sigwart, LBRY's Community Director, were initially the Foundation's only founding board members.[8]

LBRY has transferred to the Foundation all or substantially all of the Foundation's funds it has used to operate.  Dkt. 18-4 ¶¶ 14; 19.  The Foundation offers the LBC it received from LBRY to promote projects that "*must* use the LBRY protocol."  Dkt 18-4 ¶ 7 (emphasis added). In its original statement announcing its creation of the Foundation, LBRY said that it will provide more funds to the Foundation if, in its view, the Foundation "proves successful."[9]

Given its relationship with LBRY, the Foundation apparently believes that it would be swept into the Commission's request to enjoin parties "in active concert or participation with" LBRY in LBRY's unregistered offer and sale of securities.  Dkt. 18-1 at 11.[10]

## ARGUMENT

**I.    The Foundation Does Not Meet the Standard for Intervention as of Right**

To obtain intervention as of right under Fed. R. Civ. P. 24(a), the Foundation must

---

[5] *See* "November 2019 LBRY Community Report," by Julie Sigwart available at LBRY's website: https://lbry.com/news/comm-2019-11#swarm.

[6] *Id.*

[7] *Id.*; *see also* https://lbry.fund currently operated by the Foundation.

[8] *See* https://lbry.org/governance/; both are current Directors.

[9] *See* "November 2019 LBRY Community Report," by Julie Sigwart available at LBRY's website: https://lbry.com/news/comm-2019-11#swarm.

[10] The Commission takes no position on whether the Foundation is "in active concert or participation" with LBRY in LBRY's unregistered offer and sale of securities.  But this claim by the Foundation shows the closeness of these two entities.

establish (1) timeliness of its motion; (2) a concrete interest in the pending action; (3) a realistic threat that resolution of the pending action will hinder its ability to effectuate that interest; and (4) the absence of adequate representation by any existing party. *T-Mobile NE LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). "It is black letter law that a failure to satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right." *Id.* (citing *Ungar v. Arafat*, 634 F.3d 46, 50-51 (1st Cir. 2011); *see also Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). The Foundation's Motion fails to establish either: (a) the lack of adequate representation by LBRY; and (b) its own concrete interest. The Court should deny intervention as of right.

### A. The Foundation Does Not Overcome the Presumption that LBRY Adequately Represents Any Interest Held by the Foundation

The Foundation must show that "no existing party fairly represents [its] interests." *T-Mobile*, 969 F.3d. at 39. To do so it "must produce some tangible basis to support a claim of purported inadequacy of representation" and not rely on "empty conjecture." *Id.* "When a would-be intervenor's objective aligns seamlessly with that of an existing party… a rebuttable presumption of adequate represent tation attaches." *Id.* (citing *Students for Fair Admissions Inc. v. Pres. & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015)). Here, the Foundation must overcome that presumption, but has failed to do so.

LBRY and the Foundation both seek to defend the Commission's suit by establishing that LBC are not investment contracts, and, thus, not securities. Both primarily seek dismissal on this ground. In its Answer, LBRY repeatedly denies any allegation that LBC constitute investment contracts or securities and asserts the defense that "LBC is not a security or 'investment contract'…." Dkt. 13 at 32. The Foundation's proposed answer mirrors LBRY's Answer. Dkt. 18-5. It denies the same allegations asserting LBC is an investment contract and makes the

defense that "LBC was and is not an 'investment contract' or any type of security." Dkt. 18-5 at 8.  As evidenced by the parties' Joint Discovery Plan, LBRY intends to pursue this defense.  The Plan states, "[t]he primary question of law presented in this case is whether LBC are a security." Dkt. 19 at 2.  And LBRY bluntly sets forth its position in the Plan, "LBC were not investment contracts and are therefore not securities, so no registration was required." *Id.*  The Foundation expresses the same objective:  "a vigorous defense that … the SEC has no jurisdiction because the LBC tokens are not securities."  Dkt. 18-1 at 2.  Here, the Foundation has pointed to no argument or element that it would add to LBRY's stated defense that LBC are not securities. Their aims and positions are identical, and as in *T-Mobile*, the Foundation and LBRY "share the same ultimate goal…."  *T-Mobile*, 969 F.3d. at 39.

Their indistinguishable objectives reflect their matching pursuits.  The Foundation's purpose is to promote "the growth, development, and adoption of the LBRY network."  LBRY's community efforts were to spread "usage and adoption of the LBRY protocol.  The more people that use and love LBRY, the stronger the LBRY network is…"  Dkt. 1 at 5.  As described above, *supra* at 2-3, the Foundation is simply carrying on the work that LBRY previously did itself until recently when LBRY created the Foundation, funded its entire operation, delegated it tasks, and provided it with LBRY employees to govern and run it.  LBRY adequately represents the Foundation's interest because their interests are substantially the same.

