UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

------------------------------------- X
SECURITIES AND EXCHANGE  :
COMMISSION,
         Plaintiff,  :

  -against-  :  Civil Action No. 1:21-cv-00260-PB

LBRY, INC.,  :

         Defendant.
------------------------------------- X

**DEFENDANT LBRY, INC.'S OBJECTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO THE LBRY FOUNDATION'S MOTION TO INTERVENE**

**Table of Contents**

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. THE FOUNDATION FAILS TO MEET THE STANDARD FOR INTERVENTION "AS OF RIGHT" | 3 |
|     A. At Bottom, Both LBRY and the Foundation Assert that LBC Is Not a Security | 4 |
|     B. The Foundation's Speculation About Settlement Does Not Establish Inadequacy of Representation | 6 |
|     C. The Foundation Fails to Demonstrate How Any Difference in Litigation Strategy Amounts to Inadequate Representation | 7 |
| II. PERMISSIVE INTERVENTION IS UNWARRANTED | 8 |
| CONCLUSION | 9 |

# TABLES OF AUTHORITIES

**Page**

**CASES**

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
  172 F.3d 104 (1st Cir. 1999) ............................................................................... 4, 6, 8

*In Re Thompson*,
  965 F.2d 1136 (1st Cir. 1992) ........................................................................................ 9

*Libertarian Party of N.H. v. N.H. Att'y Gen.*,
  No. 14-cv-322-PB, Tr. of Mot. Hearing, Dkt. No. 61 (D.N.H. Apr. 20, 2015) .............. 4, 9

*Maine v. Norton*,
  203 F.R.D. 22 (D. Me.), *aff'd sub nom. State v. Dir., U.S. Fish & Wildlife
  Serv.*, 262 F.3d 13 (1st Cir. 2001) ............................................................................ 7, 9

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
  197 F.3d 560 (1st Cir. 1999) ...................................................................................... 8, 9

*N.H. Lottery Comm'n v. Barr*,
  No. 19-CV-163-PB, 2019 WL 1099715 (D.N.H. Mar. 8, 2019) .................................. *passim*

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
  584 F.3d 1 (1st Cir. 2009) ............................................................................................ 3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  807 F.3d 472 (1st Cir. 2015) .................................................................................. 6, 7, 9

*Ungar v. Arafat*,
  634 F.3d 46 (1st Cir. 2011) .......................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a) ........................................................................................................ 3

Fed. R. Civ. P. 24(b) ........................................................................................................ 8

Hester M. Peirce & Elad L. Roisman, *Public Statement: In the Matter of
  Coinschedule* (July 14, 2021), *available at* https://www.sec.gov/news/public-
  statement/peirce-roisman-coinschedule ..................................................................... 2

NOW COMES Defendant LBRY, Inc. ("LBRY"), by and through counsel, to object to the LBRY Foundation's (the "Foundation") Motion to Intervene for the reasons set forth below.

## INTRODUCTION

LBRY is a New Hampshire-based start-up company that built a blockchain-enabled network (the "LBRY Protocol") which allows any individual to publish digital content (*e.g.*, a video or transcript) on the LBRY Protocol[1], and any other individual to explore and buy the published digital content[2] by using a type of digital money or asset known as LBRY Credits ("LBC"). LBRY Answer (Prelim. Statement) ¶ 2. LBRY Protocol's core concept is to enable the distribution of digital content so that no single person or entity can control the availability and storage of user content. *Id.* ¶ 6. To this end, LBRY decided to create and support a decentralized community where anyone can publish or buy digital content using LBC without the need of an intermediary authority. *Id.* Such a configuration prevents the abuses of power that LBRY's founders had observed among other online distribution platforms. *Id.* When LBRY launched the LBRY Protocol and LBC on July 4, 2016, users could immediately begin using LBC on the LBRY Protocol for the purpose for which it was built. *Id.*

