## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | |
| LBRY Inc. , | 1:21-cv-00260-PB |
| Defendant, | |
| LBRY Foundation Inc., | |
| Defendant-Intervenor. | |

### REPLY TO SECURITIES AND EXCHANGE COMMISSION'S AND LBRY INC.'S OPPOSITIONS TO LBRY FOUNDATION INC.'S MOTION TO INTERVENE

Simon R. Brown (N.H. Bar No. 9279)

PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP
P.O. Box 1318
57 North Main Street
Concord, NH 03301
(603) 410-1500
Email: sbrown@preti.com

*Counsel for Proposed Intervenor*

Cory C. Kirchert, *pro hac vice*
Adriaen M. Morse Jr., *pro hac vice*

ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue, NW,
Suite 1000
Washington, DC 20006
Tel: (202) 677-4846
Email: cory.kirchert@agg.com
Email: adriaen.morse@agg.com

*Counsel for Proposed Intervenor*

July 23, 2021

**TABLE OF CONTENTS**

I. FOUNDATION SATISFIES RULE 24 ................................................................................. 1

    A. Foundation's interests are not adequately represented ................................................ 1

        1. SEC's digital token program ................................................................................ 2

        2. LBRY's argument accepts SEC's programmatic assertions ............................... 3

        3. Foundation's argument disputes SEC's programmatic assertions ...................................................................................................... 4

        4. LBRY's arguments are inadequate ..................................................................... 5

    B. Foundation has a cognizable interest in this action ..................................................... 6

II. RULE 24 INTERVENTION IS CONSISTENT WITH EXISTING LAW ......................... 7

    A. Intervention is not joinder ............................................................................................ 8

    B. No amendment of pleadings is needed ........................................................................ 9

III. FOUNDATION'S INTERVENTION WOULD NOT CAUSE CONFUSION ................................................................................................................... 10

IV. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
  440 F.3d 541 (1st Cir. 2006) ........................................................................................ 7

*Public Serv. Co. of New Hampshire v. Patch*,
  136 F.3d 197 (1st Cir. 1998) ........................................................................................ 1

*SEC v. Dresser Industries, Inc.*,
  628 F.2d 1368 (D.C. Cir.) (*en banc*), *cert. denied*, 449 U.S. 993 (1980) .................... 8

*SEC v. Flight Transportation Corp.*,
  699 F.2d 943 (8th Cir. 1983) ....................................................................................... 8

*SEC v. Kik Interactive, Inc.*,
  No. 19-civ-5244 (AKH), 2020 WL 5819770 (S.D.N.Y., Sep. 30, 2020) ................... 5

*SEC v. Navin*,
  166 F.R.D. 435 (N.D. Cal. 1995) ................................................................................ 8

*SEC v. Petro Suisse Ltd.*,
  2013 WL 5348595 (S.D.N.Y., Sep. 25, 2013) ............................................................ 9

*SEC v. Prudential Sec., Inc.*,
  No. 93-2164, 1997 WL 35393453 (D.D.C. Mar. 26, 1997), *aff'd* 136 F.3d 153
  (D.C. Cir. 1998) ...................................................................................................... 8, 9

*SEC v Ripple Labs, Inc.*,
  No. 1:20-cv-10832 (S.D.N.Y. Dec. 22, 2020) ............................................................ 6

*SEC v. Telegram Group Inc.*,
  448 F. Supp. 3d 352 (S.D.N.Y. 2020) ......................................................................... 6

*SEC v. Telegram Group Inc.*,
  No. 19-civ-9349 (S.D.N.Y. Oct. 11, 2019) ................................................................. 6

*SEC v. W.J. Howey*,
  328 U.S. 293 (1946) ......................................................................................... 2, 3, 4, 10

*T-Mobile NE LLC v. Town of Barnstable*,
  969 F.3d 33 (1st Cir. 2020) ......................................................................................... 1

**Statutes**

Securities Exchange Act of 1934 § 21(g), 15 U.S.C. § 78u(g) ........................................ 8, 9

Securities Act of 1933 §§ 5(a) and 5(c), 15 U.S.C. §§ 77e(a) and (c) ................................... 1, 4, 10

**Other Authorities**

Federal Rules of Civil Procedure, Rule 19 ................................................................................. 8

Federal Rules of Civil Procedure, Rule 24 ........................................................................ 1, 9, 10

Local Rule 7.1(e)(2) ..................................................................................................................... 1

Case 1:21-cv-00260-PB   Document 25   Filed 07/23/21   Page 4 of 16

Plaintiff Securities and Exchange Commission ("SEC") and Defendant LBRY Inc. ("LBRY") oppose the motion of LBRY Foundation Inc. ("Foundation") to intervene by means of Federal Rule of Civil Procedure ("Rule") 24(a) and (b).[1] They argue that Foundation's motion fails to satisfy Rule 24 conditions, that SEC's decision not to name Foundation is unreviewable, and that intervention would cause unnecessary confusion.

