UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

------------------------------------------ X
SECURITIES AND EXCHANGE            :
COMMISSION,
                                                              :
       Plaintiff,
                                                              :
  -against-                                      Civil Action No. 1:21-cv-00260-PB
                                                              :
LBRY, INC.,
                                                              :
       Defendant.
------------------------------------------ X


**DEFENDANT LBRY, INC.'S OBJECTION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANT'S
<u>AFFIRMATIVE DEFENSE OF SELECTIVE ENFORCEMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 4

ARGUMENT .................................................................................................................................. 6

    I.    LBRY Sufficiently Pled Its Selective-Enforcement Affirmative Defense ............. 6

        A.    The SEC Selectively Omits LBRY's Allegations of the SEC's Malice ..... 7

        B.    LBRY Was Intentionally Treated Differently from Others Similarly Situated for No Rational Reason .................................................................. 8

    II.    The SEC Distorts the Supreme Court's *Engquist* Decision, Which Does Not Exempt the SEC from Equal Protection Constraints ............................................ 11

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page

**CASES**

*Analytical Diagnostic Labs, Inc. v. Kusel*,
   626 F.3d 135 (2d Cir. 2010) ................................................................................................ 12

*Aponte-Torres v. Univ. of P.R.*,
   445 F.3d 50 (1st Cir. 2006) ................................................................................................... 6

*Boreri v. Fiat S.p.A.*,
   763 F.2d 17 (1st Cir. 1985) ................................................................................................... 7

*Caesars Mass. Mgmt. Co. v. Crosby*,
   778 F.3d 327 (1st Cir. 2015) ......................................................................................... 12, 13

*Cordi-Allen v. Conlon*,
   494 F.3d 245 (1st Cir. 2007) ............................................................................................ 9, 10

*E. Coast Serv. Indus. Co. v. N.H. State Liquor Comm'n*,
   No. 19-cv-1182-JD, 2020 WL 5578332 (D.N.H. Sept. 17, 2020) ...................................... 13

*Engquist v. Ore. Dep't of Agriculture*,
   553 U.S. 591 (2008) ..................................................................................................... passim

*Flowers v. City of Minneapolis*,
   558 F.3d 794 (8th Cir. 2009) .............................................................................................. 13

*Goodfellas, Inc. v. Dunkel*,
   No. 3:15-cv-1633, 2016 WL 6599977 (M.D. Pa. Nov. 8, 2016) .......................................... 7

*Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*,
   287 F.R.D. 119 (D. Mass. 2012) ........................................................................................... 6

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ............................................................................................................ 13

*InvestmentSignals, LLC v. Irrisoft, Inc.*,
   No. 10-CV-600-SM, 2011 WL 3320525 (D.N.H. Aug. 1, 2011) ...................................... 6, 7

*Lozman v. City of Riviera Beach*,
   39 F. Supp. 3d 1392 (S.D. Fla. 2014) ................................................................................. 14

*MacFarlane v. Town of E. Bridgewater*,
   110 F. Supp. 3d 310 (D. Mass. 2015) ................................................................................. 10

*Pérez-Acevedo v. Rivero-Cubano*,
   520 F.3d 26 (1st Cir. 2008) ................................................................................................... 6

*Rubinovitz v. Rogato*,
   60 F.3d 906 (1st Cir. 1995) ............................................................................................... 2, 7

*SEC v. Navellier & Assocs., Inc.*,
   No. 17-cv-11633, 2020 WL 731611 (D. Mass. Feb. 13, 2020) .........................................10, 11

*Tapalian v. Tusino*,
   377 F.3d 1 (1st Cir. 2004) ....................................................................................................7

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) ...................................................................................................2, 8, 9

*Wright v. Town of Southbridge*,
   No. 07-40305-FDS, 2009 WL 415506 (D. Mass. Jan. 15, 2009) ............................................8

**OTHER AUTHORITIES**

5 C.F.R. § 2635.101 ......................................................................................................................8

Fed. R. Civ. P. 8(c) ...................................................................................................................6, 7

Fed. R. Civ. P. 12(b) ......................................................................................................................6

Fed. R. Civ. P. 12(c) ......................................................................................................................6

Fed. R. Civ. P. 12(f) .......................................................................................................................7

Fed. R. Civ. P. 15(a) ......................................................................................................................3

4849-9515-4933, v. 1

NOW COMES Defendant LBRY, Inc. ("LBRY"), by and through counsel, to object to Plaintiff Securities and Exchange Commission's ("SEC") Motion for Judgment on the Pleadings on Defendant's Affirmative Defense of Selective Enforcement for the reasons set forth below.

