UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>LBRY, INC.,<br><br>    Defendant. | Civil Action No. 21-cv-00260-PB |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY TO DEFENDANT'S OBJECTION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

  LBRY's Opposition (Dkt. 29) fails to counter the Commission's central argument: that LBRY's Answer concedes that 19 to 42 similarly situated companies have been the subject of Commission enforcement actions on the same grounds, and thus LBRY is not a "class of one." And LBRY fails to distinguish the discretionary enforcement power granted to the Commission from the cases in this Circuit that establish that a class-of-one claim is unavailable here. Thus, the Court should grant the Commission's Motion.[1]

**I. LBRY MISCONSTRUES "CLASS OF ONE" CLAIMS AND THE EFFECT OF ITS ADMISSION THAT THE COMMISSION HAS ENFORCED AGAINST DOZENS OF SIMILARLY SITUATED ENTITIES**

  In its class-of-one selective enforcement affirmative defense, LBRY "alleges that the SEC is selectively enforcing registration requirements against it while failing to enforce the exact same requirements against thousands of other similarly situated companies for no rational

---

[1] The Commission's motion (and this reply brief) address LBRY's selective enforcement defense. But, LBRY's assertion in its objection that the "SEC's Motion does not challenge" other defenses is inaccurate. Dkt. No. 29, at 6, n.1. The Commission merely does not challenge these other defenses in its Rule 12(c) motion. The Commission's Motion specifically previewed its challenge to LBRY's due process affirmative defense. *See* Dkt. No. 20-1, at 3, n.1. To be clear, the Commission submits that none of LBRY's three affirmative defenses are legally or factually sufficient.

reason." Dkt. No. 29 (LBRY Opp.) at 14, n.8.[2]  The Supreme Court has held that to prevail as a "class of one," one must show that it was "intentionally treated differently from others similarly situated and that there is no basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The First Circuit has held that "[b]y definition, a class of one is not a class of many" and that "a class of one suit cannot be maintained when similar burdens have been imposed on other individuals…." *Cordi-Allen*, 494 F.3d 245, 254 (1st Cir. 2007).  LBRY admits "the SEC brought … about 42 enforcement actions against entities or individuals who created and sold unregistered tokens … about 19 actions involved registration violations without fraud allegations." Dkt. 13 (Answer) ¶3 (p. 2).  Thus, because LBRY admits in its Answer that the Commission has imposed similar burdens on other individuals, the Commission should be granted judgment on LBRY's selective enforcement affirmative defense.

LBRY tries to sidestep the legal consequence of its admission in three ways.  *First*, LBRY argues that the Supreme Court in *Willowbrook* allowed for multiple individuals to be in a class of one.  Dkt. 29 at 9.  True, but not in the way LBRY suggests.  The Court noted that the number of individuals in a class was immaterial where the class was the group of individuals singled-out based on the same set of facts and circumstances.  Specifically five property owners were all singled out for a more stringent easement because they had all been "involved in the previous, successful lawsuit against the Village, which allegedly created the ill will motivating the excessive easement demand." *Willowbrook,* 528 U.S. at 564 n.*.  LBRY twists the Supreme Court's footnote to suggest—incorrectly—that a class of one can consist of lots of individuals

---

[2] *See also* Dkt. 13 (Answer) at 32 ("the SEC has treated LBRY differently from other similarly situated blockchain companies…."; *id.* at 33 ("The SEC has failed to enforce the same registration requirements against thousands of other similarly situated blockchain companies, including companies that have sold digital assets bearing indicia of investment contracts under the SEC's publicly stated standards…. Intentionally singling out LBRY as a 'class of one'"); Dkt. No. 29 (Opp.) at 8 ("the SEC has failed 'to pursue enforcement actions for registration violations concerning Bitcoin, Ethereum, and thousands of other digital assets' . . . sufficiently pleads treatment.").

2

subjected to enforcement at different times for different reasons.  Not so.  For *Willowbrook* to be analogous, all 42 of the digital asset-companies would have to have been singled out for enforcement because of the same bad motive and from the same set of facts and circumstances.

For LBRY's argument to be correct, the First Circuit has to have misunderstood *Willowbrook* when it decided *Cordi-Allen*, for there is no way to square the holdings of *Cordi-Allen* with LBRY's interpretation of *Willowbrook*.[3]  The reading that squares *Cordi-Allen* and *Willowbrook* is the right one.  Because "a class of one is not a class of many," 494 F.3d at 254, where a government agency pursues enforcement actions (at different times and for different reasons) that impose similar burdens on similarly situated individuals, those individuals have not been singled out for disparate treatment.  This Court should not accept LBRY's invitation to ignore the holding of *Cordi-Allen* and turn *Willowbrook* on its head.

