

```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

************************************

SECURITIES & EXCHANGE COMMISSION,
        Plaintiff

vs.                                    Case No. 1:17-cv-11633-DJC

NAVELLIER & ASSOCIATES, INC. ET AL,
        Defendants

************************************


                TRANSCRIPT OF MOTION HEARING
          BEFORE THE HONORABLE MARIANNE B. BOWLER
                 AT BOSTON, MASSACHUSETTS
                     ON MAY 20, 2019


APPEARANCES:

For the Plaintiff:
William J. Donahue, Esquire
Mark J. Jones, Esquire
United States Securities & Exchange Commission
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
617-573-8915

For the Defendants:
Samuel Kornhauser, Esquire
155 Jackson Street, Suite 1807
San Francisco, California 94111
415-981-6281



Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

      --------------------------------------------------------

                      TRANSCRIPTION PLUS
                       1334 ELM STREET
                LEOMINSTER, MASSACHUSETTS 01453
                        (978) 466-9383
                      k.aveyard@comcast.net
```

Case 1:21-cv-00260-BB Document 37-3 Filed 11/05/21 Page 2 of 11
Case 1:17-cv-11633-DJC Document 210 Filed 05/31/19 Page 2 of 34

2

1                    P R O C E E D I N G S

2

3              THE CLERK:  The United States District Court for the

4    District of Massachusetts is now in session, the Honorable

5    Marianne B. Bowler presiding.  Today is May the 20th, 2019, in

6    the case of the SEC versus Navellier & Associates, Inc., Civil

7    Action 17-11633, which will now be heard.

8              Will counsel please identify themselves.

9              MR. DONAHUE:  Good morning, your Honor.  William

10   Donahue for the SEC.

11             THE COURT:  Thank you.

12             MR. JONES:  Good morning, your Honor.  Mark Jones for

13   the SEC.

14             THE COURT:  Thank you very much.

15             MR. KORNHAUSER:  Good morning, your Honor.  Samuel

16   Kornhauser for the Navelliers.

17             THE COURT:  Thank you very much.

18             Well, I know, Mr. Kornhauser, that you were in the air

19   during the night.  I was as well.  I got in at about

20   three o'clock this morning, so --

21             MR. KORNHAUSER:  My condolences.

22             THE COURT:  So we have exactly one hour.  We can go

23   until quarter of eleven.  Unfortunately, I have a meeting with

24   the representatives of the PTO who are here coming from

25   Washington.  We would like to have given you more time in the

1	afternoon.  We had eleven arrests and a takedown this morning,
2	and I have criminal matters evolving as we speak related to
3	this takedown.  So let's go through these as quickly as we can.
4	          So we'll start with 168, the Motion for Protective
5	Order.
6	          MR. JONES:  Just making sure I have the right one,
7	your Honor.  Thank you.
8	          That is the motion that involves the current
9	Enforcement Director of the Securities & Exchange Commission,
10	Stephanie Avakian, and former Commissioner, Michael Piwowar.
11	The Commission contends that these deposition notices are
12	inappropriate.  Most primarily, your Honor, the Morgan Doctrine
13	says that you just can't notice the heads of the agency because
14	you'd like to see what their involvement was without something
15	more.  Mr. Kornhauser's brief doesn't really deal at all with
16	the Morgan Doctrine.  He goes right to deliberative process,
17	which is part of it, but several layers to get through before
18	that.  The Morgan Doctrine, as your Honor knows from the case
19	that you issued back in the '90s, it has to be that that
20	information can't come from any other source.  It has to be
21	crucial to the claim, and that claim part will be important.
22	          Defendants have gotten all of the investigative file;
23	interrogatory responses that I understand that they're not
24	happy about, but that are substantive, and that they haven't
25	moved to compel further answers; and a 30(b)(6) where we sat

```
 1    for -- well, we sat until Mr. Kornhauser had to go and get his
 2    plane at 4:30, and we sat all day answering where the questions
 3    were not privileged.  As your Honor ruled in the February 19th
 4    order, we were, you know, entitled to a certain privilege where
 5    it involved attorney-client privilege or deliberative process.
 6    So for all those -- in all those ways, they can get the facts
 7    surrounding the selective enforcement claim.
 8              They'd like to get access to Ms. Avakian and
 9    Commissioner Piwowar mostly to ask them what they were
10    thinking.  It's very clear in defendant's motion that's what he
11    wants, what were they thinking when they made whatever
12    decisions they made.  He has no specific allegations that
13    either one of them actually acted improperly.  It just says the
14    SEC acted improperly, so it must have been them.
15              There's no facts establishing that, and, in fact,
16    Mr. Kornhauser asserts a lot of facts that have no support.
17    For instance, that each one of them advocated disparate
18    treatment.  He just comes out and asserts that in his brief.
19    There's no evidence of that.  He produces no testimony
20    supporting that or documents supporting that.
21              So, your Honor, on this -- even the cases that are
22    cited by Mr. Kornhauser don't establish what he'd like them to.
23    First of all, he doesn't address the Morgan principle.  The
24    doesn't address the attorney-client principle.  All the cases
25    we're talking about here are not attorney-client cases where
```

