UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SECURITIES AND EXCHANGE                       :
COMMISSION,
                                              :
              Plaintiff,
                                              :
      -against-                                       Civil Action No. 1:21-cv-00260-PB
                                              :
LBRY, INC.,
                                              :
              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**DEFENDANT LBRY, INC.'S OBJECTION TO PLAINTIFF'S MOTION TO QUASH
DEPOSITION SUBPOENA ISSUED TO FORMER DIVISION OF
<u>CORPORATION FINANCE DIRECTOR WILLIAM HINMAN</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................5

I.   Former Director Hinman Is Not and Was Not a High-Ranking Official and
     Should Not be Permitted to Avoid a Deposition on That Basis ..........................................6

II.  Mr. Hinman Has Unique Personal Knowledge Relevant to the Claims and
     Defenses in This Case ....................................................................................................7

     A.   Mr. Hinman's Speech Is Relevant to the *Howey* Analysis and LBRY's
          Fair Notice Defense ................................................................................................8

     B.   The Court Must Consider All Relevant Facts in Assessing LBRY's
          As-Applied Fair Notice Defense ............................................................................10

     C.   The SEC Cannot Meaningfully Distinguish the *Ripple* Court's
          Decision Denying Its Motion to Quash Mr. Hinman's Deposition ......................12

III. The SEC's Privilege Concerns Are Premature And Not a Basis to Quash the
     Deposition Subpoena ..................................................................................................13

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bogan v. City of Bos.*,
    489 F.3d 417 (1st Cir. 2007).............................................................................6, 8

*Delaney v. Town of Abington*,
    890 F.3d 1 (1st Cir. 2018)....................................................................................14

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2016)....................................................................................11

*EEOC v. Freudenberg-NOK Gen. P'ship*,
    No. CIV. 07-CV-406-JD, 2009 WL 909571 (D.N.H. Apr. 3, 2009).........................5

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)...........................................................................................10

*Frese v. MacDonald*,
    512 F. Supp. 3d 273 (D.N.H. 2021).....................................................................11

*Gen. Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995).............................................................................11

*Horizons Titanium Corp. v. Norton Co.*,
    290 F.2d 421 (1st Cir. 1961).......................................................................1, 5, 6

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997)...............................................................................6

*Moriah v. Bank of China Ltd.*,
    72 F. Supp. 3d 437 (S.D.N.Y. 2014).......................................................................7

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)...........................................................................................15

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    2018 WL 4054856 (S.D.N.Y. Aug. 24, 2018).......................................................14

*Remexcel Managerial Consultants, Inc. v. Arlequin*,
    583 F.3d 45 (1st Cir. 2009)....................................................................................2

*SEC v. Comm. on Ways & Means*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015)..............................................................6, 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*SEC v. Kik Interactive Inc.*,
  492 F. Supp. 3d 169 (S.D.N.Y. 2020)....................................................................12

*SEC v. Kramer*,
  778 F. Supp. 2d 1320 (M.D. Fla. 2011)................................................................14

*SEC v. Lemelson*,
  334 F.R.D. 359 (D. Mass. 2020).............................................................................5

*SEC v. Navellier & Assocs., Inc.*,
  No. CV 17-11633-DJC, 2019 WL 688164 (D. Mass. Feb. 19, 2019) ....................14

*SEC v. Ripple Labs, Inc.*,
  No. 1:20-cv-10832 (S.D.N.Y. Dec. 20, 2020) ......................................11, 12, 13, 15

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946)..........................................................................1, 2, 8, 13

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)....................................................................................15

*Thomas v. Cate*,
  715 F. Supp. 2d 1012 (E.D. Cal. 2010)...................................................................7

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021)............................................................................................15

*United States v. Craigue*,
  No. 19-CR-142-LM, 2020 WL 1027818 (D.N.H. Mar. 3, 2020) ....................10, 11

*United States v. Morgan*,
  313 U.S. 409 (1941)..........................................................................................6, 7

*United States v. Wal-Mart Stores, Inc.*,
  No. CIV.A. PJM-01-1521, 2002 WL 562301 (D. Md. Mar. 29, 2002).....................8

*United States v. Zhen Zhou Wu*,
  711 F.3d 1 (1st Cir. 2013)......................................................................................10

