UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**U.S. Securities and Exchange Commission**

    v.                                           Case No. 21-cv-260-PB
                                                    Opinion No. 2022 DNH 014

**LBRY, Inc.**

**MEMORANDUM AND ORDER**

The Securities and Exchange Commission ("SEC") alleges in this civil enforcement action that LBRY, Inc. violated the Securities Act of 1933 by offering and selling unregistered securities. LBRY denies the charge and asserts several affirmative defenses, including a claim that the enforcement action "represents impermissible selective enforcement of the federal securities laws against LBRY as a 'class of one' in violation of equal protection under the Fifth Amendment." Answer, Doc. No. 13, 32. The SEC has challenged LBRY's selective enforcement defense in a motion for judgment on the pleadings. After considering the parties' arguments, I agree with the SEC that LBRY's defense is fatally flawed.

**I. BACKGROUND**

LBRY is a small technology company based in New Hampshire. In 2015, it began work on a blockchain-enabled network ("Protocol") that would allow content creators to publish and monetize digital content without the use of a centralized

distribution platform.  LBRY subsequently developed an application to access the Protocol and a digital currency known as LBC to implement its business plan.  The company raised approximately $410,000 from venture capital firms and individual investors through convertible promissory notes to fund its early-stage activities.

LBRY launched the Protocol and first made LBC available to the public about a year after beginning its work.  At launch, LBRY retained 400 million LBC for its own use and planned for an additional 600 million LBC to be distributed through independent mining[1] over the next 20 years.  LBRY divided its stash of LBC into three separate funds: (1) 200 million LBC in a "Community Fund," (2) 100 million LBC in an "Institutional Fund," and (3) 100 million LBC in an "Operational Fund."  LBRY planned to use these funds for a range of purposes.  The Community Fund would be used to provide "consumers with initial credits" and reward "community contributors."  The Institutional Fund would be used to promote the formation of "institutional

---

[1] Blockchain miners use high-powered computers to complete the complex computational math problems necessary to verify transactions on the blockchain.  See Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cty. Washington, 380 F. Supp. 3d 1102, 1110 (E.D. Wash. 2019) (detailing the blockchain mining process).  Successful miners are rewarded for their efforts with digital currency, which in this case is LBC.

partnerships." And the Operational Fund would allow LBRY and its founders to "function and profit." Compl., Doc. No. 1-1 ¶ 18.

The SEC began to formally investigate LBRY in May 2018. Answer, Doc. No. 13 ¶ 22. LBRY claims to have "turned over hundreds of thousands of pages of documents to the SEC" and made several executives available for "in-person testimony." Id. at ¶ 23. SEC investigators, from LBRY's perspective, "hound[ed]" LBRY by "making investigatory demands . . . so that LBRY might exhaust its resources in defending itself." Id. at ¶ 23-24. Since LBRY is a "small company," it argues that the SEC knew that an "extended" inquiry "would cause significant harm." Id. at ¶ 24. According to LBRY, the SEC's requests for additional "voluminous materials" were accompanied by a threat to drive the company into bankruptcy.[2] Id.

---

[2] It is unclear exactly how explicit the SEC's threat to bankrupt LBRY was. In its answer, LBRY claims that SEC staff "threatened to seek even more voluminous materials through administrative subpoenas in order to bankrupt the company." Answer, Doc. No. 13 ¶ 24. And in its objection to the SEC's Rule 12(c) motion, LBRY says an SEC attorney, at the outset of the investigation, threatened to "pursue extensive additional discovery and 'bankrupt' LBRY if LBRY insisted on defending itself and refused to resolve the investigation on terms which would functionally and financially put LBRY out of business." LBRY Obj., Doc. No. 29, 3 n.2.

