# Exhibit A

| | |
|---|---|
| **From:** | Mechanic, Rachel (NYC) |
| **To:** | Jones, Marc; Dixon, John (NYC) |
| **Cc:** | Moores, Peter; Forni, Eric; Miller, Keith W. (NYC) |
| **Subject:** | RE: SEC v. LBRY - Discovery and Case Schedule Discussion |
| **Date:** | Thursday, February 10, 2022 12:28:00 PM |

Marc,

Thank you for the email and follow-up call this morning. With respect to your request to extend the case schedule, we do not agree to an 8-week extension. As we indicated on our call, we have substantially completed our productions—including the completion of production of electronic communications—and we will be completing the production of the agreed-upon remaining categories of documents in short order. Indeed, as outlined in detail below, other than your request for social media direct messages—which we do not believe will yield many (if any) responsive documents—the only categories of materials remaining to be produced are raw data (which we produced yesterday and will finish producing today), and Google docs. After running search terms, the volume of Google docs that our team needs to review for responsiveness and privilege is only approximately 125 documents. We are expediting our review of these documents and will aim to produce all responsive, non-privileged documents to you by Monday, 2/14. Given what limited amount of materials remain to be produced, we do not believe any extension, let alone an extension of 8 weeks, is justified. That said, as a professional courtesy, we are willing to negotiate a new date for the depositions of Mr. Kauffman and Mr. Grinstvayg during the last week in February. We believe that this should provide you with more than enough time to adequately prepare for their depositions.

With respect to your request that we produce documents past the date of the complaint, we made clear in our Responses and Objections—which were served over *two months* ago, on November 17, 2021—that we objected to the Commission's request for continuing discovery and that we would only produce documents through the date of the Complaint (3/29/21). You did not raise any issue with our objection to your proposed date range for discovery until two months later—on our January 26, 2022 meet and confer—at which time, we told you that we would not agree to an extended discovery cutoff period. You then waited over a week to raise the issues again—in your February 3, 2022 email—which, as you know, we discussed yet again on our meet and confer of Tuesday evening. As we explained on our call, while we are willing to agree to certain discrete categories of documents that can be easily and efficiently collected by our client, we will not agree to produce e-communications beyond the date of your complaint. LBRY has responded to the Commission's extensive and continuing requests for data, documents and communications since it opened its investigation into the company nearly four years ago, in May 2018. As you know, we produced nearly 1 million documents in connection with the investigation and we have made additional productions of approximately 6,000 documents and communications (totaling over 56K pages) in connection with the litigation. As we explained, given the years-long investigation and subsequent litigation—which has cost (and is costing) LBRY a significant amount of money to respond to and defend—our client is eager to move this case forward toward a resolution as quickly and efficiently as possible. The Commission's Complaint contends that LBC was a security as of the launch of the LBRY network in 2016 based upon, among other things, actions taken by LBRY in the early stage of the company. To require LBRY to expend the time and cost necessary to pull, search,

review and produce communications post-dating the complaint would pose an unreasonable burden on LBRY, particularly given the low probability that additional discovery would yield documents relevant to the Commission's claims and the Commission's unjustified delay in requesting this ongoing discovery material.  For the same reasons, LBRY objects to the Commission's belated request that LBRY add an additional LBRY individual, Julian Chandra, as a custodian.  You failed to raise the topic of custodians until your February 3, 2022 email, notwithstanding that our Rs&Os explicitly stated that we would only produce documents from those custodians that we identified as "reasonably expected to be in the possession, custody, or control of responsive and nonduplicative documents"—which we have done.  LBRY's Rs&Os at ¶ 11.  For the Commission to make additional discovery demands mere weeks before the end of the discovery period—notwithstanding that LBRY set forth the clear parameters of its productions over 2.5 months ago—and then unilaterally declare that as a result of those additional discovery demands, the parties can no longer meet the discovery deadline that has been set for months is unjustified and unreasonable.

We respond to each of your additional points in turn below (our response is in red).

