UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITES AND EXCHANGE COMMISSION,<br>     Plaintiff,<br>  v.<br><br>LBRY, INC.,<br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 21-cv-00260-PB

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR PROTECTIVE ORDER TO PREVENT RULE 30(b)(6) DEPOSITION**

Defendant seeks a Rule 30(b)(6) deposition of the Commission on a series of improper testimony topics. Many seek irrelevant information and intrude on the work product and mental impressions of the Commission's attorneys. Several more do not relate to the claims or defenses in this case, and so fall outside the permitted scope of discovery. Pursuant to Fed. R. Civ. P. 26(c), plaintiff Securities and Exchange Commission (the "Commission" or "SEC") submits this memorandum in support of its motion for a protective order to prevent this deposition.

This case is about whether LBRY offered and sold securities without first registering them with the Commission. But as can be seen from their deposition topics, LBRY seeks instead to make this case about the Commission's internal affairs and the regulatory policy issues surrounding the regulation of digital assets. LBRY should not be permitted to pursue its public relations and policy goals through the rules of civil procedure. LBRY's deposition topics do not seek information about whether it is more or less likely that LBRY offered and sold investment contracts as defined by the *Howey* test. The Commission should not be forced to sit for a deposition on the improper topics LBRY has proffered.

1

## THE 30(b)(6) DEPOSITION NOTICE

On February 17, 2022, Defendant served an amended Notice of 30(b)(6) Deposition

(attached here as Exhibit A),[1] with these 12 testimony topics:

1. Efforts by the Staff of the SEC to use or test the LBRY Protocol as that term is defined in the SEC's Complaint.

2. The SEC's position on Bitcoin's status as a security under the federal securities laws and the reasons supporting that position.

3. The SEC's position on Ether's status as a security under the federal securities laws and the reasons supporting that position.

4. Internal SEC direction, instruction, order, policy or guidance relating to the regulation of digital assets.

5. Internal SEC direction, instruction, order, policy or guidance relating to the regulation of initial coin offerings ("ICOs").

6. Internal SEC direction, instruction, order, policy or guidance relating to the regulation of digital assets outside of the ICO context.

7. To the extent not covered by the above topics, internal SEC direction, instruction, order, policy or guidance concerning investigations or enforcement actions by the SEC's Division of Enforcement against persons who have offered or sold digital assets in initial coin offerings.

8. To the extent not covered by the above topics, internal SEC direction, instruction, order, policy or guidance concerning investigations or enforcement actions by the SEC's Division of Enforcement against persons who have offered or sold digital assets in the absence of an initial coin offering or fraud.

9. Communications between the SEC and any other government entity relating to the regulation of digital assets, cryptocurrency, or tokens.

10. Communications between the SEC and (1) any users of or content creators on the LBRY Network and (2) any purchasers of LBC.

11. Communications between the SEC and any third party, including any other governmental entity, concerning LBRY or the LBRY Credit.

---

[1] In the parties conference pursuant to Fed. R. Civ. P. 30(b)(6), LBRY agreed to drop three of the topics from its initial Rule 30(b)(6) Notice.  The amended Notice followed on Feb. 16 at 5pm.

12. Internal SEC direction, instruction, order, policy or guidance relating to SEC employees' purchase, sale or trading of digital assets.

## ARGUMENT

I.    **Topics 2 through 9, 11, and 12 Are Overbroad and Do Not Relate to Any Claim or Defense.**

The 30(b)(6) deposition of the Commission should not proceed as noticed because LBRY's proposed topics do not relate to this case. LBRY's Rule 30(b)(6) notice seeks comprehensive information about the internal workings—and internal thinking—of the Commission and the attorneys and others who work there. In fact, LBRY's requests seek every fact about every instance of internal directions, instructions, or guidance about anything related to the regulation of digital assets or the enforcement of the securities laws that might touch upon them (Topics 4-9), every instance of any communication about any digital asset with any other government agency, regardless of the topic (Topic 11), and the SEC's internal positions on two *other* digital assets unrelated to the case here (Topics 2-3).[2] LBRY's counsel has made clear that their topics include every internal discussion about those topics as well. And, topic 12 centers on the Commission's internal policies on digital asset transactions by SEC staff. These topics (besides being privileged, as discussed below) have nothing to do with this case and are impossibly overbroad. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to any nonprivileged matter relevant to any party's claim or defense); *Jenks v. New Hampshire Motor Speedway, Inc.*, No. 09-CV-205-JD, 2011 WL 839709, at *1 (D.N.H. Mar. 8, 2011) (denying request to compel deposition answers where topics were overbroad and unrelated to claims); *SEC v. Navellier &*

