CONFIDENTIAL

**EXHIBIT 84**
21-cv-00260-PB

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF NEW HAMPSHIRE
 3
 4   SECURITIES AND EXCHANGE      )
     COMMISSION,                  )  Civil Action No.
 5                                )  1:21-cv-00260-PB
                 Plaintiff,       )
 6                                )  VOLUME 1
          vs.                     )  (Pages 1 - 219)
 7                                )
     LBRY, INC.,                  )
 8               Defendant.       )
     _____ )
 9
10
11
12
13            CONFIDENTIAL DEPOSITION OF
14                    MICHAEL FINGER
15                 BOSTON, MASSACHUSETTS
16             TUESDAY, DECEMBER 7, 2021
17                     10:05 a.m.
18
19
20
21
22
23
     REPORTED BY:
24   Jane M. Werner, RMR, CRR,
     Massachusetts CSR No. 149008
25   JOB No. 211207DWA
                                                        1
```

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

CONFIDENTIAL

```
 1       Q    Do you know approximately what percentage
 2   ownership of LBRY that would have amounted to at the
 3   time?
 4       A    No, I don't recall.  Approximately 5 to 10
 5   percent.
 6              (Document marked as Finger
 7              Exhibit 3 for identification)
 8       Q    Michael, you've been handed what has been
 9   marked as Exhibit No. 3.  It is Bates numbered
10   MF_LBRY0014.  It says, "The file
11   EquityRightCreditConversion.pdf was produced in native
12   format."
13            And on Page 2, without a Bates number, is
14   "Equity Right: Credit Conversion."  Do you see that?
15       A    Yes.
16       Q    Do you recognize Exhibit No. 3?
17       A    Yes.
18       Q    What is this?
19       A    A clause in my deal with LBRY that --
20            THE WITNESS:  This is the same one I sent in?
21            MS. MARTABANO:  Yes.
22       A    This is a clause in my deal with LBRY that
23   says that I could vendor my equity and receive LBRY
24   Credits.
25       Q    Was it attached to some agreement at some
```

28

CONFIDENTIAL

```
 1    point?
 2         A    The documents were somewhat informal at the
 3    time, so there is email confirmation that we had --
 4    there were several documents that we said we agreed
 5    consisted of our deal.
 6         Q    Was Exhibit No. 3 in place as of the fall of
 7    2015, on did it come later?
 8         A    As I recall, this would have been in place
 9    before we started working with them.
10         Q    And that would have been at least as of
11    September 2015, then?
12         A    Yes.
13         Q    Did you have any conversations with anybody at
14    LBRY other than Jeremy Kauffman about the equity
15    conversion rights?
16         A    No, but Jimmy Kiselak, who was a co-founder,
17    was included in the -- he was able to see this before it
18    was agreed.
19         Q    Do you consider yourself a founder of LBRY?
20         A    Yes.
21         Q    Were you ever a member of the LBRY board of
22    directors?
23         A    No.
24         Q    Were you ever an executive officer of LBRY?
25         A    No.
```

29

# WAYMAKER

January 21, 2022

**FOIA CONFIDENTIAL TREATMENT REQUESTED**
**VIA EMAIL DELIVERY**

AUTHOR'S DIRECT DIAL NO.
**(424) 652-7806**

AUTHOR'S EMAIL ADDRESS
**amartabano@waymakerlaw.com**

Peter Moores
U.S. Securities and Exchange Commission
Boston Regional Office
Division of Enforcement
33 Arch Street, 24TH Floor
Boston, Massachusetts 02110
Phone: (617) 573-4576
Email: mooresp@sec.gov

Re: **SEC v. LBRY, Inc., Civil Action No. 1:21-cv-00260-PB**

Dear Mr. Moores:

We write in connection with the draft transcript of Michael Finger's December 7, 2021 deposition. My law firm (on behalf of Mr. Finger) and Mr. Finger have reviewed the draft transcript. Thank you for agreeing to the extension to respond until January 21, 2022.

