### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE :
COMMISSION,
                                      :

        Plaintiff,    :

   -against-    :     Civil Action No. 1:21-cv-00260-PB

LBRY, INC.,    :

        Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### LBRY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE SECURITIES AND EXCHANGE COMMISSION'S MOTION TO STRIKE OR PRECLUDE USE OF AMENDED REPORT OF LBRY'S EXPERT

Defendant LBRY, Inc. ("LBRY") respectfully submits this memorandum of law in opposition to the Securities and Exchange Commission's ("Commission") Motion to Strike or Preclude the Use of Amended Report of LBRY's Expert ("MOL") (ECF Doc. No. 71).

### PRELIMINARY STATEMENT

Contrary to the Commission's argument, Dr. Richard's amended report is a proper supplement pursuant to Federal Rule of Civil Procedure ("FRCP") 26:  the amended report merely updates certain inputs and data and applies the same analyses used in Dr. Richard's original report—concerning which, the Commission questioned Dr. Richard about at length at his deposition.  Notably, Dr. Richard does not change his methodologies or theories and—significantly—his use of amended inputs and updated data does not alter his expert opinion that "LBC tokens were used by its holders primarily as a native currency on the LBRY platform to consume digital services, as opposed to purchasing and holding LBC to trade and speculate for investment gains."  Amended Report (ECF Doc. No. 71-2) ("Am. Rep.") ¶ 2 (emphasis in original).  And, Dr. Richard's amended report certainly does not "bolster" his previously

disclosed opinions as to the consumptive use of LBC.  To the contrary, the amended report used new information that actually provided lower ratios with respect to the use of LBC on the LBRY Network than his initial report—while still continuing to support his ultimate conclusion that people primarily used LBC for consumptive purposes during the 2016 through 2021 time period.

Furthermore, the delay in submitting Dr. Richard's amended report is justified in that it responds directly to issues identified at Dr. Richard's deposition and required the collection of data that was extremely time-consuming and labor-intensive and was thus not available to Dr. Richard at the time of his original report.  Moreover, the Commission cannot show any prejudice as a result of the delay, and any purported prejudice (which could have been easily mitigated by the Commission itself) can be cured through a short supplemental deposition of Dr. Richard. Indeed, LBRY served the amended report on the Commission on April 29, 2022—*35 days* before the Commission's opposition to LBRY's summary judgment brief was due on June 3, 2022.  At any point during those five weeks, the Commission could have asked LBRY to reopen the deposition of Dr. Richard and/or sought leave from the Court for more time to respond to LBRY's summary judgment motion.  Similarly, rather than requesting the disclosure information that the Commission now contends LBRY failed to include with the amended report, the Commission sat idle, only to complain about the purported lack of disclosure weeks later.  Thus, the prejudice about which the Commission now complains could have been mitigated weeks ago by the Commission itself, had it merely asked for additional deposition time and the disclosure materials that now form the basis of its motion to strike.  Instead, the Commission sat on its hands only to raise its prejudice argument to this Court at the eleventh hour.

Ironically, the Commission's position here is in stark conflict with the position it maintained in its pending litigation against Ripple Labs, Inc. ("Ripple"), in which the

Commission itself filed its own untimely supplemental expert report in late February of this year—*months* after initial and rebuttal expert reports were due and after the expert's deposition had concluded.   *See* Affirmation of Rachel. S. Mechanic ("Mechanic Aff."), Ex. 1 (*SEC v. Ripple Labs, Inc.*, 20-cv-10832 (AT)(SN) (S.D.N.Y. Apr. 19, 2022), ECF Doc. No. 469) ("Ripple Order") at 1.   And unlike Dr. Richard's amended report, the Commission's amended report in *Ripple* arguably *does* exceed the scope of a proper supplementation under Rule 26:   as the Court noted, "Defendants assert, and the SEC does not dispute, that Dr. Metz's supplemental report does not cite information previously unknown or unavailable to him and does not correct either his opening or rebuttal report.  In fact, as the SEC explains, the supplemental report was prepared explicitly in response to the reports of two of Defendant Ripple's rebuttal experts[.]" *Id.* at 1-2.   Nevertheless, the Court ultimately declined to strike the Commission's supplemental report "given the harshness of preclusion"—thereby rejecting the exact argument by Ripple that the Commission makes here; that is, that the expert report was not a true "supplemental" report and should therefore be excluded.

