UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>LBRY, INC.,<br><br>     Defendant. | Civil Action No. 21-cv-00260-PB |

**COMMISSION'S REPLY TO LBRY'S OPPOSITION TO
MOTION TO STRIKE AMENDED REPORT OF LBRY'S EXPERT**

  LBRY understates the amount of new analysis and new methods in its expert's Amended Report, underplays the effects on the case and the Commission, and shifts the burden of remedying their rule violations onto the Commission. LBRY's position amounts to this: a party can avoid its discovery obligations; produce an expert report with fundamental flaws in analysis, methods, and data; wait to see if the opposing party exposes those flaws and weaknesses in a deposition; and then try to fix its problems after the close of discovery with a new report. That stretches Rule 26(e) past the breaking point and warrants preclusion of the Amended Report.

**I. Preclusion—"Near Automatic" in These Circumstances—Is Justified**

  Preclusion of a late expert report (here, almost three months late, as the Amended Report does not constitute a supplement) is the norm. Fed. R. Civ. P. 26(a)(2)(C); 37(c)(1). Rule 37(c) makes that sanction "near automatic," but the Court has discretion to alter that outcome if the failure was "substantially justified or harmless." *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 20-21 (1st Cir. 2001); Fed. R. Civ. P. 37(c); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009)(not precluding report *under heightened standard* because preclusion was tantamount to dismissal). There is no reason to forgo preclusion here.

### A. The History of the Litigation Weighs In Favor of Preclusion

LBRY claims that since it has not repeatedly balked at court deadlines, preclusion of the Amended Report is not justified. But the First Circuit has held that when a party "had ample to time to conduct discovery and to submit [its] expert reports within the period allotted by the district court" but did not proffer the report until more than a month after the deadline, the profferor "faces a steep, uphill climb" to avoid preclusion. *Macaulay v. Anas*, 321 F.3d 45, 51-52 (1st Cir. 2003)(finding substantial basis for unfair prejudice and affirming preclusion of report). Nor is LBRY's claim that this "represents the first and only time" that it has missed a deadline entirely accurate. Opp. at 12. The key and first deadline LBRY missed here was the production of the LBRY-related wallet addresses to the Commission in response to an interrogatory. That interrogatory answer was fundamental to both Richard's analysis (which is why he amended his work) and to the Commission's analysis of LBRY's LBC volume claims. LBRY missed that deadline by five months (November to April), with its only explanation being that it was time-consuming and labor-intensive to give the accurate answer.

LBRY did not supplement this discovery response until the last day of discovery, and *still* has not given the Commission the full list of LBRY-related wallet addresses that it gave to Richard (a fact LBRY discloses *for the first time* in its Opposition). Opp. at 11-12 (promising to provide them "in short order" three months after giving them to Richard). Nor does Richard list these addresses in his Amended Report, as required by Fed. R. Civ. P. 26(a)(2)(B)(ii), preventing the Commission from analyzing the basis for his conclusions.

### B. LBRY's Delay was Not Justified

LBRY claims that its delay in submitting the Amended Report is justified because it "required the collection of data that was extremely time-consuming and labor-intensive and was thus not available to Dr. Richard at the time of the original report." Opp. at 2. That claim is not

2

persuasive. First, LBRY was asked in the Commission's First Set of Interrogatories in October 2021 to "please identify any LBRY Address corresponding with any virtual location that LBRY has used to hold or store LBRY's Pre-mine." LBRY answered on November 11, 2021, giving six addresses. If there was time-consuming work to identify the addresses, it should have started in October 2021 (and the Commission should have been told it was incomplete).

Second, LBRY CEO Kauffman claims "the difficult process of identifying LBRY-owned wallet addresses *took our team several weeks* to complete." ECF No. 76-5, ¶3. But he also says he began "in short order after Dr. Richard's deposition" on March 30, 2022 to identify the wallet addresses. And LBRY supplemented its interrogatory answer with about 2,460 wallet addresses on April 5, 2022—five days after the deposition. The timing of the supplemental interrogatory answer belies Kauffman's claim of "several weeks" of effort.

Third, LBRY says that "Given the resource and staffing constraints at LBRY … identifying the universe of LBRY's affiliated wallet addresses was simply not possible by the initial expert report deadline." Opp. at 5. But it offers no explanation for why it was not possible, and the claim appears inconsistent with the fact that LBRY went from disclosing six addresses to more than 2,400 addresses in five days.

