# EXHIBIT A

**DRAFT**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No. 21-cv-00260 |
| LBRY, INC., | ) ) | |
| Defendant. | ) ) | |

### AMICUS BRIEF FOR AMICUS CURIAE NAOMI BROCKWELL
### IN SUPPORT OF DEFENDANTS' MOTION TO LIMIT THE COMMISSION'S REMEDIES

**DRAFT**
William S. Gannon
740 Chestnut Street
Manchester, New Hampshire 03104
**bgannon@gannonlawfirm.com**
**Phone:** 603-621-0833
**Fax:** 603-621-0830


John E. Deaton
The Deaton Law Firm
450 North Broadway
East Providence, R.I. 02914
All-deaton@deatonlawfirm.com
Phone: 401-351-6400
Fax: 401-351-6401


Attorneys for Amicus Curiae
NAOMI BROCKWELL

December 15, 2022

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………………………….ii

INTEREST OF AMICUS CURIAE……………………………………………………………….1

ARGUMENT…………………………………………………………………………………........2

I. THE TOKEN ITSELF IS NEVER THE SECURITY………………….……………..…..2

II. THE *HOWEY* ANALYSIS APPLIES TO SPECIFIC TRANSACTIONS
AT THE TIME THE TRANSACTIONS WERE MADE…………………….………..........4

III. NAOMI BROCKWELL'S LBC TOKENS ARE NOT SECURITIES
UNDER THE "CHARACTER IN COMMERCE" TEST……………………….………...4

IV. THE LBC OWNED BY BROCKWELL DOES NOT SATISFY *HOWEY*…………..………5

V. SECTION 4 EXEMPTIONS DO NOT PROTECT BROCKWELL'S INTERESTS …..…......6

VI. ONCE A SECURITY NOT ALWAYS A SECURITY………………………….….…..7

CONCLUSION………………………………………………………………………………........7

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946) ……………………………………………………………..……………3,4,7

*SEC v. Telegram Grp. Inc.*,
448 F. Supp. 3d 352 (S.D.N.Y. 2020) …………………………………………………………3,4

*SEC v. Telegram Grp. Inc.,*
No. 19-cv-9439 (PKC), 2020 WL 1547383 (S.D.N.Y. Apr. 1, 2020) ……………………………3

*Glen-Arden Commodities, Inc. v. Costantino*
493 F.2d 1027 (2d Cir. 1974)………………………………………………………………....4,5

*Miller v. Cent. Chinchilla Grp., Inc.*,
494 F.2d 414 (8th Cir. 1974)………………………………………………………………..4

*Kemmerer et al. v. Weaver et al.*,
445 F.2d 76 (7th Cir. 1971) ……………………………………………………….................4

*SEC v. Shavers*,
4:13-cv-00416, 2013 WL 4028182 (E.D. Tex. Aug. 6, 2013). ………………………..…............4

*SEC v. Aqua-Sonic Products Corp.*,
524 F. 866 (S.D.N.Y. 1981); ……………………………………………………………..4

*SEC v. C.M. Joiner Leasing Corp.,*
320 U.S. 344, 352-53 (1943). ……………………………………………………….............5,6

*United Hous. Found, Inc. v. Forman*,
421 U.S. 837, 852 (1975) ………………………………………………………………....5

*S.E.C. v. Cavanagh*,
155 F.3d 129, 133 (2d Cir. 1998) ………………………………………………………....6

**Statutes**

15 U.S.C. § 77d(a)(1)-(2) …………………………………………………………..……..6

**Other Authorities**                                                                                                          **Page(s)**

Lewis Cohen *et al.*, *The Ineluctable Modality of Securities Law: Why Fungible Crypto Assets Are Not Securities*, Nov. 10, 2022, Available at https://dlxlaw.com/wp-content/uploads/2022/11/The-Ineluctable-Modality-of-Securities-Law-DLx-Law-Discussion-Draft-Nov.-10-2022.pdf ...............................................................................................1,4,7,8

William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018) U.S. Securities and Exchange Commission. Available at https://www.sec.gov./news/speech/speech-hinman-061418. ……………………...3

