*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO MARCH 27, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                        \*
U.S. SECURITIES AND EXCHANGE            \*
COMMISSION,                             \*
                                        \*
                  Plaintiff,            \*   1:21-cv-260-PB
                                        \*   November 21, 2022
                  v.                    \*   2:04 p.m.
                                        \*
LBRY, INC.                              \*
                  Defendant.            \*
                                        \*
                                        \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO


Appearances:


For the Plaintiff:          Peter Moores, Esq.
                            Marc Jonathan Jones, Esq.
                            Securities and Exchange Commission



For the Defendant:          Keith Miller, Esq.
                            Rachel Mechanic, Esq.
                            Emily Drinkwater, Esq.
                            Perkins Coie LLP

                            Timothy John McLaughlin, Esq.
                            Shaheen & Gordon



Court Reporter:             Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            U.S. District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603) 225-1442

P R O C E D I N G S

1

2          THE COURT:  Good afternoon, Judge.  We are here for

3     a status conference in 21-cv-260-PB, U.S. Securities and

4     Exchange Commission vs. LBRY, Inc.

5          THE COURT:  All right.  I wanted to consult with you

6     regarding our next steps.  Let me first hear from the SEC and

7     then from LBRY.

8          MR. MOORES:  Thank you.  Peter Moores on behalf of

9     the Securities and Exchange Commission.

10          We have had discussions with counsel for LBRY and

11     have tried to fashion a schedule for the Court going forward.

12     I think next steps would be remedies.  The parties have spoken

13     to see if we could, you know, resolve it short of the Court's

14     involvement.

15          But barring that, we think that there's probably a

16     need for a very short period of -- and when I say we, again,

17     this is just the Commission's position.  We are -- we're not

18     currently in agreement on a schedule.  But we believe there

19     would be just a need for a short period of discovery, we're

20     proposing 45 days, and that is just to determine whether or

21     not -- how to calculate if there's to be disgorgement or some

22     other equitable remedy here and just sort of to update some of

23     the discovery that we have already received from LBRY as to

24     sort of subsequent sales in order to make a calculation and

25     make a recommendation or a proposal to the Court.  We think

1    that that would then follow with a briefing schedule.

2         So essentially the SEC's brief on remedies would be

3    due approximately 60 days from today, so that would be

4    approximately January 20th.  Then LBRY, to the extent it wanted

5    to file a brief in opposition or with its own proposal as an

6    appropriate remedy, would be following the Court's schedule,

7    which I think is about three weeks later, and that's about

8    February 10th, 2023, with a reply brief due about a week later,

9    according to the local rules as to scheduling, approximately

10   February 17th.

11        So the 45 days, your Honor, would take us to about

12   January 5th.  That would just give us time to propound sort of

13   updated interrogatories or requests and then our brief would be

14   due 15 days after the close of that brief factual window --

15   factual discovery window for -- only for remedies purposes,

16   your Honor.

17        THE COURT:  Do you anticipate the need for an

18   evidentiary hearing?

19        MR. MOORES:  I would think that we could do it on

20   the papers, your Honor, with perhaps an affidavit submission

21   basically calculating the number of sales and the amount of

22   money that was generated and what would be appropriate other

23   remedies, injunctive relief, penalties, et cetera, your Honor.

24        So at this time we would not anticipate the need for

25   an evidentiary hearing.

1          THE COURT:  And what have you done to try to meet

2     and confer and agree upon a proposed schedule?

3          MR. MOORES:  Your Honor, we've spoken a couple times

4     with LBRY's counsel and as of the last conversation, we did not

5     have an agreed-upon schedule, although I leave it to Mr. Miller

6     or Ms. Mechanic as to what LBRY's current position is.  It

7     might have changed since we last talked.

8          THE COURT:  All right.  What are LBRY's views as to

9     how we should proceed?

10         MR. MILLER:  Good afternoon, your Honor.  Keith

11    Miller representing LBRY.

12         Your Honor, to be frank, the company doesn't have

13    45 days.  It has --

14         THE COURT:  I'm sorry.

15         MR. MILLER:  It has a --

16         THE COURT:  I'm sorry.  Could you repeat what you

17    said?  I didn't hear it all.

18         MR. MILLER:  Sure.

19         The company doesn't have 45 days.  Okay?  And I've

20    explained that to the SEC in an attempt to try to resolve this.

21         The SEC is entitled -- is asking for three things,

22    your Honor:  An injunction, disgorgement, and civil penalties.

23         I've explained to the SEC that disgorgement would

24    not be appropriate in this case.  Why?  Because they have

25    alleged in their complaint that all the money that they raised

1   in connection with this Section 5 violation went into the

2   operations.  It's paragraph 6 of their -- of their -- of their

3   complaint.  Now they want to get disgorgement.

4        I've explained to them -- there's a recent Supreme

5   Court case called *SEC vs. Liu* where the Supreme Court has said

6   if you're going to get disgorgement -- first of all, it's

7   questionable whether you can get disgorgement in a Section 5

8   case, but if you do get disgorgement, they have to be offsetted

9   by legitimate business expenses.  The SEC has -- has pled that

10  the -- everything they've raised was used for operations here.

11       In addition, in the most recent settlement case --

12  well, large settlement case that the SEC has brought against --

13  in New York in *SEC vs. Kik*, which they settled, after a finding

14  on summary judgment, the SEC ended up not obtaining

15  disgorgement in that case and getting about a 5 percent of the

16  total raise in a fine.

17       The SEC doesn't want to talk about that.  They want

18  disgorgement.  They want to have a hearing on disgorgement.

19  And I think what we would ask the Court to do is appoint an

20  immediate mediator to try to get this resolved.  The company

21  doesn't have 45 days.

22       THE COURT:  Okay.  What is the SEC's response to

23  LBRY's request that I appoint a mediator?

24       MR. MOORES:  Your Honor, I'm not sure if that would

25  actually advance the situation here.

