*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JUNE 21, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                               \*
U.S. SECURITIES AND EXCHANGE     \*
COMMISSION,     \*
     \*
          Plaintiff,     \*  1:21-cv-260-PB
     \*  February 6, 2023
         v.     \*  11:03 a.m.
     \*
LBRY, INC.     \*
          Defendant.     \*
     \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO


Appearances:


For the Plaintiff:        Peter Moores, Esq.
        Marc Jonathan Jones, Esq.
        Securities and Exchange Commission


For the Defendant:        Keith Miller, Esq.
        Emily Drinkwater, Esq.
        Perkins Coie LLP

        Timothy John McLaughlin, Esq.
        Shaheen & Gordon


Court Reporter:        Liza W. Dubois, RMR, CRR
        Official Court Reporter
        U.S. District Court
        55 Pleasant Street
        Concord, New Hampshire 03301
        (603) 225-1442

1          P R O C E E D I N G S

2              THE CLERK:  Good morning, Judge.

3              We're here in the matter of United States Securities

4      and Exchange Commission vs. LBRY, Inc., 21-cv-260-PB, for

5      status conference.

6              THE COURT:  So I had a very narrow and specific

7      purpose for wanting to hold this conference.  That is to

8      determine what, if any, additional discovery the SEC will be

9      entitled to engage in to allow me to complete this case and

10     issue a final order in it.

11             And I -- in my mind, there are three potential

12     issues that -- on which we might need to have some discovery.

13             One would be on LBRY's evidence of its gross

14     receipts; another would be on -- on LBRY's assertion that its

15     legitimate business expenses equal or exceed its gross receipts

16     from the sale of LBC; and the third issue is the contention

17     that the SEC makes that LBRY continued to make sales of LBC

18     after the lawsuit was brought.

19             Those seemed to me to be the only issues on which

20     there would be any potential need for discovery to address the

21     parties' competing arguments at the last hearing.

22             So let me start with the SEC and, tell me, what is

23     your perspective on what the minimal amount of discovery you

24     need to do to be able to stake out some final positions on the

25     remaining issues?

1          MR. JONES:  Yes, your Honor.  Thank you.  This is

2    Mark Jones for the Securities and Exchange Commission.  With me

3    this morning is Peter Moores.

4          In looking at it, your Honor, and in talking with

5    defense counsel on Friday in an effort to try to get some

6    issues resolved, the Commission believes that -- there's a

7    couple of contingencies, your Honor.

8          If, in fact, LBRY is going to be willing to produce

9    its general ledger, electronic files, you know, its QuickBooks

10   files, the Commission believes that that could go a long way

11   toward narrowing some issues.  And so the Commission would like

12   a few document requests, including those QuickBooks files and

13   some information on a couple of the notes or loans that appear

14   on the balance sheet for LBRY as submitted to the Court.

15         So just a few document requests, perhaps three or

16   four, some interrogatories or RFAs.  Obviously, we'll narrow

17   those as much as we can.  We think ten or less total of

18   interrogatories and RFAs.

19         And then in depositions, your Honor, we think two or

20   three depending on this issue, your Honor.  Mr. Miller and I, I

21   think, have a difference of opinion whether LBRY should be

22   required to produce information and respond to interrogatories

23   about its wholly owned subsidiary as the party that's in

24   possession, custody, or control of that information as its

25   whole -- as its wholly owning parent.  Mr. Miller, on the other

1    hand, I believe, does not believe that LBRY should be required

2    to give information on Odysee.

3           This is particularly important, your Honor, because

4    obviously the asset of Odysee owned by LBRY is currently shown

5    as a $1,000 par value asset on the balance sheet.  This is a

6    website that gets, by some estimates, 10 to 30 million visits a

7    month, has advertising revenue, has other revenue, has -- and

8    we believe that the thousand dollars that are represented is

9    not quite accurate.

10           And, obviously, if you raise a bunch of money and

11    then build a business and then build a subsidiary business, the

12    subsidiary business is an asset that should be considered as

13    part of that gross receipts.

14           So that's sort of the --

15           THE COURT:  It sounds like you're singing a somewhat

16    different tune about Odysee than you were singing earlier in

17    the litigation when you seemed to be portraying it as, you

18    know, just a meaningless business that was designed to support

19    a revenue raising operation.

20           Now it's an important business with lots of visits

21    and -- I just find that a little bit ironic.

22           MR. JONES:  Well, your Honor, a couple of things on

23    that.

24           One is it depends on what time period you're looking

25    at, your Honor.  Odysee is a business that's launched during

1 the course of the litigation.  In the last year, say, it's been

2 a year since we've been filing summary judgment, that business

3 has continued to be invested in, that business has continued to

4 grow.  It -- it's I think not entirely accurate to say that our

5 position now is contradicting our position then.

6     THE COURT:  Well, I'm not -- I just -- I probably

7 shouldn't have said anything, but I know what -- having --

8 hearing you make that statement, one can only imagine what is

9 going through the minds of people at LBRY because they would, I

10 assume, if I allowed them to, which I will not allow them to

11 do, be screaming about what they think of as the hypocrisy of

12 your statement.  I -- but I don't want to waste any more time

13 on it.

14     There is a -- there is a loan that was made of

15 over a million dollars and perhaps there should be some

16 informational allowed with respect to that.  But the idea that

17 we need to have some far-reaching investigation into Odysee's

18 current operations seems to me to be excessive, but perhaps we

19 can reach some agreement with respect to the loan proceeds and

20 the -- you know, the basic current financial status of Odysee.

21     MR. JONES:  Your Honor, absolutely.  And I was not

22 suggesting a far-reaching investigation by any stretch.  All

23 I'm asking, your Honor, is that we be allowed to ask a couple

24 of questions about what the value of the Odysee business is.

