UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Securities and Exchange Commission**

    v.                                                                                                    Case No. 21-cv-260-PB
                                                                                              Opinion No. 2023 DNH 82
**LBRY, Inc.**

### MEMORANDUM AND ORDER

    The Securities and Exchange Commission ("SEC") prevailed on summary judgment on its claim that LBRY, Inc. conducted unregistered offerings of securities in violation of § 5 of the Securities Act, 15 U.S.C. § 77e. LBRY has filed a motion to limit the SEC's remedies. In response, the SEC asks the court to order LBRY to pay a civil penalty of $111,614 and issue an injunction restraining LBRY from violating § 5 of the Securities Act and from participating in unregistered offerings of crypto asset securities in the future. For the following reasons, I find that both an injunction and a civil penalty are appropriate in this case.

### I. BACKGROUND[1]

    The SEC filed its complaint in March 2021, alleging that LBRY failed to register its offer and sale of digital tokens, LBC, in violation of § 5 of the

---

[1] The facts relevant to the enforcement action are discussed in detail in the summary judgment order. See SEC v. LBRY, Inc., 2022 DNH 138, 2022 WL 16744741, at *1-2 (D.N.H. Nov. 7, 2022). Here, I focus only on facts that bear on the question of remedies.

Securities Act. The complaint requested injunctive relief, disgorgement, and a civil penalty. LBRY and the SEC eventually filed cross-motions for summary judgment addressing the sole issue of liability: whether LBRY was required to register its offering of LBC under the Securities Act. I granted the SEC's motion and denied LBRY's motion based on my conclusion that "no reasonable trier of fact could reject the SEC's contention that LBRY offered LBC as a security, and LBRY [did] not have a triable defense that it lacked fair notice" that it needed to register its offerings. SEC v. LBRY, Inc., 2022 DNH 138, 2022 WL 16744741, at *8 (D.N.H. Nov. 7, 2022).

  LBRY subsequently filed a motion to limit the SEC's remedies, arguing that a nominal civil penalty of $50,000 is the only appropriate remedy under the circumstances of this case, which do not involve allegations of fraud and relate solely to violations of the registration requirement. In objecting to LBRY's motion, the SEC initially sought three forms of relief: (1) a permanent injunction against both LBRY and its wholly-owned subsidiary Odysee; (2) disgorgement of any profits LBRY made through its unregistered offerings; and (3) a civil penalty equal to LBRY's gross pecuniary gain.

  Following a hearing on LBRY's motion, I directed the parties to engage in limited discovery concerning LBRY's financials. In supplemental briefing following discovery, the SEC withdrew its request for disgorgement and limited its request for a civil penalty to $111,614. As for injunctive relief, the

SEC's proposed final judgment would enjoin LBRY both from violating § 5 of the Securities Act and, pursuant to § 21(d)(5) of the Exchange Act, from participating in any unregistered crypto asset securities offerings. See Doc. 107-1. The proposed injunction would also bind any person or entity that falls within the scope of Federal Rule of Civil Procedure 65(d). See id.

In response, LBRY did not object to the modified civil penalty but continued to urge that an injunction should not issue. In the alternative, LBRY proposed a final judgment that differs in three relevant respects from the SEC's proposal: (1) it expressly asks the court to find that the injunction against LBRY does not apply to its subsidiary Odysee or any other user of LBC; (2) it seeks a "clarification" that my summary judgment order "did not find that LBC tokens were 'securities' in and of themselves"; and (3) it omits the provision enjoining LBRY from participating in any unregistered crypto asset securities offerings. See Doc. 108-1.[2]

---

[2] LBRY also made a cursory argument—presented for the first time in its supplemental brief in support of the motion to limit remedies—that the "major questions doctrine" forecloses the SEC's efforts to regulate digital assets. See Doc. 108 at 2 (citing West Virginia v. EPA, 142 S. Ct. 2587, 2609 (2022)). This eleventh-hour argument has been forfeited. See Sierra Club, Inc. v. Granite Shore Power LLC, No. 19-CV-216-JL, 2019 WL 8407255, at *7 (D.N.H. Sept. 13, 2019) (collecting cases for the proposition that arguments not raised in a moving party's opening brief are deemed waived). Indeed, an argument challenging the SEC's authority to bring this enforcement action should have been raised earlier in the case, especially since the cited Supreme Court case was decided before I held oral argument on the cross-motions for summary judgment.