The Foundation attempts to save its representation argument in two ways:  (1) that LBRY cannot adequately represent the Foundation's in interests because LBRY may choose to settle, and (2) that the Foundation may pursue a different litigation strategy than LBRY.  The First Circuit rejected the first argument in *T-Mobile*, finding a claim of inadequate representation based on the possibility of settlement was mere conjecture "without either specificity or record

Case 1:21-cv-00260-PB   Document 23   Filed 07/16/21   Page 6 of 14


support." *Id.* at 40.  There, as here, the existing party was conducting a "robust defense." *Id.* The *T-Mobile* court found that an unsupported claim for inadequate representation based on the mere possibility of settlement could not "rest on so flimsy a foundation." *Id.*

Nor may the Foundation deem LBRY's representation inadequate just because LBRY might pursue a different litigation strategy.  The Foundation bases it inadequate representation argument on "a materially different substantive defense strategy" and its "completely different view of the optimal procedural strategy in this matter" that is "more efficient and likely more successful method of obtaining a positive result."  Dkt. 18-1 (though how it knows LBRY's strategy is left unclear).  "If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001); *see also Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021) (intervenors' interest in making another constitutional argument did not render representation inadequate).  A preference for a different litigation strategy does not amount to inadequate representation.  That maxim rings especially true here where LBRY and the putative intervenor are so closely related and the differing strategies remain unexplained; a claim of inadequate representation based on complementary litigation strategies should be skeptically rejected.  Otherwise, these affiliates, LBRY and the Foundation, essentially get two bites at the litigation apple to pursue the same defense and common goal.

LBRY and the Foundation share a common litigation objective, apparently differing over strategy and the unsupported possibility that LBRY would settle.  That is not enough.  The Foundation has failed to overcome the rebuttable presumption of adequate representation that must be applied here, and thus its intervention motion fails as well.

**B. The Foundation Lacks a Cognizable Interest**

Nor can the Foundation show it has a cognizable interest.  As the First Circuit has stated, "the type of interest sufficient to sustain intervention is not amenable to precise and authoritative definition…." *Patch*, 136 F.3d at 205.  But "at a bare minimum" a prospective intervenor must show that it has "a significantly protectable interest … that is direct not contingent." *Id.*

Here, the Foundation asserts potential economic harm as its interest.  It claims that if the Court enjoins LBRY from offering unregistered LBC, then the LBC the Foundation holds will become worthless.  Dkt. 18-1 at 11.  ("If the SEC succeeds in obtaining a final judgment against LBRY, the value of the LBC tokens, and the Foundation's ownership interest in the tokens, will undoubtedly decline to zero.").  This economic interest is insufficient grounds for intervention as of right.  While potential economic harm "warrants serious consideration in the interest inquiry," *id.*, an economic interest alone is insufficient predicate for intervention under Rule 24(a)(2). *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 466 (5th Cir. 1984) (cited in *Patch*, at 205); *Verizon New England v. Maine Pub. Utils. Com'n*, 229 F.R.D. 335 (D. Me. 2005).

The Foundation's purported interest is also contingent and speculative, and an interest that is contingent upon the occurrence of a sequence of events does not satisfy the rule.  *See SEC v. AmTrust Fin. Servs., Inc.*, No. 20-cv-4652, 2020 WL 4390745, at *2 (S.D.N.Y. July 31, 2020) (finding interest was not "direct, substantial, or legally protectable" where interest was contingent upon subsequent events outside the litigation).  Here, the Foundation's interest is triggered only by a series of events: if this Court finds LBC to be a security, and if LBRY then refuses to register the LBC as a security, and if the cessation of LBRY's sales of LBC cause a decrease in the price of LBC, then the Foundation might suffer an economic harm (though again, that harm alone would be insufficient).  But a judgment against LBRY does not preclude the

7

registration of LBC as a security nor preclude LBRY's future support for LBC.  And the
Foundation does not possess a legally protectable interest in how the Commission settles an
enforcement action.  *SEC v. Petro-Suisse Ltd.*, No. 12-cv-6221, 2013 WL 5348595, at *4
(S.D.N.Y. Sept. 25, 2013) (declining to allow intervention to oppose proposed consent judgment
because, in part, an "investor [also] has no 'legally protectable' right to the SEC's bringing (or
continuing, or settling) an enforcement action.").