The Securities and Exchange Commission ("SEC") now contends that LBC were, and still are, "investment contracts" and has brought a single-count Complaint against LBRY alleging that LBRY failed to register LBC as a security under Section 5 of the Securities Act of 1933. LBRY strongly opposes the SEC's misguided effort to label LBC as securities, which would effectively cripple LBRY and the LBRY Protocol and render LBC unusable for their intended purpose. As detailed below, LBRY's Answer roundly rejects the notion that LBC are securities and asserts various additional defenses. For example, LBRY argues that (1) LBRY

---

[1] These individuals are referred to as "creators."
[2] These individuals are referred to as "consumers."

-1-

lacked fair notice whether its sales of LBC constituted securities[3] because "[t]he application of the federal securities laws to digital assets has lacked clarity" and the SEC "has steadfastly refused to provide sufficient clarity to LBRY or to the blockchain industry in general about its obligations and the SEC's interpretation of the law;" and (2) the SEC is selectively enforcing the federal securities laws against LBRY.  *See* LBRY Answer (Third & Fourth Defenses) at 32-35.

      The Foundation, which describes itself as a non-profit corporation whose "purpose is to work to promote the growth, development, and adoption of the LBRY Protocol in bottom-up, community-driven fashion," seeks to intervene as a defendant in this action.  Foundation Mem. of Law in Supp. of Mot. to Intervene, Dkt. No. 18-1 ("Foundation Mem."), at 1-2.  The Foundation is a separate and distinct legal entity from LBRY, with a different purpose than LBRY, and no ownership relationship exists between the two entities.  Decl. of Julie Sigwart, Dkt. No. 18-2 ¶ 9.  The basis for the Foundation's motion is essentially that LBRY and the Foundation have different interests, the Foundation intends to pursue a different strategy, and thus the Foundation's interests are inadequately represented.  But fundamentally, the root of the Foundation's desire to intervene is to "make[] it clear" that "LBC tokens are not securities," *id.* at 2, which is exactly what LBRY seeks to do as part of its defense.  As explained below, despite having different strategies, LBRY and the Foundation share the same ultimate objective in opposing LBC's status as a security, and the Foundation offers no convincing reason why LBRY will not adequately represent the Foundation's interests.

---

[3] Notably, even two of the SEC's five Commissioners recently confirmed that "[t]here is a decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading."  Hester M. Peirce & Elad L. Roisman, *Public Statement: In the Matter of Coinschedule* (July 14, 2021), *available at* https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule.  The Commissioners criticized the SEC's failure to provide adequate guidance regarding digital assets and observed that "the only certainty we see is that people have questions about how to comply with the applicable laws and regulations."  *Id.*  But for now, "confusion persists in the marketplace."  *Id.*

Moreover, the Foundation fails to meet the necessary elements to intervene, whether as of right or permissive.

## ARGUMENT

### I. THE FOUNDATION FAILS TO MEET THE STANDARD FOR INTERVENTION "AS OF RIGHT"

Under Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene" when, in relevant part, the person:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

A would-be intervenor must establish that (i) the motion to intervene is timely; (ii) it has an "interest relating to the property or transaction that forms the basis of the pending action;" (iii) the disposition of the action threatens to "impede its ability to protect that interest;" and (iv) no existing party adequately represents its interest. *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). "Each of the four preconditions is necessary." *N.H. Lottery Comm'n v. Barr*, No. 19-CV-163-PB, 2019 WL 1099715, at *2 (D.N.H. Mar. 8, 2019) (Barbadoro, J.). In other words, "failure to satisfy any one of them defeats intervention as of right." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011).

The Foundation cannot satisfy at least the latter two of these preconditions, which the Foundation essentially collapses together into an argument that the current parties will not protect the Foundation's interests. *See* Foundation Mem. at 12-13. The Foundation cannot carry its burden to show that LBRY will not adequately represent its interests. Rather, as explained below, because both LBRY and the Foundation share the goal of showing that LBC are not securities, LBRY is presumed to adequately represent the Foundation's interests. The

3

Foundation's speculation that LBRY might settle on terms the Foundation would not like or that the parties will pursue different strategies to accomplish the same goal fails to rebut this presumption.