This action concerns one non-*scienter* claim, namely, that LBRY, a for-profit corporation, violated the registration requirements of §§ 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"). 15 U.S.C. §§ 77e(a) and (c). The purported securities are LBRY Credits ("LBCs"), which LBRY sold without registering with SEC. LBRY granted LBCs to Foundation to finance the latter's non-profit educational purpose, which is to find and compensate contributors of educational content to the LBRY Protocol, an online network.

## I. FOUNDATION SATISFIES RULE 24.

Rule 24 requires: (1) a timely motion; (2) concrete interest in the action by the moving party; (3) a threat that the action's outcome could impair the movant's ability to realize its interest; and (4) the absence of adequate representation. *T-Mobile NE LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). Opponents of Foundation's motion to intervene claim that Foundation cannot show that LBRY's representation is inadequate or that it has a concrete interest.

### A. Foundation's interests are not adequately represented

SEC and LBRY argue that intervention is redundant and LBRY adequately represents Foundation's interests. Both LBRY and Foundation assert that LBCs are not investment

---

[1] Foundation believes that no prior leave of court is required to file this Reply under Local Rule 7.1(e)(2), as a denial of its motion would be dispositive as to Foundation and immediately appealable. *See, e.g.*, *Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

contracts under *SEC v. W.J. Howey*, 328 U.S. 293 (1946) and that intervention gives LBRY "two bites at the litigation apple to pursue the same defense and common goal."[2] Dkt. 23 at 6. LBRY, however, opposes a second bite, which speaks to its minimal concern with Foundation's interest in remaining an educational, non-profit corporation. Despite assertions to the contrary, LBRY's and Foundation's arguments are *materially different* and LBRY's defenses are *demonstrably inadequate*.

1. ***SEC's digital token program***

This action is a product of SEC's new, digital-token program. On July 25, 2017, SEC fired a "warning shot" in a report of investigation made public by the Commission. SEC, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Exch. Act Rel. No. 81207 (July 25, 2017) ("DAO Report"), https://www.sec.gov/litigation/investreport/34-81207.pdf. The DAO Report concerned a digital token that evidenced an equity interest in a pool of assets *and* could be traded as a currency. The "DAO," a Decentralized Autonomous Organization, was the issuer and a core part of the common enterprise, and SEC found the tokens to be investment contracts. On June 14, 2018, then-director of SEC's Division of Corporation Finance ("CorpFin"), William Hinman, observed that digital tokens may cease being investment contracts when the network or ecosystem—the common element—is no longer common. William Hinman, Director, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018) ("Hinman Remarks"), https://www.sec.gov/news/speech/speech-hinman-061418. Commonality, according to Hinman, may cease when the token-producer is no longer involved with the

---

[2] SEC also, without any record basis, claims that Foundation and LBRY are "affiliates," which they are not.

network. *Id.* In early 2019, CorpFin published a "Framework for 'Investment Contract' Analysis of Digital Assets," in which it noted that "in evaluating digital assets, we have found that a 'common enterprise' typically exists." SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_edn1.

### 2. ***LBRY's argument accepts SEC's programmatic assertions***

Both Foundation and LBRY challenge the presence of a "common enterprise" under *Howey*,[3] but LBRY challenges only the *commonality of the network-as-enterprise within the construct of SEC's digital-token program*. LBRY addresses SEC's allegations that LBC-holders invested in a common enterprise by noting that these allegations were characterizations or legal conclusions or both and responded with simple denials. Dkt. 13, ¶¶ 24, 27, 29.

LBRY bases its defense on challenging SEC's interpretation of its own digital-token program as applied to LBRY's activities. This is evident in LBRY's response to SEC's factual allegation that LBRY had not completed its *ecosystem-enterprise* before selling LBCs publicly. In its Answer, LBRY states that, unlike other digital-token producers, it "built its network <u>before</u> selling any … LBC—and LBC could be immediately used for its utility purpose." Dkt. 13 ¶ 2 (emphasis in original). Later, LBRY asserts that "once the LBRY Protocol was launched, it was a mature, fully functional network, and the software and its decentralized community of users did not rely on LBRY to continue to exist or function." *Id.* at ¶ 9; *see also*, ¶ 10. LBRY's responses reveal its reliance on Hinman's view that "[i]f the network on which the token or coin is to function [e.g., the "enterprise"] is sufficiently

---

[3] Since *Howey*, courts of appeals have developed directional tests (horizontal and vertical) for "common," leaving "enterprise" assumed. Foundation contends this is a consequence of *Howey*'s unfortunately abbreviated discussion.