## **INTRODUCTION**

Due process and equal protection require that laws be written coherently and be applied evenhandedly, so that individuals are not subjected to the arbitrary exercise of government power. This action—which alleges one count of failing to register a digital asset as a security—arises out of the SEC's Jackson Pollock approach to splashing lots of "*Howey*" factors on a canvas to determine if a digital asset is a security, and thereby allowing the SEC staff to selectively enforce the federal securities laws against LBRY, a New Hampshire-based start-up company that built a popular blockchain-enabled network (the "LBRY Protocol").

The SEC singles out LBRY while ignoring thousands of other similarly situated blockchain companies, including companies that sold digital assets bearing indicia of "investment contracts" (and thus securities) under the SEC's incomprehensible "*Howey*" application. Incredibly, out of thousands of other blockchain companies and digital assets, the SEC has brought only a few enforcement actions against companies like LBRY, and even those have mostly focused on initial coin offerings ("ICOs")—where companies sell tokens to raise funds to build out their blockchain platform—or fraud, neither of which is alleged here. LBRY Answer to Compl, Dkt. No. 31 ("Answer") ¶¶ 2-3. Even more unfairly, during their investigation of LBRY, the SEC staff expressed a malicious intent to injure LBRY financially—exemplified by explicit threats to continue making investigatory demands upon LBRY in order to cause LBRY to expend its financial resources to the point of bankruptcy, Answer ¶ 24—in

violation of the U.S. Constitution's guarantee of equal protection.  This unconstitutional selective enforcement warrants dismissal of the Complaint.[1]

With this motion, the SEC seeks to evade scrutiny of its unconstitutional actions and to deprive LBRY of its Third Defense of selective enforcement at the outset of this case, before LBRY has had any opportunity to conduct discovery and without the Court receiving the benefit of a developed record.  In a sleight-of-hand, the SEC contends that LBRY's Third Defense should be dismissed because, in the SEC's misconstruction, LBRY alleges merely that the SEC has chosen to sue some blockchain companies and not others.  Indeed, the SEC selectively excerpts only a portion of LBRY's Third Defense in its brief (SEC's Mem. of Law., Dkt. No. 20-1 ("SEC Mem."), at 2) in a gross effort to misstate what LBRY actually alleges and to contort the Third Defense into the SEC's fallacious theory for dismissal.  Such gamesmanship by the SEC before this Court resembles the very type of foul play underlying the SEC's multi-year investigation against LBRY.

The Supreme Court has made clear that to establish a "successful equal protection claim[] brought by a 'class of one,'" a plaintiff must allege that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the selective-enforcement context, a plaintiff must allege that such violations were based on "impermissible considerations such as [1] race, [2] religion, [3] intent to inhibit or punish the exercise of constitutional rights, *or* [4] malicious or bad faith intent to injure a person."  *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (emphasis added).

---

[1] LBRY pleads other equally compelling defenses to this action, including that it did not have fair notice whether digital assets it sold constituted securities or investment contracts under the federal securities laws, which the SEC's motion does not challenge.  *See* Answer at 34 (Fourth Defense).

Here, in addition to alleging different treatment, LBRY specifically contends that the SEC held a "malicious or bad faith intent to injure LBRY." Answer at 32 (Third Defense). Moreover, in language actually removed by the SEC in its block quotation of the Third Defense (SEC Mem. 2), LBRY has spelled out in its Answer that the misconduct by the SEC included "threatening to continue making investigatory demands upon LBRY so that LBRY might exhaust its resources in defending itself." *Id.* LBRY has pleaded the violation of its equal protection rights with robust language that the SEC wishes to sweep under the rug.[2]

Further misstating the law, the SEC baldly asserts that *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), exempts its unfair conduct from equal protection constraints simply because the SEC ostensibly exercises some degree of judgment in connection with enforcement decisions. *Engquist* held that class-of-one claims do not apply to the public employment context given the special characteristics of "the employer-employee relationship." *Id.* at 605. Nowhere, however, did the Court hold that a regulator like the SEC may conduct selective investigations in bad faith. *See id.* at 607 (holding "that the class-of-one theory of equal protection has no application in the public employment context—and that is all we decide").