*Second*, LBRY tries to distinguish cases cited by the Commission by arguing that those cases supposedly did not involve any selective treatment compared to similarly situated persons. Dkt. 29 (Opp.) at 9.  LBRY misreads the Commission's cited cases.  In *Cordi-Allen*, the Court points out that three other similarly situated landowners "all have been required" to build in a specified way.  But, contrary to LBRY's description of the case, the Court did not find that *all* of the similarly situated landowners had been subjected to that requirement.  494 F.3d at 254.  Nor did it base its ruling on a requirement that every other similarly situated individual be subjected to the same treatment.  And of course it didn't, for to do so would lead to the nonsensical conclusion that an enforcement agency like the Commission would have to prosecute *every* similarly situated wrongdoer, in exactly the same way, in order to prosecute even one.

---

[3] LBRY's interpretation of *Willowbrook* would effectively render nonsensical the Supreme Court's term "class of one" and swallow it whole.

LBRY misreads *SEC v. Navellier & Assocs., Inc.* as well, when it claims that the ruling depends on a lack of evidence of similarly situated others. The *Navellier* decision cited multiple grounds for denying the selective enforcement defense, including that "[i]t is undisputed that the SEC has initiated enforcement proceedings against numerous similarly situated entities and one individual …. Defendants, therefore, have not demonstrated that the SEC's initiation of proceedings against them … selectively singled them out." 2020 WL 731611 (D. Mass. Feb. 13, 2020). Both *Cordi-Allen* and *Navellier* squarely support the Commission's motion for judgment on the selective enforcement defense.

*Third*, LBRY argues the issue is not ripe for decision on a motion for judgment on the pleadings because the Commission's arguments are "fact-bound." But the controlling fact here is a dispositive admission straight from LBRY's Answer. LBRY has ignored the effect of its admission that 42 other blockchain companies (and 19 with Section 5 counts only) have been the subject of Commission enforcement actions.[4] Read in the light most favorable to LBRY, its own words are not in dispute, and judgment at this stage is appropriate.

Thus, LBRY cannot evade its admission in its Answer that the Commission has imposed similar burdens on similarly situated others and that it does not stand alone (or in a group subjected to the same malicious intent) as a "class of one."

## II. LBRY'S ATTACK ON THE COMMISSION FOR "SELECTIVE OMISSION"

LBRY levels an attack on the Commission for "alter[ing] reality" by focusing this Court on the part of its affirmative defense that involves the class of one, and "selectively omit[ting]" their allegations about the Commission's supposed bad-faith intent "[i]nstead of grappling with"

---

[4] LBRY categorizes these 19 enforcement actions as "only a handful." Dkt. 29 at 11. It is unclear how many enforcement actions LBRY would require before it conceded that the Commission had sued enough others to sue LBRY as well.

them.  Dkt. 29 at 7.  The Commission has not tried to "obscure LBRY's allegations of malice," as LBRY proclaims.  Instead, the Commission has merely focused its motion on the element that LBRY's Answer concedes LBRY cannot prove:  that it has been singled out from others similarly situated for disparate treatment.  *See Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (describing the elements of a selective enforcement claim).  While LBRY Opposition's is replete with allegations of bad faith and malice—all of which it asserts without affidavit or other evidence to support those serious allegations—the "bad faith" element is just not the ground on which the Commission makes its Rule 12(c) motion.[5]  Thus, the Commission's lack of discussion of bad faith shows only its focus on what is relevant to its motion.  LBRY's allegations about one element cannot make up for its admission that it cannot prove another.

### III.  LBRY MISCONSTRUES *ENGQUIST* AND ITS FIRST CIRCUIT PROGENY, AS WELL AS THE COMMISSION'S ARGUMENT HERE

LBRY erroneously claims that the Commission argues that "it is categorically exempt from the Constitution's requirements of equal protection when it comes to enforcement decisions."  Dkt. 29 at 11.  This straw man does not remotely resemble the Commission's argument.  Of course the Commission is subject to the constitutional equal protection requirements.  And *Engquist* says as much:  "an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns."  *Engquist v. Oregon Dept. of Agric.*,

---

[5] LBRY's allegations of bad faith are just its negative spin on a typical investigation.  For example, LBRY complains that "although LBRY provided the requested documentation and readily explained its business and technology, the *SEC continued to hound LBRY*" and in its objection LBRY complains that the Commission "*doggedly*" pursued it.  Answer, ¶23 (emphasis added); Dkt. No. 29, at 12 (same).  By using words like "hound" and "doggedly" (carefully chosen words designed to paint a nefarious spin on reality), LBRY suggests that the Commission was out to get it.  In actuality, the Commission continued to investigate the case so as to make an informed decision, which ultimately led to the Commission (not any particular enforcement attorney) authorizing the case.  Investigations, by their nature, are iterative and often time-consuming processes.

553 U.S. 591, 604 (2008). But what *Engquist* also says, and what the cases that follow it carry forward, is that, in an area of great governmental discretion, one cannot assert that being selected for enforcement equates to being "singled out" from others similarly situated.