1  attorneys, such as Mr. Donahue and I, are advising our attorney
2  superiors with an eye toward presenting a litigation to the
3  Commission for approval.  There's a layer of attorney-client
4  privilege here that is just not addressed at all.
5            Even if you get to the deliberative process, even if,
6  you know, you've already dismissed Morgan, already dismissed
7  the attorney-client privilege, even the deliberative process,
8  which Mr. Kornhauser asserts should just go out the window once
9  you make a set of allegations about selective enforcement, not
10 even showing of misconduct, the deliberative process cases that
11 even he cites don't say what he says.
12           So, for instance, the Bogan versus the City of Boston,
13 the primary First Circuit case in this that I know your
14 Honor --
15           THE COURT:  I'm familiar with.
16           MR. JONES:  Yes, quite, it says that only where it's
17 shown that other persons cannot provide the necessary
18 information do you get these high-level government officials.
19 They have to have first-hand knowledge of the claim, and, your
20 Honor, I want to make the point that a claim is not an
21 affirmative defense.
22           All of the cases, both the cases cited by the
23 Commission and the cases cited by the defendants, involve a
24 claim.  Why is that significant?  Because a claim, there's an
25 answer, there's the possibility of a reply, there's the

Case 1:21-cv-00260-BB Document 37-3 Filed 11/05/21 Page 6 of 11
Case 1:17-cv-11633-DJC Document 210 Filed 05/31/19 Page 6 of 34

6

1  possibility for a Motion to Dismiss or prejudgment on the
2  pleadings.  There's a possibility for an early summary
3  judgment.  None of that is possible when you just have an
4  affirmative defense asserted without really any factual showing
5  having been made either in the answer or as to bad motive in
6  Mr. Kornhauser's briefs to date.
7           You'll actually recall, your Honor, I hope, that when
8  we had the factual showing earlier, Mr. Kornhauser argued
9  vehemently that for Armstrong and those discovery cases, he
10 didn't have to assert bad motive.  But that also showed that he
11 didn't assert a bad motive.  There's no factual information on
12 that before the Court.
13          So for all of the cases where the deliberative process
14 privilege is attacked in Mr. Kornhauser's brief, they all
15 involve (a) a claim, (b) that there's no other way to get the
16 information, and that most of those cases are also about
17 documents and they all involve -- or not all of them, many of
18 them involve a holding that a prima facie case of misconduct
19 has to be shown before you get through the deliberative
20 process.
21          Your Honor, this is -- there's a real -- the
22 Commission is really at risk here.  If in fact a defendant just
23 has to assert a selective enforcement claim to get past all the
24 privileges that the SEC has, the attorney-client privilege and
25 the deliberate process privilege, and get access to its

1   highest-ranking officials, things are going to grind to a halt.
2   Everybody is going to do it.  What defense attorney wouldn't
3   want to just huck in some poorly-pled, not really sensical,
4   affirmative defense on selective enforcement and get access to
5   all that stuff?  All of the cases recognize that there's a
6   balancing here, that there needs to be protective -- that the
7   Court should be protective of the Government, should be
8   particularly protective of these high-ranking officials who, as
9   your Honor wrote, shouldn't be subjected to the discovery every
10  day.  They need to do their jobs.  And when they get done doing
11  their jobs and go on to their private lives again, they need
12  not keep being called back.
13          So, your Honor, there's a lot of cases to talk about.
14  Time is short.  I'm happy to take any questions, or we can turn
15  to Mr. Kornhauser.
16          THE COURT:  Let me go right to Mr. Kornhauser.
17          MR. JONES:  Thank you, your Honor.
18          MR. KORNHAUSER:  Thank you, your Honor.
19          Mr. Jones has this habit of mischaracterizing what I'm
20  saying and mischaracterizing the record.  We made a substantial
21  showing of selective enforcement.  The Government is not immune
22  from prosecution.  There's a selective enforcement defense.
23  We've shown numerous documents from various Wells Fargo, First
24  Trust -- I'm sorry, jet lag.  A number of similarly situated
25  investment advisory firms.