*Upton v. SEC*,
  75 F.3d 92 (2d Cir. 1996) ......................................................................................11

154716390.2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Victory v. Pataki*,
   No. 02-CV-0031(SR), 2008 WL 4500202 (W.D.N.Y. Sept. 30, 2008) ...................................7

STATUTES

15 U.S.C. § 77b(a)(1).................................................................................................................10

OTHER AUTHORITIES

BankXRP, *SEC William Hinman Issued New Remarks on Whether Crypto Assets
   are Securities*, YouTube (June 14, 2018) .................................................................................1

Hester M. Peirce & Elad L. Roisman, Public Statement: In the Matter of
   Coinschedule (July 14, 2021) ..............................................................................................4, 5

Jay Clayton, Statement on Cryptocurrencies and Initial Coin Offerings (Dec. 11,
   2017) .........................................................................................................................................3

Paul Kiernan, *Republican SEC Commissioner Criticizes Agency's Approach to
   Crypto*, The Wall Street Journal (Oct. 20, 2021)......................................................................4

SEC Organizational Chart....................................................................................................6, 7

*Understanding the SEC's Guidance on Digital Tokens:  The Hinman Token
   Standard*, Blockchain Ass'n .....................................................................................................1

154716390.2

NOW COMES Defendant LBRY, Inc. ("LBRY"), by and through counsel, to object to Plaintiff Securities and Exchange Commission's ("SEC") Motion to Quash Deposition Subpoena Issued to Former Division of Corporation Finance Director William Hinman for the reasons set forth below.

## INTRODUCTION

The SEC fails to meet its "particularly heavy burden . . . to make a substantial showing" in support of its motion to quash the deposition of William Hinman, the former Director of the SEC's Division of Corporation Finance and the author of one of the most seminal pronouncements by any SEC official concerning the agency's interpretation of digital assets. *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961). Indeed, Mr. Hinman himself acknowledged the noteworthiness of his speech,[1] which has been viewed by many as implementing a new standard for analyzing the status of digital assets separate and apart from the test articulated in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).[2] Contrary to the SEC's erroneous suggestion that Mr. Hinman does not possess any discoverable information, it is clear that he does in fact have personal knowledge concerning issues that are central to the claims and defenses in this action, including, among other things, the perception in the marketplace as to the status of digital assets prior to and following his speech; the SEC's application of the *Howey* test to Ether, Bitcoin, and other digital assets; the SEC's approach and response to market

---

[1] *See* BankXRP, *SEC William Hinman Issued New Remarks on Whether Crypto Assets are Securities*, YouTube (June 14, 2018), *available at* https://www.youtube.com/watch?v=HJyRATEXpMQ.

[2] *See, e.g.*, *Understanding the SEC's Guidance on Digital Tokens: The Hinman Token Standard*, Blockchain Ass'n (last accessed Nov. 18, 2021) ("Token projects can learn from the analysis Hinman applied to bitcoin and ether, with the key learning being quite simple: *tokens from a network at least as decentralized as the Bitcoin and Ethereum networks were on June 14, 2018 are not securities*.") (emphasis in original), *available at* https://theblockchainassociation.org/understanding-the-secs-guidance-on-digital-tokens-the-hinman-token-standard/.

participants' request for guidance concerning the status of digital assets; and the status of the SEC's adoption or acceptance of the positions articulated in Mr. Hinman's speech.  Given the centrality of Mr. Hinman's speech and his communications with marketplace participants to the market's understanding of the SEC's regulatory guidance and assessment of crypto assets—a relevant inquiry to both the *Howey* analysis that is central to the SEC's action under Section 5 of the Securities Act of 1933 ("Securities Act"), as well as LBRY's *as applied* fair notice affirmative defense—Mr. Hinman's testimony is clearly discoverable under the "broad" discovery to which LBRY is entitled under the Federal Rules.  *See Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009).  The Court should deny the SEC's overreaching request to block Mr. Hinman's testimony on these, and other, critical topics.