3

The SEC filed its complaint against LBRY in March 2021. It claims that LBRY offered and sold more than thirteen million LBC as securities without complying with its registration obligations under the Securities Act of 1933. Compl., Doc. No. 1 ¶ 3. To support its contention that LBRY was required to register its offerings and sales of LBC, the SEC alleges that LBRY: (1) made direct sales of LBC to a number of institutional investors and using the capital raised to pay for LBRY operational costs, id. at ¶ 5-6; (2) represented to investors that "the LBC that it held itself would eventually be worth billions of dollars," id. at ¶ 6; (3) emphasized that the "long-term value proposition of LBRY is tremendous, but also dependent on our team staying focused on the task at hand: building this thing" and that "[o]ver the long-term, the interests of LBRY and the holders of [LBC] are aligned," id. at ¶ 29; (4) reassured the public that LBC's value would increase as the Protocol continued to develop, id. at ¶ 30; and (5) predicted on its website that the "best is yet to come," "punctuated . . . with a rocket ship" emoji "signifying to readers that LBC was going to rocket to higher prices," id. at ¶ 37.

When LBRY answered the SEC's complaint, it asserted several affirmative defenses, including a selective enforcement defense. Answer, Doc. No. 13, 32. In support of that defense, it claimed that in targeting LBRY for an enforcement action: (1) "the SEC

has treated LBRY differently from other similar blockchain companies with no rational basis for the difference in treatment"; and (2) "the manner and circumstances under which the SEC has pursued its investigation . . . demonstrate that the selective treatment is based on a malicious or bad faith intent to injure LBRY." Id.

## II. STANDARD OF REVIEW

The SEC challenges LBRY's selective enforcement defense in a motion for judgment on the pleadings pursuant to Rule 12(c).[3] The First Circuit has not identified the standard of review that courts must apply when testing the sufficiency of an affirmative defense. Some courts have held that an affirmative defense is properly pleaded if it provides "fair notice" of the defense.

---

[3] Rule 12(c) is typically used to challenge complaints, but it may also be used, at least in certain circumstances, to challenge affirmative defenses. The First Circuit has suggested as much in dictum, see McIntosh v. Antonio, 71 F.3d 29, 38, 38 n.10 (1st Cir. 1995), and Rule 12(h) expressly allows a "failure to state . . . a legal defense to a claim" to be raised pursuant to Rule 12(c), see Fed. R. Civ. P. 12(h)(2)(B). One court has held that Rule 12(c) may not be used to challenge the sufficiency of a defense unless the challenge alleges a failure to state a "legal defense." Jou v. Adalian, 2017 WL 3624340, at *2-3 (D. Haw. 2017). Other sufficiency challenges, that court reasoned, must be brought in a motion to strike pursuant to Rule 12(f). Id. Because LBRY does not challenge the SEC's use of Rule 12(c), the SEC's motion would have been timely under either Rule 12(c) or Rule 12(f), see SEC's Mot. to Extend Time, Doc. No. 14, and neither party argues that Rule 12(c) and Rule 12(f) motions should be judged under different standards, I need not determine which rule should apply here.

5

See, e.g., Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (3rd Cir. 2008); Intell. Ventures I LLC v. Symantec Corp., 2014 WL 4773954, at *1 (D. DE 2014); Reliable Carriers, Inc. v. Moving Sites, LLC, 2018 WL 9963862, at *1 (E.D. MI 2018). Other courts have employed the "plausibility" standard that currently applies to challenges to moot claims for relief. See, e.g., GEOMC Co. v. Calmare Therapeutics Inc., 918 F.3d 92, 95-96 (2d Cir. 2019) (applying a relaxed plausibility standard to motions to strike affirmative defenses pursuant to Rule 12(f)). Because the SEC asserts that its motion should be judged under the fair notice standard, which, if anything, is more favorable to LBRY than the plausibility standard, I will follow the SEC's lead and leave a detailed analysis of the issue for another day.

The fair notice pleading standard requires a reviewing court to construe the pleadings in the light most favorable to the nonmoving party and reject a sufficiency challenge to the pleading unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In applying this standard, however, the court need not credit "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Bd. of Appeals, 811 F.2d

6

36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)).