**Document Productions**

1. LBRY will produce documents today, likely later this week, and at some time in the next few weeks.  Today's production is approximately 25 files.  Possibly later this week, the production will include mostly data, including the LBRY blockchain data and the LBRYnomics data.  Productions after this week will include the documents included in the electronic storage discussed below (Google docs, telegram, etc.).  See below for a discussion of the production of those documents.
    - Yesterday, LBRY produced various categories of additional documents and data, including the data underlying the LBRYnomics database.  We are preparing the LBRY blockchain data and will produce that today (or at the latest, tomorrow).

2. You confirmed that you are not withholding documents based on your RFP objections, except for (a) documents withheld as privileged and (b) electronic communications after the filing date of the complaint.  You also specifically confirmed that you are not withholding documents based on your objections to RFPs 23, 24, 25 that you believed that documents would be produced by another party.
    - To be clear, we have not withheld documents or communications identified in the review population as *responsive* to the Commission's requests on any basis other than attorney-client privilege and/or the work product doctrine.  As previously addressed, we have not collected or produced electronic communications post-dating the Complaint.

3. Concerning withholding documents dated after the filing date of the complaint, you told us that you will let us know (by the end of the week?) about un-redacting post-filing communications.  You will also let us know as soon as possible about producing e-communications up to the date of the requests (which we discussed as a reasonable cutoff date).
    - We agree to re-produce certain Slack files that were previously produced and to remove from those files the redactions of communications post-dating the Complaint.  Note, however, that to the extent any post-March 29, 2021 messages contain information protected by the attorney-client privilege and/or work product

<span style="color:red">doctrine, those will be redacted and identified as such.  Other than this discrete category of Slack files that have already been produced, we do not agree to produce any electronic communications post-dating the complaint (and we do not agree—nor did we agree on our meet and confer—that the date of the Commission's requests is a "reasonable cutoff date").</span>

4. For other documents (i.e., not e-comms), you said that you would be willing to give post-filing responsive documents for certain categories.  You expressed willingness to provide documents up to the date of the requests for RFPs #3 (banks, brokerages info) and #8 (board info).  We would also like to get those documents for RFPs #5 (business plans, etc.), #7 (roadmap/goals/objectives), #10 (plans/decisions to offer or sell LBC), #15/16 (persons who bought LBC from LBRY), #22 (LBRY agreements involving sale of LBC), #38/39 (financial statements).  Please let us know if you will provide documents up to Oct. 2021 for those categories.
    - <span style="color:red">We are producing this week (i) LBRY's monthly bank statements for the period March 2021 through October 2021 (RFP #3); and (ii) LBRY's Profit and Loss statement for the period March-October 2021 (RFP #38/39).  We have not identified any additional documents in response to Request # 22.  We are looking into the additional requests noted above and will revert once we have additional information, though we believe it is unlikely that many (if any) additional responsive documents exist post-dating the date of the Complaint.</span>

5. You said that you would explore the burden involved in producing documents from Julian Chandra, and whether he is in possession of documents not yet produced.  You will let us know by the end of the week.  <span style="color:red">We have responded to this above.</span>

6. Other document repositories:
    - Google docs:  you did not previously produce these documents.  You are currently searching for and will produce all responsive documents from the Google suite.  These documents are not expected in the productions this week.   You said that you will explore how to connect the document linked in e-comms (emails, slack, etc.) to the google documents and whether it is technically feasible
        - <span style="color:red">We will produce responsive, non-privileged documents collected from LBRY's Google Suite.  We will also endeavor to determine whether it is practicable to provide information or an overlay production mapping the Google documents to Email and Slack files that link to such documents.</span>
    - Notion.so documents:  you believe that these documents were transferred to the Google suite.  You will confirm that the documents previously on Notion are being produced with the Google production.  We asked you to check if the version history/revisions that are shown in the emails from Notion will be provided with that production.
        - <span style="color:red">As indicated, our understanding is that documents maintained in the Notion.so application were migrated to Google Suite and will thus be encompassed in our collection and production from that repository.</span>
    - Telegram messages/social media posts:  you are currently working on a production of responsive Telegram materials.  That will likely not be in this week's production.  You do not know what volume of documents this will be, and are in the process of investigating what is there.  You are also exploring whether