---

[2] LBRY's Topics 2 and 3 appear to only concern "the SEC's position" on Ether and Bitcoin—a topic already answered fully in the Commission's responses to LBRY's interrogatories. But LBRY's counsel told the Commission during the Rule 30(b)(6) meet and confer session that they believe these topics concern any internal discussions and analysis of these other digital assets.

*Assocs., Inc.*, No. 17-11633-DJC, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (on SEC's motion for protective order, prohibiting topics seeking information about other SEC investigations as overbroad and disproportional given the claims and defenses).

During discussions with LBRY's counsel, LBRY argued that these topics relate to its fair notice defense and to the Court's application of the Howey test.[3]  They do not.  First, as the Commission has argued extensively in this case, including in the Motion to Quash Deposition Subpoena to Director Hinman (ECF No. 36), the Commission's internal views are not probative of LBRY's void-for-vagueness defense.  To sustain that defense, LBRY must prove that the securities laws were vague based on information *available to LBRY* when they offered and sold securities.  The void-for-vagueness affirmative defense "raises an issue of law, not fact."  *SEC v. Kik Interactive*, 19-cv-5244 (S.D.N.Y. Oct. 29, 2019).  LBRY's due process defense asks whether the statutory language "provide[s] a person of ordinary intelligence fair notice of what is prohibited," and whether it encourages arbitrary enforcement.  *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (quotation omitted).  That inquiry is "objective, focusing 'on the basis of the statute itself and other personal law,' without reference to subjective perceptions or individual sensibilities."  *Frese v. MacDonald*, 512 F. Supp. 3d 273, 292 (D.N.H. 2021); *see also United States v. Bohai Trading Co.*, 45 F.3d 577, 580 (1st Cir. 1995) ("The question is whether, [the statute] provide[s] a constitutionally adequate warning to those whose activities are governed.").  Whether LBRY had fair notice of its obligations under Section 5 turns on an analysis of how courts have construed the statutory language since the 1946 explanation of the *Howey* test, not on

---

[3] The "party moving to compel discovery over an adversary's objection bears the burden of showing that the information he seeks is relevant and not privileged." *Jenks*, No. 09-CV-205-JD, 2011 WL 839709, at *1 (denying request to compel deposition answers where topics were overbroad and unrelated to claims).

internal, nonpublic guidance from the Commission to its staff about regulatory or enforcement matters.

Courts that have analyzed whether Section 5 and the definition of "investment contract" are unconstitutionally vague have not considered the type of information that LBRY is seeking here.  In *Kik Interactive*, the Southern District of New York held that notice to defendants was "constitutionally sufficient" because "*Howey* provides a clearly expressed test for determining what constitutes an investment contract, and an extensive body of case law provides guidance on how to apply that test to a variety of factual scenarios."  *SEC v. Kik Interactive*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020) (rejecting void for vagueness challenge based on *Howey* test and case law applying it); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973) ("[i]n light of the many Supreme Court decisions defining and applying the term," void for vagueness challenge to "investment contract" definition was "untenable"); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 148 (D.D.C. 2011) ("investment contract" could not be unconstitutionally vague because "[t]he lineage of the term is too long and well-recognized" based on binding Supreme Court precedent, as well as Congress' choice to "define[] securities to include 'investment contracts' based on multiple years of enforcement of that term by various States under state laws").  Thus, the information relevant to Defendant's void for vagueness defense can be found in the body of case law applying the *Howey* test to the economic realities of many different types of financial instruments.  *See Kik Interactive*, 492 F. Supp. 3d at 183 ("[T]he vagueness inquiry does not call for a factual investigation into whether a statute has led to arbitrary enforcement; it asks, objectively, whether the statute 'authorizes or even encourages arbitrary and discriminatory enforcement.'")  *Id.*  So discovery about the SEC's internal enforcement decision-making for digital asset sales is irrelevant to the fair notice defense.