We have attached as Exhibit A a list of errata from the transcript identified to date. This letter only addresses typographical or apparent transcription errors. Mr. Finger reserves the right to provide further feedback including clarifications, modifications or explanations as to the remainder of the transcript. In addition, we may have disagreements about how you interpret and understand certain answers.

We also note that the SEC did not provide Mr. Finger with copies of the Exhibits. LBRY, Inc. counsel provided my firm with them. Mr. Finger has therefore made corrections to references to the exhibits in Exhibit A based on that set, but if there are any discrepancies, he reserves the right to provide further feedback.

Turning back to the transcript itself, after review and analysis of it, we must report that it is flawed and at least portions should be re-transcribed. There are several instances where the answers in the transcript appear transcribed completely inaccurate, but given the passage of time, Mr. Finger cannot precisely remember his original statements. In those instances, we would request that the court reporter, Jane Werner, re-listen to her recording and provide a revised transcript for Mr. Finger's review (*see, e.g.,* 75:21-22; 89:25-90:2).



United States Securities and Exchange Commission
January 21, 2022
Page 2 of 7

While we have made suggested edits or corrections when possible, other portions of the transcript appeared inaccurate in small ways such that it seems clear they were incorrect, but Mr. Finger is unable to provide specific proposed corrections from recollection, so he has merely proposed something he believes makes better sense of the exchange (*see, e.g.*, 32:2-3; 46:1).  We do not view these as substantive changes but, as stated above, as mere typographical or transcription error corrections.

\*\*\*

Pursuant to 17 C.F.R. § 200.83 and all other applicable statutes and regulations, Mr. Finger, requests that this letter and the accompanying exhibit be accorded confidential treatment under the Freedom of Information Act.  He further requests that this letter, the referenced transcript, its exhibits and the information contained therein not be released to any other persons except as necessary to assist in conducting this litigation.  In the event your agency receives a Freedom of Information Act request seeking disclosure of this letter, please notify the undersigned counsel, so that our client can provide additional information substantiating this request for confidential treatment.

Please let us know if you have any questions or wish to discuss this letter.

Sincerely,

/s/ Ashley E. Martabano

Ashley E. Martabano
Brian E. Klein
Waymaker Law, LLP
*Attorneys for Michael Finger*

Enclosure

cc:     Perkins Coie, counsel for LBRY, Inc.
        Keith Miller, KeithMiller@perkinscoie.com
        Rachel Mechanic, RMechanic@perkinscoie.com
        John Dixon, JohnDixon@perkinscoie.com



United States Securities and Exchange Commission
January 21, 2022
Page 3 of 7

Exhibit A

| Page:Line(s) | Transcript Text | Correct Text[1] |
|---|---|---|
| Globally, for Exhibits listed on page 3 | | *To the extent there are Bates Labels applicable to the Exhibits, these should be added.* |
| Page 3, Exhibit 4 | Document entitled "LBRY, Inc., Stock Purchase Agreement | *The first page of the Exhibit describes the file title as "3Centinel-StockPurchaseAgreememt-LBRYInc.pdf", Bates Labeled MF_LBRY0003.*<br>*Mr. Finger does not deny that this is the same document, but clarifies the file title for the record.* |
| Page 3, Exhibit 5 | Document entitled "LBRY, Inc., Restricted Stock Purchase Agreement" | *The first page of the Exhibit describes the file title as "3Centinel-RestrictedStockPurchaseAgreememt-LBRYInc.pdf", Bates Labeled MF_LBRY0001.*<br>*Mr. Finger does not deny that this is the same document, but clarifies the file title for the record.* |
| Page 3 Exhibits 7 and 8 | | *The titles of these documents suggest they are identical. Some clarification of date or Bates label should be added.* |
| Page 4, Exhibit 12. | "email chain; top email from Mike Vine to team@lbry.io dated 8/16/16 with attachment" | *The top date on the Exhibit is 8/19/2016, not 8/16/16. As such, it should read:*<br><br>"email chain; top email from Mike Vine to team@lbry.io dated 8/1**9**/16 with attachment" |
| Page 5, Exhibit 27 | "email chain; top email from Josh Finer to Justin@shapeshift.io" | "email chain; top email from Josh Finer to Justin@shapeshift.io **dated Jul 7, 2016 at 3:27 PM**" |
| Page 5, Exhibit 31 | email from pr@lbry.io to pr.biz@lbry.io dated 9/7/16, with attachment | "email from pr@lbry.io to pr-biz@lbry.io dated 9/7/16, with attachment"<br>*The to address appears to contain a dash, not a period.* |

---

[1] If a word or phrase was deleted, it will be shown with a ~~strikethrough~~. If it is added or changed, it is in **bold red font**. Italicized language is meant to be informative/explanatory, but should not be added to the transcript.