## **BACKGROUND**

Dr. Richard is an expert in blockchain and cryptocurrency technology.  Dr. Richard holds a doctorate in Economics from Purdue University, a Masters in Economics from Lomonosov Moscow State University, and worked for fifteen years in the securities industry before turning his attention and studies to the blockchain industry.  Original Report (ECF No. 71-3) ("Orig. Rep.") ¶ 1.  He has extensive blockchain-related experience, including in analyzing investment and consumptive uses of native cryptographic assets, trading digital assets on centralized and decentralized trading platforms, and analyzing blockchain network activity.  *Id.* ¶ 3.  Dr. Richard was retained by LBRY to analyze, among other things, the economic and utility purpose of the

LBRY Network and its native token; the history of economic activity on the LBRY Network; and the factors determining the LBC token price behavior.  *Id.* ¶ 6.

Pursuant to the Court's initial scheduling order (ECF Doc. No. 34), LBRY served Dr. Richard's original expert report on the Commission on February 4, 2022.  Based on his review and analysis of relevant materials, Dr. Richard opined that during the 2016 to 2021 time period, LBC was used primarily as a native currency on the LBRY Network to publish, consume and share digital content, as compared to its use as an investment instrument held and sold for speculative gains.  Orig. Rep. ¶ 14.  He also opined that the price behavior of LBC is not controlled or influenced by LBRY's management-related announcements, but is rather determined by the utility, and associated volume, of user economic activity on the LBRY Network, as well as general cryptocurrency market forces.  *Id.* ¶ 16.

In coming to these opinions, Dr. Richard conducted two main analyses.  *First*, in connection with his opinion that LBC was used primarily for utility purposes on the LBRY Network, Dr. Richard compared on-chain LBC transaction activity with LBC trading activity in the secondary market.  *Id.* ¶¶ 68-71.  To isolate the on-chain transaction activity of LBRY users (rather than LBRY's use itself), Dr. Richard removed from his analysis the on-chain transactions associated with LBRY-affiliated wallet addresses of which he was aware at the time of drafting the report.  *Id.* ¶ 68.  *Second*, in connection with his opinion as to the price behavior of LBC, Dr. Richard ran a widely-accepted statistical procedure (a regression analysis) to calculate the extent to which the price of LBC was impacted by LBRY management-related announcements versus utility-related announcements and the cryptocurrency market generally.  *Id.* ¶¶ 103-104.

On March 30, 2022, the Commission deposed Dr. Richard and examined him about the analyses he performed that formed the basis of his opinions.  Although Dr. Richard continued to

stand behind his initial analyses and opinions, Mechanic Aff., Ex. 2 (Richard Dep. Tr.) 254:15-256:10, 318:19-319:6, certain of the Commission's lines of questioning revealed that the Commission had questions and doubts about certain of the assumptions and inputs underlying Dr. Richard's analyses.  For example, the Commission questioned the number of LBRY wallet addresses that were excluded from Dr. Richard's transaction analysis, as well as whether additional dates should have been excluded from Dr. Richard's regression analysis.  *Id.* 254:15-23, 314:1-316:11.

Following his deposition, Dr. Richard, in conjunction with LBRY, began working in short order to address the concerns and questions that were raised at his deposition.  Specifically, in response to the Commission's questions as to the potential undercounting of LBRY-affiliated transactions in Dr. Richard's transaction analysis, LBRY sought to identify any additional LBRY-affiliated addresses that it could, ultimately providing those additional addresses to Dr. Richard to be included in his analysis.  Declaration of Jeremy Kauffman ("Kauffman Decl.") ¶ 1.  The Commission's baseless suggestion that LBRY intentionally sought to underreport the number of LBRY-related transactions in Dr. Richard's original report could not be further from the truth.  In reality, the identification of LBRY-owned wallets is an extremely time-consuming, laborious process that involves the very manual task of tracing token transfers over time.  *See* Am. Rep. ¶ 18; Kauffman Decl. ¶ 2.  Given the resource and staffing constraints at LBRY—a small start-up with limited means—identifying the universe of LBRY's affiliated wallet addresses was simply not possible by the initial expert report deadline.  As soon as the issue that certain addresses may have been unaccounted for in Dr. Richard's original report was raised to LBRY, the team sought to identify as many additional addresses as was possible.  Kauffman Decl. ¶ 1.