Fourth, although LBRY tries in vain to justify its delay about the wallet addresses, it never justifies the delayed production of the rest of the report, such as the changed event study, the new regression analysis, and Richard's attempts to address the "inflation bias" in the on-chain transaction volume. In truth, there is no justification here—the Amended Report is merely LBRY's attempt to fix a flawed initial report by changing the data and adjusting the methodology in a way that exceeds the bounds of Fed. R. Civ. P. 26(e).

**C. LBRY Contradicts Its Own Claim of a Substantial Need for the Report**

LBRY first claims that the report is "highly relevant to the key issues in the case" and

that "the on-chain versus off-chain transaction volume and the drivers of LBC token price" are the "key issues in this litigation." Opp. at 13.  Three paragraphs later it claims that there is no prejudice because its summary judgment brief contains four citations to the Amended Report for the apparently-now-unimportant "general proposition … that on-chain transaction activity surpassed off-chain transaction activity…." Opp. at 14.  This contradiction exposes the inconsistency of LBRY's position: either these are key issues and there is substantial prejudice from LBRY's reliance on the expert report in the summary judgment briefing, or they are not key issues and preclusion is warranted as a result.

### D. LBRY Dramatically Underestimates Prejudice and Harm

LBRY ignores the prejudice to the Commission caused by the new report.  This Court has found prejudicial the "significant tactical advantage" that came from making a late expert disclosure until "after summary judgment briefing was nearly complete" and "only four days before [the expert] was deposed."  *Presstek, Inc. v. Creo, Inc.*, 2007 WL 983820, at * 7 (D.N.H. 2007).  LBRY disclosed the new Richard report only four business days before the parties' summary judgment motions were due and *after* the expert was deposed and discovery had been over for a month.  And contrary to LBRY's claims, Richard used new methods and new assumptions (including changing his regression analyses to exclude additional days, creating a new regression analysis, dropping related-party transactions from his volume analysis, and dropping certain days to try to "mitigate" the inflation bias in his original results).  These are analogous to the "additional procedures" and "new tests" discussed in *Presstek*. *Id.* at *3, 7.

LBRY also argues that the Court cannot find prejudice because the Commission did not move this court to reopen discovery, re-depose Richard, demand the production of the information relied on by Richard that LBRY still has not produced, and force LBRY to produce the required expert disclosures.  Opp. at 10, 11, 14.  LBRY's approach runs against the

provisions of Rule 26, which puts the burden on the proffering party to meet the deadlines, make the correct disclosures, and request from the court additional time if necessary, as well as Rule 37, which authorizes preclusion if they do not.

The Commission based strategic decisions on LBRY's initial expert report. The fundamental flaws in the original report influenced the Commission's decision not to ask for a rebuttal report, its decision to expose those flaws during deposition (rather than wait for trial), and what the Commission chose to focus on in depositions of LBRY's executives. LBRY's change in its expert's analysis undermines all of those decisions in a way that is a) prejudicial and b) not fixable in the ways LBRY suggests. Now discovery is over, summary judgment briefing (in which LBRY relies on the Amended Report) is complete, the Commission's *Daubert* motion is due soon, and the parties must now prepare witness and exhibit lists for a trial currently scheduled for early September. The Amended Report does not make the required Fed. R. Civ. P. 26 disclosures needed to challenge the report. And the Commission has no opportunity to rebut the Amended Report or question Richard about it. The Amended Report delivers substantial tactical advantage to LBRY and substantial harm and prejudice to the Commission.

LBRY offers no compelling reason why its new report—served months late without justification; containing new methods, analysis, and data; and harming the Commission in this litigation—should nevertheless be permitted. The Commission asks this Court to grant its Motion to Strike or Preclude the Report (ECF No. 71).

Dated:  July 7, 2022                                              Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Marc Jones*
Marc Jones (Mass Bar No. 645910)

        Peter Bryan Moores (Mass Bar No. 658033)
        Amy Harman Burkart (Mass. Bar No. 651828)
        Senior Enforcement Counsel
        Boston Regional Office
        33 Arch Street
        Boston, MA  02110
        (617) 573-8947 (Jones direct)
        jonesmarc@sec.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 7, 2022, I caused true and correct copies of the foregoing to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

        */s/ Marc Jones*
        Marc Jones