Mar. 7, 2019 Ltr. From Chairman J. Clayton to Congressman Ted Budd. Coin Center. https://www.coincenter.org/app/uploads/2020/05/clayton-token-response.pdf ........................3,7

SEC Press Rel. No. 33-5347. *Guidelines As To The Applicability of the Federal Securities Laws To Offers And Sales Of Condominiums Or Units In A Real Estate Development* (Jan. 4, 1973). U.S. Securities and Exchange Commission. Available at https://www.sec.gov/rules/interp/1973/33-5347.pdf .................................................4

## INTERESTS OF *AMICUS CURIAE*

Naomi Brockwell ("Brockwell") is well-known to this Court. She supplied a Declaration, dated April 28, 2022, which was offered in support of LBRY's Motion for Summary Judgment. Doc. No. 61-1. In fact, Brockwell's interests in this litigation were highlighted during oral argument. *See Hr.'g Tr.* 30:8-16 (Jul. 20, 2022). Through user tips, purchases by viewers, and user rewards, Brockwell has accumulated over 261,500 LBC. Doc. No. 61-1. She has never cashed out any of her LBC because it is far more valuable for her to keep the LBC attached to her channel because "staking" helps her videos get viewed by a larger number of people. *Id.* To this day, **Brockwell has never purchased or sold a single LBC**. *See Supp. Decl. of Naomi Brockwell,* attached as Exhibit A. Brockwell uses the LBRY blockchain every day. *Id.* During the last five years, Brockwell accumulated LBC tokens through her channel but was originally unaware that the tokens had monetary value. *Id.*

On November 7, 2022, this Court entered an Order granting the SEC's Motion for Summary Judgment. Doc. No. 86. The Court's Order does not reference secondary market acquisitions of LBC. *Id.* Nor does it address LBC token holders, like Brockwell, who acquired LBC for non-investment purposes. *Id.* This Court concluded, however, that many individuals, like Brockwell, acquired LBC for consumptive use only. *See Hr.'g Tr.* 30:18-20 (Jul. 20, 2022) ("I think this record does contain evidence that there are consumptive uses for LBC. I think that's undeniable.") (Barbadoro, J.). However, the Court's Order failed to "distinguish among the sales that were made to purchasers that had a *bona fide* consumptive intent and those who were offered, and who purchased, LBC tokens with a reasonable expectation of profit from the efforts of LBRY, Inc." Lewis Cohen *et al.*, *The Ineluctable Modality of Securities Law: Why Fungible Crypto Assets Are Not Securities*, Nov. 10, 2022, attached as Exhibit B at p. 84.

1

On November 21, 2022, the Court held a status conference to discuss appropriate remedies sought by the Commission. *See* Doc. No. 89-1 at 2. LBRY has offered to divest itself of its remaining pre-mined tokens thus, "secondary token holders will no longer have any reasonable expectation of profit based on the entrepreneurial or managerial efforts of LBRY." *Id.* At the November 21, 2022 status conference, this Court recognized the need for clarity and "urged the Commission to work with LBRY to resolve this litigation, **including by providing clarity to secondary LBC holders**." Doc. No. 89-1 at 3-4 (emphasis added). According to LBRY, it "provided the Commission with a settlement proposal consistent with the framework **laid out by the Court**." *Id.* at 4 (emphasis added). After the parties were unable to reach a resolution consistent with this Court's suggestion, including clarity regarding secondary market sales, LBRY filed a Motion to Limit the Commission's Remedies. Doc. No. 89-1. Clearly, Brockwell, as well as hundreds of thousands of other users, have significant interests as secondary market token holders – people who have not transacted with, or acquired LBC from LBRY or its executives, and who do not view LBC as an investment. Today, LBC holders, like Brockwell, arguably have a greater interest moving forward than LBRY. This Court recognized that LBRY "could go out of business today and the LBRY blockchain would continue in perpetuity just like the Bitcoin blockchain." *Hr.'g Tr.* 40:9-11 (Jul. 20, 2022) (Barbadoro, J.). LBRY has indicated that it will be dissolving the corporate entity. Doc. No. 89-1 at 6. Thus, there are many holders, like Brockwell, who want to use LBC on the LBRY blockchain and should be able to do so without confusion over whether secondary sales are restricted.