1           I believe, as Mr. Miller was alluding to, there's a

2   difference of opinion as to the applicable law and that's why

3   we were proposing a briefing schedule to the Court, to decide

4   what is the appropriate equitable remedy, disgorgement,

5   et cetera.

6           With respect to mediation, I think what Mr. Miller

7   started with is that the company doesn't have long to live.

8   I'm not sure if the parties could get through mediation any

9   quickly -- or more quickly than it could in terms of the

10   limited discovery and, you know, within 60 days our brief would

11   be to the Court.

12           THE COURT:  Well, let me just interrupt and ask.  I

13   may be reading into his statement, but I think his position is

14   that disgorgement would not be an appropriate remedy in this

15   case based on facts that could be presented without any

16   discovery and that we should really have briefing on an

17   accelerated basis on the pure legal issue if we can't agree to

18   mediation, that we should give him a chance to move before

19   discovery that the remedy you're seeking is not one that you're

20   legally entitled to have.

21           So I -- I strongly favor efforts at this point for

22   the SEC to work with LBRY and try to come up with an acceptable

23   way to resolve this case.  It seems to me that the -- the

24   principal point that the SEC was trying to make it made in its

25   summary judgment motion and it -- either that will be appealed

1    ultimately or -- or not.

2         But what follows from here seems to be the kind of

3    thing that I would very strongly favor trying to resolve by

4    agreement.  And if we can't, my inclination would be to say,

5    all right, let's give LBRY a chance to present what I think

6    they're arguing to me, that, Judge, you just shouldn't do this

7    and there are legal reasons why the remedy they're seeking are

8    not appropriate.

9         And so I guess that's -- my starting point is, boy,

10   this seems like a case where the SEC should be willing to

11   engage in efforts to mediate, but, secondly, given LBRY's

12   precarious financial situation, I would be strongly inclined --

13   if what LBRY's really seeking in the alternative is an

14   opportunity to persuade me that as a matter of law the SEC

15   shouldn't get the remedy it's seeking, I'd be inclined to do

16   that before ordering a period for additional discovery that

17   seems to be based on the assumption that, of course, the SEC's

18   entitled to disgorgement.

19        So let me just go back to LBRY and say have I read

20   you right, sir?  Are you really saying to me that, hey, Judge,

21   we'd really like mediation, but if you don't -- for some reason

22   aren't inclined to do that, give us a chance to persuade you on

23   an expedited basis that as a matter of law the SEC should not

24   be entitled to the remedy it's trying to seek from us and there

25   shouldn't be any period of discovery on it?

```
1              MR. KAUFFMAN:  May I speak?

2              THE COURT:  It's up to -- your lawyer should -- if

3     you want to speak privately with your lawyer, I can move you

4     into a --

5              MR. KAUFFMAN:  Keith, I would like to speak, if

6     that's all right you.

7              THE COURT:  It's okay --

8              MR. MILLER:  Your Honor --

9              THE COURT:  Sir, let me ask counsel first.

10             Would you like an opportunity to speak to your

11    client in a breakout room or -- I'm generally very willing to

12    hear what a client wants to say, so -- but if you want to speak

13    to him in a breakout room first, I'm willing to move you into a

14    breakout room.  So let me just ask counsel first.

15             And I say this, Mr. Kauffman, because I've worked

16    with lawyers over my entire career.  They're control freaks and

17    they can't stand the thought that their clients would want to

18    say anything to the judge and they're scared to death whenever

19    the client does.  So just as a courtesy to the lawyer, I'm

20    going to give him a chance to talk to you, if that's what he

21    wants to do.  But if he wants -- if he will let you speak, I'd

22    be happy to.

23             So let me just ask counsel.  What's your preference

24    here?  Do you want to speak to him in a breakout room --

25             MR. MILLER:  Yeah.
```

1          THE COURT:  -- or should he fire away?

2          MR. MILLER:  If we could speak in a breakout room --

3          MR. KAUFFMAN:  Well, I would like to speak to the

4    judge, though.

5          THE COURT: Yeah, I --

6          MR. MILLER:  Yes, I --

7          THE COURT:  -- I will give you ultimate -- I just

8    want to ask you to consult first.

9          MR. KAUFFMAN:  Okay.

10         THE COURT:  At the end of the day, Mr. Kauffman, if

11   after consulting you still want to speak, I won't -- I won't

12   shut you down.  I'll give you a chance to speak.  Okay?

13         So, Jen, just move them into a breakout room.  You

14   can both exit out', when you're ready, you'll come back.

15         But, Mr. Kauffman, I want to be clear.  I won't deny

16   you the opportunity to speak.  Okay?

17         MR. MOORES:  Your Honor, if I may, before we go to

18   breakout room, just one --

19         THE COURT:  Who's speaking now?

20         THE CLERK:  Mr. Kauffman already --

21         MR. MOORES:  Peter Moores on behalf of the SEC.

22         THE CLERK:  -- went into the breakout room.

23         THE COURT:  Yeah, Mr. Kauffman's already in the

24   breakout room.  So I'm going to move --

25         MR. MOORES:  Okay.

1          THE COURT:  -- counsel there as well.

2          MR. MILLER:  Thank you, your Honor.

3     (Defendant and counsel conferred in a breakout room.)

4          THE COURT:  Jen, you haven't moved him?

5          THE CLERK:  He is in there.  His audio wasn't

6  working, so his cell phone is in the breakout room and he's

7  speaking to --

8          THE COURT:  I still see him on my screen.

9          THE CLERK:  Yeah.  I added him in there.  He didn't

10  choose to go in with his video.  He only chose to go in with

11  his audio.

12          THE COURT:  Oh, okay.  I just don't want him to

13  think we can hear what he's saying.

14          THE CLERK:  Yeah.  He knows that we can't.

15          THE COURT:  Okay.  All right.

16          Hold on.  Now he went in.

17          THE COURT:  All right, Mr. Kauffman.  Your lawyer's

18  going to move -- move the lawyer back in for a second.