25 It's listed on the balance sheet.  It goes to the gross

1  receipts.  It's currently listed as $1,000 of asset.  And we

2  need to know --

3           THE COURT:  How -- let me ask you, Counsel.

4           So it was represented to me at the last hearing that

5  LBRY is not paying any employees, doesn't have anybody who's on

6  staff who can be paid to do the work of responding to document

7  requests.  How do you propose to deal with that particular

8  problem?  Because it does seem to me unrealistic to expect

9  former employees or employees not being paid to volunteer their

10 time to respond to document requests and interrogatories.

11          Depositions, you can notice up a deposition and

12 require the person to attend, but I'm -- it's not clear to me

13 that you can force unpaid employees to spend substantial

14 amounts of time responding to your document requests and

15 interrogatories.

16          MR. JONES:  Well, your Honor, the -- the Commission

17 is essentially in between a rock and a hard place here.  I

18 mean, LBRY has said, we're going out of business, we're not

19 paying any employees.  The website still up.  The business is

20 still operating.  The number of the employees appear to be here

21 on the call this morning.

22          It's -- it's -- it's hard for us to navigate

23 between, oh, we can't -- I mean, we've heard this all the way

24 through discovery, your Honor:  Oh, we can't do that, it's too

25 expensive; oh, we can't do that, it's too intensive; you know,

1    you'll have to come to us, you'll have to not get those

2    documents.  It's --

3            THE COURT:  Let me ask you this.  Are the -- maybe

4    LBRY's counsel can respond to this.  I mean, is access to

5    general ledger information, all of that is electronic, it would

6    seem relatively -- not a time-consuming matter to make that

7    electronic information available to -- to the SEC without --

8    that wouldn't require poring through people's individual PCs

9    and looking at hard drives and doing that kind of work.  It

10   seems that could probably be produced relatively inexpensively.

11           But I want to be clear.  I don't -- I don't want to

12   impose obligations on LBRY that it's not in a position to meet.

13   So that's what I'm -- I'm focused on.

14           But let me -- rather than -- let me identify some

15   issues here.

16           So I think you claim gross receipts from LBC sales

17   of 22 million and change.  LBRY admits to 14 million in change.

18   A -- a big chunk of that is money that you -- or receipts that

19   you would attribute to LBRY for distributions of community fund

20   LBC as incentives to partners and other entities.

21           And, I mean, that's -- it seems to me that there's a

22   potential issue about what the gross -- gross receipts are.

23   Should it be 14 million, as LBRY claims; should it be 22

24   million or something in between that you claim.  And that --

25   that certainly seems to be a -- an issue that we could allow

1    some discovery on.

2         There appears to be an issue about LBRY's assertion

3    that there should be no disgorgement remedy because there's no

4    net profit and there's no net profit because the legitimate

5    business expenses of the business exceed revenue from receipts

6    from sales of LBC.

7         And there's an argument about this million dollar

8    loan to Odysee and then there's a -- an argument that the SEC

9    has advanced, the -- the company continued -- that I should

10   take into account the fact that the company continued to make

11   about 400,000 in sales of LBC after the lawsuit was brought.

12        And LBRY's response to that, as I understand it, is

13   we did have the employee program, we continued that for a

14   while, and we also had a small number of what we thought were

15   consumptive sales through MoonPay that explain any matters and

16   should be treated by the Court as innocent sales of LBC,

17   whether they technically violate the registration requirement

18   or not, they don't support what the SEC is saying, which is a

19   kind of willful disregard by the -- of LBRY of the -- the

20   realities that it needed to be attending to that the sales were

21   registerable offerings of the LBC.

22        So, in my mind, those would be -- at least those are

23   all financial issues, those are all about investigating various

24   claims that LBRY made, and I -- or claims that the SEC made and

25   LBRY's response.  And I think some legitimate, narrow, focused

1   discovery on that should be -- should be warranted.

2          It sounds like your position would be some document

3   requests or interrogatories, that shouldn't be overly

4   time-consuming, and two or three depositions.

5          I would be inclined to limit them to, say, three

6   hours and to try to get -- and have them focused on these

7   particular topics that would be agreed to in advance.  So if I

8   were to allow it, that's what I'd be doing.

9          But let me get LBRY's counsel's basic response to

10  this.

11         Counsel, what do you have to say to the SEC's

12  requests other than don't make them -- us do anything, Judge.

13         MR. MILLER:  Yeah.  I -- I'm trying to approach this

14  and trying to be practical about what's going on here, your

15  Honor.

16         THE COURT:  I appreciate that.  Yeah.

17         MR. MILLER:  And we did have a conversation with

18  Mr. Jones.  We have the QuickBooks expenses.  So he can go

19  through all the expenses and he can identify, and I would

20  suggest that he identify a handful, any written

21  interrogatories, say, on such and such a date, you know,

22  $455,000, there's an expense, it's categorized as X, we would

23  like to know the basis of it.

24         I think that's the way to have this -- again,

25  limited resources.  We don't have the time or money to be able

1    to do this.  There are affidavits in.

2              Mr. Julian Chandra, who is CEO of Odysee, has put in

3    an affidavit.  They have no money.  They're -- they're, in

4    essence, out of business as well.

5              THE COURT:  Counsel, let me understand.  You're

6    willing to give access to the QuickBooks files; you would

7    suggest that that be the starting point, that LBRY -- that

8    the SEC be required to respond with a narrow, focused set of

9    requests identified to particular charges requiring additional

10   explanation and that that -- that you're willing to do at least

11   that much.  Is that fair to say?