## II. ANALYSIS

### A. Permanent Injunction

The SEC requests that I enjoin LBRY from violating § 5 of the Securities Act and from participating in unregistered offerings of crypto asset securities. LBRY responds that an injunction is neither appropriate nor necessary to deter future wrongdoing because it intends to dissolve and "burn" its store of LBC. In the alternative, LBRY argues that the scope of the injunction should be narrowed in three relevant respects. I address the appropriateness of injunctive relief before turning to LBRY's arguments concerning its scope.

A permanent injunction is appropriate where a defendant has violated the securities laws and the SEC demonstrates there is a reasonable likelihood that the defendant will do so again. SEC v. Smith, 2015 DNH 134, 2015 WL 4067095, at *9 (D.N.H. July 2, 2015); see SEC v. Haligiannis, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) (citing SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99 (2d Cir. 1978)). "The federal courts are vested with wide discretion when an injunction is sought to prevent future violations of the statutory securities laws." SEC v. John Adams Tr. Corp., 697 F. Supp. 573, 577 (D. Mass. 1988). Factors that a court may consider in determining whether a defendant is reasonably likely to commit future violations of the securities laws include "(1) the egregiousness of the violation; (2) the degree

of scienter; (3) the isolated or repeated nature of the violations; and (4) the sincerity of defendant's assurances against future violations." Haligiannis, 470 F. Supp. 2d at 384; see SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998).

The totality of these factors justifies issuing an injunction against LBRY to prevent future violations of the securities laws. First, although LBRY's actions did not involve fraud, its violations were nonetheless more egregious than a mere unregistered offering. LBRY's efforts went beyond selling its pre-mine of LBC. Instead, LBRY used its position as a market maker of LBC, was "acutely aware of LBC's potential value as an investment," and "made sure potential investors were too." LBRY, 2022 WL 16744741, at *4-5. Second, the continuous nature of LBRY's unregistered offering—which persisted in some form even after the lawsuit was filed and the SEC's position on the registration requirement became clear—points to a risk of future violations.[3] And third, at no point has LBRY acknowledged the unlawfulness of its conduct. Whether considered individually or in

---

[3]    LBRY disputes the extent of its post-lawsuit sales of LBC but acknowledges that some did occur. Specifically, LBRY maintains that it last sold LBC on the open market in February 2021, shortly before the complaint was filed. It concedes, however, that small-volume sales continued via MoonPay, Inc. through November 2021 and via the employee purchase program through January 2022. See Doc. 100-2 at ¶¶ 1-5.

5

combination, these factors demonstrate a reasonable likelihood of future violations.

LBRY responds that the possibility of future violations is nonexistent because it "intends to dissolve as soon as possible" and is willing to divest itself of its remaining pre-mined LBC. See Doc. 89-1 at 7. Despite making those representations months ago, LBRY has not yet taken either action. In any event, I cannot rule out the possibility of future violations by others who are automatically bound by the injunction pursuant to Rule 65(d).

Rule 65(d) provides that an injunction binds not only the parties but also the following persons who receive actual notice of the injunction: (1) "the parties' officers, agents, servants, employees, and attorneys;" and (2) "other persons who are in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2). Pursuant to this rule, an injunction against a corporation "also runs against the corporation's officers, in their corporate capacities." Med. Mut. Ins. Co. of Maine v. Indian Harbor Ins. Co., 583 F.3d 57, 64 (1st Cir. 2009) (emphasis in original) (quoting SEC v. Coffey, 493 F.2d 1304, 1310 (6th Cir. 1974)). But corporate representatives "cannot be held legally liable in their personal capacities unless and until they are joined as parties to the suit." Id.