Nor does the Foundation provide any legal support for the dubious proposition that a
decline in the value of a speculative investment product (which, in this case, LBRY transferred
to them) as a result of the enforcement of the federal securities laws is a legally cognizable harm.
Indeed, the Foundation has failed to point this Court to a single case in which a court allowed
intervention by shareholders who sought to contest a Commission enforcement action.  To allow
intervention by shareholders based solely on the "interest" of the value of their investment would
invite every shareholder to intervene in every Commission case in which the value of the
investment could decline if the Commission prevailed.  To illustrate, suppose the Commission
sued a publicly traded company of misrepresenting its financials through fraudulent accounting.
Shareholders could legitimately anticipate a decline in the value of their stock from a ruling the
issuer engaged in fraud.  By the Foundation's argument, each of the shareholders could intervene
in that securities fraud action as a matter of right, to push their own litigation strategy of how to
show the company followed the accounting rules.  The Foundation's argument would throw open
the intervention gates much wider than they are intended to go.

## II.    Even If the Foundation Met the Rule 24(a) Standards, Intervention Would Be Prohibited by Constitutional and Statutory Provisions

The Foundation does not meet the standards for intervention as of right.  But even if it
could, the Foundation is barred from intervening as a defendant.  First, if the Foundation were

allowed to intervene as a defendant it would interfere with the Commission's discretion to decide whom to sue for violations of the securities laws, decisions that are solely entrusted to the Executive Branch.  Second, in a standard litigation not involving a government entity, the Foundation's intervention would be as a cross-plaintiff, seeking declaratory judgment that the original plaintiff's legal interpretation was wrong.  But, if the Foundation properly characterized its intervention that way, they would be statutorily stopped from intervening.  For these reasons too, the Court should deny the Foundation's motion.

### A. The Foundation's Intervention as a Defendant Would Violate the Commission's Discretionary Charging Power and Violate Constitutional Separation of Powers

By seeking to intervene as a defendant, the Foundation is seeking to compel the Commission to bring an enforcement action against it.  But these enforcement decisions belong within the prosecutorial discretion of the Commission, an Executive Branch agency, under the Constitution and the Administrative Procedure Act.  As one district court held in denying a motion by a defendant in a Commission action to join third parties as defendants, such joinder would amount to "hav[ing] the court compel Plaintiff SEC to initiate enforcement actions" against the third parties.  *SEC v. Spencer Pharm., Inc.*, No. 12-cv-12334, 2014 WL 5112078, at *1-2 (D. Mass. Oct. 10, 2014).  The Foundation has no legal basis to ask this Court to strip the Commission of that discretion through a motion to intervene.

The Supreme Court has held that an "agency's decision not to prosecute or enforce, whether through criminal or civil process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).  An "agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch…." *Id.*, at 832; *see also* Admin. Procedures Act, 5 U.S.C. §

701(a)(2) ("agency action is committed to agency discretion by law").

Congress has granted the Commission the discretion to choose whether or not to initiate enforcement actions without providing specific guidelines.  Section 21(f) of the Securities Exchange Act of 1934 states, "whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, … it may *in its discretion* bring an action in the proper district court …."  18 U.S.C. § 78u(d)(1) (emphasis added).

The *Chaney* Court recognized that the enforcement decision of an agency such as the Commission are "general[ly] unsuitab[le] for judicial review" because that decision "involves a complicated balancing of a number of factors which are particularly within its expertise….  An agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Chaney*, at 831-32.  "Declining to review the Commission's exercise of prosecutorial discretion is … supported by longstanding precedent ….  The general principle that an agency's exercise of enforcement discretion is unreviewable follows from tradition, case law, and sound reasoning, as well as protection from core executive power."  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 993 F.3d 880 (D.C. Cir. 2021)*; see also Block v. SEC*, 50 F.3d 1078, 1085-86 (D.C. Cir. 1985) (Commission "may decide not to initiate a proceeding free from judicial supervision").

In analogous contexts, courts have rejected motions to force the Commission to litigate against inserted defendants as an improper usurpation of executive power.  In *Spencer Pharm. Inc.*, the defendant sought to join third parties as defendants.  The Court rejected the joinder because the "decision not to bring an enforcement action against" another person "is within the normal exercise of agency discretion."  2014 WL 5112078, at *1-2. In *SEC v. Petro-Suisse Ltd.*,

the court denied an intervention motion because intervention would "intrude on the Executive Branch's prosecutorial discretion" under *Chaney*.  No. 12-cv-6221, 2013 WL 5348595, at *4 (S.D.N.Y. Sept. 25, 2013).

This Court should not accept the Foundation's invitation to strip the Commission of its discretionary powers by inserting the Foundation as a defendants against the Commission's will.

## B.  Section 21(g) of the Exchange Act Prohibits Foundation's Intervention

Congress enacted a statutory provision designed to prevent the very action that the Foundation seeks to take here.  Section 21(g) of the Securities Exchange Act states that:

> Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g).  "Congress enacted Section 21(g) to promote the effective enforcement of federal securities laws by ensuring that the SEC would not be required to litigate the separate issues of private parties during SEC litigation, even though the actions may involve common questions of fact."  *SEC v. Prudential Secs. Inc.*, No. 93-2164, 1997 WL 35393453 (D.D.C. Mar. 26, 1997).