### A. At Bottom, Both LBRY and the Foundation Assert that LBC Is Not a Security.

When "the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." *N.H. Lottery Comm'n*, 2019 WL 1099715, at *3; *see also Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999) (explaining that "adequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant"); *Libertarian Party of N.H. v. N.H. Att'y Gen.*, No. 14-cv-322-PB, Tr. of Mot. Hearing, Dkt. No. 61 at 26:10-15 (D.N.H. Apr. 20, 2015) (Barbadoro, J.) (denying intervention as of right when defendant was "able to adequately develop the record here and advance and protect the very same interests that the [proposed intervenor] is seeking to advance and protect"). LBRY and the Foundation share the same ultimate objective: Opposing the SEC's effort to label LBC as securities. Indeed, this is the ultimate question of fact in this litigation.

LBRY's Answer repeatedly rejects the SEC's allegations that LBC are securities. In addition to asserting several affirmative defenses, including lack of fair notice and selective enforcement, LBRY firmly contends that "LBRY's sales of LBC do not resemble securities in any meaningful way." LBRY Answer (Prelim. Statement) ¶ 4; *see, e.g.*, *id.* ¶ 14 ("LBRY has never offered and sold LBC as an investment . . ."); LBRY Answer (Answer to Specific Allegations) ¶ 7 (stating that "no registration [with the SEC] was required, as LBC is not a security"); LBRY Answer (Second Defense) at 32 ("LBC is not a security or 'investment

contract' and was not required to be registered with the SEC.  Therefore, LBRY's sales of LBC did not violate Section 5 of the Securities Act.").

The Foundation, too, takes the position that "LBC tokens are not securities."  Foundation Mem. at 2.  According to the Foundation, it seeks to intervene because it believes that if it "makes it clear that . . . LBC tokens are not securities, then both the Foundation and LBRY (as well as LBC Holders) will be free to resume the development and enjoyment of the LBRY Protocol and use of LBC tokens." *Id.*  The Foundation does not explain how its purported interest in "[p]reserving the value and utility of [LBCs]," *id.* at 1, 8, is distinguishable from or any greater than LBRY's interest in the same thing, *i.e.*, ensuring that LBC are not deemed securities.  LBRY's interest in fighting the SEC's effort to label LBC as securities is therefore no less "existential" than the Foundation's. *Id.* at 12.

Nor is the Foundation's stated interest in "[h]elping the LBRY Protocol increase in functionality and utility," *id.* at 1, exclusive to the Foundation.  After all, LBRY is the original creator of the LBRY Protocol and LBC and therefore seeks to ensure that LBRY's decentralized community will continue to use and support the LBRY Protocol. *See, e.g.*, LBRY Answer (Prelim. Statement) ¶ 10 ("The LBRY Protocol—like all software—is continually improved and updated with new tools and features making it more user-friendly and robust over time.  Indeed, hundreds of open-source developers who have no affiliation with LBRY have contributed thousands of lines of code to LBRY's code base over the years.  LBRY often gives away small amounts of LBC as 'tips' for making helpful contributions to the Protocol.").[4]  The Foundation's desire to help the LBRY Protocol only reinforces the fact that LBRY and the Foundation share

---

[4] As LBRY explained in its Answer, even though the LBRY Protocol continues to be updated just like any software, the LBRY Protocol "was a mature, fully functional network" when it was launched.  LBRY Answer (Prelim. Statement) ¶ 9; *see also id.* ¶¶ 2, 6, 19.

the "ultimate objective" of defeating the SEC's Section 5 claim.  *Cf. N.H. Lottery Comm'n*, 2019 WL 1099715, at *3.