3

decentralized" and "purchasers would no longer reasonably expect a person or group to carry out essential managerial or entrepreneurial efforts – the assets may not represent an investment contract." Hinman Remarks.

### 3. *Foundation's argument disputes SEC's programmatic assertions*

In contrast, Foundation's arguments go beyond SEC's digital-token program and look to the purpose of the Securities Act's registration provisions, the definition of "security" therein, and the "invisible" accounting entity to which the *Howey* court referred as the "common enterprise" to challenge SEC's programmatic claim that a network, such as the LBRY Protocol, can even be an "enterprise"—common or not—under *Howey* and the Securities Act. The business enterprise that registers its securities by filing current business and financial information relevant to determining that enterprise's future value is the entity to which the *Howey* Court referred. A network is not a business enterprise, does not issue securities, and cannot register securities. SEC dilated the meaning of "enterprise" to expand its statutory reach, but this newly-imagined definition renders registration pointless. Also, the expansion enables capture of non-security goods, such as baseball cards and personal seat licenses (PSLs),[4] exposing sellers of these items to SEC's prosecutorial discretion.

Foundation argues that the newly expanded "enterprise" is contrary to Congressional intent and untenable, because, among other things: (1) LBRY Protocol is neither a *business enterprise* nor an issuer; (2) LBCs do not give holders rights against the current and future assets of LBRY, as all securities do;[5] (3) LBRY's anticipated value as a business enterprise

---

[4] PSLs are rights to buy tickets for a particular seat to be built in a stadium, and proceeds from sales of PSLs are used to construct the stadium. One may ask: is the stadium an "enterprise" and are PSLs securities?

[5] Foundation asserts that promises to complete the Protocol are akin to separate contracts, such as warranties or product insurance, which might accompany a purchase transaction for ordinary goods.

does not determine the value of LBCs; (4) LBRY's registration (e.g., providing publicly available financial and operating information about itself as a business enterprise) does not directly or necessarily enhance an LBC "investment decision" as the registration requirements of the Securities Act or Securities Exchange Act envision because LBCs' value are not tied to the value of LBRY; and (5) LBRY has no direct relationship *through* an LBC with an LBC-holder as an issuer has with a security-holder.

The LBRY Protocol, Foundation contends, is analogous to an online-accessible Monopoly board: a virtual marketplace or ecosystem in which participants (players) sell, buy, rent and lease real properties located on the board. In this analogy, LBCs are akin to Monopoly money, the latter used to buy property or pay bills, if the board and the money were sold separately as complementary goods. The "Monopoly money" may be sold and net income from such sales can be used to improve the game board (the LBRY Protocol) or to pay dividends to LBRY's actual shareholders. The board is not a business enterprise, and it issues neither investment contracts nor money. Holding Monopoly money does not transform the holder into a bond-holder or equity owner of the game manufacturer. Creation of a secondary market for Monopoly money, in which demand is a function of its use in the marketplace or speculative investment, does not transmute Monopoly money into a security.

### 4. *LBRY's arguments are inadequate*

LBRY's argument and approach are inadequate for Foundation's continued existence. Digital-asset cases in which the defendant company disputed SEC's non-registration claims *also argued from within SEC's programmatic framework* have all failed. For instance, in *SEC v. Kik Interactive, Inc.,* No. 19-civ-5244 (AKH), 2020 WL 5819770 (S.D.N.Y., Sep. 30, 2020), SEC obtained summary judgment against Kik Interactive, Inc. ("Kik") for selling its unregistered digital tokens called Kin. Kik did not challenge the SEC's programmatic model

5

and the district court found a "common enterprise" because Kik had "pooled proceeds from its sales of Kin in an effort to create an infrastructure for Kin [the common enterprise], and thus boost the value of the investment," which is "the nature of a common enterprise." *Id.* at 11. Similarly, in *SEC v. Telegram Group Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020), SEC obtained a settled judgment against Telegram Group Inc. and Ton Issuer Inc. ("Telegram") for having sold unregistered digital tokens called Grams. SEC alleged that proceeds from sales of Grams were used to develop and launch the TON Network, and this network was a common enterprise. Complaint, *SEC v. Telegram Group Inc.*, No. 19-civ-9349 ¶¶ 61-76 (S.D.N.Y. Oct. 11, 2019). Telegram failed to challenge the SEC's programmatic model and ultimately settled, agreeing to an injunction and disgorgement.