The SEC's unfounded motion should be denied.

---

[2] As explained herein, LBRY sufficiently pleads a selective-enforcement affirmative defense at this early stage of litigation. Were the Court to nonetheless deem the allegations deficient in any way, LBRY requests leave to amend its Answer and proffers that it could plead additional detailed facts regarding the SEC's misconduct. In this regard, the SEC issued its original subpoena to LBRY in May 2018. Less than one year later, on February 11, 2019, SEC attorney (and counsel in this case) Peter B. Moores improperly threatened LBRY by stating that the SEC would pursue extensive additional discovery and "bankrupt" LBRY if LBRY insisted on defending itself and refused to resolve the investigation on terms which would functionally and financially put LBRY out of business. Rather than investigate the merits of a potential claim in good faith, the SEC had predetermined that it would persist in persecuting LBRY until LBRY could not defend itself any longer. LBRY refused to capitulate and, for the following two years, Mr. Moores pursued vast amounts of additional documentary and testimonial discovery from LBRY. The SEC ultimately filed its Complaint against LBRY on March 29, 2021. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

3

**BACKGROUND**

The LBRY Protocol allows any individual to publish digital content (*e.g.*, a video or transcript) on the LBRY Protocol, and any other individual to explore and buy the published digital content by using a type of digital money or asset known as LBRY Credits ("LBC"). LBRY Answer ¶ 2.  LBC is just one of more than 5,000 such digital assets in existence; the two most well-known are Bitcoin and Ethereum.  *Id.* ¶ 3.  LBRY never conducted an ICO unlike many companies which sold tokens through ICOs in order to use proceeds from ICO sales to build their products.  *Id.* ¶ 2.  LBRY, in contrast, sought traditional early funding from venture capital funds and individual accredited investors and built the LBRY Protocol *before* selling any LBC, which could immediately be used for their utility purpose when the LBRY Protocol launched in July 2016.  *Id.* ¶¶ 2, 5.

Over the years, the SEC has failed to articulate clear guidance to companies in the blockchain industry about whether a particular digital asset will be deemed an "investment contract," and therefore a security, and accordingly must be registered with the SEC.  *Id.* ¶ 1. The few statements the SEC has made about the application of the federal securities laws to digital assets indicated that that the SEC was most keenly focusing enforcement efforts on ICOs. *See id.* ¶¶ 15-21.  These and other statements, however, failed to offer clarity to companies like LBRY that did not conduct ICOs and did not engage in any sort of fraud (which the SEC does not allege here).  To illustrate the continued ambiguity in this space, in just the last few weeks, two of the five SEC Commissioners confirmed as much when they stated: "There is a decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading."[3]  The Commissioners criticized the SEC's approach of providing

---

[3] Hester M. Peirce & Elad L. Roisman, Public Statement: In the Matter of Coinschedule (July 14, 2021), *available at* https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule.

guidance regarding digital assets "piecemeal through enforcement actions" and observed that "the only certainty we see is that people have questions about how to comply with the applicable laws and regulations."[4] But for now, "confusion persists in the marketplace."[5]

In May 2018—almost two years after LBRY launched the LBRY Protocol and LBC—the SEC commenced its investigation into whether LBCs are securities that should be registered with the SEC. *Id.* ¶ 22. In the nearly three years that followed, LBRY turned over hundreds of thousands of pages of documents to the SEC, and the SEC took in-person testimony from several LBRY executives. *Id.* ¶ 23. Even though LBRY cooperated, provided the requested documentation, and explained its business and technology to the SEC during in-person meetings, the SEC remained silent for months at a time, leaving LBRY uncertain about the investigation's status. *Id.* Time after time, the SEC returned to continue its pursuit of LBRY and, in an egregious abuse of power that revealed the SEC's malice toward LBRY, SEC staff threatened to continue issuing subpoenas to LBRY for voluminous materials in order to bankrupt the company if LBRY did not capitulate. *Id.* ¶ 24. Indeed, as LBRY pled in its Answer, "the SEC staff understood that LBRY was a small company and that the turmoil and expense of an extended investigation and litigation would cause significant harm to the company." *Id.*