For "forms of state action" that "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments .... the rule that people should be 'treated alike, under like circumstances and conditions, is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* at 603. In other words, where the state actor has discretion, selecting one individual for enforcement over similarly situated others does not amount to singling them out for different treatment under the law. Why? Because, "in such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such … officials are entrusted to exercise." *Id.*

One cannot claim that being singled out for enforcement violates equal protection, when the law authorizing that enforcement specifically contemplates that some individuals will be subject to enforcement actions and some will not. That is why the *Engquist* court focuses on the property-related easement regulation in *Willowbrook*. Property regulations are supposed to apply to all properties equally. If a village applies a property regulation to one property and not to the similarly situated others, that could be an equal protection violation. But the principle does not extend to enforcement actions where, by necessity, some will be subject to enforcement actions and some will not. The Commission's authorizing statutes here do not contemplate that the Commission will prosecute *every* violator, which likely would be impossible in most instances. Instead, Congress orders the Commission to use "discretion" in deciding who to sue. *See* 15 U.S.C. § 77t(a) & (b) (authorizing investigations and enforcement actions in the Commission's

discretion); Dkt. 20-1 (Comm'n Memo.) at 6 (discussing Congressional grant of discretion over enforcement decisions to Commission). Within that statutory framework, the Commission's decision to bring enforcement actions against some blockchain companies for its unregistered sales of securities and not to sue others does not amount to "singling out" those companies in violations of their equal protection rights.

LBRY tries to distinguish between the Commission's discretion and the government's discretion in the *Engquist*-interpreting cases in this Circuit cited by the Commission: *Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327 (1st Cir. 2015), and *E. Coast Serv. Indus. Co. v. N.H. State Liquor Comm'n*, 2020 WL 5578332 (D.N.H. Sept. 17, 2020). But LBRY ignores the grant of "discretion" over both investigations and enforcement actions in the Commission's authorizing statutes. LBRY does not address those Commission-related statutes at all. And LBRY fails to articulate a principle distinguishing the Commission's authority to decide who to investigate and who to sue, from the Massachusetts Gaming Commission's decide to whom to grant casino licenses or the NH State Liquor Commission's authority to decide who to inspect and how often. Each agency—the Commission, the Gaming Commission, and the Liquor Commission—was empowered by statute to choose some for enforcement action and not others. And for each agency, class-of-one equal protection claims against them were not allowed because the choice of one/some and not others did not constitute singling out for disparate treatment and so were not equal protection violations.

LBRY also tries to distinguish its affirmative defense by pointing out that they have claimed bad faith/malicious intent. But *Engquist*, *Caesars Mass. Mgmt. Co.*, and *E. Coast Serv. Indus. Co.*, each also involved allegations of bad faith or motive. *See Engquist* 553 U.S. at 596 (holding equal protection claim not valid despite *jury finding* that Engquist had been treated

differently "solely for arbitrary, vindictive, or malicious reasons"); *Caesars Mass. Mgmt. Co.*, 778 F.3d at 335-36 (describing claim by defendant that Gaming Commission treated it differently "for the very purpose of disfavoring it and favoring [another applicant] for the benefit of" an acquaintance of the Commission's chairman); and *E. Coast Serv. Indus. Co.*, 2020 WL 5578332 at *2 (describing allegation that Commission employees "had retaliated against it for making the earlier complaint").

Finally, LBRY's reliance upon the Second Circuit's decision in *Analytical Diagnostics Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) is misplaced because the First Circuit in *Caesars Mass. Mgmt. Co.* specifically rejected the Second Circuit's reasoning in *Analytical Diagnostic Labs*. 778 F.3d at 336 (citing *Analytical Diagnostic Labs* as a "but see" when discussing its decision to extend *Engquist* beyond the public employment context).

## IV.   AMENDMENT OF LBRY'S ANSWER WOULD BE FUTILE GIVEN ITS FACTUAL CONCESSION

In a footnote, LBRY suggests that if the Court grants the Commission's Motion, it should get to amend its Answer. Dkt. 29 at n.2. But LBRY's proposed amendment offers only "additional detailed facts regarding the SEC's misconduct." *Id.* LBRY again fails to understand the deficiency in its selective enforcement defense—that they cannot be found to be singled out as a class of one both because a) they concede that similarly situated others have been similarly burdened; and b) class-of-one defenses do not apply here because of the Commission's investigative and enforcement discretion. LBRY cannot amend its way out of this deficiency, even if it could plead more (unsubstantiated and false) allegations about the Commission's motive in bringing this case. LBRY's proffered amendment would not cure its legal and factual problems, and thus would be futile. The Court should not permit LBRY to amend, because it cannot and will not help them cure its affirmative defense.

## CONCLUSION

For the reasons set forth above and in the Commission's opening brief, the Commission asks the Court to GRANT the Motion, Dkt. No. 20.

Dated:  August 16, 2021

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**
By its Attorneys,
*/s/ Marc Jones*
Marc Jones (Mass Bar No. 645910)
Eric A. Forni (Mass. Bar No. 669685)
Peter B. Moores (Mass Bar No. 658033)
Senior Enforcement Counsel
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-8827 (Forni direct)
fornie@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on August 16, 2021, I caused true and correct copies of the foregoing to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

*/s/ Marc Jones*
Marc Jones