Case 1:21-cv-00260-BB Document 37-3 Filed 11/05/21 Page 8 of 11
Case 1:17-cv-11633-DJC Document 210 Filed 05/31/19 Page 8 of 34

8

```
 1              Ms. Avakian submitted a declaration in this case
 2   conceding that she was involved.  She's the head of the
 3   Enforcement.  She's the one that --
 4              THE COURT:  She says, "I have no first-hand knowledge
 5   of the underlying facts."
 6              MR. KORNHAUSER:  But it's untrue.  We've submitted
 7   exhibits to your Honor where there were negotiations, and she's
 8   the one that wrote back and said we're changing our settlement
 9   and we're going to enforce against you.  She was the one that
10   made that decision.
11              THE COURT:  Well, she may have written a letter, but
12   that doesn't mean she's the one who made the decision.
13              MR. KORNHAUSER:  Well, your Honor, that's part of what
14   we're trying to find out.  We're entitled to do that.  You just
15   can't eliminate selective enforcement, as much as the SEC wants
16   to do that, and the caselaw is clear.  If there's a bad action
17   or Government misconduct, there's a Government misconduct
18   exception, your Honor.  They can't just go off and --
19              THE COURT:  No, this Court is content that Morgan
20   controls and specifically based on two declarations before me,
21   Docket Entries 169-2 and 169-3, both stating, "I have no
22   first-hand knowledge of the underlying facts."
23              MR. KORNHAUSER:  But, your Honor, number one, that's
24   just absolutely not true.  We submitted exhibits to your Honor
25   where she was the one that was involved in the decision to
```

Case 1:21-cv-00260-RP   Document 37-2   Filed 11/05/21   Page 9 of 11
Case 1:17-cv-11633-DJC   Document 210   Filed 05/31/19   Page 9 of 34

9

1   proceed with enforcement.  She was the one that was involved in
2   reneging on a settlement that had already been agreed to and
3   enacted.  It's our contention that they're acting with bad
4   motives in order to punish Navellier.  They weren't even
5   bringing a claim against Mr. Navellier.  They were willing to
6   settle his case for $714,000.  There was a settlement.  Then
7   when it came --
8           THE COURT:  She states, "The only information I
9   received about this matter came from the division staff
10  attorneys assigned to the investigation."  I'm content, that's
11  my ruling and it stands.
12          Moving on, Docket Entry 178, please, Motion to Quash
13  the Deposition of John Ranft.
14          MR. KORNHAUSER:  Oh, I'm sorry, your Honor.  John
15  Ranft?
16          THE COURT:  Yes.
17          MR. DONAHUE:  Yes, that's correct.
18          MR. KORNHAUSER:  Same deal, your Honor.  I guess as
19  your Honor is aware, it's not proportional.  Mr. Ranft has
20  already been deposed in connection with this case.  They took
21  his deposition and, quote, they don't treat that as a
22  deposition, but it was an investigative deposition.  They took
23  it back in 2016.  They've taken the depositions at least of 13
24  other employees, sometimes multiple times.  We have no idea
25  what more they could be seeking.

Case 1:21-cv-00260-BR Document 87-2 Filed 11/05/21 Page 10 of 11
Case 1:17-cv-11633-DJC Document 210 Filed 05/31/19 Page 10 of 34

10

1          Your Honor has already ruled that discovery has to be
2     proportional. They don't indicate what they want to take
3     Mr. Ranft's deposition for. They just say we want to take it.
4     They disregard the fact that they've already taken his
5     deposition. Mr. Navellier has been deposed twice. Arjen
6     Kuyper has been deposed twice. They've deposed everybody at
7     Navellier and it's just harassing, it's burdensome, it's
8     duplicative, and the advisory notes made clear that if
9     discovery is duplicative, the Court has the power sua sponte to
10    stop it. The frequency and extent of discovery is grounds for
11    quashing a deposition.
12         They don't indicate -- every aspect of this case, at
13    least from Navellier's perspective, what it is that Navellier &
14    Associates supposedly did, they've gone into that in
15    excruciating detail with every -- they've deposed every
16    employee of Navellier. They had a fingerprint on this,
17    including Mr. Ranft. So to do it again, especially when we've
18    been denied access to crucial witnesses like Ms. Avakian and
19    Piwowar -- well, we haven't gotten --
20         THE COURT: Alright. Let me hear from the Government.
21         MR. DONAHUE: Thank you, your Honor.
22         THE COURT: Mr. Donahue.
23         MR. DONAHUE: I'll just be brief on this.
24         Mr. Kornhauser continues to combine our investigative
25    steps with civil discovery in this matter. We're still under

Case 1:21-cv-00260-PB   Document 87-3   Filed 11/05/21   Page 11 of 11
Case 1:17-cv-11633-DJC   Document 210   Filed 05/31/19   Page 34 of 34

34

C E R T I F I C A T I O N

     I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 33 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

May 31, 2019

Date