## **BACKGROUND**

The "LBRY Protocol" is a decentralized, blockchain-enabled network that allows any individual to publish digital content (*e.g.*, a video or transcript), and any other individual to explore and purchase published digital content from content providers using LBRY's digital token, LBRY Credits ("LBC").  LBRY Answer ¶ 2.  LBRY's launch of the LBRY Protocol in July 2016 did not involve the use of an initial coin offering ("ICO"); rather, LBRY used traditional early funding from investors to develop the LBRY Protocol and only first made LBC available to the public at the time it released the fully functional LBRY Protocol.  LBRY Answer ¶ 4.

From the time Bitcoin launched in 2009 until July 2017, the SEC did not offer any meaningful statements or guidance concerning the application of the federal securities laws to digital assets.  *Id.* ¶¶ 15-17.  Indeed, for years, the SEC's few statements concerning crypto assets did not even address the securities-analysis question, and rather focused on the potential

risk of fraudulent investment schemes to investors.  *Id.* ¶¶ 15-16.  It was not until July 25, 2017—a year *after* LBRY launched its Protocol—that the SEC first issued meaningful guidance concerning the application of the federal securities laws to tokens when it released the "DAO Report," which was issued in the context of an ICO and advised that the "facts and circumstances" of an individual ICO would determine whether the virtual coin at issue constituted a security.  *Id.* ¶ 17.  Subsequent SEC statements reiterated the agency's focus on ICOs.  *See id.* ¶¶ 17-19.  For example, in December 2017, then-Chairman Jay Clayton stated that "companies and individuals increasingly have been using *initial coin offerings* to raise capital for their businesses and projects" and that "[b]y and large, the structures of *initial coin offerings* that I have seen promoted involve the offer and sale of securities and directly implicate the securities registration requirements and other investor protection provisions of our federal securities laws." Jay Clayton, Statement on Cryptocurrencies and Initial Coin Offerings (Dec. 11, 2017) (emphasis added), *available at* https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11.

Mr. Hinman's June 14, 2018 speech, entitled "Digital Asset Transactions: When Howey Met Gary (Plastic)," again emphasized the SEC's focus on ICOs.  *See* Dixon Decl., Ex. A (Director William Hinman, Division of Corporation Finance, *Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018) ("Hinman Speech")). The speech emphasized that tokens may constitute securities when companies seek "to raise money to develop networks" in an ICO, and that "conduct[ing] the initial funding through a . . . debt offering and, once the network is up and running, distribut[ing] or offer[ing] blockchain-based tokens or coins to participants who need the functionality the network and the digital assets offer" allows the tokens "to be structured and offered in a way

where it is evident that purchasers are not making an investment in the development of the enterprise." *Id.* at 2.  This is exactly what LBRY did:  It did not conduct an ICO, but rather raised money from venture capital firms to develop the LBRY Protocol, which was fully functional and decentralized at the time of its launch and release of LBCs.  Answer ¶ 19.

Notwithstanding the SEC's singular focus on ICOs, as well as its lack of clear, articulable guidance to blockchain companies such as LBRY who publicly released its digital tokens for consumptive use at the time it launched its Protocol, the SEC nevertheless brings this action against LBRY for an alleged violation of Section 5 of the Securities Act.  This is so notwithstanding that the SEC's own Commissioners have criticized the agency's lack of guidance for digital assets as recently as last month.  *See* Paul Kiernan, *Republican SEC Commissioner Criticizes Agency's Approach to Crypto*, The Wall Street Journal (Oct. 20, 2021) ("[Commissioner Hester M.] Peirce also echoed criticism from crypto investors and some Republican lawmakers of the SEC's refusal to provide clearer guidance on what sorts of cryptocurrencies might fall outside its remit.  Ms. Peirce suggested the agency's stance is motivated by an interest in expanding its own regulatory purview."), *available at* https://www.wsj.com/articles/republican-sec-commissioner-criticizes-agencys-approach-to-crypto-11634763478.  Moreover, in a statement dated July 14, 2021, two of the five SEC Commissioners stated that there is a "decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading."  Hester M. Peirce & Elad L. Roisman, Public Statement: In the Matter of Coinschedule (July 14, 2021), *available at* https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule.  The Commissioners criticized the SEC's approach of "[p]roviding guidance piecemeal through enforcement actions,"

observed that "the only certainty we see is that people have questions about how to comply with the applicable laws and regulations" and noted that "confusion persists in the marketplace." *Id.*

LBRY denies that its sales of LBC were securities and believes the SEC will fail to meet its burden at trial. In addition, in light of the SEC's failure to articulate clear guidance to companies like LBRY—who released digital tokens for consumptive use only upon launch of its protocol—LBRY has asserted the affirmative defense that it lacked fair notice that its actions violated the law.[3] As explained further below, Mr. Hinman's testimony is essential because it would uniquely illuminate these two pivotal issues in this case.