### III. ANALYSIS

The SEC argues that LBRY's selective enforcement defense is a nonstarter because LBRY admits that the SEC has sued dozens of other digital currency creators for alleged violations of the Securities Act. Because I find this argument persuasive, I grant the SEC's Rule 12(c) motion.[4]

The Supreme Court held in Village of Willowbrook v. Olech that the proponent of a class-of-one claim must show that it was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000). LBRY seeks to satisfy the differential treatment component of this test by broadly asserting that it has been treated differently from thousands of other digital currency creators who have not yet been targets of SEC enforcement actions. While pressing this argument, however, it also admits that the SEC has brought at least 42 failure to

---

[4] The SEC also argues that LBRY's defense is defective because the SEC's decision to investigate and sue LBRY "is a discretionary decision, specifically delegated to the Commission in the Securities Act, and not subject to judicial review as a 'class-of-one' equal protection defense." Doc. No. 20-1, 1. I need not address this argument because I determine that the SEC is entitled to the relief it seeks on the narrower grounds described in this memorandum and order.

register claims against other digital currency creators, with at least 19 of those actions asserting registration violations without accompanying allegations of fraud, Doc. No. 13, ¶ 3. The SEC argues that LBRY's admission necessarily bars its selective enforcement defense because it undercuts LBRY's assertion that it has been treated differently from other similarly situated digital currency creators.

LBRY tries to avoid the logical consequence of its admission by arguing that all the targets of the SEC's enforcement efforts, including LBRY, are part of a single multiple-member class-of-one. See LBRY Obj., Doc. No. 29, 9. Because all the digital currency creators who have been subject to enforcement actions are part of the same class, LBRY argues, it has sufficiently alleged that it and the other members of the class have all been irrationally treated differently from the thousands of remaining digital currency creators who have not faced enforcement actions. See id. at 9-11; see also Answer, Doc. No. 13 ¶ 3.

LBRY bases its argument on the Court's statement in Olech that "the number of individuals in a class is immaterial for equal protection analysis." 528 U.S. at 564 n.*. Olech, however, is quite different from the present case. There, the plaintiff was one of several homeowners who had been subject to an "irrational and wholly arbitrary" demand for an excessive

8

easement after they were involved in an unrelated lawsuit against the village where they lived. Id. at 565. In concluding that all the homeowners could be considered a single class-of-one, the court emphasized the fact that the homeowners had all been "involved in the previous, successful lawsuit against the Village, which allegedly created the ill will motivating the excessive easement demand." Id. at 564 n.*.

In contrast, LBRY does not even attempt to identify any consistent common characteristics of its proposed multiple-member class. Accordingly, the only attribute that members of the proposed class share that also distinguishes them from the larger class of all digital currency creators is that the proposed class members have all been targeted for enforcement by the SEC. But, as the SEC notes, that distinction alone cannot unite a multiple-member class in a selective enforcement case because it "would lead to the nonsensical conclusion that an enforcement agency like the Commission would have to prosecute every similarly situated wrongdoer, in exactly the same way, in order to prosecute even one." Reply Br., Doc. No. 32, 3. Because LBRY has failed to plead any facts that would justify its proposal to treat all digital currency creators who have been targeted for enforcement by the SEC as a single multiple-member class-of-one, it cannot rely on Olech to support its selective enforcement defense.

LBRY has not attempted to present an alternative argument that the SEC's other enforcement actions can be discounted because they are so dissimilar to LBRY that they do not undermine its selective enforcement defense.  Nor has it presented any other argument that would permit me to disregard those enforcement actions.  Accordingly, LBRY's admission that the SEC has been pursuing enforcement actions against multiple other digital currency creators dooms its selective enforcement defense.

## IV.   CONCLUSION

The SEC's motion for judgment on the pleadings with respect to LBRY's affirmative defense (Doc. No. 20) is granted.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 7, 2022

cc:  Counsel of Record