> there are Telegram direct messages sent/received on behalf of LBRY that are responsive.
>> ▪ We are in the process of exporting and processing the messages contained on the publicly- available Telegram "LBRY Chat" thread (available here: Telegram: Contact @lbryofficial).  We will produce communications from that chat responsive to the Commission's requests to the extent they exist.
>
> ◦ Discord messages/social media posts: you will look into what is available, given that the LBRY Foundation is now running the Discord channel related to LBRY. We discussed that the channel may not be amenable to export.  We also discussed the possibility of producing those materials accessible to your client and its staff, and, in particular the DMs (direct messages) that may have been sent/received. We agreed to revisit this with you after you had more time to investigate.
>> ▪ As we stated, the LBRY Chat on Discord is owned and maintained by the LBRY Foundation (as indicated here:  Chat (lbry.org)).   Our understanding is that LBRY no longer has access to, or the ability to export data from, the public LBRY Discord chat, which would include LBRY's DMs and chats. We are endeavoring to confirm this understanding and to the extent LBRY has access to any Discord messages (which we believe is unlikely), we will produce any responsive messages that we identify.
>
> ◦ Twitter posts:  we discussed the production of non-public Twitter communications/documents such as DMs.  You agreed to look into what may exist, including whether accounts for LBRY-related individuals were used for LBRY business purposes (for Twitter, but also for other social media/online sites such as Reddit).  You will let us know whether there are responsive documents from this and other social media/online sources.
>> ▪ We are looking into collecting direct messages from LBRY's official social media sites (specifically, Facebook, Twitter and Reddit).  We will endeavor to determine whether any of the LBRY custodians use their personal social media accounts to engage in private communications on behalf of LBRY in connection with LBRY's business.
>
> ◦ Slack files since March 2021:  you said that there are/may be links in these slack communications that may require a production overlay to get to match up attachments with the slack messages.  You will also let us know this week whether you will unredact the slack chains produced so far, and whether you will produce post-March 2021 slack messages that haven't yet been produced.
>> ▪ We have addressed the points in this bullet point in various points above.

7. Data including Metabase data, blockchain data, and the "LBRY Database":   This discussion tied into the earlier discussion about productions this week.   You will be producing the blockchain and LBRYNomics data this week.  You agreed to check from what other data the Metabase dashboards were drawing and to discuss producing that data to us.  We also discussed other sources of data such as web traffic tracking and the like.  You told us that you believed that you had produced most of that data or were producing that data soon.  We also raised that data was used in association with Google Analytics, and asked whether there was responsive data there.  You will investigate all of these data sources and get back to us as soon as possible.
   ◦ As noted, we produced the data underlying the LBRYnomics database yesterday

      and will be producing the raw blockchain data today or tomorrow. In addition, we produced extensive amounts of additional data in our production yesterday (and as outlined in our production cover letter). We believe that these productions encompass and include all data responsive to the Commission's requests and that we have fulfilled our obligation to conduct a reasonable and good faith search for the requested materials. However, at your request, we will confirm with our client that no additional data sources exist that might include data responsive to your requests. We also note that you will have the opportunity to ask our witnesses questions about the various sources of documents and data at their upcoming depositions.

8. RFP #34 & 35: We discussed some of this above, and I believe you said you were producing the data this week. You also agreed that you will produce an updated chart of users per month. RFP Nos. 34 and 35 will be addressed through (i) an updated chart showing downloads since 2018 (which will be produced this week) and (ii) the raw blockchain data.

9. RFP # 37 (website pages): You said that you would be producing or providing information about accessing website changes in GitHub data. You indicated that all of the changes were described on GitHub. This information was provided in our production cover letter dated February 9, 2022.