5

LBRY's Rule 30(b)(6) deposition topics seek *nonpublic* information, unknown to it and therefore irrelevant to its vagueness defense.  *See, e.g.*, Request 4 ("Internal SEC direction, instruction, order, policy or guidance relating to the regulation of digital assets"); Request 9 ("Communications between the SEC and any other government entity relating to the regulation of digital assets, cryptocurrency, or tokens.")

Second, these topics do not relate to whether LBRY offered securities or whether the offer of LBC was part of an investment contract under the *Howey test.*  The subjective views of the SEC do not influence or determine whether LBRY offered and sold investment contracts. The *Howey* test contains no prong for the subjective views of the SEC or any other government regulator.  Nor does the application of *Howey* test to LBRY's offer of LBC involve the subjective views of the SEC or any other government regulator about digital assets unrelated to LBRY.  While LBRY may want this information anyway, Fed. R. Civ. P. 26 prohibits their use of a Rule 30(b)(6) deposition to compel the Commission to give it to them.

## II.      **LBRY's Topics Invade the Commission's Deliberative Process Privilege.**

By using its Rule 30(b)(6) deposition to ask about the Commission's internal processes about digital assets, LBRY tries to compel information protected by the deliberative process privilege.  Deliberative process is a "form of executive privilege" which shields from disclosure the "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 785 (2021).  The deliberative process privilege protects "the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir. 1988); *see also Faiella v. I.R.S.,* No. 05-CV-238-SM, 2006 WL 2040130, at *5 (D.N.H. July 20, 2006)

(deliberative process privilege "designed to safeguard and promote agency decisionmaking process in multiple ways) (quoting *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992)).

This privilege covers all "communications received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "all papers which reflect the agency's group thinking in the process of working out its policy."   *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-53 (1975); *see also Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992) (excluding draft letter about agency position).  It also protects factual materials that are closely intertwined with opinions, recommendations, and deliberations.  *See Mapother v. Dep't of Justice,* 3 F.3d 1533, 1539-40 (D.C. Cir. 1993).  "Even when requested material is found to be factual, the courts have held it exempt [from disclosure] where they were convinced that disclosure would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function."  *Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 562 (1st Cir. 1992).  When LBRY seeks to depose the Commission's designee on "internal SEC direction, instruction, order, policy or guidance" (Topics 4-8), it wants information on the SEC's internal decision-making, which is protected by the deliberative process privilege.  Because those topics (and others like Topics 2-3) solely seek protected information about the SEC's internal processes and decision-making, the Court should not allow LBRY to proceed on them.

## III.    Defendant Improperly Seeks to Depose the Commission's Attorneys about Privileged Communications and Work Product.

The Court should also prevent Defendant from conducting a Rule 30(b)(6) deposition of the Commission on these deposition topics because the deposition would inherently involve the testimony of attorneys assigned to the case, or require those attorneys to prepare other witnesses

7

to testify about the attorneys' work product and privileged communications.  In either scenario, the deposition would improperly enable Defendant to probe the mental processes and strategies of the Commission's attorneys.  *See*, *e.g.*, *SEC v. Nacchio*, 614 F. Supp. 2d 1164 (D. Colo. 2009); *SEC v. Buntrock*, 2004 WL 1470278 (N.D. Ill. June 29, 2004); *SEC v. Rosenfeld*, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997); *SEC v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992).  The Commission does not claim that it is immune from Rule 30(b)(6).  But a defendant may not use Rule 30(b)(6) to do what Defendant is trying to do here—compel the Commission's attorneys to testify about its inner deliberations and thought processes about this case and other cases or potential cases, laying bare their work product.

The Commission staff who conduct investigations are primarily attorneys, so the deposition Defendant seeks of the person most knowledgeable would require a deposition of the Commission's attorneys.  A "Rule 30(b)(6) deposition of an SEC official with knowledge of the extent of that investigative effort, amounts to the equivalent of an attempt to depose the attorney for the other side." *Rosenfeld*, 1997 WL 576021, at *1.  Of course, "[t]aking depositions of opposing trial counsel is generally disfavored and discouraged." *Avid Tech., Inc. v. Media Gobbler, Inc.*, 2016 WL 696092, at *5 (D. Mass. Feb. 19, 2016) (citing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)).  As a result, "barring the deposition of the SEC is a result that accords with the negative light in which depositions of opposing counsel are held." *Morelli*, 143 F.R.D. at 47.