| 14:8 | "A decade." | "A decade **or so**." |
|---|---|---|
| 20:1-4 | "content or run websites for LBRY with contributing content and then provide overall strategy sometimes back into the products, if it affected how consumers were perceiving it." | "content or run websites ~~for LBRY with contributing content~~ and then provide overall strategy sometimes back into the products, if it affected how consumers were perceiving ~~it~~ **them**." |
| 20:7-8 | "More specifically, there are several, I guess, 8 potential ways to answer that." | Mr. Finger does not recall saying "More specifically" so we would ask that it either be confirmed on the recording or be removed: ~~More specifically,~~ **T**here are several, I guess, potential ways to answer that." |
| 21:3 | "into" | "in to" |
| 24:20 | "So it was a way for me" | *Clarification – Centinel owned the shares, not Mr. Finger in his personal capacity.*<br>"So it was a way for ~~me~~ **Centinel**" |
| 28:23 | "says that I could vendor my equity" | Mr. Finger is uncertain of his actual answer at the time, but believes "vendor" should be replaced with "return" based on the context of the sentence. Thus, the line should read:<br>"says that I could ~~vendor~~ **return** my equity" |
| 31:24 | "all 30, 2016?" | "~~all~~ **August** 30, 2016?" |
| 32:2-3 | "And the way this was prepared was separate agreements where shifted to be for the yet-to-vest shares." | *This appears to be a transcription error, but we are uncertain what was actually said. We would propose at the least:*<br><br>"And the way this was prepared was separate agreements ~~where shifted~~ ~~to be~~ for **vested and** ~~the~~ yet-to-vest shares." |
| 34:6-9 | "And I understand the term to mean that I could -- or Centinel could turn in equity for a portion of whatever LBRY Credits the company had on hand." | "And I understand the term to mean that I could – or**, [rather]** Centinel**,** could turn in equity for a portion of whatever LBRY Credits the company had on hand." |
| 34:13 | "an opportunity to hold back soft tokens on the" | "an opportunity to hold back ~~soft~~ **some** tokens on the" |
| 34:14 | "blockchain to the creator of the blockchain" | "blockchain ~~to~~ **for** the creator of the blockchain" |
| 44:23 | "multiple-age" | "multiple-**p**age" |



United States Securities and Exchange Commission
January 21, 2022
Page 5 of 7

| | | |
|---|---|---|
| 46:1 | "We met at his house. | *This appears to be a transcription error, but we are uncertain what was actually said. We would propose at the least:* "We met at his **office**." |
| 46:21-25 | "Yes. We would bring -- generally bring the team -- meaning anyone who was working with or on LBRY -- to meet with these two investor meetings to say, "Hey, this is a real project, and we're reputable people."" | "Yes. We would bring -- generally bring the team -- meaning anyone who was working with or on LBRY -- to meet with these – ~~two~~ **to** investor meetings to say, 'Hey, this is a real project, and we're reputable people.'" |
| 48:8 | "a evangelist" | "a**n** evangelist" |
| 54:8-11 | I don't know. I don't know who was using the protocol or not. **But in any case -- hum. Yeah, so the "cryptoapp" I suppose here would refer to a combination of the app and the protocol**. | *Please confirm the bolded portion of this transcription with the audio recording.* |
| 55:9-10 | "centralized company, LBRY, Inc. And the protocol was an open source" | "centralized company, LBRY, Inc. And the protocol was ~~an~~ open source" |
| 59:24-25 | "Software is a service platform." | "Software ~~is~~ **as** a service platform." |