On April 29, 2022, less than one month after Dr. Richard's deposition, LBRY served an amended expert report on the Commission.  As explained in detail in the amended report, the amendments to Dr. Richard's report include:  (i) the removal from his transaction analysis of additional LBRY-affiliated wallet addresses, as well as transactions associated with known wallets for entities that received LBC from LBRY-affiliated addresses related to its Operational and Institutional Funds; and (ii) the removal of additional days from Dr. Richard's regression analysis (and the addition of a 180-day analysis, which the Commission suggested at Dr. Richard's deposition should have been included in his original report, but the inclusion of which did not change Dr. Richard's ultimate conclusion, Mechanic Aff., Ex. 2 (Richard Dep. Tr.) 318:19-319:6).  In addition, Dr. Richard also included in the amended report an even more conservative calculation of his transaction analysis by removing—in addition to transactions associated with LBRY-related wallet addresses and wallet addresses for entities that received LBC from LBRY's Operational and Institutional Funds—transactions on "spike dates" that were more than three times the average long-term transaction size.  Thus, contrary to the Commission's suggestion that Dr. Richard's report "substantively changes the analyses he performed," MOL at 6, Dr. Richard's *analyses and methodologies* remained *exactly the same* as in the initial report—the only changes made were to certain *inputs* to those analyses, such as the number of excluded LBRY-related transactions and the exclusion of additional dates in the regression analysis.  Dr. Richard's underlying methodology—about which the Commission already spent hours deposing him with respect to his original report—did not change.

## **ARGUMENT**

### I.   **THE AMENDED EXPERT REPORT COMPLIES WITH FRCP 26**

#### a.  **Dr. Richard's Amended Expert Report is a Proper Supplementation**

FRCP 26 requires that a testifying expert produce a written report that contains "a

complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  The Rule *requires* that an expert "supplement or correct" a report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A).  Supplementation of an expert report under FRCP 26(e)(1)(A) provides an opportunity for an expert to "correct[] inaccuracies, or fill[] the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Maine Med. Ctr. v. William A. Berry & Son, Inc.*, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017).

A supplemental report that is "submitted in response to criticisms of the expert's opinion or methodology" is permissible "as long as it is consistent with the overall opinion or methodology in the original report and merely provides additional subsidiary details, support, or elaboration."  *Mass. Mut. Life Ins. Co. v. DB Structured Prods., Inc.*, 2015 WL 12990692, at *4 (D. Mass. Mar. 31, 2015); *see also DePaolo v. GHM Portland Mar, LLC*, 2017 WL 3842151, at *5 (D. Me. Aug. 31, 2017) (denying defendant's motion to strike upon a finding that "none of th[e] factual variances" in the expert's supplemental report "presents a new theory of damages or is inconsistent with [the expert's] opinion").  By contrast, if the supplemental report "differs substantially from the [original] report, offers a whole new theory, opinion, or methodology, or is outside of the scope or general scheme of the report, then it is an improper supplementation." *DB Structured Prods., Inc.*, 2015 WL 12990692, at *4; *see also Traverse v. Gutierrez Co.*, 2020 WL 9601831, at *4 (D. Mass. June 18, 2017) ("The Third [Expert] Report is not a [proper] supplemental report.  Rather, it is Plaintiffs' third attempt at redoing their construction expert report.  By his own admission, [expert] changed his methodology and offered new opinions.");

*Macaulay v. Anas*, 321 F.3d 45, 52-53 (1st Cir. 2003) (precluding supplemental expert report that "introduced a new theory of liability only days before the anticipated trial date"); *Maine Med. Ctr.*, 2017 WL 1411478, at *2 (holding that a supplemental report "does not fit comfortably within the contours of Rule 26(e)(2)" where the "new damages theory proposed by [expert] is not properly characterized as a refinement of the original theory of damages" and "instead presents a new theory of damages") (internal quotations omitted).