## ARGUMENT

**I.     THE TOKEN ITSELF IS NEVER THE SECURITY**

There is no case law from the Supreme Court or any appellate court that analyzes whether an underlying asset of an investment contract is itself a security. The reason there is no

precedent is because the underlying asset *utilized in an investment contract transaction* is **never** the security. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) ("If that test be satisfied, it is immaterial… whether there is a sale of property with or without intrinsic value."); *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020) ("the security…is not simply the Gram, which is little more than alphanumeric cryptographic sequence."). For example, claiming the LBC token itself is a security would be akin to calling the oranges in *Howey* securities. In *Telegram*, the Court clarified its original decision, making clear that the underlying asset (whether oranges or digital tokens) are not themselves investment contracts. *See SEC v. Telegram Grp. Inc.,* No. 19-cv-9439 (PKC), 2020 WL 1547383 at *1 (S.D.N.Y. Apr. 1, 2020) (clarifying that the central point of the Court's holding was that "the 'security' was neither the Gram Purchase Agreement *nor the Gram*."). Likewise, a former SEC Director unequivocally stated: "the token – or coin or whatever the digital information packet is called – **all by itself** is not a security, just as the orange groves in *Howey* were not." William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018) (emphasis added).[1] Director Hinman noted that "the digital asset itself is simply code." *Id*. Director Hinman emphasized, "that the analysis of whether something is a security is not static and does not strictly inhere to the instrument." *Id.* Just like any other commodity, "investment contracts can be made out of virtually any asset (including virtual assets)." *Id*. Former SEC Chairman Clayton also agreed. *See Mar. 7, 2019 Ltr. from Chairman J. Clayton to Congressman Ted Budd* ("I agree that the analysis of whether a digital asset is offered or sold as a security is not static and **does not strictly inhere to the instrument**.") (emphasis added).[2] These SEC statements make sense considering any asset or commodity can be offered as a security, whether

---

[1] Available at https://www.sec.gov./news/speech/speech-hinman-061418.
[2] Available at  https://www.coincenter.org/app/uploads/2020/05/clayton-token-response.pdf.

that asset be orange groves,[3] whiskey,[4] chinchillas,[5] condos,[6] beavers,[7] or Bitcoin.[8] When an asset is offered and sold as an investment contract, therefore a security, it does not transform the underlying asset itself into a security. Oranges remain oranges and LBC remains LBC – digital code. Recently, an extensive and comprehensive study was published reviewing every single relevant federal appellate case that has applied *Howey*. The study confirmed that no federal appellate court has ever held the underlying asset subject to an investment contract transaction, is itself an investment contract. *See* Exhibit B.

## II. THE *HOWEY* ANALYSIS APPLIES TO SPECIFIC TRANSACTIONS AT THE TIME THE TRANSACTIONS WERE MADE

The SEC has argued that what matters in this case is "the economic reality of a transaction." Doc. No. 70 at 15. Each transaction "must be examined as of the time that the transaction took place." *SEC v. Aqua-Sonic Products Corp.*, 524 F. 866, 876 (S.D.N.Y. 1981); *Telegram Grp.,* 448 F. Supp. 3d 352, 368 ("*Howey* requires the Court to examine the series of understandings, transactions, and undertakings **at the time they were made**.") (emphasis added). Thus, each *Howey* factor must be satisfied for each transaction and each transaction must be examined at the time that it was made. Any potential injunction issued by this Court should expressly permit secondary market sales of LBC by persons unaffiliated with LBRY. Likewise, any potential injunctive relief should expressly permit the continued consumptive use of LBC.