19          MS. MECHANIC:  Can you put me in there as well?

20          THE CLERK:  Yup.

21          MS. MECHANIC:  This is Rachel Mechanic.  Thank you.

22          THE CLERK:  Yeah.

23          THE COURT:  This is musical chairs here.

24          THE CLERK:  Do you want to go back in now, Attorney

25  Mechanic?

1          MS. MECHANIC:  Yes, if there's --

2          MR. MILLER:  We're back, Rachel.

3          MS. MECHANIC:  Oh, you're back.  Okay.  Then no.

4          THE CLERK:  Okay.

5          MS. MECHANIC:  Thank you.

6          THE COURT:  All right.  So, Mr. Kauffman, you've had

7    a chance to consult with your lawyer.  As I said, I won't cut

8    you off if you wanted to say something.  Did you want to speak?

9          MR. KAUFFMAN:  Well, I promise not to talk for too

10   long, but I just wanted to be sort of explicit about the

11   current situation.

12          I mean, we have been going back and forth with the

13   SEC for five years.  Throughout that entire period, we have

14   begged them, we've said, we will do anything, make any

15   changes -- like there are other currencies like Ethereum and

16   bitcoin that have this non-securities designation.  We've

17   said -- we offered years ago, we'll destroy the entire premine.

18   We offered years ago, we'll fold the entire company and give

19   you every dollar in our bank accounts.  All that we have ever

20   wanted was to achieve the same legal status that these other

21   cryptocurrencies have.

22          I consider you, Judge, and the SEC together to be

23   something that is bordering on omnipotence.  Okay?  The United

24   States Government is the most powerful force in the world.  I'm

25   not -- I just want to know the rules.  Tens of thousands of

1    other companies just want to know the rules.  It's okay if we

2    lose.  You can issue a judgment for a bajillion dollars.  Okay?

3    We have three weeks left.  You know, that's fine.  I -- we can

4    lose.  You guys make the rules.  I'm not trying to argue.

5         What I don't -- what I would like to come out of

6    this is at least some knowledge of what the rules are.  There

7    are so many smart people who want to be building and working in

8    this -- in this field.  Everyone in my company, whether we work

9    at LBRY or not, wants to keep doing this work.  And I -- I

10   thought for sure that by the end of this we would at least know

11   what they are.  And -- and still no one does.

12        And we're going to end up in a situation, like I

13   don't -- I honestly don't care about arguing the penalties.  I

14   mean, you guys have won.  LBRY is almost certainly dead.  It's

15   almost certainly all dead.  The SEC's objective of bankrupting

16   us through the process, which they threatened privately three

17   years ago, they succeeded.  So we're not trying to fight.

18        But I -- I mean, I just don't know if you appreciate

19   the amount of chaos that has been created by this decision and

20   the complete lack of understanding that the industry still has

21   about what they can and cannot do.

22        But, you know, we would destroy everything if, for

23   example, it would -- the SEC would be -- make it clear that

24   secondary market -- that secondary sales aren't securities

25   sales.  They're still going to argue that they are and it's

1    going to be another five years in court.

2              So, like, the project is dead.  It's dead.  Okay?

3    And, like, we're not trying to save it.  It's been killed.

4    There's no path forward.  Like -- but at least if the industry

5    could get something out of this to have some clarity about what

6    the rules are and aren't.  Because even with this, it's

7    honestly just made it worse.  And the SEC is just going to

8    continue what it has been doing for years.  They've issued zero

9    no-action letters, they tie you up in this process, and it's

10   exactly what they want to continue to do.  Okay?  And it's what

11   they're going to continue to do to more companies.

12             There isn't a single company that anyone on this

13   call from the SEC would be able to say what they're doing is

14   legal.  And what they do is they pick from a set of a hundred

15   thousand companies -- my company happens to platform some

16   conservative figures, it happens to platform gun manufacturers,

17   do some things that the left centrists that run our regulatory

18   agencies don't like -- they use their discretion and their

19   power to crush us.  And they've won.  I'm not trying to fight.

20   I accept completely that this is the outcome.

21             But if there could be any clarity so that people

22   could know, how do you legally launch a cryptocurrency?  Is it

23   the only way you can do it is back in 2009 if you did it

24   anonymously, that's the only way?

25             And that's the situation that we have.  Like, if I

1  was talking to a young person, I would tell that person, move

2  out of the United States and launch your cryptocurrency

3  anonymously.  This is the situation that's been created.  And

4  people like me who want to be good American citizens, who want

5  to follow the law, are being driven into the criminal

6  underground.

7            And that's a -- I think that's a very bad situation

8  for America and I would hope that -- that this outcome does not

9  further it, whatever happens from here.

10            THE COURT:  Okay.  Just a quick comment.  You

11  probably aren't intending this, but whether you are or not,

12  when you speak of the SEC and me as us, and that we are

13  omnipotent, that's not the way the American judiciary

14  functions.  And just so we're clear on that, you know, you're

15  entitled --

16            MR. KAUFFMAN:  Well, what you're taught in school it

17  turns out is not always reality.  Okay?

18            THE COURT:  And you --

19            MR. KAUFFMAN:  I mean, it's very difficult to

20  believe in the rule of law if you pay attention to the

21  cryptocurrency space.

22            THE COURT:  Hang on a second, sir.  I let you speak,

23  so just please let me finish.

24            What you think doesn't matter, but I didn't want to

25  let -- and you're entitled to believe whatever you want to

1    believe.  I would not, though, leave your remark go unnoticed.

2    I don't work for the SEC.  I don't respond --

3              MR. KAUFFMAN:  Well, so, I mean --

4              THE COURT:  Just hang on a minute, sir.  You're

5    going to have to stand quiet now and I'll address my remarks to

6    your lawyer.  I've given you an opportunity to speak.