12             MR. MILLER:  Yes.

13             THE COURT:  Okay.  So that's a good starting point.

14             Now, should it go beyond that at all to any

15   depositions, if I were to do -- if I were to allow additional

16   depositions, it would, again, be on these narrow, focused

17   topics and it's not clear to me that we need to do those

18   depositions, but there would have to be some specific reason to

19   justify it.

20             So, Counsel, then, it seems like we have the makings

21   of an agreement here that would not be burdensome with respect

22   to the QuickBooks files which would address the P&L statement

23   which would allow us to examine both the gross receipts and the

24   legitimate business expenses which would go a long way towards,

25   in my mind, giving the SEC the limited opportunity I think it

1    should have to just make sure that there aren't any kind of

2    gaping holes here where we're not really understanding what is

3    happening.

4              There is this issue of the expenditures by the

5    company after -- excuse me -- the sales by the company after

6    the lawsuit was commenced and I think you identified about

7    400,000 and change in sales that you say either are under the

8    employee program or MoonPay consumptive sales that average

9    about $40 per sale.

10              So one response that the SEC made to that was to

11    produce a P&L statement for the March to October quarter in

12    which they limit -- they identify LBC sales of 2.7 million and

13    say that you don't have an explanation for that.

14              Mr. Jones, do I have that right?  Is that your --

15    one of your arguments is based on this P&L statement and the

16    2.7 income from LBC sales?

17              MR. JONES:  Yes, your Honor.  We did have some

18    questions about that.  We may be able to work them out with Mr.

19    Miller.  We may need to ask questions about them in the

20    discovery process here.

21              THE COURT:  So, Mr. Miller, I don't know if you -- I

22    don't want to put you on the spot here if you don't have an

23    answer for this at the moment, but that's one issue that I

24    think the -- that the SEC should be entitled to work with you

25    to try to find some pragmatic answer so that -- that satisfies

1    the SEC.  There probably is an explanation for it.  Perhaps you

2    can provide it in an informal way that would be satisfactory to

3    the SEC.  If not, the -- we could do -- it could be dealt with

4    in a formal, focused way.

5              So, Mr. Jones, why should I not issue an order

6    saying that the SEC has requested the opportunity to do some

7    additional discovery; LBRY has agreed to produce the QuickBooks

8    files supporting its -- the P&L statement they offered with

9    respect to sales.

10             In -- after receiving that information, the SEC

11   shall have a period of time which we'll agree to in which to

12   present any specific, focused requests for documents or

13   interrogatories addressing specific issues -- specific issues

14   with the P&L statement that LBRY submitted.

15             And we could also allow you to make some limited,

16   focused requests with respect to the sales during the -- during

17   the period that the lawsuit was -- was pending and then after

18   that leave it to you to make, if you -- if necessary, a

19   supplemental request for a limited number of depositions that

20   if you could demonstrate that there are these specific issues

21   that need to be resolved by deposition, then I'd let you do

22   them.

23             And that would wrap it up.  Then you could submit a

24   final memorandum, LBRY could respond, I'd take the matter under

25   advisement, and then I'd issue an order.  What do you think?

1          MR. JONES:  Your Honor, I -- I definitely

2    appreciate, your Honor, the Court's efforts to get this

3    narrowed.  And we're not looking for a wide-ranging exercise

4    here.  We do have an exercise -- you know, it is our

5    responsibility to make sure that we get the disgorgement

6    request at least right.

7          I would say two things, your Honor.  The plan as

8    your Honor laid out I think makes a lot of sense.  Two things.

9    The first is I believe that based on what we've seen from LBRY,

10   that although there will be questions that come up from the

11   interrogatories -- the QuickBooks files and other documents

12   perhaps that I want to talk to your Honor about in a minute

13   that the records kept will not be sufficient to answer all

14   those questions and that if history is any indication even the

15   interrogatory responses, unless we ask, you know, a large

16   number of very detailed questions will not be detailed enough

17   to actually answer the questions.

18          I think the depositions of the -- of the company and

19   of the people -- of the person who is in charge of the finances

20   of the company, the COO, CFO, I think they're going to be

21   necessary based on our history with discovery in this case.  It

22   just -- the documents, though a good start, are not going to be

23   enough.

24          THE COURT:  Yeah, that may be true and the reason

25   I'm suggesting that we proceed sequentially is just -- look, I

1    think both you and Mr. Miller are reasonable people who can

2    work together on this kind of a pragmatic issue here.  I

3    recognize the -- the -- I think both of you know that when I

4    get involved in these kinds of matters, I don't want people

5    coming back to me with -- taking unreasonable positions.  And

6    if they do come back to me taking unreasonable positions, there

7    are going to be consequences and people aren't going to be

8    happy.

9            So I'm confident that with that understanding you

10   may well need a deposition.  But then if I ordered it, I could

11   say, you could depose person A for this period and you can

12   cover the following issues in that deposition, nothing else.

13   And that way it would be able to get resolved quickly.

14           So I'm not in any way suggesting you won't be able

15   to do depositions, but I also think that, Mr. Jones, you could

16   work with Mr. Miller and say, look, we've got the QuickBooks

17   files, here's what we're looking for, all right, can you tell

18   me about these following things and we're not trying to use

19   this discovery -- we aren't going to use this to harass people;

20   if you can answer these questions for us we'll be narrower in

21   the scope of what additional discovery we'll need.

22           So I get your point, and you may well need to do

23   depositions, especially if you get really limited responses.

24   On the other hand, if you -- I would expect you, rather than to

25   just to leap to, oh, we need a deposition, that you -- to put a

1    call in to Mr. Miller and say, look, here's the thing, here's

2    the things that are concerning.

3          And I get it.  I want -- I think you're entitled to

4    a fair opportunity to build the record for the legal argument

5    you want to make about disgorgement and about the scope of the

6    fine.  I am -- I will consider any evidence you produce on

7    that.