Under certain circumstances, an injunction against a parent corporation may also bind its subsidiary or an independent corporation that acts in active concert with the enjoined corporation or its agents. See Royal

6

Knitwear Co. v. N.L.R.B., 324 U.S. 9, 14 (1945) ("Successors and assigns may . . . be instrumentalities through which defendant seeks to evade an order or may come within the description of persons in active concert or participation with them in the violation of an injunction."); Golden State Bottling Co. v. N.L.R.B., 414 U.S. 168, 180 (1973) (holding that a bona fide successor who had "knowledge that the wrong remains unremedied" could be bound by an injunction pursuant to Rule 65(d)); United States v. Philip Morris USA Inc., 566 F.3d 1095, 1136 (D.C. Cir. 2009) (holding that a subsidiary may be subject to an injunction against its parent regarding "the common corporate business to the extent it is so identified in interest with the parent that it represents precisely the same legal right in respect to the subject matter involved in the injunction") (cleaned up). For example, a subsidiary that receives property from its parent in an attempt to sidestep an injunction or that otherwise aids or abets the parent in violating the injunction can be held in contempt. See 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2956 (3d ed.) (collecting cases). But neither the mere existence of a corporate relationship nor "a contractual arrangement . . . [that] relates to something other than the subject matter of the injunction suit" is sufficient to bring a subsidiary within the purview of Rule 65(d). Id.

    Applying these principles, I agree with LBRY that the SEC has not presented sufficient evidence to-date that Odysee, LBRY's subsidiary, should

7

be enjoined. LBRY has cited evidence showing that Odysee has a distinct organizational structure, operations, revenue stream, leadership, and bank account. See Doc. 100-1. None of the evidence that the SEC has cited contradicts LBRY's evidence or otherwise suggests that Odysee is either an agent of LBRY within the meaning of Rule 65(d) or has acted in concert with LBRY with respect to its offerings of unregistered securities. That said, I decline LBRY's offer to expressly hold that the injunction cannot be applied to Odysee. To the extent Odysee would engage in conduct that would bring it within the scope of Rule 65(d), it would be open to the SEC to seek a contempt order.

      As for third-party holders of LBC, the SEC has not argued in this case that they could violate the injunction merely by purchasing or selling LBC. Indeed, the SEC has expressly stated that it "is <u>not</u> seeking an order prohibiting all third parties from buying or selling LBC." Doc. 94 at 7 (emphasis in original). Given the SEC's litigation posture, it suffices to say that merely holding LBC or purchasing it for consumptive purposes is insufficient to bring third parties within the purview of Rule 65(d). Instead, third parties would need to act in concert with LBRY in order to be exposed to a risk of being held in contempt of the injunction order.

      Because the SEC does not seek relief against third-party purchasers of LBC, I also decline both LBRY's and the amici's invitation to rule on whether

LBC is itself a security. Simply put, that issue has not been litigated in this case. Accordingly, I take no position on whether the registration requirement applies to secondary market offerings of LBC by persons or entities that are not subject to the injunction pursuant to Rule 65(d).

Lastly, LBRY's proposed judgment omits, without explanation, the SEC's proposal to enjoin LBRY pursuant to § 21(d)(5) of the Exchange Act from engaging in unregistered offerings of crypto asset securities. Section 21(d)(5) authorizes a court to grant "any equitable relief that may be appropriate or necessary for the benefit of investors" in "any action or proceeding brought or instituted by the Commission under any provision of the securities laws." 15 U.S.C. § 78u(d)(5). For the same reasons discussed earlier, I agree with the SEC that enjoining LBRY under this provision is both appropriate and necessary for the benefit of investors.