By moving to intervene as a "defendant," which has no allegations, charges, or claims for relief asserted against it, the Foundation has, perhaps unintentionally, obscured the true nature of its claim.  The Foundation seeks a ruling from the Court that LBC are not securities.  This amounts to a claim for declaratory judgment, and, if permitted to intervene and become a party, the Foundation's place on the case caption should be as an intervening cross-plaintiff or third-party plaintiff.  Section 21(g) prohibits adding that claim to this action, and thus prohibits the Foundation from intervening on those grounds.  *See SEC v. Egan*, 821 F. Supp. 1274, 1276 (N.D.

11

Ill. 1993) (holding Section 21(g) precluded the filing of a third-party complaint).

## III.   Permissive Intervention Should Be Denied

The Foundation asks this Court to grant it permissive intervention under Fed. R. Civ. P. 24(b).  But apart from incorporating its Rule 24(a) argument, it offers little to the Court to justify its request.

"To begin, a district court considering requests for permissive intervention should ordinarily give weight whether the original parties to the action adequately represent the interests of the putative intervenors."  *T-Mobile Northeast*, 969 F.3d at 41; *see also Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 564 (1st Cir. 2021) (affirming denial of permissive intervention where movant failed to show inadequate representation); *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Com'n*, 197 F.3d 560 (1st Cir. 1999) (same).  As the Commission has shown above, LBRY adequately represents the Foundation's interests, so the Court should deny permissive intervention on the same grounds as it should deny intervention of right.

Second, a court may consider whether movant "may be helpful in fully developing the case." *T-Mobile*, 969 F.3d at 41.  The Foundation does not offer any facts or information that it exclusively possesses or identify how it may uniquely add or develop anything helpful for the Court.

Third, Rule 24(b)(3) directs courts to consider whether permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b)(3).  Contrary to the Foundation's arguments, their proposed intervention would undoubtedly confuse and delay this lawsuit.  Multiplying the number of parties in a case will often lead to delay, *T-Mobile*, 969 F.3d at 41, and adding a defendant in an enforcement action not subject to any charges is particularly fraught with complication.  In the Foundation's proposed Answer to the Commission's Complaint, it made many admissions and denials about

LBRY's conduct.  Dkt. 18-5.  Some of those admissions and denials concern conduct that predate the formation of the Foundation by years.  The Commission is left to guess what the basis is for these admissions and denials.  Does the Foundation know about LBRY's actions through LBRY's executives or (potentially) former executives who sit on its Board of Directors?  And if so, do the Foundation's admissions bind LBRY?

If the Commission filed a motion for summary judgment against LBRY it would seek to show undisputed material facts establishing its claim that LBRY violated Section 5 of the Securities Act.  But the Commission would have no way to move for summary judgment against the Foundation, because it has no counts against it.  A litigation that would otherwise be resolved would needlessly continue.

Similarly, there is no mechanism to settle with the Foundation if it intervened.  If the Commission settled with LBRY without resolving whether LBC are securities, the Foundation implies it would still seek a ruling from the Court on whether LBC are securities.  Yet, the Commission would be unable to try a case against the Foundation because there would be no counts for the jury to consider.

In sum, the Foundation's intervention as a defendant here would stymie the efficient resolution of this case.  Permissive intervention would also trample upon the Commission's prosecutorial discretion in bringing enforcement cases.  The Foundation has offered no reason why it should be granted permissive intervention if it fails to qualify for intervention of right and numerous factors weigh heavily against it.  So the Court should deny the Foundation's request.

## CONCLUSION

The Foundation fails to establish its right to intervention and of overcoming the presumptions against it resulting from its shared objectives with LBRY.  The Foundation's

request to intervene would undermine the prosecutorial discretion invested in the Commission and violate the statute prohibiting consolidation of third-party claims in Commission actions. Nor does the Foundation offer any compelling reason why this Court should permit it to intervene.  The Foundation's intervention here would needlessly confuse and complicate this litigation.  The Commission asks this Court to deny the Foundation's Motion to Intervene.

Dated:  July 16, 2021

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Peter Bryan Moores*
Marc Jones (Mass Bar No. 645910)
Eric A. Forni (Mass. Bar No. 669685)
Peter Bryan Moores (Mass Bar No. 658033)
Senior Enforcement Counsel
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-4576 (Moores direct)
mooresp@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on July 16, 2021, I caused true and correct copies of the foregoing to be served on counsel of record for all parties and the movant intervenor that have appeared to date through the Court's CM/ECF system.

*/s/ Peter Bryan Moores*
Peter Bryan Moores