In sum, LBRY and the Foundation both attack the SEC's attempt to label LBC as securities, and thus "the goals of the [Foundation] are the same as those of [LBRY]." *Daggett*, 172 F.3d at 111.  Accordingly, adequate representation is presumed, and the Foundation lacks any viable argument to overcome this presumption.  *Id.*

### B. The Foundation's Speculation About Settlement Does Not Establish Inadequacy of Representation.

The Foundation's first theory why LBRY cannot adequately represent its interests is rooted in the Foundation's speculation that "LBRY *might* be able to settle with the SEC" in a manner that requires LBRY "to disable the code upon which LBC tokens are based." Foundation Mem. at 12 (emphasis added); *see also id.* at 2 (hypothesizing that "*if* LBRY settles with the SEC, the Foundation's ownership interest in LBC tokens . . . *may* be extinguished without ever having been considered") (emphasis added).

The Foundation's theory is flawed for at least two reasons.  First, LBRY itself holds LBC in reserve, so LBRY has an ownership interest in LBC.  LBRY Answer (Prelim. Statement) ¶¶ 11-13.  Second, even if the SEC and LBRY were to settle, the Foundation fails to explain how its intervention would limit LBRY's discretion in deciding whether to settle or on what terms. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 476 (1st Cir. 2015) (affirming denial of motion to intervene by students who sought to defend Harvard's race-conscious admissions policy, arguing in part that Harvard might "modify or abandon its race-conscious policies in order to settle," which the court stated "assumes that intervention would somehow enable Students to limit Harvard's discretion in deciding whether to settle or fight," while "Students point[ed] to no basis for such an assumption.").

6

Consequently, LBRY's objection to a hypothetical settlement with which it might disagree does not demonstrate inadequate representation of its interests.

### C. The Foundation Fails to Demonstrate How Any Difference in Litigation Strategy Amounts to Inadequate Representation.

The Foundation's other theory of inadequate representation rests on its argument—without elaboration—that its "proposed Answer reveals a materially different substantive defense strategy between the Foundation and LBRY." Foundation Mem. at 13. To the extent that the Foundation has a different defense strategy, the Foundation does not explain how any difference in strategy amounts to inadequate representation. The Foundation also contends that it "has a completely different view of the optimal procedural strategy in this matter," *id.*, and the Foundation opines that "[t]he difference in strategies may be and is . . . a more efficient and likely successful method of obtaining a positive result for the Foundation (and LBRY, by extension)." *Id.* at 13.

Courts "require putative intervenors to produce 'something more than speculation as to the purported inadequacy' of representation." *Students for Fair Admissions*, 807 F.3d at 475 (quoting *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)). Moreover, "potentially different tactical approaches," "potential differences in legal strategy," or "'[t]he use of different legal arguments as a matter of litigation judgment [are] not inadequate representation per se.'" *Maine v. Norton*, 203 F.R.D. 22, 29 (D. Me.), *aff'd sub nom. State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13 (1st Cir. 2001) (quoting *Daggett*, 172 F.3d at 112).

The main difference in strategy appears to be the Foundation's putative defense that "the SEC has re-interpreted and redefined the terms 'investment contract' and 'security,'" and has thus implemented a new rule "without having complied with the requirements of the Administrative Procedure Act." Foundation Proposed Answer, Dkt. No. 18-5 ¶ 59. LBRY's

7

criticism of the SEC is that "[t]he SEC has steadfastly refused to provide sufficient clarity to LBRY or to the blockchain industry about its obligations and the SEC's interpretation of the law," and thus "LBRY did not have fair notice of whether its sales of LBC constituted securities or investment contracts under the federal securities laws." LBRY Answer (Fourth Defense) at 34. And the "little guidance the SEC has given indicates that LBC is not a security in any event." *Id.* Though the Foundation may advance different arguments, the Foundation cannot show, as it is required to do, that any difference in arguments offered by LBRY constitutes "a refusal to present obvious arguments . . . so extreme as to justify a finding that representation by the existing party [is] inadequate." *Daggett*, 172 F.3d at 112. Rather, the Foundation's difference-in-strategy argument boils down to its desire to present "variations of legal argument," which courts have found may "adequately be presented in amicus briefs" rather than through intervention as parties. *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999); *see infra* n.5.