LBRY's Answer (Dkt. 13), and the Proposed Discovery Plan (Dkt. 19) show other defenses, including having been "impermissibly selected" for SEC enforcement and not receiving individualized or other "fair notice." These defenses appear to be part of an oft-employed strategy in these matters, as they also appear in the Answer of Ripple Labs, Inc. *Compare*, Answer, *SEC v Ripple Labs, Inc.*, No. 1:20-cv-10832, ¶ 5 (selective enforcement), Fourth Defense (fair notice), (S.D.N.Y. Dec. 22, 2020) *with* LBRY Answer, Dkt. 13, Third Defense (selective enforcement), Fourth Defense (fair notice). Foundation does not propose to adopt SEC's digital-token paradigm and then argue from within this flawed framework.

### B.     Foundation has a cognizable interest in this action

The corporate continuation of Foundation, which is a non-profit with an educational purpose and a focused operational program for fulfilling that educational purpose, is at risk. If the SEC succeeds, Foundation loses its financing medium, LBCs, and its *raison d'etre*, which is to use LBCs to fund contributors who add value to a public, virtual library, accessible by LBCs. Without LBCs to fund Foundation's operations, and without LBCs to pay contributors,

6

Foundation cannot operate. If LBCs cannot be sold to those who wish to access the library, access to contributed educational materials will not be possible.

The SEC notes that "the Foundation has failed to point this Court to a single case in which a court allowed intervention by shareholders who sought to contest a Commission enforcement action," and "Foundation's argument would throw open the intervention gates much wider than they are intended to go." Dkt. 23 at 8. Foundation, however, is not a shareholder of LBRY, but a donee of LBRY's contributions of LBCs. Foundation's purpose is not to oppose the SEC's action simply to prevent the value of LBCs from falling; in context, the LBCs are the lifeblood of the LBRY Protocol and the compensation system for educational contributors.

SEC's success in this action would not necessarily represent the end of LBRY's business or ability to generate profits—it would simply need to do so without distributing LBCs—whereas for Foundation the end of LBCs is existential. Moreover, SEC and LBRY both ignore that, in rebutting the presumption of adequate representation, an intervenor need only "demonstrate that its interest are sufficiently different in kind or degree from those of the named party . . . '[a]symmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee.'" *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006) (quoting *Glancy v. Taubman Cts., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004)).

## II. RULE 24 INTERVENTION IS CONSISTENT WITH EXISTING LAW

SEC contends that Foundation's intervention would compel (1) SEC to amend its complaint to assert a claim and seek relief against Foundation, as co-defendant, and "bring an enforcement action against [Foundation]" or (2) Foundation to file a cross-complaint seeking declaratory judgment against SEC. The first scenario, according to

7

SEC, would impair its prosecutorial discretion to make enforcement decisions and violate Exchange Act § 21(g) [15 U.S.C. § 78u(g)] ("Section 21(g)").

### A.     Intervention is not joinder

SEC conflates intervention with joinder of actions or parties. Both Section 21(g) of the Exchange Act and *Spencer Pharm., Inc.*, No. 12-cv-12334, 2014 WL 5112078 (D. Mass. Oct. 10, 2014) (cited by SEC) address joinder of actions and parties, respectively. Section 21(g) provides:

> Notwithstanding . . . any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be *consolidated or coordinated with other actions* not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

Securities Exchange Act of 1934, 15 U.S.C. § 78u(g) (emphasis added). Foundation does not move *to consolidate* or *to coordinate* this action with "other actions not brought by the Commission." Foundation is, in fact, neither aware of nor interested in any other actions.

SEC cites *Spencer Pharm*, in which a defendant moved under FRCP 19 to have twenty-six other individuals and entities joined as additional defendants in SEC's action against him for fraudulently pumping the stock price of Spencer Pharmaceuticals. *Spencer Pharm., Inc.*, 2014 WL 5112078, at *1-2. The district court held that the motion would create a *third-party action* in which defendant would need to file a third-party complaint against the twenty-six third-party defendants. This triggered § 21(g)'s bar against consolidating and coordinating other actions.