The SEC has thus selectively—and maliciously—targeted LBRY for enforcement. The SEC's single-count Complaint against LBRY alleges that LBRY failed to register LBC as a security under Section 5 of the Securities Act of 1933. But there is no allegation that anyone at LBRY committed fraud or intentionally violated the law. Nor does the SEC contend that LBRY conducted an ICO (which it did not), despite the SEC's professed standards of enforcement. Meanwhile, as the SEC sustained its bad faith, selective investigation of LBRY, "[t]he SEC has

---

[4] *Id.*
[5] *Id.*

failed to enforce the same registration requirements against thousands of other similarly situated blockchain companies, including companies that have sold digital assets bearing indicia of investment contracts under the SEC's publicly stated standards." Answer at 33 (Third Defense).

## **ARGUMENT**

### I. LBRY SUFFICIENTLY PLED ITS SELECTIVE-ENFORCEMENT AFFIRMATIVE DEFENSE

The SEC asks this Court for extraordinary relief: to deny LBRY the opportunity to present to a jury—or even to develop through discovery—its selective-enforcement defense, which would demonstrate the SEC's misconduct against LBRY in pursuing this enforcement action. LBRY's allegations in support of its selective-enforcement defense meet the liberal pleading standard applied at this threshold stage of litigation. The Court should reject the SEC's attempt to truncate LBRY's ability to defend itself against the SEC's constitutional violations.

While a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion, *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006), in the context of assessing an affirmative defense, the pleading standards of "*Twombly* and *Iqbal* simply do not apply," *InvestmentSignals, LLC v. Irrisoft, Inc.*, No. 10-CV-600-SM, 2011 WL 3320525, at *2 (D.N.H. Aug. 1, 2011); *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 287 F.R.D. 119, 123 (D. Mass. 2012). Thus, pursuant to Rule 8(c), an affirmative defense "must merely provide fair notice of the issue involved." *InvestmentSignals*, 2011 WL 3320525, at *2 (internal quotation marks omitted). Moreover, because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in their favor. *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26,

6

29 (1st Cir. 2008) (citation omitted).  The SEC's distortions of law and fact cannot overcome LBRY's well-pled affirmative defense.[6]

### A. The SEC Selectively Omits LBRY's Allegations of the SEC's Malice.

Instead of grappling with LBRY's allegations establishing the SEC's "malicious or bad faith intent to injure a person," *Rubinovitz*, 60 F.3d at 910, the SEC attempts to alter reality by purposefully removing these allegations in the block quotation of LBRY's Third Defense in the SEC's brief, *see* SEC Mem. at 2.  As explained above, LBRY explicitly alleged that the SEC's malicious conduct included "threatening to continue making investigatory demands upon LBRY so that LBRY might exhaust its resources in defending itself."  Answer at 32 (Third Defense); *see also* Answer ¶ 24.

By waging its selective, vindictive campaign against LBRY for years in a declared effort to financially ruin the company, the SEC made plain its malicious intent to injure LBRY.  *See Tapalian v. Tusino*, 377 F.3d 1, 7 (1st Cir. 2004) (holding that jury properly found selective enforcement when "trial record [was] laden with the language of personal malice and 'bad faith' retaliation"); *Rubinovitz*, 60 F.3d at 912 (finding "malicious intent to injure" when official harbored personal hostility toward plaintiff and undertook a "malicious orchestrated campaign causing substantial harm").  "Indeed, enforcement decisions based on" the government's "bad faith intent to cause financial injury" "are grounded in the type of 'arbitrary or irrational factors' that . . . could corrode the integrity of the rule of law."  *Goodfellas, Inc. v. Dunkel*, No. 3:15-cv-1633, 2016 WL 6599977, at *9 (M.D. Pa. Nov. 8, 2016) (quoting *United States*

---

[6] For the same reasons provided in this brief, the SEC's motion should be denied even if the Court construes the motion as a motion to strike under Rule 12(f).  Such motions are "disfavored" and rarely granted.  *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *see also InvestmentSignals*, 2011 WL 3320525, at *1 n.1, *3 (denying motion to strike because defendant's affirmative defenses met Rule 8(c)'s requirements and provided "adequate notice of what defense [was] being interposed").