## ARGUMENT

The burden on a party seeking to quash a deposition is "particularly heavy," especially where, as here, the relief is sought "before the deposition even commences." *Horizons Titanium Corp.*, 290 F.2d at 425 (citation omitted). In light of this heavy burden, which requires a "substantial showing," courts are "extremely hesitant to prohibit the taking of a discovery deposition, and it is very unusual for a court to prohibit the taking of a deposition altogether." *SEC v. Lemelson*, 334 F.R.D. 359, 361 (D. Mass. 2020) (internal quotation marks omitted) (denying SEC's motion for protective order to prevent deposition); *EEOC v. Freudenberg-NOK Gen. P'ship*, No. CIV. 07-CV-406-JD, 2009 WL 909571, at *3 (D.N.H. Apr. 3, 2009) (finding that it is "very unusual for a court to prohibit the taking of a deposition altogether") (internal quotation marks omitted). The SEC attempts to preclude LBRY from taking Mr. Hinman's deposition "altogether," but—as another District Court in the Southern District of New York addressing the same argument that the SEC puts forth here has already found—in light of the

---

[3] Although the SEC attempts to challenge the merits of the affirmative defense in various footnotes in its motion, the SEC has not moved to strike or otherwise dismiss the defense and it continues to remain an active issue in this case, concerning which LBRY is entitled to seek discovery and gather evidence.

clear relevance of Mr. Hinman's testimony to the claims and defenses in this action, it cannot meet its "particularly heavy burden." *Horizons Titanium Corp.*, 290 F.2d at 425.

## I.   FORMER DIRECTOR HINMAN IS NOT AND WAS NOT A HIGH-RANKING OFFICIAL AND SHOULD NOT BE PERMITTED TO AVOID A DEPOSITION ON THAT BASIS

From 2017 to 2020, Mr. Hinman was the director of the Division of Corporation Finance, which is one of six divisions reporting to the SEC's Chairman. *See* SEC Organizational Chart, *available at* https://www.sec.gov/about/orgtext.htm (last accessed Nov. 18, 2021). The SEC asserts that Mr. Hinman is therefore "protected from being deposed" as a senior government official under *United States v. Morgan*, 313 U.S. 409 (1941), in which the Supreme Court disapproved of the lower court's order requiring that the U.S. Secretary of Agriculture sit for a deposition. *Id.* at 421-22. "Relying on *Morgan*, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007). But this limitation is not absolute. Depositions of high-ranking officials may be permitted where the official has firsthand knowledge of relevant facts. *Id.*

The principle articulated in *Morgan* is a "form of executive privilege," *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997), and thus has been used sparingly to shield only select top government officials from depositions "who are at the apex of their organization." *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015). Mr. Hinman was not the Chair or Commissioner of the SEC, nor was he the head of a cabinet department or other government agency. He was the head of just one of the SEC's divisions and therefore was not at the "apex" of that agency. At the agency, he was below the Chairman and all four other Commissioners. According to the SEC's own organizational chart, he was similarly situated not

just to the five other division directors but also to a litany of 25 other offices reporting to the Office of the Chairman, including the Chief Accountant, the General Counsel, and the heads of offices such as the Offices of Investor Education and Advocacy, Legislative and Intergovernmental Affairs, Municipal Securities, and Public Affairs. *See* SEC Organizational Chart, *available at* https://www.sec.gov/about/orgtext.htm (last accessed Nov. 18, 2021).

In addition, courts have recognized that the concerns over potentially interfering in government duties are diminished when the officials at issue—like Mr. Hinman—are no longer in office. *See Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) ("Although the doctrine applies to former officials, the fact that they are not current high-ranking officials is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010) ("The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials, although in the case of former high-ranking government officials, one important rationale for the rule is absent."); *Victory v. Pataki*, No. 02-CV-0031(SR), 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) ("There can be no question, however, that a deposition of a former official can no longer pose the risk of interfering with governmental duties."). Based on the fact that Mr. Hinman is no longer a government official, coupled with Mr. Hinman's mid-level seniority within the SEC, this Court should conclude that Mr. Hinman was not a high-ranking official and should not be exempt from providing testimony in the ordinary course of discovery.