**Interrogatories:** We are looking into the open questions below and will revert in short order.

10. Protocol v. Network: You indicated that your answers as to the LBRY Network were not limited to the Protocol, despite your objections to the definition of Network. We discussed this distinction particularly with reference to INTs #12 & 13. You agreed to confirm who had rights to change the code for various components to the LBRY Network and to clarify/supplement your interrogatory if there is a difference between who can push code changes to the main branch of the LBRY Protocol versus changes to the various applications and websites.

11. INT #2: You told us that your use of "earned" in this interrogatory was not meant to be restrictive. You said that you believed that the information provided to INT #2 was not limited, and that you weren't excluding other transfers. We discussed the possibilities that LBC were transferred for reasons other than those listed in your answer. You also agreed to double-check about possible other transfers of LBC here.

12. INT #7: You agreed to provide the latest data in a supplement to your answer to INT #7.

**Expert Report:**

13. We asked you to supplement the report with the following information, per the requirements of Fed. R. Civ. P. 26(b)(2)(A):
    - Hours spent – in order to determine how much was paid for the report
    - Whether the services of others were used to prepare the reports and how many hours & rates for those people (again for total cost)

- A more fulsome description of the webinars and other speaking engagements/publications
    - A list of testimony or trial appearances, if there are any within the last four years

    We will provide the information required under FRCP 26(a)(2)(B) [I assume your reference to FRCP 26(b)(2)(A) is a typo, as that section deals with limitations on the number of depositions and interrogatories].  With respect to your last bullet point, Dr. Richard has not testified as an expert at any trial or deposition during the previous four years.

14. We need the data used by your expert.  He references a "LBRY Database."  We would like that produced in the form used by your expert.  He also references other sources of data that have not been produced, such as cryptocompare.com data and https://charts.coinmetrics.io/network-data/ and https://graphql.bitquery.io/ide.  This data also needs to be produced. It also needs to be clarified what data on those websites were used.  In addition, there are no spreadsheets or other attachments to this expert report that would allow us to evaluate his calculations and the opinions based on them.  This includes determinations of statistical significance, regression analyses and regression samples, volume ratio calculations, etc.  These spreadsheets/calculations should be produced.  You agreed that you will investigate these data sources and spreadsheets/calculations and let us know whether they have been or will be produced.

    With the exception of the blockchain data—which will be produced today or tomorrow—we have produced all data provided to Dr. Richard.  As to your references to certain websites cited in the exhibits to Dr. Richard's report, we note that those sites are publicly available and equally accessible to the Commission, and we thus do not have an obligation to provide anything further as to those sources.  Finally, we are not aware of any obligation to provide Dr. Richard's underlying spreadsheets and computations.  FRCP 26 requires only that the disclosing party provide "the facts or data considered by the witness in forming [his or her opinions]" and "any exhibits that will be used to summarize or support them"—which we have done (and which you are free to question Dr. Richard about at his deposition).  If you are aware of legal support for the proposition that we are required to produce Dr. Richard's draft work product, please share that with us so we can assess it.

Regards,

Rachel

**Rachel Mechanic | Perkins Coie LLP**
PARTNER
1155 Avenue of the Americas 22nd Floor
New York, NY 10036-2711
D. +1.212.261.6811
F. +1.212.399.8081
E. RMechanic@perkinscoie.com

**Follow our New York office on Facebook**

---

**From:** Jones, Marc <JonesMarc@SEC.gov>
**Sent:** Wednesday, February 9, 2022 12:37 PM
**To:** Mechanic, Rachel (NYC) <RMechanic@perkinscoie.com>; Dixon, John (NYC) <JohnDixon@perkinscoie.com>
**Cc:** Moores, Peter <mooresp@SEC.GOV>; Forni, Eric <ForniE@sec.gov>

**Subject:** SEC v. LBRY - Discovery and Case Schedule Discussion

John and Rachel

      Thanks for a productive discovery meet-and-confer session last night.  As discussed, this email summarizes our understanding of the discussion.  If you do not agree with any of the below, please let us know immediately.