While the Commission could theoretically designate a non-attorney as its Rule 30(b)(6) witness, that step would not solve the problem, because the Commission's attorneys would have to teach the witness about the case:

> Thus the witness designated would have to have been prepared by those
> who conducted the investigation and, since the investigation was

> conducted by the SEC attorneys, preparation of the witnesses would
> include disclosure of the SEC attorneys' legal and factual theories …
> and their opinions as to the significance of documents, credibility of
> witnesses, and other matters constituting attorney work product.

*Rosenfeld*, 1997 WL 576021, at *2-*3.

Moreover, judgment about how the evidence applies to the law (as seems to be required in Topics 1-3, 10, and 11) is the essence of attorney work product. *See Morelli*, 143 F.R.D. at 47 (barring R. 30(b)(6) deposition of SEC where defendants sough "to ascertain how the SEC intends to marshal the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated."). Thus, the Rule 30(b)(6) deposition noticed by Defendant would intrude on the work product of the Commission's attorneys. As one court explained:

> [T]he taking of the deposition of the SEC – which would necessarily
> require the taking of the deposition of their lead counsel or someone
> with knowledge gained exclusively from the SEC's counsel – is not an
> appropriate use of Fed. R. Civ. Proc. 30(b)(6). To allow the deposition
> would seriously impinge on the work product of the SEC's primary
> lawyer and would potentially allow unwarranted inquiries into the
> mental impressions of their attorney and would produce no non-
> privileged information.

*Bilzerian*, 258 B.R. at 849. And courts have repeatedly prevented defendants from taking Rule 30(b)(6) depositions of other regulatory agencies that bring enforcement actions for the same reasons. *See*, *e.g.*, *EEOC v. Texas Roadhouse, Inc*., 2014 WL 4471521 (D. Mass. Sept. 9, 2014); *EEOC v. McCormick & Schmick's Seafood Restaurants, Inc*., 2010 WL 2572809 (D. Md. June 22, 2010); *FTC v. U.S. Grant Resources, LLC*, 2004 WL 2238518 (E.D. La. June 25, 2004); *EEOC v. HBE Corp.*, 157 F.R.D. 465 (E.D. Mo. 1994).

Deposition topics 1 (testing of the LBRY protocol by Commission staff) and 10 (communications about LBRY with third parties, such as potential witnesses) specifically seek discovery about the conduct and communications of the Commission's attorneys in investigating

and litigating this case.  As such, they inappropriately seek work product.  LBRY wants to know

what the Commission's attorneys, and those working under their direction, did during the

investigation and litigation of this case.  The answers to those questions are protected by attorney

work product principals.  *See Stein v. SEC*, 266 F. Supp. 3d 326, 344 (discussion of work product

protection of investigative facts and materials, including investigative steps taken and witnesses

contacted); *SEC v. Present*, 14-cv-14692-LTS, 2016 WL 10998439, at *3 (D. Mass. May 12,

2016) (conduct of investigation protected by attorney work product).

## CONCLUSION

For the reasons set forth above, the Court should enter a protective order preventing

Defendant from conducting the noticed Rule 30(b)(6) deposition of the Commission.

Dated:  February 22, 2022                          Respectfully submitted,

                                                   **SECURITIES AND EXCHANGE
                                                   COMMISSION**

                                                   By its Attorneys,

                                                   */s/ Peter Moores*
                                                   Marc Jones (Mass. Bar No. 645910)
                                                   Eric A. Forni (Mass. Bar No. 669685)
                                                   Peter B. Moores (Mass. Bar No. 658033)
                                                   Senior Enforcement Counsel
                                                   Boston Regional Office
                                                   33 Arch Street
                                                   Boston, MA  02110
                                                   (617) 573-4576 (Moores direct)
                                                   mooresp@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 22, 2022, I caused true and correct copies of the foregoing to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

                                                */s/ Peter Moores*

                                                Peter Moores