| 63:2-5 | "So it was an emphasis of our communications to let people know to be as transparent as possible and to let people know that the project was moving forward." | "So it was an emphasis of our communications ~~to let people know~~ to be as transparent as possible and to let people know that the project was moving forward." |
| 63:7 | "the stock prenuptial agreements" | "the stock ~~prenuptial~~ **purchase** agreements" |
| 75:21-22 | "That would just mean something that people project. And it's not actually a related project. They can't substantiate it." | *This appears to be a transcription error, but we are uncertain what was actually said. We request that we be provided with the audio or that the audio be re-transcribed and sent back for review.* |
| 88:13-14 | "an open source protocol map." | "an open source protocol ~~map~~." |
| 89:25-90:2 | "example of, you know, how that's done, how easy that is for them. That would affect them." | *This appears to be a transcription error, but we are uncertain what was actually said (see, e.g., the bizarre line spacing with a hard return between 90:1 and 2). We request that we be provided with the audio or that the audio be re-transcribed* |



| | | | |
|---|---|---|---|
| | | | *and sent back for review.* |
| 97:22 | | "cryptic" | "**crypto**" |
| 103:19 | | "waling" | "wal**k**ing" |
| 111:8 | | "substantially created or authorized." | "substantially created or ~~authorized~~ **authored**." |
| 114:9 | | "For over a year, I suppose Centinel was not" | "**'**For over a year,**'** -- I suppose Centinel was not" *["For over a year" should be in quotation marks as Mr. Finger was referring to language read by the questioner from the exhibit.]* |
| 119:1-2 | | "email<br>provider" | *There appears to be a spare return here. The two words should not be separated by a return or on separate lines:* "email provider" |
| 130:17 | | "through holding a reserve of credit." | "through holding a reserve of credit**s**." |
| 134:14-15 | | "Just the discussion we discussed; you know, developing the business." | "Just the discussion**s** we discussed; you know, developing the business." |
| 136:5 | | "But go head." | "But go **a**head." |
| 138:23 | | "Straight" | "straight" *[Capitalization error]* |
| 157:9-12 | | "I don't recall us speculating -- it was just the word of the day. I don't recall us talking about what the credits would be worth when things were -- when the company scaled up. | *This appears to be a transcription error, but we are uncertain what was actually said particularly with respect to lines 9-10. We request that we be provided with the audio or that the audio be re-transcribed and sent back for review.* |
| 161:18 | | "code" | "**quote**" |
| 161:22 | | "This funding allow us to accelerate our efforts" | "This funding allow**s** us to accelerate our efforts" |
| 167:3 | | "No. I know I didn't alter it." | "No. I know I didn't ~~alter~~ **author** it." |
| 168:24 | | "so I'm not sure that I reviewed it." | "~~so~~ **as** I'm not sure that I reviewed it." |
| 187:13 | | "I understand the term "user "to mean someone" | "I understand the term "user" to mean someone" *[Punctuation error with the quote alignment]* |
| 194:9 | | "tamp  down" | *There appear to be two spaces between tamp and down on the transcript. Remove extra space.* |
| 195:8-9 | | "So that long-term, as the protocols developed, the reserve would be in value." | "So that long-term, as the protocol**s is** developed, the reserve would ~~be in~~ **gain** value." |
| 207:8-9 | | "I'm sorry, did you say there | "I'm sorry, did you say there wasn't |



|  | wasn't enough worth in LBRY to continue Centinel?" | enough worth in LBRY to continue **after** Centinel?"  
*This appears to be a transcription error, but if not, Mr. Finger understood the question to be asking about whether working with LBRY after winding down Centinel was worthwhile..* |
|---|---|---|
| 210:18 | "Dow" | **DAO** |