Courts generally distinguish "true supplementation . . . from gamesmanship, such as new work performed in an attempt to bolster the expert's previously disclosed opinions." *Traverse v. Gutierrez Co.*, 2020 WL 9601831, at *4 (D. Mass. June 18, 2020) (citing *Presstek, Inc. v. Creo, Inc.*, 2007 WL 983820, at *5 (D.N.H. Mar. 30, 2007)). This Court noted that the *Presstek* case "provides useful examples that help distinguish cases in which supplementation is authorized under Rule 26(e) from those where it is not." 2007 WL 983820, at *5. For example, an expert's acknowledgment in his or her supplemental disclosure that the expert applied an incorrect measurement, which was discovered only after preparing the initial report, "is the type of supplemental disclosure that is contemplated by Rule 26(e)." *Id.* Where, however, the expert's supplemental report does not "correct misstatements or misleading omissions in the earlier disclosure" but, rather, includes "new work that attempts to bolster [the expert's] previously disclosed opinions," such attempted supplementation is improper under FRCP 26. *Id.* Indeed, if an amended report weakens—rather than bolsters—the submitting party's position, courts are more likely to consider such amendments to be within the scope of a proper supplementation under FRCP 26. *See Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 76 (1st Cir. 2013) (supplemental expert disclosure, which was produced after the close of expert discovery, permitted where the expert's "supplemental materials reflect a change in calculations

in [the opposing party's] favor").

Dr. Richard's amended report is well within the scope of permissible supplementation under FRCP 26(e).  Significantly, and contrary to the Commission's assertions, Dr. Richard's expert opinions are consistent between his original and amended report.  The Commission erroneously contends that simply because under his *most conservative, alternative calculation* (done specifically in response to the Commission's criticism of Dr. Richard's analysis at his deposition), the on-chain versus off-chain calculation for 2021 resulted in a reduced ratio, that suggests that his original opinion cannot possibly remain unchanged.  MOL at 9-10.  But, Dr. Richard's amended report makes explicit that his opinion remains unchanged specifically because—notwithstanding the reduced ratio—the combined "revised on-chain/off-chain ratio" for the period 2016 through 2021 "is still considerably above 1.0," meaning that even the "conservative amended analysis continues to indicate that the LBC token was used by its holders primarily as a native currency on the LBRY platform to consume digital services, and not for trading and speculative investment gains."  Am. Rep. ¶ 29.

Nor does the amended report include any new methodologies, opinions or theories.  Rather, the amended report merely adds certain inputs and additional data to Dr. Richard's already-established methodology in response to questions raised by the Commission at Dr. Richard's deposition.  *Id.* ¶¶ 8, 12, 16-18.  With respect to his transaction analysis, Dr. Richard's methodology remained the same from the original expert report to the amended one: specifically, in the original report, Dr. Richard deducted 18 LBRY wallet addresses from his calculation dividing the on-chain transaction volume by the secondary market trading volume.  Orig. Rep. ¶ 68.  In the amended report, Dr. Richard applied the same calculation but merely deducted additional addresses from that analysis.  Am. Rep. ¶¶ 16-18.  Similarly, while Dr.

Richard removed from the amended estimation sample in his regression analysis the calendar dates preceding and following historical LBRY announcement dates, his widely-accepted statistical regression methodology remained unchanged. *Id.* ¶¶ 3-9. Moreover, using the same statistical regression calculation, and in response to questions at his deposition as to the lack of a 180-day analysis in the original report, Dr. Richard simply "expanded [the] results of [his] regression analysis to include the regression results when using a 180-day estimation period." *Id.* ¶ 12. Notably, Dr. Richard's "findings concerning the relationship between the LBC token price and two categories of LBRY announcements, as well as the BTC price, remain the same where a longer estimation period is used in the regression analysis." *Id.*

### b. LBRY's Rule 26 Disclosures were Sufficient

The Commission contends that Dr. Richard's amended report violates the disclosure requirements under FRCP 26(a)(2) by failing to include certain required information, notwithstanding that the information has, in fact, been substantially provided and, to the extent the Commission believed that that information was incomplete, it failed to request the information at any time over the prior two months since LBRY served the amended report. *See* MOL at 10-12. First, the Commission claims that the amended report does not disclose Dr. Richard's compensation. *Id.* at 11. But, Dr. Richard's hourly rate was included in the original report, and there was thus no reason to repeat the exact same information in the amended report. Orig. Rep. at ¶ 7. To the extent the Commission suggests that the amended report is lacking because it is unclear "whether there were others that helped [Dr. Richard]," MOL at 11, such a claim is baseless, as nothing in the Federal Rules requires that such information be included in *either* the original or amended report. *See* Fed. R. Civ. P. 26(a)(2)(B). And, in any event, Dr. Richard provided testimony at his deposition concerning the team that assisted him in performing his analyses. Mechanic Aff., Ex. 2 (Richard Dep. Tr.) 41:11-19, 46:14-47:3.