## III. NAOMI BROCKWELL'S LBC TOKENS ARE NOT SECURITIES UNDER THE "CHARACTER IN COMMERCE" TEST

---

[3] *Howey*, 328 U.S. 293 (1946).
[4] *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1034 (2d Cir. 1974).
[5] *Miller v. Cent. Chinchilla Grp., Inc*., 494 F.2d 414 (8th Cir. 1974).
[6] SEC Rel. No. 33-5347 (Jan. 4, 1973).
[7] *Kemmerer et al. v. Weaver et al*., 445 F.2d 76 (7th Cir. 1971).
[8] *SEC v. Shavers*, 4:13-cv-00416, 2013 WL 4028182 (E.D. Tex. Aug. 6, 2013).

4

Considering the inherent characteristics of the underlying asset is critical *before* conducting a *Howey* analysis. *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1034 (2d Cir. 1974). "The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 352-53 (1943). The bottom line is that "[w]hen a purchaser is motivated by a desire to use or consume the item purchased…**the securities laws do not apply**." *United Hous. Found, Inc. v. Forman*, 421 U.S. 837, 852 (1975) (emphasis added). In part, this was a case of first impression and the parties and Court struggled to find the appropriate test to apply. *See Hr.'g Tr.* 51:1-7 (Jul. 20, 2022) (Barbadoro, J.) ("But then you still have to ask in a mixed motive case if some acquirers are acquiring for purely consumptive and others are acquiring purely for investment, what is the test by which a judge evaluates that kind of a case which I don't think any of the cases I've seen have really evaluated in detail those kinds of -- that kind of problem, and that's what we seem to have here."). In responding to this Court's inquiry, the SEC's replied: "Your Honor, I agree it is a tricky problem not fully addressed by the law." *Id*. at 51:18-19 (SEC Attorney Jones). Yet, it is indisputable, that the securities laws do not apply to the LBC acquired by Brockwell in the secondary market, completely independent of LBRY.

IV.     THE LBC OWNED BY BROCKWELL DOES NOT SATISFY *HOWEY*

Not only did Brockwell not acquire LBC from LBRY, or its executives, she has ***never sold or purchased a single LBC token***. Exhibit A. Furthermore, she has never cashed out any of her LBC because it is far more valuable for her to keep the LBC attached to her channel. *See* Doc. No. 61-1. Considering that Brockwell acquired LBC through her channel and was unaware that the tokens had monetary value, the SEC must concede that the first prong of *Howey* could never be satisfied. Furthermore, under these uncontested facts, it cannot be argued that

5

Brockwell entered into a common enterprise with LBRY or any other LBC token holders. LBRY will soon cease to exist, making it factually impossible for a common enterprise to exist. LBRY may have conceded the common enterprise factor for purposes of summary judgment, but token holders, like Brockwell, have not. Additionally, considering that Brockwell was unaware of any monetary value associated with LBC, she could not have had a reasonable expectation of profits. Finally, any tipping or benefit that she did receive was solely due to her own efforts. The SEC is unable to satisfy even a single factor of the *Howey* test.

**V.    SECTION 4 EXEMPTIONS DO NOT PROTECT BROCKWELL'S INTERESTS**

The SEC may attempt to argue that Section 4 exemptions protect secondary market acquirers. Any such argument is a red herring and not true. Section 4 exemptions *only* apply to a security subject to registration under Section 5. *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344 (1943) at n.3 ("They had to be securities to be exempt securities under the Act." (citing 15 U.S.C. Sec.77c)). Thus, if the SEC attempts to argue Section 4 exemptions offer protections to holders like Brockwell, the SEC is admitting it views LBC tokens as securities. If LBCs are securities "the burden shifts to [Brockwell and others] to show that the securities [are] exempt from the registration requirement." *S.E.C. v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998). Section 4(a)(1) exempts "transactions by any person other than an issuer, underwriter, or dealer," while 4(a)(2) exempts "transactions by an issuer not involving a public offering." 15 U.S.C. § 77d(a)(1)-(2). Section 2(a)(11) defines "underwriter" as "any person who has purchased from an issuer with a view to . . . the distribution of any security." *Id.* Exchanges, like Coinbase, by definition, constitute an issuer, underwriter, or dealer so they would be unable to sell LBC tokens. Moreover, any holder with an intent to sell or transfer (e.g., tipping with LBC) could be deemed an issuer or underwriter. *Id.* Therefore, Section 4 exemptions offer the secondary user no protection or clarity.