7              So, counsel, so you understand, I don't -- I think

8    you understand this.  I don't work for the SEC.  We aren't

9    working together.  This is an independent decision that I've

10   made.  The SEC has its mission and Mr. Kauffman would be

11   surprised, I guess, to understand that I have a great deal of

12   sympathy for the problem that he and LBRY are facing here and

13   I'm actually quite interested in trying to encourage a

14   resolution of this matter in such a way that -- where the SEC

15   would take positions on things like what about the secondary

16   market for the LBRY token.  Are there --

17             MR. KAUFFMAN:  I --

18             THE COURT:  -- ways in which a company like this

19   could function in a way that didn't result in its offering

20   qualifying as a Section 5 requirement to register.

21             I'm actually quite sympathetic to that particular

22   position and I want to encourage the SEC, in dealing with LBRY

23   here, a company where there has been, as far as I'm aware, no

24   allegation of fraudulent activity by LBRY, and in a situation

25   in which at the time it launched, I understand their concern

1     about the lack of clarity in the SEC's position.

2           And so I -- I share the interest that Mr. Kauffman

3     has identified in trying to make the best of a bad situation

4     here and seeing whether the SEC can be moved to work towards a

5     resolution of this matter with LBRY that might provide some

6     greater clarity.

7           So I -- I am not omnipotent.  I can't order the SEC

8     to do things that it doesn't want to do, except where it's

9     legally required to do so, and I'm not -- I'm not able -- I

10    lack the power to force the SEC to meet with you and try to

11    reach some kind of agreement.

12          But I would like the SEC's response here.  Why

13    shouldn't we take this opportunity to try to resolve what's

14    left of this dispute, if necessary, preserve LBRY's ability to

15    appeal my decision, if that's what it's choosing to do, but

16    also if, as Mr. Kauffman is hinting, that the company's

17    basically dead anyways, why are we wasting a lot of time in

18    trying to get disgorgement of a company that isn't going to

19    survive and is there something we can do to provide greater

20    clarity.  For example, what's the SEC's position with respect

21    to people who are holding the LBC token right now other than

22    LBRY?

23          So can you give me your thoughts about what -- is

24    there anything we can do from the SEC's perspective that will

25    help to resolve what's left of this dispute by agreement and

1    perhaps provide some greater clarity about what happens going

2    forward, and do you really have some legitimate expectation

3    that there's substantial amount of cash available for you to

4    acquire from -- in disgorgement from LBRY or are you just

5    trying to force the company into bankruptcy?

6                MR. MOORES:  Your Honor, may -- I believe you're

7    addressing that to me --

8                THE COURT:  I am.

9                MR. MOORES:  -- so I am going to please respond to

10   your -- so, first of all, your Honor, we're not opposed to

11   mediation and talking with LBRY's counsel and Mr. Kauffman in

12   terms of his participation in that.  What I was suggesting

13   beforehand was I was -- we were skeptical of the efficacy of

14   the mediation based upon sort of past discussions, your Honor,

15   and I apologize if I didn't make that clear in terms of, you

16   know, what would be a faster and more efficient way forward.

17               And I'm not going to try to address a lot of what

18   Mr. Kauffman said, but with respect to discussions that we've

19   had in the past with LBRY's counsel, you know, this is the end

20   of 2022.  We have had numerous discussions with LBRY's counsel

21   over the years about what would be a pathway in which the sort

22   of offer and sale of LBC would not be a security.  And year

23   after year went by and -- and sort of none of those discussions

24   sort of changed the policies or practices that LBRY --

25               THE COURT:  Well, let me --

1          MR. KAUFFMAN:  You are a liar, Peter.

2          THE COURT:  Wait, wait.

3          MR. KAUFFMAN:  You are lying right now to the --

4          THE COURT:  Stop.

5          MR. KAUFFMAN:  -- judge's face.  You are a liar.

6    You are a liar, sir.

7          THE COURT:  Mr. Kauffman --

8          MR. KAUFFMAN:  I will do anything.  They can say it

9    right now.  I'll -- I will destroy the company, I'll give them

10   every dollar in the bank account, I will fire everyone, I will

11   shut down everything, and I will give you the premine.

12          Is it not a security now, Peter?

13          THE COURT:  Mr. Kauffman -- Mr. Kauffman --

14          MR. KAUFFMAN:  These are simple questions.  If

15   the rule of law is real that these are questions that are

16   answerable, so why can't anyone tell me if that's legal.  If

17   the rule of law is clear and fair notice isn't a defense,

18   because the average person -- the average person can understand

19   the law, then these are very clear questions that ought to have

20   yes and no answers that the regulators ought to be able to

21   answer.

22          THE COURT:  All right.

23          MR. KAUFFMAN:  If they --

24          THE COURT:  All right.  Mr. Kauffman, that is

25   enough.  Now, this is a court proceeding.

1          MR. KAUFFMAN:  Yeah, it's -- because it's all fake.

2  All right?  I'm sorry.  This is all fake.

3          THE COURT:  All right.  Mr. Kauffman, this is your

4  last chance.  Will you abide by the rules of the court and

5  speak when I recognize you and otherwise refrain from speaking?

6  If you're not willing to abide by those rules, we're going to

7  have to deal with you in a different way, like turning off your

8  microphone so you can't speak.

9          MR. KAUFFMAN:  Yeah, I --

10          THE COURT:  This is a court proceeding.  Will you

11  follow my direction, Mr. Kauffman?

12          MR. KAUFFMAN:  Sure.

13          THE COURT:  Okay.  Good.  So don't speak again

14  unless I recognize you.  Okay?

15          All right.  Let me try to go back and make some

16  progress with you, counsel.

17          I'm not really interested in the past.  I'm

18  interested in the future.  It doesn't surprise me that you and

19  Mr. Kauffman have vastly different views about history.  Okay?

20  That happens in cases I'm involved in all the time.

21          I'm talking about the future because whatever has

22  occurred in the past, it was before I made a ruling.  That

23  ruling has now been made.  And unless it is reversed on appeal,

24  it is the ruling that will govern what goes forward for both

25  parties in this case.