8          My principal concern is that you are -- at least be

9    given an opportunity to satisfy yourself that these entries are

10   not wholly unsupported.  And I have no reason to suspect that

11   that there is any kind of misreporting going on here, so I

12   don't want to in any way for anyone to suggest that I think

13   LBRY is doing something nefarious.

14         But it's a -- it's a trust but verify situation and

15   I think you're entitled to make sure that you've satisfied

16   yourself that there isn't $5 million in a Swiss bank account

17   somewhere, you know.

18         And that -- I know you have broader arguments; you

19   have arguments that, oh, the community fund money should go

20   into the gross receipts, LBC, at the valuation we put it in

21   because we think disgorgement should be based on gross -- but

22   to me the community fund issue seems to be -- to me to be less

23   important because in terms of actual profit and loss, to the

24   extent you have to list it as a gross receipt, it's all -- it's

25   also a legitimate business expense.

1          So you have a different take on all that, I

2     understand, but that is not -- that isn't the kind of thing

3     that is my principal concern here.

4          So all right.  So I hear you on that and it sounds

5     like the step one here would be LBRY producing -- after a

6     meet-and-confer with you -- producing the QuickBooks files and

7     perhaps a limited other subset of additional electronic

8     information that could be produced at relatively low cost and

9     time; that following the receipt of those, you would have a

10    brief period to review the materials and to follow up with a

11    specific set of document requests and interrogatories

12    addressing issues raised with respect to the materials that

13    LBRY has produced; that the parties would -- that LBRY would

14    make a good faith attempt to fully and fairly respond to those

15    matters and it would be in Mr. Miller's interest to work

16    practically with you to -- to ensure that those responses are

17    sufficiently fulsome, that they may answer the question, and

18    that if they aren't, that you could come back to the Court with

19    a limited set of requests for depositions, talking one, two or

20    three, talking limited time periods, talking on focusing --

21    focused subjects; I would either allow in part or in whole or

22    not the requests for the depositions; and then set a schedule

23    for LBRY to -- excuse me, the SEC to file supplemental brief

24    and if LBRY chooses, a brief chance for a response.

25          And I think that should -- should cover it with

1    respect to most of the issues.

2              With respect to the Odysee loan, it doesn't seem to

3    me that you have an opportunity to -- you should have a limited

4    opportunity to engage in discovery about what happened to the

5    million dollar loan and is Odysee in the current financial

6    situation it's in, it represents that it's in; you should be

7    allow to test in, again, a very limited way, the assertion that

8    LBRY has made about Odysee's findings.  And then that's the

9    end.

10             Acceptable to you, Mr. Jones?

11             MR. JONES:  Your Honor, of course.  And the -- the

12   SEC appreciates the staged, reasonable approach that the Court

13   is laying out and we definitely appreciate the chance to

14   have -- if there's going to be depositions -- topics for those

15   depositions blessed ahead of time as opposed to trying to hash

16   them out at the deposition table, which usually happens.

17             I would make one request, your Honor, that in

18   addition to the P&L statement, LBRY has submitted its balance

19   sheet to you.  There are substantial questions on that balance

20   sheet but they are relying about -- relying for it in their

21   argument that they have no money and no value at this point.

22             There are questions such as there is a -- a zero

23   entry for bitcoin listed on the balance sheet and yet there is

24   an unrealized gain or loss for that bitcoin.  It makes no

25   sense.

1        There is the Odysee loan, of course.  There's

2    another loan, a Futo loan.  And we'd just ask, your Honor, in

3    making discovery requests that we're going to make if we not be

4    limited to just the P&L but to the P&L and that balance sheet

5    that has been submitted to the Court because there is

6    substantial questions about it, including what the value of the

7    assets are that LBRY is holding and how they reflected those on

8    the balance sheet they've submitted to the Court.

9        THE COURT:  I'm going to let Mr. Miller respond in

10   just a second, but if I allow that, which I would be inclined

11   to do, it would be, again, limited to a specific issue that

12   bear on the questions that are -- remain for me to resolve.

13       MR. JONES:  Of course, your Honor.

14       THE COURT:  That is, is there -- should there be an

15   injunction, should there be disgorgement, should there be a

16   penalty, what is the amount of disgorgement and penalty if I

17   determine they are appropriate.  And it has to be good reasons.

18   There isn't a fishing expedition.  We're too far into the

19   litigation for that.

20       So anything I allow, you have to be narrow and

21   focused.  And, you know, I suppose I would say that I -- I

22   rarely like to get involved with this.  What I would suggest

23   we -- you do is have a meet-and-confer and hash this out.  And

24   to the extent you still have problems, I can get the two of you

25   in front of me and say, all right, what's the first problem.  I

1   don't like to do this.  I like other people to do this rather

2   than me.  But I'll do it, if necessary.  Okay?

3          MR. JONES:  Yes, your Honor.

4          THE COURT:  Go ahead.

5          MR. JONES:  We just want to be able to make the

6   argument to you if it's supported by the facts, your Honor,

7   that LBRY, you know, raised 22 million and spent 22 million,

8   let's say, but now has a business or assets worth 10 million,

9   in a disgorgement analysis that would be relevant to your

10  Honor, if not necessarily dispositive but relevant, and we just

11  want that to be part of the discovery process so we could make

12  that argument.  That would be the profit of the money raised,

13  those assets, that value of the business.

14         THE COURT:  Mr. Miller, you're -- your thoughts

15  about all of this.

16         MR. MILLER:  Yeah.  Your Honor, I -- we've been

17  talking about disgorgement and how do we get discovery around

18  the disgorgement, but I think it would help LBRY, it would help

19  this matter, frankly, if your Honor would rule on the other two

20  issues that I -- I took that you didn't have a problem with,

21  which was the injunctions and the civil penalty.