Accordingly, in a final judgment entered concurrently with this memorandum and order, the court will enjoin LBRY from violating § 5 of the Securities Act and from participating in unregistered offerings of crypto asset securities in the future.

**B.   Civil Penalty**

The SEC also asks the court to impose a civil penalty of $111,614, which is at the upper end of a "first-tier" penalty under the Securities Act. Although LBRY does not specifically oppose this request in its supplemental

brief, LBRY argued in its original brief that a nominal first-tier penalty of $50,000 is appropriate. I agree with the SEC that the requested penalty is warranted in this case.

The Securities Act authorize district courts to impose civil penalties against those who violate the securities laws. See 15 U.S.C. § 77t(d)(1). These penalties are intended to "punish and deter securities law violations." SEC v. Boey, 2013 DNH 101, 2013 WL 3805127, at *2 (D.N.H. July 22, 2013) (cleaned up). The statute creates three tiers of civil penalties based on the severity of the defendant's misconduct. See 15 U.S.C. § 77t(d)(2). First-tier penalties are available for all violations. Id. Second-tier penalties are available only for "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id. And third-tier penalties are available for all second-tier violations that "directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." Id. For each of these tiers, the maximum allowable penalty is the greater of (1) a set dollar amount enumerated in the statute ("statutory amount"), or (2) the defendant's gross pecuniary gain from the violation. See id. The statutory amounts, adjusted for inflation, for a defendant who is not a natural person are: $111,614 for first-tier violations; $558,071 for second-tier violations; and $1,116,140 for third-tier violations. See Adjustments to Civ.

10

Monetary Penalty Amounts, SEC Release No. 6212, 2023 WL 129081 (Jan. 6, 2023).

Within the statutory range, "the actual amount of the penalty [is] left up to the discretion of the district court," based on the particular facts of the case. SEC v. Kern, 425 F.3d 143, 153 (2d Cir. 2005); see Boey, 2013 WL 380512, at *2 (explaining that the statute "establishes a ceiling" but does not "require that the full allowable penalty be imposed") (cleaned up). In exercising that discretion, courts have considered (1) the egregiousness of the violation, (2) the defendant's scienter, (3) the repeated nature of the violation, (4) the defendant's admission of wrongdoing and cooperation with authorities, and (5) the defendant's financial situation. See SEC v. Kapur, 2012 WL 5964389, at *7 (S.D.N.Y. Nov. 29, 2012); SEC v. Locke Capital Mgmt., Inc., 794 F. Supp. 2d 355, 370 (D.R.I. 2011).

The parties agree that a first-tier penalty is appropriate in this case because there were no allegations of fraudulent activities. They disagree, however, as to the appropriate amount of that penalty. The SEC argues that the maximum statutory amount for a first-tier violation is warranted principally because LBRY's unregistered offerings were egregious and continued after this lawsuit was filed. LBRY responds that a nominal penalty is reasonable because LBRY did not act with scienter and "entered the

11

cryptocurrency market during a time of great uncertainty as to the regulatory requirements." Doc. 89-1 at 14.

Under the circumstances, I find that the imposition of a maximum statutory amount for a first-tier penalty is appropriate. Especially since LBRY's misconduct continued after the SEC's position on the registration requirement became clear, its violation is more egregious than a simple unregistered offering. The penalty is also necessary to deter LBRY and others from conducting unregistered offerings, while also taking into account LBRY's representations that it is without funds to pay a larger fine.

### III. CONCLUSION

For the foregoing reasons, LBRY's motion to limit remedies (Doc. 89) is resolved as follows: In accordance with a final judgment issued concurrently with this memorandum and order, LBRY is permanently enjoined from violating § 5 of the Securities Act and from participating in unregistered offerings of crypto asset securities. LBRY is also ordered to pay a civil penalty of $111,614.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 11, 2023

cc:  Counsel of Record