For these reasons, LBRY and the Foundation share the same goal of opposing the SEC's attempt to label LBC as a security, and the Foundation cannot show that its interests are inadequately represented in this action. The Foundation is not entitled to intervene as of right.

## II. PERMISSIVE INTERVENTION IS UNWARRANTED

The Foundation argues in the alternative that it should be permitted to intervene under Federal Rule of Civil Procedure 24(b). Upon a timely motion, the court has discretion to allow permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is allowed when "(1) the applicant's claim or defense and the main action have questions of law or fact in common, (2) the applicant's interests are not adequately represented by an existing party,

8

and (3) intervention would not result in undue delay or prejudice to the original parties." *In Re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (internal quotation marks omitted).

As explained above, the Foundation falls flat in arguing that its interests are inadequately represented by LBRY. "Given the similarity of the goals of [LBRY] and those of the [Foundation], . . . the granting of permissive intervention would not enhance the resolution of the case in any significant way." *Maine*, 203 F.R.D. at 29-30. There is no need for the Foundation to inject itself into these proceedings as a party and risk complicating the timely resolution of this case.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny the Foundation's Motion to Intervene.

---

[5] Instead, a potential alternative is available as an amicus. Although LBRY opposes the Foundation's intervention as a party, the Court could consider allowing the Foundation to participate as an amicus. Courts in this Circuit have often denied motions to intervene when the proposed intervenors' interests were adequately represented while allowing them to file amicus briefs to present certain legal arguments or perspectives. *See, e.g.*, *Students for Fair Admissions*, 807 F.3d at 477–78 (affirming denial of motion to intervene when would-be intervenors' interests were adequately represented, stating that "we are confident that Students will find that amicus briefs will provide them with a fair opportunity to voice their views concerning the issues posed by the litigation"); *Mass. Food Ass'n*, 197 F.3d at 568 (finding adequate representation and stating that "any variations of legal argument could adequately be presented in amicus briefs"); *N.H. Lottery Comm'n*, 2019 WL 1099715, at *3 (finding that parties "will zealously and effectively pursue the same ultimate objective that [the proposed intervenor] seeks to achieve," but permitting proposed intervenor to "file a brief as an amicus" and granting "oral argument at any dispositive motion hearing"); *Libertarian Party*, No. 14-cv-322-PB, Tr. of Mot. Hearing, Dkt. No. 61 at 29:20-25 (denying motion to intervene but granting proposed intervenor "amicus status"); *Maine*, 203 F.R.D. at 29-30 (denying motion to intervene "[g]iven similarity of the goals of the Defendants and those of the Proposed Intervenors," but allowing participation as amicus to "offer a perspective or arguments different from those of the parties that may indeed be helpful to the fair and just resolution of the issues presented in this case"). Because the Foundation's fundamental desire appears to be to offer its own legal arguments, the Court may decide to allow the Foundation to file amicus briefs in order to present these arguments. But intervention is not appropriate and should be denied.

Dated: July 21, 2021

                                          Respectfully submitted,
                                          LBRY, INC.

*/s/ William E. Christie*

William E. Christie
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
(603) 819-4231
sgordon@shaheengordon.com
wchristie@shaheengordon.com

Keith W. Miller (*pro hac vice*)
Adam H. Schuman (*pro hac vice*)
John T. Dixon (*pro hac vice*)
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
(212) 262-6900
KeithMiller@perkinscoie.com
ASchuman@perkinscoie.com
JohnDixon@perkinscoie.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED: July 21, 2021                         /s/ *William E. Christie*
                                                        William E. Christie
                                                         NH Bar No. 11255