SEC also cites to *SEC v. Prudential Sec., Inc.*, No. 93-2164, 1997 WL 35393453 (D.D.C. Mar. 26, 1997), *aff'd* 136 F.3d 153 (D.C. Cir. 1998), concerning the purpose of Section 21(g). In *Prudential* the district court, discussing *SEC v. Flight Transportation Corp.*, 699 F.2d 943 (8th Cir. 1983), *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir.) (*en banc*), *cert. denied*, 449 U.S. 993 (1980), and *SEC v. Navin*, 166 F.R.D. 435 (N.D. Cal. 1995), concluded that

8

Section 21(g) did not bar intervention, and SEC dropped the contention on appeal. *Prudential Sec., Inc.*, 136 F.3d 153, 156, n.5 (D.C. Cir. 1998) ("The district court rejected the Commission's argument that section 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(g) (1988), bars intervention in enforcement actions brought by the Commission. The Commission does not press this argument on appeal."). Finally, in *SEC v. Petro Suisse Ltd.*, 2013 WL 5348595 (S.D.N.Y., Sep. 25, 2013), a putative intervenor moved under Rule 24 to dispute an SEC-approved consent judgment that SEC had filed with its complaint, as is common in SEC settled actions. The court, noting that an interest is cognizable under Rule 24(a)(2) if it is direct, substantial, and legal protectable, found the investors' interest concerned the SEC's claim, not their own claims, and denied the motion on that basis.

### B. No amendment of pleadings is needed

Foundation's intervention does not require amendment of any pleadings; it is not seeking declaratory relief and does not assert an affirmative defense. SEC's registration-violation claim requires that it prove that an LBC is a security, was offered and sold publicly, and was not registered. Disputing the first assertion is a "mere" defense against SEC's claim.

Importantly, SEC is not compelled to name Foundation as a co-defendant, and Rule 24 has no such requirement. Although Foundation seeks an outcome that LBRY seeks, it neither wants nor asks SEC to amend its complaint and *join* Foundation—against SEC's prosecutorial wishes—as a co-defendant in a failure to register claim. Why SEC believes this is necessary is unknown.[6] Foundation could not register LBC because it is not the issuer.

---

[6] Foundation also does not know what sources SEC used in making some of its factual assertions. *See* Second Affidavit of Julie Sigwart, attached.

Foundation's intervention relates only to SEC's single claim against LBRY for allegedly violating the registration provisions of the Securities Act. That claim is—and would remain—the sole claim in the matter; if it ripens into a judgment or Court-approved settlement, the action ceases, Foundation's role ceases, and Foundation, as intervenor, is bound by the law of the case.

### III. FOUNDATION'S INTERVENTION WOULD NOT CAUSE CONFUSION

SEC offers a couple of scenarios in which it would be confused about potential outcomes. For instance, if it moved for summary judgment on its claim, it "would have no way to move for summary judgment against the Foundation, because it has no counts against it." Dkt. 23 at 13. This would enable litigation to continue needlessly (and apparently endlessly). Also, if LBRY settled, "there is no mechanism to settle with the Foundation" because "Foundation *implies* it would still seek a ruling from the Court on whether LBC are securities." *Id.* (emphasis added).

As noted above, Foundation's participation as intervenor is subject to and bound by the outcome of the claim against LBRY. Foundation's strategy would be focused on the SEC's expanded notion of enterprise and consequent expansion of what constitutes an investment contract-type security. Accepting factual allegations of SEC's complaint against LBRY does not impair this strategy because the meaning of "enterprise" under *Howey* renders SEC's claim dismissible as a matter of law on such alleged facts. Nonetheless, once judgment is entered on SEC's claim, however that occurs, the action ends, and Foundation ceases to be a party.

### IV. CONCLUSION

Foundation respectfully submits that it has satisfied the Rule 24 requirements and that intervention is consistent with applicable statutes and case law, and it requests that the Court exercise its discretion and grant its motion to intervene.

Dated: July 23, 2021                                    Respectfully submitted,

    /s/ Simon R. Brown
Simon R. Brown (N.H. Bar No. 9279)
PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP
P.O. Box 1318
57 North Main Street
Concord, NH, 03301Tel:
(603) 410-1500
Email: sbrown@preti.com

Cory C. Kirchert
Adriaen M. Morse Jr.
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
(202) 677-4058
Email: adriaen.morse@agg.com
Email: cory.kirchert@agg.com

*Counsel for Proposed Defendant-Intervenor*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on July 23, 2021, I caused true and correct copies of the foregoing Reply to Securities and Exchange Commission's and LBRY, Inc.'s Oppositions to LBRY Foundation Inc.'s Motion to Intervene to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system as listed below.

Peter Moores, Esq.
Eric Forni, Esq.
Marc Jonathan Jones, Esq.
U.S. Securities and Exchange Commission
33 Arch Street
24th Floor
Boston, MA 02110

William E. Christie, Esq.
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302

      /s/ Simon R. Brown
      Simon R. Brown