7

*v. Torquato*, 602 F.2d 564, 568 (3d Cir. 1979)) (finding that plaintiffs had "sufficiently alleged that a bad faith intent to cause financial injury was the reason for Defendants' actions").[7]

By trying to obscure LBRY's allegations of malice in its brief before this Court, the SEC further confirms its bad faith motives for this action. And by failing to address these allegations of misconduct by Mr. Moores, the SEC concedes that LBRY sufficiently pleads malice.

### B. LBRY Was Intentionally Treated Differently from Others Similarly Situated for No Rational Reason.

As with other "successful equal protection claims," *Willowbrook*, 528 U.S. at 564, LBRY alleges in its Answer that "the SEC has treated LBRY differently from other similarly situated blockchain companies with no rational basis for the difference in treatment." Answer at 32 (Third Defense). LBRY alleges that "there are more than 5,000 digital assets in existence, the two most prominent being Bitcoin and Ethereum." Answer ¶ 3. But while the SEC has doggedly pursued LBRY, the SEC has failed "to pursue enforcement actions for registration violations concerning Bitcoin, Ethereum, and thousands of other digital assets." *Id.* ¶¶ 3-4; *see also* ¶¶ 22-26. These allegations, read in LBRY's favor as required, sufficiently plead different treatment. *See Willowbrook*, 528 U.S. at 564 (allegations that "Village intentionally demanded 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners" were "sufficient to state a claim for relief"); *Wright v. Town of Southbridge*, No. 07-40305-FDS, 2009

---

[7] Such vindictive conduct also directly conflicts with the SEC's own Enforcement Manual's stated values of "Integrity" and "Fairness," which encompass acting "impartially in every aspect of our work" and "assuring that everyone receives fair and respectful treatment." SEC, Division of Enforcement, Enforcement Manual, at 1 (Nov. 28, 2017), *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf; *see also* 5 C.F.R. § 2635.101 ("Each employee has a responsibility . . . to place loyalty to the Constitution, laws and ethical principles above private gain. . . . Employees shall act impartially and not give preferential treatment to any private organization or individual. . . . Employees shall endeavor to avoid any actions creating the appearance that they are violating . . . the ethical standards set forth in this part. . . .").

WL 415506, at *6 (D. Mass. Jan. 15, 2009) (stating that "Plaintiffs must allege that similarly-situated persons were treated differently in order to carry their 'modest burden'").

In another attempt to distract the Court from the SEC's malicious, selective treatment of LBRY, the SEC points to the small fraction of cases it *has* brought against companies and individuals who created and sold digital tokens the SEC believes should have been registered. *See* SEC Mem. at 7-8. Misreading the law and ignoring LBRY's malice allegations, the SEC argues that simply because the SEC has charged *some* registration violations (out of thousands of potential enforcement targets), LBRY is in a "class of many," not a "class of one," and cannot sustain its selective-enforcement defense. *Id.* The SEC's argument fails for at least three reasons.

*First*, the Supreme Court has rejected the SEC's simplistic reasoning that the potential existence of others who have been selectively treated renders equal protection unavailable. In *Willowbrook*, the Supreme Court held that "the number of individuals in a class is *immaterial* for equal protection analysis." 528 U.S. at 564 n.* (emphasis added). There, the Supreme Court found that the plaintiffs "state[d] a claim for relief under traditional equal protection analysis" even though the complaint alleged that a few of the plaintiffs' neighbors *also* had been subjected to an excessive easement demand by a village, while other similarly situated property owners in the town had not. *Id.* at 565. Even if this Court construes LBRY as part of a "class of many" who have been selectively treated, the SEC cannot escape the constraints of equal protection.

*Second*, the cases the SEC cites rejected equal protection claims not merely because a few other persons happened to have been targeted for enforcement as well, but because—unlike here—there was no selective treatment compared to similarly situated persons *at all*. In *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007), the First Circuit rejected a "class of one"

theory because the evidence on summary judgment showed that "the Town's opposition to the [plaintiffs'] efforts to build on a solid foundation [on a coastal dune was] in no way anomalous or inconsistent" because a small number of land developers in the town "*all* have been required to employ pilings as opposed to solid foundations" on a coastal dune. *Id.* at 254 (emphasis added). LBRY, in contrast, is part of an entire industry of thousands of companies employing blockchain technology and digital tokens, and LBRY has alleged facts showing that the SEC selectively targeted LBRY "while leaving thousands of other digital assets relatively untouched." Answer ¶ 3.