## II.     MR. HINMAN HAS UNIQUE PERSONAL KNOWLEDGE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE

Even if this Court concludes that Mr. Hinman was a high-ranking official within the meaning of *Morgan*, the Court should still deny the SEC's motion to quash because, as the

author of one of the most seminal speeches concerning the SEC's interpretation of the *Howey*

test as applied to digital assets, he has "first-hand knowledge related to the claim being litigated"

and "other persons cannot provide the necessary information." *Bogan*, 489 F.3d at 423; *see also*

*United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *3 (D.

Md. Mar. 29, 2002) (former official may still be deposed upon showing "the personal

involvement of the former official in a material way").

### A.   Mr. Hinman's Speech Is Relevant to the *Howey* Analysis and LBRY's Fair Notice Defense

Mr. Hinman's June 2018 speech focused—for the first time by any high-ranking official

at the SEC–"on the application of the federal securities laws to digital asset transactions," the

central and ultimate issue underlying the SEC's Section 5 claim against LBRY.  Dixon Decl.,

Ex. A, at 1 (Hinman Speech).  In addition to analyzing tokens issued pursuant to ICOs under the

*Howey* test, Mr. Hinman explained that "[i]f the network on which the token or coin is to

function is sufficiently decentralized—where purchasers would no longer reasonably expect a

person or group to carry out essential managerial or entrepreneurial efforts—the assets may not

represent an investment contract." *Id.* at 3.  As to Bitcoin, for example, Mr. Hinman stated that

"[t]he network on which Bitcoin functions is operational and appears to have been decentralized

for some time, perhaps from inception.  Applying the disclosure regime of the federal securities

laws to the offer and resale of Bitcoin would seem to add little value." *Id.*  Mr. Hinman even

stated that sales of another prominent digital asset—Ether—were not securities given his

understanding of Ether's "present state" and "the Ethereum network and its decentralized

structure." *Id.*  Mr. Hinman made this determination despite "the fundraising that accompanied

the creation of ether." *Id.*  Because Mr. Hinman's groundbreaking speech and his

communications with market participants shaped the overall blockchain industry's understanding

of the SEC's regulation and assessment of digital assets, Mr. Hinman can offer unique testimony
essential to both the ultimate analysis of whether sales of LBC were "investment contracts"
under the securities laws and, if so whether LBRY had fair notice of the law as applied to sales
of LBC.  Accordingly, LBRY seeks to depose Mr. Hinman not about Mr. Hinman's specific
knowledge of LBC or this specific investigation or litigation, but about Mr. Hinman's first-hand
knowledge about the facts and circumstances surrounding his speech to the market as a whole.
These topics would include, among other issues:

- ***The circumstances and rationale for the speech***.  Mr. Hinman delivered his
  speech while numerous industry participants were grappling with the application
  of the federal securities laws to digital assets.  As explained above, the SEC first
  attempted to explain its thinking about digital assets in the DAO Report in July
  2017, almost a year before Mr. Hinman delivered his speech.  Then, the year
  following Mr. Hinman's speech, the SEC issued a 38-factor test in 2019 regarding
  regulation of digital assets, the SEC's "Framework for 'Investment Contract,'"
  which is no real framework at all but more of a Jackson Pollock painting that
  "splash[es] lots of factors on the canvas without any clear message."  Hester
  Peirce, SEC Commissioner, "How We Howey" (May 9, 2019), *available at*
  https://www.sec.gov/news/speech/peirce-how-we-howey-050919.  How Mr.
  Hinman's speech fits into the SEC's struggle to develop meaningful regulatory
  guidance is plainly relevant to this case.

- ***Communications with third parties in the blockchain industry***.  LBRY would
  also seek testimony about the circumstances that prompted the speech, including
  why there was a need to make a statement to market participants about the
  treatment of digital assets under the federal securities laws in the first place,
  including conversations with third-party market participants concerning their
  expectations and confusion about the appropriate application of the law.  Indeed,
  Mr. Hinman encouraged market participants to speak to him, stating that "[w]e
  are happy to help promoters and their counsel work through these issues."  Dixon
  Decl., Ex. A, at 3 (Hinman Speech).