      Because, as we discussed last night, the items below will understandably take time, we are proposing a relatively slight modification to the schedule that postpones the trial date by less than 4 weeks (discussed in more detail at the bottom of this email).  We unfortunately need to hear from you tomorrow on whether you will assent to the new dates.  We have attached a proposed joint motion for your consideration.

**Document Productions**

1. LBRY will produce documents today, likely later this week, and at some time in the next few weeks.  Today's production is approximately 25 files.  Possibly later this week, the production will include mostly data, including the LBRY blockchain data and the LBRYnomics data.  Productions after this week will include the documents included in the electronic storage discussed below (Google docs, telegram, etc.).  See below for a discussion of the production of those documents.

2. You confirmed that you are not withholding documents based on your RFP objections, except for (a) documents withheld as privileged and (b) electronic communications after the filing date of the complaint.  You also specifically confirmed that you are not withholding documents based on your objections to RFPs 23, 24, 25 that you believed that documents would be produced by another party.

3. Concerning withholding documents dated after the filing date of the complaint, you told us that you will let us know (by the end of the week?) about un-redacting post-filing communications.  You will also let us know as soon as possible about producing e-communications up to the date of the requests (which we discussed as a reasonable cutoff date).

4. For other documents (i.e., not e-comms), you said that you would be willing to give post-filing responsive documents for certain categories.  You expressed willingness to provide documents up to the date of the requests for RFPs #3 (banks, brokerages info) and #8 (board info).  We would also like to get those documents for RFPs #5 (business plans, etc.), #7 (roadmap/goals/objectives), #10 (plans/decisions to offer or sell LBC), #15/16 (persons who bought LBC from LBRY), #22 (LBRY agreements involving sale of LBC), #38/39 (financial statements).  Please let us know if you will provide documents up to Oct. 2021 for those categories.

5. You said that you would explore the burden involved in producing documents from Julian Chandra, and whether he is in possession of documents not yet produced.  You will let us know by the end of the week.

6. Other document repositories:

- Google docs: you did not previously produce these documents. You are currently searching for and will produce all responsive documents from the Google suite. These documents are not expected in the productions this week. You said that you will explore how to connect the document linked in e-comms (emails, slack, etc.) to the google documents and whether it is technically feasible

- Notion.so documents: you believe that these documents were transferred to the Google suite. You will confirm that the documents previously on Notion are being produced with the Google production. We asked you to check if the version history/revisions that are shown in the emails from Notion will be provided with that production.

- Telegram messages/social media posts: you are currently working on a production of responsive Telegram materials. That will likely not be in this week's production. You do not know what volume of documents this will be, and are in the process of investigating what is there. You are also exploring whether there are Telegram direct messages sent/received on behalf of LBRY that are responsive.

- Discord messages/social media posts: you will look into what is available, given that the LBRY Foundation is now running the Discord channel related to LBRY. We discussed that the channel may not be amenable to export. We also discussed the possibility of producing those materials accessible to your client and its staff, and, in particular the DMs (direct messages) that may have been sent/received. We agreed to revisit this with you after you had more time to investigate.

- Twitter posts: we discussed the production of non-public Twitter communications/documents such as DMs. You agreed to look into what may exist, including whether accounts for LBRY-related individuals were used for LBRY business purposes (for Twitter, but also for other social media/online sites such as Reddit). You will let us know whether there are responsive documents from this and other social media/online sources.

- Slack files since March 2021: you said that there are/may be links in these slack communications that may require a production overlay to get to match up attachments with the slack messages. You will also let us know this week whether you will unredact the slack chains produced so far, and whether you will produce post-March 2021 slack messages that haven't yet been produced.

7. Data including Metabase data, blockchain data, and the "LBRY Database": This discussion tied into the earlier discussion about productions this week. You will be producing the blockchain and LBRYNomics data this week. You agreed to check from what other data the Metabase dashboards were drawing and to discuss producing that data to us. We also discussed other sources of data such as web traffic tracking and the like. You told us that you believed that you had produced most of that data or were producing that data soon. We also raised that data was used in association with Google Analytics, and asked whether there was responsive data there. You will investigate all of these data sources and get back to us as soon as possible.