Finally, the Commission is flatly incorrect in stating that LBRY "refuses to disclose what it paid for either expert report," "the number of hours of either Richard or his subordinates," and "the total amount of compensation paid."  MOL at 11-12.  To the contrary, in addition to the disclosure of Dr. Richard's hourly billing rate in the original report, Dr. Richard provided at his deposition the total amount of compensation his company had been paid to date in connection with its engagement by LBRY, as well as the total number of hours he had worked on the project as of that time.  Mechanic Aff., Ex. 2 (Richard Dep. Tr.) 43:13-44:20, 44:2-10.  At no point since Dr. Richard's March 30 deposition has the Commission ever requested additional information or documentation concerning the fees LBRY has paid to Dr. Richard, and LBRY was thus unaware until the filing of the Commission's motion that the Commission even viewed LBRY's disclosure as to compensation as incomplete.

With respect to the list of LBRY-affiliated addresses excluded from Dr. Richard's amended analysis, LBRY provided that information in its amended Responses and Objections to the Commission's Interrogatory Number 6 on April 5, 2022—*four business days* after Dr. Richard's deposition.   Mechanic Aff., Ex. 3 (LBRY's Am. Resps. and Objections to the Comm'n's First Set of Interrogs.) at 2-56.  To the extent the Commission is suggesting that certain addresses beyond what was included in LBRY's amended interrogatory response were excluded from Dr. Richard's amended calculation, it is unclear why the Commission did not ask for such information at any point between the date that LBRY served the report and the Commission's filing of its motion to strike (as the Commission did when it received Dr. Richard's original expert report).  In any event, upon being alerted of this apparent oversight through the filing of the Commission's motion, LBRY has confirmed that the list included in LBRY's amended interrogatory response accounts for *97%* of the addresses excluded in Dr.

Richard's report, and LBRY will provide the few additional addresses to the Commission in short order.[1]

## II.   THE COURT SHOULD NOT STRIKE DR. RICHARD'S AMENDED REPORT

### a.   Dr. Richard's Amended Report was Substantially Justified and Harmless

Under Rule 37, preclusion is not appropriate where the delay in disclosure was either "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). In deciding whether to order the severe sanction of preclusion of a supplemental report as a result of late disclosure, courts in the First Circuit look to the following factors: (1) the history of the litigation; (2) the party's need for the precluded evidence; (3) the party's justification for its late disclosure; (4) the opponent-party's ability to overcome the prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket. *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009). These factors weigh against the drastic finding of preclusion in this case.

First, with respect to the history of the litigation, "[t]his is not a case of a party repeatedly balking at court-imposed deadlines." *Esposito*, 590 F.3d at 79. LBRY has been fully compliant with the dates set forth in the Court's scheduling orders and the submission of Dr. Richard's supplemental report represents the first and only time that LBRY has missed a discovery deadline. *Cf. Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D.*, 456 F.3d 272, 277 & n.4 (upholding the preclusion of a late-disclosed expert witness and noting that the sanctioned party's "dereliction was both obvious and repeated" and that "[t]he record makes manifest that the plaintiff was guilty of several discovery violations besides those related to her expert witness").

---

[1] The Commission's suggestion that Dr. Richard did not include citations to documents relied on in his Amended Report is contradicted by the cite the Commission itself points to in support of this contention. MOL at 10. Far from failing to provide citations to the documents relied upon, Dr. Richard cites to three separate sources in connection with his observation that users registered complaints about the early release of the Odysee application.

Second, the amended report updates inputs and data in certain analyses that are highly relevant to key issues in the case, rendering the need for the report substantial. Without Dr. Richard's amended report, the record on issues such as the on-chain versus off-chain transaction volume and the drivers of LBC token price—key issues in this litigation—are not fully complete. In such a seminal case involving the application of the securities laws to digital assets—a new and evolving area of law—one would expect that the government, whose interest lies in protecting investors, would strive for as accurate and complete a record as possible. Dr. Richard's updated calculations, using the same methodologies as used in his original report, only further that important goal.

The delay was also justified. While the Commission asserts that LBRY had data regarding the additional LBRY wallet addresses in its possession "all along" and "could have made it available to Richard for his original report," MOL at 4, this data is not kept in the ordinary course of LBRY's business and is an extremely complicated and time-consuming process that involves the manual tracking of each address over time. Kauffman Aff. ¶ 2.