## VI.  ONCE A SECURITY NOT ALWAYS A SECURITY

If the Court issues injunctive relief, it is critical that the Court distinguish secondary market transactions. Even if LBC was offered and sold by LBRY as an unregistered security, the next subsequent transfer or sale of that LBC does not equal the same. This distinction between offer and sale transactions and the underlying crypto assets is critical because facts and circumstances change. *Howey* is illustrative. The original sale of the orange groves constituted an investment contract because it was placed in context with the investor also hiring the W.J. Howey Co. to provide all maintenance and services associated with the orange groves. If the original purchaser sold the land thereafter, unrelated to the W.J. Howey Co., those same plots of land and orange trees would no longer constitute investment contracts. Former SEC Chairman Clayton addressed this issue in his Mar. 7, 2019 letter: "A digital asset may be offered and sold initially as a security…but that designation may change over time if the digital asset later is offered and sold in such a way that it will no longer meet that definition." *See supra*, note 2. Just as no federal appellate court has ever held that the underlying asset subject to an investment contract transaction is itself an investment contract, there is no federal case finding a subsequent transfer of that asset to be a securities transaction. *See* Exhibit B.

## CONCLUSION

At the November 21, 2022 status conference, this Court expressed an intent to facilitate a resolution of the remaining issues in this case and a desire for the SEC to issue clarity regarding secondary sales. Doc. No. 89-1 at 3-4. Specifically, this Court expressed a desire for a resolution that would allow LBC holders, like Brockwell, to continue to use LBC on the LBRY blockchain, without any confusion over whether those secondary sales are restricted. *Id*. Despite this Court's recommendation, coupled with the undeniable truth that many holders did not acquire LBC for investment, the SEC is unwilling or unable to provide clarity regarding secondary market

7

transactions. The Court ruled that LBRY offered and sold unregistered securities in the form of LBC tokens, but that does not mean that Brockwell and others are holding and using unregistered securities. Brockwell, and thousands of others, could be directly and negatively impacted if the Court were to issue the extraordinary remedy of a permanent injunction without clarifying that the LBC token itself and secondary market transactions are still permitted and do not constitute securities.[9] It is not hyperbole to suggest that an attempt to apply the Court's decision regarding LBRY's offer and sale of securities to sales in the secondary market could have an extremely adverse effect not only on LBC token holders but the entire blockchain industry. The SEC made its point by bringing this enforcement action against LBRY and securing a win at summary judgment. This Court's ruling being stretched to reach secondary market sales by acquirers with no investment intent would mean that people, like Brockwell, who acquired a non-financial asset, would be deemed to have entered into a common enterprise with an entity (LBRY) that no longer exists. Since *Howey*, every case in which an investment contract was found, privity between the buyer and the promoter always existed. *See* Exhibit B. That is not the case here nor is it the case in most secondary market transactions. Despite this Court's strong recommendation to provide clarity, the SEC either disagrees or prefers regulatory uncertainty regarding secondary market transactions. Therefore, any potential injunction issued by this Court, should expressly permit secondary market sales of LBC by persons unaffiliated with LBRY. Likewise, any potential injunctive relief should expressly allow the continued consumptive use of LBC.

---

[9] In considering the briefing on the effect of the Court's ruling on, inter alia, the nature of the token itself and secondary sales, the Court is empowered to, in essence, construe LBRY's Motion to Limit the Commission's Remedies as a Motion for Clarification of the Court's Summary Judgment Memorandum and Order (Doc. No. 86). Since the SEC refuses to clarify secondary market LBC transactions, a clarification of the Court's order is appropriate. This Court's ruling has been interpreted to "characterize LBC itself as a security, ruling that the offer and sale of LBC tokens (apparently all offers and sales, regardless of the specific circumstances of the transaction) violated Section 5 of the Securities Act…" Exhibit B at p. 83.