1            So it strikes me that now is a time in which the SEC

2     should be reaching out again to LBRY, through counsel, and

3     trying to reach an accommodation.

4            And are you willing to do that?

5            MR. MOORES:  Yes, your Honor.  We've already had a

6     couple of conversations with counsel and we're willing to

7     continue those conversations and try to figure out a way that

8     this can be resolved in the best interest of -- of the

9     Commission.  We can't speak for the Commission ourselves, you

10    know, we're -- you know, in terms of the actual final sort of

11    settlement, but we could come to an agreement as to what we

12    would recommend to the Commission, your Honor.

13           We -- we have engaged in discussions in the past.

14    We are willing to do it in the future --

15           THE COURT:  Well --

16           MR. MOORES:  We believe that that would be --

17           THE COURT:  -- why don't you tell me, just in

18    general, what are your preliminary thoughts about how LBRY

19    could continue to operate and LBC could continue to be used on

20    the LBRY blockchain?  Do you have thoughts about how that could

21    happen?

22           MR. MOORES:  So, your Honor, as I believe in your

23    opinion, it's -- really, the focus is on the sort of offerings

24    and sale that LBRY had -- had done.  And that's -- to be frank,

25    that's not all the LBC that's in circulation, right?  This case

1  is about only the ones that were offered and sold by LBRY in

2  the manner and fashion in which they did.

3          There are ways -- you know, again, this is -- I've

4  been saying this for years.  There are ways in which it can be

5  done, even if it is not registered, that, in theory, you know,

6  especially the LBC that is circulating out there today, would

7  not be in violation of the securities laws.

8          THE COURT:  Right.  And you're willing to spell

9  those out in negotiations with counsel if I ask you to engage

10 on an expedited basis in mediation, not draw this out six

11 months.

12         The message I'm getting is the company doesn't

13 have a future that's six months out.  They've got to reach

14 agreement, if they're going to, relatively quickly about these

15 matters.

16         I mean, do you have a realistic expectation that the

17 SEC is going to acquire substantial sums from LBRY by way of

18 disgorgement?

19         MR. MOORES:  Your Honor, representations have been

20 made to us about the lack of resources at the company.  We have

21 had financial statements and bank statements over time and so

22 we have a limited visibility into -- into the resources of the

23 company currently.

24         We don't know what their current resources are, but

25 you know, your Honor, it -- it's really -- I am definitely

1     willing to engage in those conversations, your Honor.

2              And just as a matter of process, it's the Commission

3     which is going to make the ultimate decision, your Honor --

4              THE COURT:  I -- I understand that, but we've got to

5     move expeditiously here.  And this is the -- this is the

6     challenge.  And I recognize it can be difficult for you, too.

7     I understand that.

8              But if, indeed, LBRY were willing to engage in

9     negotiations that led to substantial restriction or even

10    destruction, say, for example, in the -- of the premine here,

11    of the remaining premine in its hands, that would seem to be a

12    good basis going forward to try to reach an agreement that

13    would allow people who believe in the LBRY blockchain as

14    something other than an investment to continue and I would

15    think the SEC would have an interest in trying to do that.

16             And, you know, if Mr. Kauffman is willing to, as he

17    says he's been for a long time, we don't need to get into the

18    past, to -- to destroy the premine, to -- to do something like

19    that as a starting point, there's no realistic -- I mean,

20    obviously assets could be hidden.  This could be very different

21    from what it appears.  But it appears very unlikely the SEC

22    could obtain substantial sums in disgorgement here.

23             Counsel has a -- certainly a credible argument about

24    to the extent the money was placed into business expenses.

25    It's something that has to be considered when evaluating

1   whether if there is any money it could be paid by way of

2   disgorgement.  And, you know, the mission here, I'm sure, it

3   should be, of the SEC is not simply to put LBRY out of

4   business.  It should be to find a way going forward to address

5   the problem that the SEC saw and, to the extent possible, try

6   to reach some kind of resolution.

7           So I -- I -- that's my initial reaction, is that

8   that's what I would strongly encourage the SEC to do, but you'd

9   have to do it on an expedited basis.

10          So let me -- let me turn back to LBRY's counsel and

11  ask you.

12          I don't believe I can force the SEC to mediate with

13  you.  I think you would understand that.  I can't make them

14  agree to give up any rights that they have without evaluating

15  the legal basis for their claims.  Now, I've tried to strongly

16  encourage the SEC to engage in discussions with you on an

17  expedited basis.

18          But assume that they don't, that they don't do that,

19  what would be your next step?  Would you like to file a legal

20  brief asserting your company's position about why the remedies

21  that they've said they want discovery for would not be

22  obtainable against you?  Is that -- would that be your

23  position, counsel?

24          MR. MILLER:  Yes.  Yes, we would like to argue three

25  positions with respect to a permanent injunction, whether that

1    is needed in this situation, both to LBRY and also the
2    secondary users that are using it right now, should they
3    somehow be affected by a -- without clarity from the SEC
4    regarding this injunction.

5            The next prong would be disgorgement.  As I said
6    already, I don't believe they're entitled to disgorgement in
7    this type of situation.

8            And the third is the amount of civil penalty and
9    what they should be showing in order to get a civil penalty and
10   what that civil penalty should be.

11           These are all -- your Honor, this, as you -- as you
12   I think rightly observed, this is not a difficult case to
13   settle.  It's just whether the SEC wants to settle it.  This
14   has a -- this is an opportunity for the SEC to create some
15   clarity around, particularly, secondary sales.  Right?  And
16   that is very important for the industry.  Okay?  Even if
17   there's a Section 5 against the entity that issued these tokens
18   and they burned all the premine that's left, there is still
19   operating tokens and they're operating on a large platform with
20   1.5 million -- over 1.5 million users.  They are going to be
21   affected.  So how do we deal with that?