22         I think having that out, particularly given the

23  situation that LBRY is in, is extremely, extremely beneficial,

24  your Honor.  And so I'd ask you to consider at least

25  bifurcating the injunction and civil penalty from the

1    disgorgement final judgment.

2              THE COURT:  Well, there are a couple of things that

3    I still need to think about with respect to the injunction that

4    don't turn on dollars and cents.  I'll just explain my -- what

5    I need to be thinking about and I -- and I want to get an order

6    out.  I will as soon as I can.  But I also have several other

7    significant matters I'm working on.

8              But with respect to the injunction, my inclination

9    would be not to enjoin a company that is going to dissolve

10   and -- and the term I think they use is burn the remaining LBC

11   that the company holds unless there were successors and assigns

12   that are likely to repeat the behavior, right?

13             And so you say there aren't any successors and

14   assigns.  It's going out of business.  It's dissolving.  The

15   SEC has this argument which I need to think more about, but

16   which initially I'm not inclined to endorse, that Odysee is

17   effectively an affiliate, successor, or assign and for purposes

18   of Rule 65 can be subject to an injunction even though it's not

19   a party to the litigation.

20             I have some problems with that.  I need to think it

21   through.  I'm not inclined to issue an injunction.  But I need

22   to think those arguments through, carefully consider your

23   briefs and the positions you took at oral argument.  Okay.

24             The second issue is -- that you've talked about is

25   with respect to disgorgement.  I'm inclined to, as I noted,

1  inclined to consider a tier 1 penalty if LBRY does what is

2  suggested and I will be inclined to follow the monetary limit

3  proposed there.

4      The SEC has an argument that I have to think

5  through, as I understand it, that is gross receipts should be

6  taken into account with respect to the determination of any

7  penalty and even as a tier 1 penalty.  I -- that's an

8  argument -- I think that's an argument, Mr. Jones, or your

9  colleague is presenting.  If he wants to speak to it, he can.

10     I thought that's one of the things that he urged me

11 to consider and I, frankly, haven't figured that one out yet.

12 I need to go back and look more carefully at the law and

13 determine whether and how I should consider all the factors I

14 should consider in imposing a penalty.

15     I'm not inclined to impose a penalty based on gross

16 receipts that don't result in any profits beyond the monetary

17 number in a tier 1 penalty, but I haven't addressed that

18 argument previously in any work that I've done, so I need to

19 think about it.  That's going to take some time.  It isn't

20 dependent upon the discovery that you're producing.  Those are

21 pure legal issues.  But I just need to think through them.

22     So that's --

23     MR. JONES:  Your Honor --

24     THE COURT:  -- the answer --

25     MR. JONES:  Your Honor --

1          THE COURT:  Yeah, go ahead.

2          MR. JONES:  On those points -- I'm sorry.  I didn't

3    mean to cut you off, your Honor.

4          On the injunction point, your Honor, a couple of

5    things.  One is to the extent that your Honor -- obviously it's

6    the Court's timing and the SEC will not weigh in on whether or

7    not the Court wants to put that out all at once or at the end,

8    but two things on that.

9          One is to be very clear, we're not looking for

10   Odysee to be specifically named in any injunction from the

11   Court.  We only ask that the Court impose the injunction

12   pursuant to Federal Rule of Civil Procedure 65 and the limits.

13   And if Odysee is, in fact, within those limits based on the

14   facts, which we're not looking to seek now, then it is.  And if

15   it's not, then it's not.

16         We don't think that the Court need resolve whether

17   Odysee is within the limits of Rule 65.  We just think that to

18   the extent that the Court issues an injunction and any entity

19   or individual is within the limits of Rule 65, they're bound

20   because that's the rule.  And that's what we're asking for,

21   your Honor.

22         And this injunction has become particularly

23   important because following last week's hearing, your Honor,

24   The Crypto Press and Mr. Deaton, to some extent, and even LBRY

25   and Mr. Miller, have taken the position that the Court has

1  ruled and the SEC has somehow conceded that LBC itself are, by

2  law, not securities and, by law, okay to trade on the secondary

3  market.

4         I actually raised this with Mr. Miller last week.

5  He said, well, no, once the SEC started to talk about Odysee

6  and the judge was going to rule that they're not securities --

7  I don't understand that that's what the Court was ruling, but I

8  do think, your Honor, that, you know, that --

9         MR. KAUFFMAN:  I'd really like -- could someone

10  answer that?  I've been waiting five years.  Can someone tell

11  me?

12         THE COURT:  Stop it.  Stop it.

13         Mr. Miller, please instruct your client that he's

14  not to --

15         MR. MILLER:  Jeremy.

16         First of all, your Honor.  I've not made any public

17  statements, so contrary to what Mr. Jones said, no public

18  statements have been made by me.

19         So, secondly, however people interpret your hearing

20  last week, they interpreted it.  So --

21         MR. KAUFFMAN:  I don't understand it.  This is my

22  last shot.  I'm sorry.