The SEC's reliance on *SEC v. Navellier & Assocs., Inc.*, No. 17-cv-11633, 2020 WL 731611 (D. Mass. Feb. 13, 2020), too, is misplaced. There, the district court granted summary judgment to the SEC on defendants' selective-enforcement defense when the SEC pointed to uncontradicted evidence that the defendants were *not* similarly situated to individuals and entities the SEC had failed to enforce against. *Id.* at *4. Here, construing the pleadings in LBRY's favor, the SEC is attempting to selectively enforce the securities laws against LBRY but not against thousands of other similarly situated creators of digital assets.[8]

*Third*, to the extent that the number of actions the SEC has brought could be relevant to the selective-enforcement analysis, the SEC's fact-bound arguments are not appropriate on a motion for judgment on the pleadings. They are better left to be resolved after discovery. Indeed, both *Cordi-Allen* and *Navellier* were decided at the summary judgment stage, highlighting the improper nature of the SEC's application for this Court to jettison LBRY's

---

[8] In another inapposite citation, the SEC relies upon *MacFarlane v. Town of East Bridgewater*, 110 F. Supp. 3d 310, 323 (D. Mass. 2015), in which "the plaintiffs' own allegations establish[ed] that they were treated *no differently* than other residential pool owners," as the plaintiffs had alleged that "the police compiled a list of *all* pools that appeared to violate [a] pool fencing by-law" and sent enforcement letters to the potential violators. *Id.* (emphasis added). Again, LBRY alleges that the SEC is selectively enforcing registration requirements against it while failing to enforce the exact same requirement against thousands of other similarly situated companies for no rational reason.

selective-enforcement defense without the benefit of a record developed in discovery. Further, as LBRY alleged, before suing LBRY, the SEC brought actions against only a handful of other blockchain companies alleging solely a Section 5 violation. Answer ¶ 3; Answer at 33 (Third Defense). Compared to thousands of tokens, this can hardly be construed as a "class of many." Arguments about the small number of enforcement actions the SEC has brought and whether those somehow overcome LBRY's affirmative defense cannot be resolved on the pleadings.

In sum, LBRY has sufficiently pled its selective-enforcement affirmative defense, and the SEC's motion should be denied.

## II. THE SEC DISTORTS THE SUPREME COURT'S *ENGQUIST* DECISION, WHICH DOES NOT EXEMPT THE SEC FROM EQUAL PROTECTION CONSTRAINTS

Consistent with the SEC's overreach in this case, the SEC makes the sweeping and unfounded argument that it is categorically exempt from the Constitution's requirements of equal protection when it comes to enforcement decisions. Employing a smattering of selective citations, the SEC again misstates the law.

The SEC spins its erroneous theory from the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), in which the Supreme Court held that a "class-of-one theory of equal protection has no application in the *public employment* context," *id.* at 607 (emphasis added), in part because "employment decisions are quite often subjective and individualized," *id.* at 604. Critically, the Supreme Court took pains to distinguish the "crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage [its] internal operation." *Id.* at 598 (internal quotation marks omitted). In the context of public employment, "the government as employer indeed has far broader powers than does the government as sovereign." *Id.* (internal quotation marks omitted). After all, the Court

explained, "[t]he basic principle of at-will employment is that an employee may be terminated for a good reason, bad reason, or no reason at all." *Id.* at 606 (internal quotation marks omitted).

*Engquist* plainly does not grant the SEC carte blanche to selectively enforce the securities laws with malicious intent to injure its targets. *See Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 142 (2d Cir. 2010) (holding that "*Engquist* does not bar all class-of-one claims involving discretionary state action," particularly when an agency "exercise[s] the state's regulatory power," and declining to apply *Engquist* when state agency had to "operate within the regulatory framework set forth in" state statutes). Though the Supreme Court in dicta used a hypothetical example of a traffic officer stopping speeders on a highway to illustrate potentially discretionary activity to which a class-of-one claim would not apply, the Court acknowledged that even then, an allegation that speeding tickets were given out for an improper purpose would state an equal protection claim. *See Engquist*, 553 U.S. at 604. Thus, *Engquist* did not alter traditional equal protection analysis. Furthermore, handing out traffic tickets is hardly comparable to a powerful regulator conducting a malicious, selective investigation for years and filing an enforcement action that has the potential to destroy a company.