- ***Whether Mr. Hinman's speech in fact represented official agency guidance***.
  LBRY would also seek testimony essential to determining the status of the SEC's
  adoption or acceptance of the positions articulated in Mr. Hinman's speech.
  While the SEC denies that any weight should be given to Mr. Hinman's speech
  given that it contained a disclaimer that it represented only his personal belief and
  not the views of the agency, the SEC has suggested through its actions elsewhere
  that the speech did indeed represent official views.  For example, in 2019, then-
  Chairman Clayton pointed to the Hinman speech in a letter to Congress to show

that "the Commission has been transparent with the criteria used to determine whether a digital asset is offered or sold as an investment contract."  Dixon Decl., Ex. B, at 1 (Ltr. from Jay Clayton to Hon. Ted Budd (Mar. 7, 2019)).  Among other things, LBRY should be permitted to take Mr. Hinman's testimony regarding the disputed status of his 2018 speech.

For these reasons, it is essential that LBRY be allowed to depose Mr. Hinman about one of the key statements from an SEC official made in the context of an industry-wide discussion about market participants' expectations relating to digital assets and their regulatory status.

**B.    The Court Must Consider All Relevant Facts in Assessing LBRY's As-Applied Fair Notice Defense**

The SEC further seeks to dodge Mr. Hinman's deposition by insisting that nothing Mr. Hinman could say could even possibly be relevant based on the argument that a "void-for-vagueness" defense is "objective" and cannot be based on "undisclosed information from Director Hinman's mind."  SEC Mot. to Quash at 9.  In making this argument, the SEC misrepresents LBRY's defense:  LBRY's fair notice defense is not a *facial* challenge to any law which, according to the SEC, requires solely an objective analysis based on the language of the statute itself.  Instead, LBRY's defense is that the phrase "investment contract" within the definition of "security" under the Securities Act, 15 U.S.C. § 77b(a)(1), *as applied to LBC* is unconstitutionally vague.  *See* Answer, Dkt. No. 13, at 34 (Fourth Defense).  This defense "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  An as-applied fair notice defense like LBRY's requires courts to assess "whether a statute is vague as applied to the particular facts at issue."  *United States v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013); *United States v. Craigue*, No. 19-CR-142-LM, 2020 WL 1027818, at *3 (D.N.H. Mar. 3, 2020).

The First Circuit has made clear that as-applied vagueness challenges like LBRY's require a factual determination based on the particular facts and circumstances at issue. *See id.*; *Draper v. Healey,* 827 F.3d 1, 3 (1st Cir. 2016).  Thus, contrary to the SEC's suggestion that LBRY's vagueness defense requires solely an objective determination, LBRY is permitted to conduct discovery in connection with its *as applied* challenge, which cannot be determined without testimony from an SEC official tasked with shaping, applying and communicating the SEC's policies concerning crypto assets.[4]

Accordingly, LBRY is entitled to discovery in connection with its fair notice defense, including whether "substantial uncertainty" about the securities law's application *to LBC* deprived LBRY and other market participants of fair notice of the law.  *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996); *see also Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1332-34 (D.C. Cir. 1995), *as corrected* (June 19, 1995) (holding that "where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished," and that "it is unlikely that regulations provide adequate notice when different divisions of the enforcing agency disagree about their meaning").  LBRY would seek testimony from Mr. Hinman as to the "nature and effect of [his] 2018 speech" in connection with the market-wide debate and confusion over the application of the federal securities laws to digital assets, which was the very rationale underlying the *Ripple* court's ruling denying the SEC's motion to quash a similar

---

[4] The SEC erroneously cites to *Frese v. MacDonald*, 512 F. Supp. 3d 273 (D.N.H. 2021)—a case that is currently on appeal before the First Circuit—in support of its argument that courts should stringently consider only the judicial construction of a statute.  The *Frese* court's suggestion that the consideration of a void for vagueness claim concerns only an objective analysis, however, was in the context of its evaluation of a facial challenge to a statute.  *Id.* at 287-96.  In fact, all of the cases cited by the SEC in its motion to quash holding that a vagueness analysis is an entirely objective analysis are in the context of a facial challenge.

deposition subpoena to Mr. Hinman.[5]  Dixon Decl., Ex. C, at 47:10-12 (Tr. of July 15, 2021 Hr'g

on Mot. to Quash).  This Court is entitled to no less deference than the *Ripple* court.