8. RFP #34 & 35: We discussed some of this above, and I believe you said you were

producing the data this week.  You also agreed that you will produce an updated chart of users per month.

9. RFP # 37 (website pages):  You said that you would be producing or providing information about accessing website changes in GitHub data.  You indicated that all of the changes were described on GitHub.

**Interrogatories**

10. Protocol v. Network:  You indicated that your answers as to the LBRY Network were not limited to the Protocol, despite your objections to the definition of Network.  We discussed this distinction particularly with reference to INTs #12 & 13.  You agreed to confirm who had rights to change the code for various components to the LBRY Network and to clarify/supplement your interrogatory if there is a difference between who can push code changes to the main branch of the LBRY Protocol versus changes to the various applications and websites.

11. INT #2:  You told us that your use of "earned" in this interrogatory was not meant to be restrictive.  You said that you believed that the information provided to INT #2 was not limited, and that you weren't excluding other transfers.  We discussed the possibilities that LBC were transferred for reasons other than those listed in your answer.  You also agreed to double-check about possible other transfers of LBC here.

12. INT #7:  You agreed to provide the latest data in a supplement to your answer to INT #7.

**Expert Report**

13. We asked you to supplement the report with the following information, per the requirements of Fed. R. Civ. P. 26(b)(2)(A):
    - Hours spent – in order to determine how much was paid for the report
    - Whether the services of others were used to prepare the reports and how many hours & rates for those people (again for total cost)
    - A more fulsome description of the webinars and other speaking engagements/publications
    - A list of testimony or trial appearances, if there are any within the last four years

14. We need the data used by your expert.  He references a "LBRY Database."  We would like that produced in the form used by your expert.  He also references other sources of data that have not been produced, such as cryptocompare.com data and https://charts.coinmetrics.io/network-data/ and https://graphql.bitquery.io/ide.   This data also needs to be produced. It also needs to be clarified what data on those websites were used.  In addition, there are no spreadsheets or other attachments to this expert report that would allow us to evaluate his calculations and the opinions based on them.  This includes determinations of statistical significance, regression analyses and regression samples, volume ratio calculations, etc.  These spreadsheets/calculations should be produced.  You agreed that you will investigate these data sources and spreadsheets/calculations and let us know whether they have been or will be produced.

**Case Schedule**

We discussed the need for a case schedule extension given the current state of the document production and the difficulty in preparing for comprehensive depositions of your client's staff (and your client) given that significant documents and a significant number of documents have not yet been produced.  You expressed a desire to stick to the current schedule or to not more the summary judgment date.  We stated that the summary judgment date also had to move because it came so soon after the close of fact discovery, and that the trial date would likely have to move because of local rules/customs in USDC NH (the form scheduling order requires the SJ date to be no later than 120 days prior to the trial date).  You agreed that you would consider a reasonable extension, but needed to confer with your team and your client.

We propose an 8-week extension, moving the applicable dates to:
| | |
|---|---|
| Completion of Discovery | May 4, 2022 |
| Rule 26(e) Supplementations | May 4, 2022 |
| Motions for Summary Judgment | June 6, 2022 |
| Challenges to Expert Testimony | August 17, 2022 |
| Trial | October 3, 2022 |

(note this is less than one-month later than the current trial date, but fits with the 120-day provision)

We believe this is a reasonable compromise because it only moves the trial date 25 days.

Because you are still in the process of producing significant documents to us, we will need to move the upcoming depositions.  With the extension, we will move the depositions of Mr. Kauffman, Mr. Grintsvayg, and the LBRY 30b6 to agreed-upon dates four to six weeks from now.

Please let us know tomorrow your position on the above schedule.

Thanks,
Marc

**Marc J. Jones**
Senior Trial Counsel
U.S. Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor, Boston, MA 02110
tel: (617) 573-8947 | email: mailto:jonesmarc@sec.gov