The fourth factor—the ability to cure any purported prejudice to the Commission—also weighs in LBRY's favor. As an initial matter, the amended report is not prejudicial: LBRY did not attain a "significant tactical advantage" in submitting this report. *Presstek*, 2007 WL 983820, at *7. Unlike in *Presstek*, where the submitting party requested that their expert conduct *new* tests for a supplemental report and, *before* submitting the report, asked the opposing party's expert questions about those tests during his deposition—all to gain a tactical advantage—Dr. Richard relied on the same analyses and methodologies in his amended report and merely updated certain inputs and assumptions directly in response to questions posed at his deposition. And, in doing so, he arrived at the exact same conclusions as in his original report. Therefore,

nothing in the amended report could conceivably come as a surprise, especially given the amount of time the Commission spent asking about these issues during Dr. Richard's deposition.

Moreover, LBRY's summary judgment briefing contains merely *four* citations to Dr. Richard's amended report, and only for the general proposition—as espoused in Dr. Richard's original report—that on-chain transaction activity surpassed off-chain transaction activity during the period 2016 through 2021.  *See* LBRY's Motion for Summary Judgment (ECF Doc. No. 61) at 3, 23; LBRY's Opp'n to the Comm'n's Motion for Summary Judgment (ECF Doc. No. 74) at 14, 20-21.  To the extent the Commission believes that LBRY's use of the amended report in its summary judgment motion prejudices the Commission, however, the Court may cure any such purported prejudice by ignoring the report in connection with its decision on summary judgment, while still permitting Dr. Richard's amended report to be used at trial.  Additionally, although the Commission failed to request to reopen the deposition of Dr. Richard in the *five weeks* before its opposition to LBRY's summary judgment motion was due, any prejudice that exists and that the Commission has failed to mitigate can easily be cured now through reopening discovery for the express and limited purpose of permitting the Commission to re-depose Dr. Richard on the amended report.  Such a result would have no impact on the court's calendar, as trial is still over two months away and any continued deposition of Dr. Richard would be limited solely to the additional inputs and data included in his amended report.  *See House of Clean, Inc. v. St. Paul Fire and Marine Ins. Co., Inc.,* 775 F. Supp. 2d 302, 316 (D. Mass. 2011) (holding that the expert's supplemental report would not be considered by the court for purposes of its summary judgment determination, but that it would be allowed at trial as long as the expert was made available for a short supplemental deposition).

**b. Preclusion is a "Grave Step" That is not Warranted Under the Circumstances**

The First Circuit has "acknowledge[d] that preclusion of expert testimony is a grave step, not to be undertaken lightly." *Thibeault v. Square D Co.*, 960 F.2d 239, 247 (1st Cir. 1992); *see also DB Structured Prods., Inc.*, 2015 WL 12990692, at *4 ("Nevertheless, even for this 'new' material, the court finds preclusion to be too drastic a remedy.").  Indeed, in light of this principle, the Southern District of New York in *Ripple* declined to strike the Commission's own belatedly filed supplemental report.  Mechanic Aff., Ex. 1 (Ripple Order) at 4 ("Overall, given the harshness of preclusion, I decline to strike [the Commission's expert's] supplemental report.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant LBRY respectfully requests that this Court deny the Commission's motion to strike or preclude the use of LBRY's amended expert report.

Dated: June 29, 2022                    Respectfully submitted,

                                        LBRY, INC.

                                        */s/  Timothy J. McLaughlin* (NH Bar # 19570)
                                        William E. Christie
                                        Timothy J. McLaughlin
                                        Shaheen & Gordon, P.A.
                                        107 Storrs Street
                                        P.O. Box 2703
                                        Concord, NH 03302
                                        (603) 819-4231
                                        wchristie@shaheengordon.com
                                        tmclaughlin@shaheengordon.com


                                        */s/  Keith W. Miller*
                                        Keith W. Miller (*pro hac vice*)
                                        Rachel S. Mechanic (*pro hac vice*)
                                        John T. Dixon (*pro hac vice*)
                                        Perkins Coie LLP
                                        1155 Avenue of the Americas, 22nd Floor
                                        New York, New York 10036-2711
                                        (212) 262-6900
                                        KeithMiller@perkinscoie.com
                                        Rmechanic@perkinscoie.com
                                        JohnDixon@perkinscoie.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  June 29, 2022                                   */s/ Keith W. Miller*
                                                                    Keith W. Miller