22           And I think there is an opportunity here, if the SEC
23   doesn't want to engage in these types of negotiations through a
24   mediator and we can't agree on what's the best appropriate
25   relief here, then we would ask by next Tuesday, your Honor, if

1   we haven't come up to we're going to mediate on this date by

2   next Tuesday, we apprise the Court that we want to file an

3   emergency motion, legal briefs, on the issue of remedies.

4           THE COURT:  I think that makes sense to me, counsel.

5   I'll hear the SEC briefly in response, but that's what I'm

6   inclined to do is to give you an opportunity to try to meet and

7   confer and see if you can lay out a path to resolve this --

8   what remains of the case by agreement.  And if you can't, the

9   only step I think available to LBRY would be to file this brief

10  and then I could evaluate the legal issues and decide where we

11  would go from here.

12          But I -- I do think that there -- it should be in

13  the interest of the SEC to try to explore with LBRY whether

14  there are ways to resolve this case in such a way that people

15  who are other than the -- LBRY itself that are holders of LBC

16  that want to use LBC on the LB -- on the LBRY blockchain,

17  should be able do that and -- without confusion about whether

18  those secondary sales are restricted in some way.  And it would

19  seem to me the SEC would be -- should be able to be in a

20  position in settling this particular case to -- to provide some

21  clarity about that.

22          So I -- I would hope that the SEC would be willing

23  to engage in discussions, but I can't make you and I won't try.

24  I just will say that I -- I'm inclined to accept LBRY's

25  counsel's proposal to allow the filing of an additional brief

1    on remedy with its legal arguments as to why your remedy should

2    be restricted and I hope that the SEC would approach this

3    realistically.

4              I guess I'd ask LBRY's counsel one other thing.

5              So I -- I'm operating under the assumption that

6    there just isn't a lot there to recover from -- by disgorgement

7    or fines, for example, and it appears that financial statements

8    have been exchanged in the past.

9              Would LBRY be willing to engage in that kind of

10   transparency going forward in an effort to settle the case, to

11   provide some financial assurances regarding its current status

12   to the SEC?

13             So I'd ask you that, counsel, before I ask the

14   SEC --

15             MR. KAUFFMAN:  I have -- I have them prepared and

16   ready for today.  The company -- excluding our cryptocurrency

17   holdings, which I expect will be destroyed, that is, our LBC

18   Holdings which I would expect to be destroyed, we have under

19   $500,000 in cash and we have around $2 million in debts that

20   are unpaid.

21             THE COURT:  Okay.

22             MR. KAUFFMAN:  I had to borrow $2 million to get

23   through this trial.  I borrowed enough money to get us through

24   the end of the year under the expectation that, you know, this

25   would be over by then.  And there's -- it's -- there's nothing.

1   There's absolutely nothing.  I've been working the phones.

2   There -- until this is over, there is no chance of us getting

3   another dollar from anyone in our network.

4           THE COURT:  All right, counsel -- let me talk to

5   counsel then.

6           So, counsel, I guess your client has said that he's

7   willing to be transparent regarding his finances.  So I -- if

8   the SEC expresses any willingness to have continued

9   discussions, I think that would be a good starting point for

10  you to share some documents on the financial status and see

11  where it leads.

12          But let me just ask for a brief response from the

13  SEC here to LBRY's proposal.

14          MR. MOORES:  Your Honor, you know, again, we are not

15  opposed to any sort of discussions with trying to resolve it

16  and we will willingly engage from the staff level with LBRY's

17  counsel on that to see if there is a pathway forward.

18          And with respect to -- just taking a step back and

19  looking at sort of the bigger picture that the Commission will

20  be considering, it's obviously, as Mr. Kauffman alluded to,

21  that there are a number of other, you know, companies in this

22  space that are potentially raising money and -- illegally or

23  through unregistered offerings.

24          And it's important also to make sure I think from

25  the Commission's perspective, that someone isn't just going to

1    do it thinking that at the end of the game that they won't

2    actually ever have to pay any sort of disgorgement or penalty

3    just based upon their current financial situation.

4          So I -- I can't speak for the Commission as to what

5    they will ultimately decide on what is the right policy and

6    approach across the industry as to what is appropriate in

7    taking money that is unjustly enriched from the wrongdoer and

8    potentially providing that back to the wronged investors or

9    seeking rescission and restitution, the equitable remedy, but

10   those -- you know, again, looking across the entire industry

11   where there could be clarity that you're seeing that is

12   provided by working out a solution, if it is also a solution

13   that doesn't benefit the Commission in terms of that -- that

14   larger view and policy approach, your Honor, and making sure

15   that, you know, to the extent that LBRY wasn't able to, you

16   know -- and I'm not suggesting it will have the means of doing

17   this -- but if a week from now, a month from now, a year from

18   now, it was able to generate tremendous amounts of revenue

19   based upon the business that was built with the illegal raise,

20   again, due to principles of unjust enrichment, those are just

21   the types of things that are normally disgorged --

22          THE COURT:  All right.  Let's -- yeah, but let's

23   start being realistic here.  Okay?  The prospect of that

24   happening appears to be very slim.

25          So I understand your concerns.  I understand your

1    larger -- I understand the Commission's larger concerns.  But

2    here's a couple of thoughts to just keep in mind as you think

3    about what to do.

4            First, Mr. Kauffman -- and I didn't want -- intend

5    to require anybody to negotiate in public here.  These are

6    discussions that you can have --

7            MR. KAUFFMAN:  I want nothing more than to negotiate

8    in public.

9            THE COURT:  All right.

10           MR. KAUFFMAN:  Anyone who sees the SEC negotiate in

11   public with us would see that they are tremendously bad faith

12   actors.  I would love it --

13           THE COURT:  All right.  Mr. Kauffman --

14           MR. KAUFFMAN:  -- if --

15           THE COURT:  I'm going to ask you to stop.  I'm

16   going to ask you to stop talking.  You need to exercise

17   self-restraint here.