23         You guys are the government.  Under what conditions

24  can this stupid token be sold?  Just tell me.  I thought by the

25  end of this I would know and I still don't.  SEC can't say who

```
 1   can sell it and under what conditions and you, Judge, can't
 2   say --
 3                 THE COURT:  Stop.
 4                 MR. KAUFFMAN:  -- who can sell it and under what
 5   conditions.
 6                 THE COURT:  Stop.
 7                 MR. KAUFFMAN:  So who's going to -- go ahead and
 8   mute me.  It's fine.  It's over.  The SEC has won.  Odysee will
 9   die.  LBRY will die.  No one will --
10                 THE COURT:  Mr. Kauffman -- Mr. Miller, will you
11   instruct your client that he's not permitted to speak.
12                 MR. MILLER:  Jeremy.  Jeremy, please.  Thank you.
13                 THE COURT:  Look, I've tried to be -- I've -- I've
14   tried to work with Mr. Kauffman and in ways that I, frankly,
15   don't tolerate from anyone else because I understand the
16   frustration that he's feeling.
17                 But I do -- I do want -- I mean, Mr. Jones, you
18   understood what I was saying, I believe.
19                 MR. JONES:  I do.
20                 THE COURT:  And just so there's no question about
21   it, let me try to say it again.
22                 I have been concerned about what happens because
23   ultimately the SEC is a -- an agency that is designed to
24   protect investors, right?  I mean, that's -- it exists to
25   protect investors.  People who bought unregistered LBC are the
```

1   kind of people that you're trying to protect, right?

2                   MR. JONES:  (Nods head.)

3                   THE COURT:  You're nodding your head yes.  And --

4                   MR. JONES:  Yes, your Honor.

5                   THE COURT:  -- I've been concerned about those

6   people and their lack of clarity about what they can do with

7   what they purchased.

8                   And it had been my hope that the SEC -- that the SEC

9   could give those investors some clarity because they're the

10   people you're supposed to be protecting.

11                  MR. JONES:  Yes.

12                  THE COURT:  You have elected -- wait.  Just let me

13   finish.

14                  You have elected not to do that in this case.  I've

15   urged you to try to provide some clarity.  You've made the

16   point, which is correct, sorry, Judge, you're not the

17   policymakers here, the SEC is, and we choose when we want to

18   make our policy, and we don't in this case intend to make any

19   statements about that.  And I respect that you have that power

20   and I don't.

21                  And I understand that's a source of endless

22   frustration for people that would like an answer, but I have

23   explained, I've tried to explain, that courts cannot just reach

24   out and do whatever the heck they want because they think it

25   will help the public.  I have to respond to the issues that the

1    parties raise.  And the parties did not raise that issue with

2    me and I do not have the power to force you to provide clarity.

3              And I understand that's frustrating -- that's

4    frustrating, but I will act in accordance with my view about

5    the extent of the judicial power I have because to do otherwise

6    would be to usurp power that belongs to the public.  Okay?  And

7    I'm not going to do that, whether people like it or not.  And

8    all I'm saying and have said is because the SEC has not

9    litigated that question in my court, I can provide -- not

10   provide an answer on that question.

11             And to the extent that the authors of a very careful

12   Law Review article have tried to read something into my

13   decision, they have read more into it than I was empowered to

14   provide.  And that's all I've said.  I've said nothing more

15   than that.

16             That's how you understand it, isn't it, Mr. Jones?

17             MR. JONES:  It is, your Honor, and I appreciate that

18   clarification.  Obviously none of us control the message after

19   it leaves the courtroom and -- but there was a substantial

20   misimpression, I think, in no fault of anyone here on this

21   call, from last week.  And there was, you know, talk of the SEC

22   LBRY precedent allowing secondary market sales.  And I left the

23   court believing, and now I'm confirmed, that that was not the

24   Court's intention.

25             And just on the protecting of investors, your Honor,

1    because you brought it up, the SEC seeks to protect investors

2    here by, frankly, getting disgorgement and a penalty that can

3    redistributed to wrong investors.  In a private securities

4    standpoint a section 5 violation remedy is rescission.  All of

5    those investors would be allow to go back to LBRY and get their

6    money back.

7            Here, because we're in the public context, we do it

8    through disgorgement and penalty.  That's why, your Honor,

9    we've been fighting on disgorgement and penalty, to try to get

10   whatever we can for investors and to try to make it clear, your

11   Honor -- and we made -- Mr. Moores made this point to you --

12   that there should not be an efficient breach of the securities

13   laws.  They should not be able to raise 15 billion, spend it

14   all in the --

15           THE COURT:  I'm very well aware of the efficient

16   breach doctrine.  I -- I teach it in -- I used to teach it when

17   I taught at the Tuck Business School to -- when I explained

18   business ethics.  And so I understand the point.  I'm not

19   allowing efficient breach.

20           But I -- look, we'll just have to leave it at that

21   with you.

22           MR. JONES:  Yes, your Honor.

23           THE COURT:  But Mr. Miller, do you -- do you think I

24   said something other than what I've just said about secondary

25   sales in the prior hearing?

1          MR. MILLER:  Your Honor, with all due respect, the

2     issue of whether Odysee should be enjoined and the issue of

3     whether once a security not always a security was briefed in

4     summary judgment and in opposition to our -- to our brief, page

5     1 of the Commission's opposition to LBRY's motion --

6          THE COURT:  Let's be clear about this, Mr. Miller.

7     Again, I -- the issue -- you did not brief the issue of whether

8     LBC, that is, part of an unregistered security offering, is in

9     all contexts a security.  You did not brief that.  You briefed

10    the question of whether sales that are registered securities

11    can at some point in the future not be securities and that

12    issue, I thought we were going to take up at remedy stage.

13          But it is not an argument that the SEC is addressing

14    in this lawsuit.  It is not asserting that future sales of LBC

15    are unlawful.  It is only asserting that LBRY's past offerings

16    of LBC are unregistered securities offerings and that's what I

17    addressed in that order.

18          I -- look, I understand that issue and I had been

19    aware of it before you made the argument in your brief.  I --

20    and I had hoped we could address it.  But it's not -- I'm not

21    faulting you.  I'm just saying the SEC controls what relief it

22    seeks when it files a lawsuit and it did not seek the relief of

23    in any way preventing persons who acquired LBC from an

24    unregistered offering to be barred from further selling it

25    without registering.