The SEC asserts that "many government investigative and enforcement activities fit within the *Engquist* rule." SEC Mem. at 5. The SEC relies on *Caesars Massachusetts Management Co. v. Crosby*, 778 F.3d 327 (1st Cir. 2015), where the court declined to recognize a class-of-one cause of action under Massachusetts casino licensing statutes after the Massachusetts Gaming Commission found the plaintiffs unsuitable as proposed operators of a casino. *Id.* at 330, 336. In stark contrast to the federal securities laws, the state's casino licensing laws granted the Massachusetts Gaming Commission "an apparently unlimited scope for discretionary judgment, reflecting the commercial and social risks presented by casino

12

operation." *Id.* at 334. Thus, in making suitability determinations, the state regulator was permitted to consider such nebulous concepts as the applicant's "integrity, honesty, good character and reputation"; "financial responsibility"; and "general fitness . . . to warrant belief by the commission that the applicant will act honestly, fairly, soundly and efficiently." *Id.* at 334-35 (internal quotation marks omitted). The SEC's authority to police securities registration requirements stands far apart from the unique context of a casino licensing regime like in *Caesars*.

Similarly, the SEC cites an unpublished district court decision rejecting a class of one equal protection claim by a bar alleging that it was treated differently from similarly situated bars because it was subjected to excessive investigations and penalties. *E. Coast Serv. Indus. Co. v. N.H. State Liquor Comm'n*, No. 19-cv-1182-JD, 2020 WL 5578332, at *6 (D.N.H. Sept. 17, 2020). In that case, however, the Liquor Commission was *required* to conduct "frequent inspections" of licensed establishments like the plaintiff, and it was left to the "investigators' subjective judgment to determine the timing, frequency, and scope of authorized inspections" of licensed establishments. *Id.* This case is not about the frequency of required inspections of a licensed establishment, but about the SEC's bad faith, selective enforcement of the securities laws with the malicious purpose of imposing financial harm.[9]

---

[9] The SEC also cites a distinguishable out-of-circuit case where the court applied *Engquist* in a police-investigation context, but only after finding (on a summary judgment record) that the plaintiff had "not produced sufficient evidence" that he was targeted for any improper purpose including malice, unlike here. *Flowers v. City of Minneapolis*, 558 F.3d 794, 798-99 (8th Cir. 2009). The SEC further cites *Heckler v. Chaney*, 470 U.S. 821 (1985), out of context to suggest that the SEC's decisions are "immune to judicial review." SEC Mem. at 7 (quoting *Heckler*, 470 U.S. at 831). *Heckler* did not address selective enforcement but rather the plaintiffs' attempts to use the Administrative Procedure Act to compel the Food and Drug Administration to take certain enforcement actions regarding drugs used for lethal injections. *Id.* at 823. In addition, the Florida district court case the SEC cites to argue that "an individual generally has no right to have the law go unenforced against him" recognized that "sometimes the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination, and to address this problem courts have developed the doctrine of 'selective enforcement.'" *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1416 (S.D. Fla. 2014). And the district court actually allowed the selective-enforcement claim to survive summary judgment because it found "sufficient circumstantial evidence to

13

The SEC cannot evade the long-standing constitutional guarantee of equal protection. The SEC's Motion for Judgment on the Pleadings should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the SEC's Motion for Judgment on the Pleadings.

Dated: August 9, 2021

    Respectfully submitted,
    LBRY, INC.


    */s/ William E. Christie*
    William E. Christie (#11255)
    Shaheen & Gordon, P.A.
    107 Storrs Street
    P.O. Box 2703
    Concord, NH 03302
    (603) 603-225-7262
    wchristie@shaheengordon.com

    Keith W. Miller (*pro hac vice*)
    Adam H. Schuman (*pro hac vice*)
    John T. Dixon (*pro hac vice*)
    Perkins Coie LLP
    1155 Avenue of the Americas, 22nd Floor
    New York, New York 10036-2711
    (212) 262-6900
    KeithMiller@perkinscoie.com
    ASchuman@perkinscoie.com
    JohnDixon@perkinscoie.com

---

support an inference that the City singled out [plaintiff] for reasons unrelated to the safety or aesthetics of his floating home." *Id.* at 1419.

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED:  August 9, 2021                                   /s/ *William E. Christie*
                                                                                    William E. Christie
                                                                                    NH Bar No. 11255

4849-9515-4933, v. 1