>    **C.     The SEC Cannot Meaningfully Distinguish the *Ripple* Court's Decision
>            Denying Its Motion to Quash Mr. Hinman's Deposition**

LBRY's effort to depose Mr. Hinman is not unprecedented.  In another pending SEC

enforcement action alleging violations of Section 5 of the Securities Act, *SEC v. Ripple Labs,

Inc.*, No. 1:20-cv-10832 (S.D.N.Y. Dec. 20, 2020), the U.S. District Court for the Southern

District of New York rejected the SEC's motion to quash the deposition of Mr. Hinman.  In

denying the SEC's motion to quash, which raised substantially similar arguments to those that

the SEC makes here, the Court held that the deposition of Mr. Hinman was warranted in light of

"the nature and effect of [his] 2018 speech," as well as the "unique" nature of the case, which

involves "significant policy decisions in our markets" and significant "public[] interest."  Dixon

Decl., Ex. C, at 40:3-8, 47:10-12.  Moreover, as the *Ripple* case—like this action—is not a "run-

of-the-mill SEC enforcement case," and rather involves significant issues of first impression, the

Court noted that authorizing the deposition would not "open the floodgates and serve as a basis

for any defendant in an SEC enforcement action to seek the depositions of heads of divisions."

*Id.* at 39:22-40:3.

The SEC attempts to distinguish the holding in *Ripple* based on the fact that the SEC sued

individuals in that case for aiding and abetting Ripple's alleged securities violations.  Although

the Court's ruling permitting Ripple's deposition of Mr. Hinman was partially based on the

---

[5] The SEC's reliance on the Court's holding in *SEC v. Kik Interactive*, is misplaced and unavailing.  The tokens at issue in *Kik* were issued pursuant to an ICO, *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 175 (S.D.N.Y. 2020) (describing Kik's "public sale of Kin" to "approximately 10,000 purchasers"), thus fitting squarely within the guidance that the SEC has actually issued in connection with crypto assets.  Here, on the other hand, LBRY did not conduct an ICO and rather issued its tokens in connection with the launch of its already-developed protocol.  Thus, unlike the factual scenario in *Kik* concerning an ICO, the SEC has never set forth clear, articulable guidance concerning LBCs and their status under the securities laws.

individual defendants' argument that his testimony was relevant to their "specific state of mind," that was not the sole basis for the ruling.  To the contrary, the deposition subpoena at issue in *Ripple* was issued by Ripple itself.  Dixon Decl., Ex. D (Ripple Subpoena to Mr. Hinman dated May 26, 2021)   Although the individual defendants apparently made arguments in their meet and confer discussions with the SEC concerning the relevance of Mr. Hinman's testimony to their specific defense of the aiding and abetting claim, *see* SEC Mot. to Quash, Ex. E, Dkt. No. 37-5 (June 11, 2021 Ltr. from Counsel for Ripple and Individual Defendants to SEC), the briefing in response to the SEC's motion to quash was submitted on behalf of *all* defendants and argued that—in addition to the relevance to the individual defendants' defense—Mr. Hinman's testimony was also relevant to "the Court's eventual analysis with respect to the *Howey* factors" and "the fair notice defense that Ripple is raising."  *See* Dixon Decl., Ex. E (July 1, 2021 Ltr. from Counsel for Ripple and Individual Defendants to Court, at 5).  Nothing in the Court's holding in *Ripple* suggests that it was based solely on the existence of individual defendants in that case and, indeed, it appears that counsel to *Ripple*—not the individual defendants— conducted the deposition of Mr. Hinman.  *See* Dixon Decl., Ex. F (Excerpts of Hinman Depo. Tr.), at 60, 118, 159; *see also* Ex. C (Tr. of July 15, 2021 Hr'g on Mot. to Quash), at 2, 3 (identifying Mr. Figel as counsel to Ripple).  The SEC's attempt to deny LBRY the opportunity to develop facts relating to central issues in this action falls short, just as it did in *Ripple*.