18           I did not intend to require anyone to disclose

19   anything, but Mr. Kauffman has said multiple times as a part of

20   a resolution of this case he is prepared to burn the remaining

21   premine.  So that's one thing to keep in mind.

22           Another thing to keep in mind is Mr. Kauffman,

23   through counsel, has agreed to be transparent regarding the

24   company's current financial status.  That's something to keep

25   in mind.

1          Third, with respect to secondary sales, it's -- I

2    understand the concern about precedent that the SEC sets in one

3    case and people need -- and people trying to take -- take

4    advantage, if that would be the SEC's concern, of a resolution

5    in this case.  But you need to also bear in mind I rejected the

6    fair notice defense that LBRY raised here, but it is a reality

7    that LBRY entered this market at a time of greater uncertainty

8    than exists now.  And if there is a company that lacks

9    sufficient solvency to have any prospect of disgorgement or

10   paying fines, the company is prepared to burn its premine, and

11   some agreement can be raised with respect to this case based on

12   the unique circumstances of this case that the LBC token,

13   regardless of who it was originally acquired from that's not in

14   LBRY's own control or related parties' control, that that --

15   that those secondary sales can continue because LBRY, going

16   forward, will not be in the same way incentivized, aligned

17   with, and engaged in the sale of LBC with the intention of

18   using it as an investment in the way it has previously, that

19   that would seem to be a reasonable starting point for

20   discussion that the SEC should be willing to be at least

21   responsive to.

22          So I think if you step back and think about what has

23   been said today, you have the framework for a settlement.  And

24   I can't make you do anything.  I'm not going to try.  But I do

25   think counsel -- if counsel for LBRY is not able to get a -- a

1  satisfactory response from you within a week or so, then they

2  should file a status report with me and I'll set a schedule for

3  the legal briefing of the -- LBRY's position that no further

4  discovery is warranted and we should have an expedited ruling

5  from the Court regarding the limited scope of remedy.

6          So I think that's a -- a reasonable approach going

7  forward.  I think there is a framework here that is worth

8  exploring and I would strongly encourage the SEC to do that.

9          So you don't have to agree to anything, you can just

10 stand on your rights as any party in litigation can, but that's

11 what I would encourage you to do.  And if you don't express

12 sufficient interest in resolving the case, then LBRY can notify

13 me and we'll set a briefing schedule for the briefing of the

14 legal issue regarding relief.

15         Let me ask LBRY's counsel, is that acceptable to

16 you?

17         MR. MILLER:  Yes, it is, your Honor.  Thank you.

18         THE COURT:  And what's -- what's the date you said

19 by which you should file a status report?

20         MR. MILLER:  I was thinking next Tuesday.

21         THE COURT:  All right.

22         MR. MILLER:  So it would give us, you know, a week.

23         THE COURT:  It is -- it is over the Thanksgiving

24 holiday, so what I would -- by next Tuesday I'd ask you to file

25 a status report and if you are -- if you don't feel you have

1  made sufficient progress, you should represent that and request

2  that the Court set a schedule for briefing the legal issue

3  regarding scope of remedy.

4        What I would do is have LBRY file something 14 days

5  thereafter, have the SEC and have LBRY file a reply, and then I

6  would try to rule on it on an expedited basis to see where we

7  go from there.

8        Counsel, though, because it is over the Thanksgiving

9  holiday, I think you have to be realistic here.  And so even if

10 you haven't nailed down everything, if you feel you're making

11 sufficient progress, you could represent to the Court that we

12 should extend that deadline by another seven days or something

13 while you firm up your efforts to -- to resolve things.

14       All right.  Does the SEC understand what I'm

15 proposing and did you have any additional matters you wanted to

16 raise with me?

17       MR. MOORES:  No.  No, your Honor, we -- we

18 definitely understand and we've heard all your comments today,

19 your Honor, and we're agreeable to the schedule.

20       I, like you, caution that it is the Thanksgiving

21 holiday, if the report wasn't due back to the Court until the

22 Friday, December 2nd.  But we -- we are willing to work

23 expeditiously on this, your Honor.

24       THE COURT:  Yeah.  And, as I said, there -- SEC --

25 excuse me.

1           LBRY has been relatively clear about certain things

2   that it's willing to do and if that isn't a good starting point

3   for settlement for you and you're not willing to pursue it, you

4   should just tell them and we should get on with things.

5   Because I don't know what more they could do to start serious

6   discussions with you than what counsel has proposed.

7           So if that isn't enough for you to get you going on

8   trying to work this thing out, you know, all that would be left

9   is assuring yourself that they haven't profited from this in a

10  way that there's still sufficient profits available for you to

11  extract and having a willingness on your part to come to some

12  kind of understanding because of the unique circumstances of

13  this case, how you would agree to have secondary sale issues

14  resolved.

15          Is that --

16          MR. KAUFFMAN:  I --

17          MR. JONES:  Your Honor --

18          THE COURT:  Yes.  I'm sorry.  Who's speaking?

19          MR. JONES:  Sorry.  This is Marc Jones from the SEC.

20          THE COURT:  Yeah, go ahead.

21          MR. JONES:  I -- I just wanted to raise with the

22  Court, your Honor, that we absolutely understand your

23  expectation is to try to resolve this.

24          Secondary sales, just to try to set expectations

25  here, a resolution that would involve some sort of secondary

1    sales clarity in the way that LBRY seems to be asking for would

2    seem to be beyond the controversy that's before the Court here

3    and difficult to fashion into a -- into a settlement of these

4    matters.

5              It really is, essentially, an ask to have the SEC

6    make policy through a settled remedy because obviously the way

7    that LBRY gets treated, you know, should be -- you know, there

8    should be consistency across -- across the industry.