1          MR. MILLER:  But, your Honor, they did.  On the

2     first page of their brief opposition it says:  First, the Court

3     should enjoin LBRY, including its wholly owned subsidiary

4     Odysee.

5               And why?  Because --

6               THE COURT:  No, let me -- let me stop you.  I -- I'm

7     going to take up the issue of whether the injunction should

8     extend to Odysee, but that's a separate question from the

9     question of if somebody like -- what is it called, Flipside --

10              MR. MILLER:  Flipside Crypto, yes.

11              THE COURT:  -- they -- whether they can resell their

12     LBC, that's a separate -- entirely separate question that I'm

13     not going to address.

14              Whether Odysee should be enjoined, and I -- I get

15     you on this.  Okay?  I -- I do not think it is appropriate to

16     issue an injunction to unnamed successors and assigns when

17     there's no evidence that there's a successor or assign.  And

18     where -- unless I were to find that Odysee was a successor and

19     assign, I would not issue an injunction that would -- I mean,

20     the idea that I would issue an injunction that Odysee would

21     have no idea whether it extended to them or not is not

22     something I'm going to do.  Okay?  So that's -- if that's what

23     your concern is, I agree with you.  That issue is an issue I

24     will resolve.

25              MR. MILLER:  Yes.  I --

1          THE COURT:  Look, I -- perhaps I shouldn't say

2    anything more.  I tried to make clear to the parties and to the

3    investor community what the extent of my power was and what it

4    wasn't and it was to address what I thought was a -- a

5    legitimate concern that the parties had presented in a brief

6    that lawyers drafting a Law Review article had read my opinion

7    to say something in good faith.

8          Look, they weren't here.  They didn't have the full

9    access to the briefing that I had.  They misconstrued something

10   in my order.  And I wanted to make clear because there were

11   amici who were asking me to do something that I didn't think I

12   had the power to do.

13         And, you know, that's -- I don't want to go further

14   on it, but I will, Mr. Miller -- if what you're telling me

15   you're concerned about is, yeah, Judge, we don't want you to

16   issue an injunction as to Odysee, I understand your arguments

17   on that and I'll consider the SEC's arguments and your argument

18   and I will issue a ruling as to whether I'm going to issue an

19   injunction as to Odysee.

20         But I'm not likely to do it in a kind of backdoor

21   way where I just say, well, LBRY's dissolving, I have no idea

22   who its successors and assigns will be, I'm just going to issue

23   an injunction that if there are successors and assigns, they're

24   enjoined, too.  And does that reach Odysee?  I'm not saying.

25   I'm not going to do that.  Okay?  If that's what your concern

1     is, I'm not going to do that.

2          What else did you want to say, Mr. Miller?

3          MR. MILLER:  I guess the only thing I would ask,

4     your Honor, is in connection with ruling on that injunction for

5     Odysee, which I've heard you clearly, there's no jurisdictional

6     reentity, they were never sued.  Understood.

7          It would -- I think the Court can say -- I mean,

8     it's been cited both by the SEC and in our briefs about the

9     fact that something isn't a security just in and of itself.

10    The orange groves, the orange is not a security.  Just in --

11    this is something that the SEC commissioners said, that former

12    Chairman Clayton has said, and it would help to be in an

13    opinion because everyone's now looking at the judicial opinions

14    because the SEC is regulating through enforcement.

15          THE COURT:  I thought the SEC was taking up that

16    issue in Ripple, weren't they?

17          MR. JONES:  Well, your Honor, it is at play in

18    Ripple, I believe, and in perhaps some other cases, but it's

19    very clearly not in play in this case.  We have -- we didn't

20    take the discovery on whether LBC in secondary markets was

21    getting sold as a security; we didn't make briefing on whether

22    LBC getting sold by people other than LBRY.

23          You know, we argued whether or not this was an

24    investment contract, that was the -- the theory put forth in

25    the complaint extremely explicitly.  The Howey test was the

1    structure of the complaint.  We litigated that.  We took

2    discovery on whether or not the prongs of the Howey test were

3    met.  When LBRY sold LBC, that's what we adjudicated.

4              And the rest -- and I understand, your Honor, that

5    everyone may be frustrated that we did not bring it up in this

6    case, but we are constrained by similar maxims and principles

7    and restraints, as the Court does, in what is brought up in

8    litigation and what is done at policymaking and what is brought

9    up in particular litigation and we try to adhere to that as

10   well.

11             MR. MILLER:  Judge, there's got to be

12   consequences --

13             THE COURT:  Yeah.  Sorry.  Mr. Miller, go ahead and

14   then we're going to wrap up.  I've sort of reached the end of

15   my patience on this.  I'll -- I'll give you some instructions

16   where to go --

17             MR. MILLER:  Yes.

18             THE COURT:  -- but, Mr. Miller, what else did you

19   want to say?

20             MR. MILLER:  I just think there's got to be

21   consequences.  The SEC, the government, is bringing this

22   action.  You can't put your head in the sand and say, we're

23   going to regulate through enforcement and then when an issue

24   comes up that you don't want to discuss, you try to bury it.

25   And it's being buried.  That's exactly what's being happened

1    here -- is happening here.

2           All we're asking is that the Court say that these

3    things are not securities in and of themselves.  That's all

4    we're asking.  If the SEC wants to bring the case against

5    somebody who has a bunch of LBC, they can do it if they can

6    meet Howey requirements.  But, your Honor, when you ruled, you

7    said it was economic incentive.  Keeping these premines,

8    there's an economic incentive for people to rely on the efforts

9    of LBRY.  That doesn't exist once you -- once you burn the

10   premine and dissolve LBRY.

11          So we're just asking that the Court take that into

12   consideration.  I get it.  You're very constrained.  But I do

13   think there's some things that you can do for us, your Honor.