## III.   THE SEC'S PRIVILEGE CONCERNS ARE PREMATURE AND NOT A BASIS TO QUASH THE DEPOSITION SUBPOENA

The SEC improperly attempts to preclude the deposition of Mr. Hinman altogether based on its premature and conclusory argument that such a deposition would "probe the mental processes and strategies of a top Commission official, which are privileged."  SEC Mot. to Quash at 13.  The burden to demonstrate that a privilege applies "rests with the party resisting

discovery," and the SEC cannot meet that burden here—before a deposition has taken place and LBRY has even propounded any questions of Mr. Hinman. *Delaney v. Town of Abington*, 890 F.3d 1, 12 (1st Cir. 2018). The SEC's argument that LBRY's questions may touch on issues protected by "the attorney-client privilege and/or the deliberative process privilege" is not a basis to quash the deposition subpoena. SEC Mot. to Quash at 13. Courts do not quash subpoenas merely because the examination may implicate potentially privileged information or conversations. Rather, the appropriate process is to permit the deposition to go forward and to allow counsel to the SEC to attend the deposition and "lodge objections and give instructions to the deponent as to work product and other privileged matters at the deposition." *SEC v. Navellier & Assocs., Inc.*, No. CV 17-11633-DJC, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019). But allowing the SEC to "assert a blanket claim of privilege" before a deposition even begins "creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011); *Pirnik v. Fiat Chrysler Autos., N.V.*, 2018 WL 4054856, at *2 (S.D.N.Y. Aug. 24, 2018) (government may protect privilege by "allowing a lawyer from the Government to attend the deposition to object to particular questions on privilege grounds").

Moreover, whether the deliberative process privilege should even apply to protect communications concerning Mr. Hinman's 2018 speech is in dispute and, in fact, the SEC's position concerning the application of the privilege is in contradiction with its position as to the status of the speech. While the SEC insists on the one hand that Mr. Hinman did not speak on the agency's behalf and was expressing only his personal views in his speech, it argues on the other hand that the deliberative process privilege should shield Mr. Hinman's testimony

concerning internal discussions about the speech.  The SEC cannot have it both ways:  If the speech was not an official statement of policy by the SEC, then the communications relating to it cannot be privileged.  *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)) (deliberative process privilege protects the "process by which governmental decisions and policies are formulated"); *cf. Comm. on Ways & Means*, 161 F. Supp. 3d at 252 (authorizing a deposition where there was "no evidence . . . that the SEC intends to question [the official] about anyone's decision-making process").  Moreover, the SEC's attempt to resist the deposition of Mr. Hinman based on a blanket assertion of deliberative process privilege is unavailing and inappropriate.  The deliberative process privilege is a "qualified one" and "not absolute," and the application of the privilege is thus clearly within the court's discretion. *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995).  The SEC cannot simply shield the deposition of a witness with highly relevant personal knowledge based on a conclusory and premature blanket claim of deliberative process privilege; rather, the SEC may—like any civil litigant—raise the privilege at the deposition, and the appropriateness of the SEC's invocation of the privilege can be decided by this Court based on a full record.[6]

## **CONCLUSION**

For the foregoing reasons, the Court should deny the SEC's Motion to Quash.

---

[6] Notably, rather than wholesale preclude Ripple from being able to depose Mr. Hinman, after rejecting the SEC's motion to quash, the Court in *Ripple* directed the parties to meet and confer as to the scope of the deposition prior to it taking place so as to resolve any privilege issues in advance of the deposition in an effort to avoid Mr. Hinman having to sit for testimony twice.  *See* Dixon Decl., Ex. C, at 40:13-42:16 (Tr. of July 15, 2021 Hr'g on Mot. to Quash).

154716390.2

Dated: New York, New York.
       November 19, 2021

                                   Respectfully submitted,

                                   LBRY, INC.

*/s/ Keith W. Miller*

William E. Christie
Shaheen & Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
(603) 819-4231
wchristie@shaheengordon.com

Keith W. Miller (*pro hac vice*)
Rachel S. Mechanic (*pro hac vice*)
John T. Dixon (*pro hac vice*)
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
(212) 262-6900
KeithMiller@perkinscoie.com
Rmechanic@perkinscoie.com
JohnDixon@perkinscoie.com

-16-

154716390.2