9              We will see what we can do, but I did not want the

10   Court to conclude today without saying it could be very

11   difficult for the SEC to fashion a policy about secondary sales

12   in this circumstance because it really is policy and we're

13   constrained by all of the things that have to go into it before

14   the SEC makes policy; that to try to -- to try to create it in

15   a -- either a settled or adjudicated --

16             THE COURT:  Yeah, I'm not -- I understand -- I

17   understand, counsel, the problem that anytime you take any

18   position in any matter that someone might try to then me-too

19   it.  And I'm not interested in participating in SEC

20   policymaking, but I've got a problem here.  Right?

21             The problem here is this.  You've got a company that

22   without fraudulent intent, at a time when things were less

23   certain than they are now, engaged in certain practices and

24   developed a blockchain that has legitimate uses and a token

25   that has consumptive uses.

1          And it seems to me reasonable that in an effort to

2  settle this case, not as to establish systemwide policy, that

3  the SEC should be willing to consider whether there are

4  creative solutions to resolve this problem in a way such as

5  that the LBRY -- the people who created LBRY and who hope to

6  profit from the sales of securities aren't profiting from it,

7  but that people who acquired the token because they believe it

8  has use on the LBRY blockchain, that the LBRY blockchain should

9  not be -- have to become dysfunctional simply to satisfy the

10  SEC.  That -- that seems to me to be a -- an issue worth

11  exploring.

12          At the end of the day, whether you decide to pursue

13  that or not is totally up to the SEC.  It's not within my

14  province.  I give legal rulings.  And I'll give you a legal

15  ruling on the remedy if you aren't able to reach an agreement.

16  And that's the way it goes.  I -- I don't --

17          MR. KAUFFMAN:  We --

18          THE COURT:  -- set policy and I'm going to -- I'm

19  going to make a legal ruling if the parties can't agree.

20          But I've gone about as far as I possibly can and I

21  won't go further except to say I expect LBRY to file by next

22  Tuesday a status report either informing the Court that

23  settlement negotiations have been sufficiently productive that

24  they should continue or that the Court should set a schedule

25  for briefing a -- LBRY's motion the limited scope of remedy

1    without further discovery.

2            I'm not ruling out that I might need discovery or

3    have to hold a hearing, but I'm -- I want to hear LBRY's

4    arguments about why disgorgement is simply not an appropriate

5    remedy here, how the scope of injunctive relief should be

6    limited as a matter of law.  They have an argument.  They have

7    briefed these issues responsively.  Counsel did a highly

8    effective job arguing LBRY's position.  And I'm inclined to

9    give counsel the leeway to present additional briefs if the

10   parties can't agree on settlement negotiations.

11           All right.  So, Jen, you understand what I'm

12   ordering from here?  You should just make a note that we should

13   expect a filing from LBRY by next Tuesday either regarding a

14   request that the Court extend the deadline for settlement

15   discussions further or that the Court set a schedule for

16   briefing LBRY's position on remedy.  All right?

17           THE CLERK:  Yes, Judge.  And I just would say as a

18   housekeeping matter there is a pending Daubert motion that's

19   still active on the docket.

20           THE COURT:  That's denied without prejudice.  All

21   right?  We'll see where we go from there.

22           MR. KAUFFMAN:  I --

23           THE COURT:  That clears the docket on that.

24           MR. KAUFFMAN:  Judge, just you're aware, public

25   blockchains have existed in the United States since 2009.  In

1    that time period, the SEC has not indicated in a clear way that

2    a single public blockchain, not one of them, is not a security.

3    They haven't issued a single no-action letter to any company

4    dealing in public blockchain tokens.

5           They may act like they will consider your request.

6    It is absolutely -- they are acting in bad faith when they

7    suggest that.  There is absolutely no chance that they will

8    give clarity to secondary sales.  And without that clarity on

9    secondary sales, it is true that the LBRY project will be dead.

10          And that's okay.  I -- I'm just -- I'm moving

11   forward.  I have to move forward realistically as a CEO and for

12   my people.  And this is what -- the SEC got what they wanted.

13   It's fine.  I'm not trying -- again, they win.  They've got all

14   the power.  I'm not trying -- but that is what will happen.

15          And I would just -- like realistically they can say,

16   oh -- they can act like they're going to talk about it.

17   They're not going to entertain it.

18          THE COURT:  And they --

19          MR. KAUFFMAN:  There's no chance.  So --

20          THE COURT:  They have the right not to entertain it

21   and your lawyer has the right to on your behalf file a legal

22   memorandum that will prevent --

23          MR. KAUFFMAN:  I'm just letting you know.  You can

24   say things like, oh, I don't want LBRY to be hurt or whatever,

25   but they -- they -- in reality, they -- it's -- it will have

1    been killed by them.  And -- and I certainty blame them more

2    than you, but you certainly get a bit of an assist.

3              So, like, that's going to be the outcome.  I accept

4    it.  I'm not mad.  I'm not trying to be mad at you.  That's

5    what -- it is what it is.  But that's --

6              THE COURT:  That's all right.  You can be mad at me.

7    I'm used to people being mad at me.  That's -- it comes with

8    the territory.

9              MR. KAUFFMAN:  Well, you're much better than them.

10   I mean, I -- I understand why they -- you know, you trust them,

11   you have -- it's difficult to see through their -- you know, to

12   see through their lies in such a short time period.  You

13   haven't seen --

14             THE COURT:  If your counsel were in the room with

15   you right now, he'd be grabbing your coattails.  So --

16             MR. KAUFFMAN:  Oh, it doesn't matter.  It's -- you

17   know, I -- you know, I -- you know --

18             THE COURT:  Okay.  Let's -- let's -- we've had

19   enough back and forth, Mr. Kauffman.  I'm not here to engage in

20   dialogue with you.

21             So -- all right.  So we're done for today.  I'll

22   look for your filing, counsel, and we'll -- we'll go from

23   there.

24             All right?  Thank you.  That concludes the hearing.

25             (Proceedings concluded at 2:54 p.m.)

C E R T I F I C A T E


       I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 12/27/22       */s/  Liza W. Dubois*
                           LIZA W. DUBOIS, RMR, CRR