14          THE COURT:  I'll -- I'll continue to think about the

15   issue.  And I recognize that whatever I do, no matter how clear

16   I try to be, people will be inclined to interpret everything I

17   do and say in ways that support their particular positions.

18   And, frankly I have -- you know, my job is to do what I think

19   the law requires and whatever people make of it, they will make

20   of it.  That's -- that's all I can say.

21          I -- I have been very clear that I -- I wish -- I

22   think there is a substantial need for the SEC to consider that

23   there are now and there will be digital tokens that are issued

24   that are issued and intended to be used for consumptive

25   purposes.

1          And the SEC needs to think about that particular

2    issue and how tokens that are -- have a consumptive use and are

3    part of an unregistered offering, how they should be dealt with

4    ultimately.  And it's not an issue that has been litigated here

5    and I will think carefully about Mr. Miller's argument about

6    what I can say and can't say.

7          But at the end of the day, it's not what a judge

8    says, it's what the judge does that matters.  The force of law

9    is with respect to the ultimate order that I issue.  The rest

10   of it is just explanation.  And so I have to be mindful of

11   that.

12         So I -- I hear what you're saying.  I -- I

13   understand the frustrations of the community of LBC purchasers

14   here and I have sympathy -- I'm sympathetic to those concerns.

15   But I also am mindful about what my role is here in this

16   proceeding.

17         So here's what we're going to do.  Okay?  LBRY,

18   within 14 days -- and the sooner you do it, the better -- will

19   produce the electronic files supporting the -- the P&L

20   statement and -- what was it, Mr. Jones, you were asking for

21   the balance statement as well?

22         MR. JONES:  Yes, that's right, to include the

23   balance statement in that, your Honor, and --

24         THE COURT:  The P&L and -- right --

25         MR. JONES:  -- the documents that support that.

```
1              THE COURT:  -- the P&L & balance statement for
2    inspection.  Within 14 days after the receipt of that
3    information, LBRY shall meet and confer and attempt to agree on
4    a set of narrow, focused discovery requests, document requests
5    and interrogatories, that address the specific issues that
6    we've been discussing during this hearing.  And after that
7    conference, they shall issue those requests.  Those requests
8    shall be responded to within 30 days.
9              Following that request, if LBRY -- if the SEC
10   wishes to take depositions they shall first meet and confer and
11   attempt to agree with LBRY on any depositions to be conducted
12   and if they can't agree, can request a further hearing at which
13   the Court will identify who may be deposed, what subjects may
14   be discussed in the deposition, and how long the depositions
15   can take place.
16             Following the completion of any remaining discovery
17   but within 14 days of the date that discovery is completed, the
18   SEC shall produce a supplemental brief addressing the issue of
19   remedy and LBRY shall have 14 days thereafter to submit a reply
20   to the supplemental brief.
21             I will then take the matter under advisement.  I
22   will issue a decision.
23             I understand Mr. Miller's request to consider a -- a
24   bifurcated ruling.  I have a -- a significant amount of work
25   that's in backlog that I'm trying to get through.  If I finish
```

1   that backlog of work and I'm in a position to issue partial

2   rulings, I will consider doing that if I think it will -- those

3   rulings can get out early.

4           On the other hand, to the extent I think that it

5   may require assessment of any additional evidence gained in

6   discovery, I may defer that matter.  I take no -- I won't make

7   any final decision on it.

8           My -- I will issue a short order identifying these

9   dates and what each party is supposed to do, but I want to

10  emphasize I expect counsel, who are very experienced and

11  reasonable, to meet and confer and attempt to agree on the

12  minimal amount of discovery that the SEC needs to fulfill its

13  responsibilities that will intrude to the least possible extent

14  on LBRY's efforts to wind up its operations here.

15          And I do expect, and I will be assuming in any order

16  I issue, that LBRY does intend to follow through with its

17  agreements in its brief to dissolve -- burn the remaining

18  holdings of premine and dissolve upon the issuance of any

19  order.  And I'll take that as an assumption.  If that should

20  change in any way, the parties should notify me.

21          Okay.  So I'll issue a short order with deadlines

22  and -- but I want to emphasize I expect the two of you to meet

23  and confer and try to agree on these things.  To the extent you

24  can't, I'll come in, but the -- the patience I have for this

25  kind of micromanagement is limited and you will be on the

1  receiving end of an increasingly frustrated set of discussions

2  with me if you continue to involve me in micromanagement of

3  discovery.

4       So do it if necessary, but I hope you can agree.

5  And let's get this thing resolved.  All right?

6       MR. JONES:  Thank you, your Honor.

7       THE COURT:  Okay.  Thank you.  And I may not speak

8  to counsel again.  I -- I do appreciate the way you have

9  conducted yourself here.  I know there's high animosity toward

10  the SEC.  Setting that aside, I think LBRY's counsel has been

11  nothing but careful and reasonable and thoughtful, the SEC has

12  provided good briefs, and I appreciate that because this is a

13  difficult issue that you both have asked me to resolve.

14       So I -- I may not speak to you again.  I just wanted

15  to say I appreciate your help in trying to resolve these

16  matters and, frankly, I hope I don't ever see you again.

17       MR. JONES:  Yes, your Honor.  We appreciate the

18  Court's careful consideration of all of this and helping us

19  find our way to the end, very much so.

20       THE COURT:  Okay.  Thank you.  Thank you,

21  Mr. Miller.

22       MR. JONES:  Thank you, your Honor.

23       THE COURT:  That concludes the hearing.

24       (Proceedings concluded at 11:56 a.m.)

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 3/23/23          */s/  Liza W. Dubois*
                           LIZA W. DUBOIS, RMR, CRR